**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. <br> and <br> JETBLUE AIRWAYS CORPORATION, <br><br> *Defendants*. | Civil Action No.: 1:21-cv-11558-LTS |

**JOINT MOTION FOR ENTRY OF A SCHEDULING AND CASE MANAGEMENT ORDER**

Plaintiffs, the United States of America and the States of Arizona, California, Florida, Massachusetts, Pennsylvania, Virginia, and the District of Columbia (collectively, "Plaintiffs"), and Defendants, American Airlines Group Inc. and JetBlue Airways Corporation (collectively, "Defendants," and together with Plaintiffs, the "Parties") respectfully submit to the Court this Joint Motion for Entry of a Scheduling and Case Management Order.

In accordance with Rule 26(f) of the Federal Rules of Civil Procedure and Rule 16.1(b) of the Local Civil Rules, Plaintiffs and Defendants met and conferred on October 20, October 29, November 4, November 10, and November 16, 2021 regarding scheduling and case management matters. The Parties have reached agreement on almost all items, including a proposed trial date. A proposed Initial Scheduling and Case Management Order reflecting those agreements is attached. The Parties do not wish to delay commencing discovery in this case and respectfully request that the Court enter at this time the agreed upon Initial Scheduling and Case Management

Order attached to this motion.

The Parties also request that the Court address the following areas of disagreement: (1) disputes related to fact depositions, specifically (a) the number of depositions allowed of each Defendant's employees and former employees, (b) the length of depositions of Defendants' employees and former employees who were deposed by Plaintiff United States during the pre-complaint investigation, and (c) the inclusion of a provision in the CMO requiring a time by which Parties should make reasonable efforts to make witnesses available for depositions; (2) the ability to conduct supplemental fact discovery on witnesses identified on a Party's final witness list who were not listed on that Party's initial witness list and have not been previously deposed; (3) whether there should be limits on the ability to supplement initial exhibit lists at the close of expert discovery; and (4) disputes related to trial witness lists, specifically (a) whether to include provisions relating to trial witness lists, and (b) the date on the case schedule when the Parties would exchange initial trial witness lists. Plaintiffs' and Defendants' proposed Supplemental Scheduling and Case Management orders are attached as Exhibits 2 and 3, respectively, to this filing.

<b>REQUEST FOR ORAL ARGUMENT</b>

Plaintiffs and Defendants jointly submit that a hearing is necessary to resolve the Parties' remaining disputes.

<b>TOPICS OF DISPUTE</b>

**I.   DEPOSITIONS**

    **A.   Deposition Caps**

**Plaintiffs' Proposed Language**:

Paragraph 12:  *Each side is limited to 35 fact depositions of witnesses.*

**Defendants' Proposed Language**:

Paragraph 12:  *Each side is limited to 35 fact depositions of witnesses, no more than 20 of which may be depositions of current or former employees of Parties and no more than 12 of which may be depositions of current or former employees of any individual Party.*

**Plaintiffs' Rationale**:

While both sides agree on a total of 35 fact depositions, Defendants seek to dictate how Plaintiffs must allocate their depositions.  Specifically, Defendants seek to impose a limit on the number of witnesses Plaintiffs can depose from each Defendant and across both Defendants. This one-way limitation would hamstring Plaintiffs' ability to prove their case before discovery has even begun.  Plaintiffs' proposal, by contrast, preserves the ability of both sides to make deposition decisions based on their specific needs to prove their claims or defenses.  Moreover, Plaintiffs' proposal is routine in antitrust cases.  Courts regularly enter orders consistent with Plaintiffs' proposal that cap only the total number of depositions and not the number of deponents from any particular defendants.[1]

Defendants' purported concern that Plaintiffs might use all (or nearly all) of their depositions to examine employees and former employees from only one Defendant is

---

[1] *See United States v. AON plc*, Scheduling and Case Management Order, ¶ 15, No. 1:21-cv-01633 (D.D.C. July 20, 2021) (allowing 30 depositions collectively for each side); *United States v. Sabre Corp.*, Scheduling Order, Ex. A ¶ 13, No. 1:19-cv-01548 (D. Del. Sept. 26, 2019) ("The United States is limited to 40 depositions of fact witnesses, and the Defendants collectively are limited to 40 depositions of fact witnesses."); *United States v. Anthem Inc.*, Final Case Management Order, ¶ 12(H), No. 1:16-1493 (D.D.C. Aug. 31, 2016) (stating "[t]here is no limit on deposition of party witnesses"); *United States v. Aetna Inc.*, Scheduling and Case Management Order, ¶ 14(H), No. 1:16-1494 (D.D.C. Aug. 12, 2016) (providing that "Plaintiffs may take 25 depositions of fact witnesses and the Defendants may take 25 depositions of fact witnesses, plus each side may take depositions of any persons identified on the preliminary or final trial witness lists"); *United States v. Hillsdale Community Health Center*, Stipulated Amended Scheduling Order, ¶ 3, No. 5:15-cv-12311 (E.D. Mich. Oct. 18, 2015) ("The maximum number of depositions each side is permitted to take without leave of Court is 12, plus any fact witnesses added or substituted by the other side in the amended witness list who has not already been deposed.").

implausible. For this to be the case, Plaintiffs would have to take no (or nearly no) depositions of customers, other airlines, other non-parties, or even the other Defendant. Defendants' proposal solves a nonexistent problem while unfairly limiting Plaintiffs' right to gather evidence to prove their case.

**Defendants' Rationale:**

Even though Local Rule 26.1(c) provides for 10 depositions per side, the Parties agree that more are required for this case and 35 fact depositions are appropriate. From Defendants' perspective that number is driven by third-party discovery, *e.g.*, depositions of other airlines and consumer constituencies. Plaintiffs have refused to agree to any limit on the number Party depositions they may take. Rather, Plaintiffs want the discretion to use as many of the 35 depositions as they choose on current or former employees of Parties. That is unreasonable; there is no good cause for nearly so many party depositions, particularly when Plaintiff DOJ has already taken 11 pre-litigation depositions of current or former employees of Defendants and the Parties have agreed that Plaintiffs also will be able to take a 30(b)(6) deposition of both Defendants.

Defendants' counterproposal is that Plaintiffs may take a total of 35 fact depositions, 20 of which may be depositions of current or former employees of Parties and up to 12 of which could come from one individual Party. Defendants respectfully submit that Defendants' proposal is reasonable and fair, and is proportional to the discovery needs of the case.

  **B. Litigation Depositions of Witnesses Deposed During the Investigation**

  **Plaintiffs' Proposed Language:**

Paragraph 12: *Depositions of fact witnesses are limited to no more than one (7-hour) day unless otherwise stipulated.*

4

**Defendants' Proposed Language:**

<u>Paragraph 12</u>:   *Depositions of fact witnesses are limited to no more than one (7-hour) day unless otherwise stipulated, except that depositions of employees and former employees previously deposed in response to Civil Investigative Demands shall last no more than three (3) hours.*

**Plaintiffs' Rationale:**

Federal Rule of Civil Procedure 30(d)(1) entitles litigants to take depositions lasting up to seven hours.  Defendants, however, ask the Court to impose a three-hour limitation on any depositions of their employees that the United States previously deposed during Plaintiffs' pre-complaint investigation.  Defendants thus seek to deprive Plaintiffs of discovery rights to which all litigants are entitled and cloak themselves with extra privileges unavailable to others, solely on the basis that a pre-complaint investigation occurred.  The First Circuit, and other courts, have rejected such attempts to curtail the government's discovery rights because of pre-complaint investigations.  *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the [agency] had already conducted a pre-filing investigation, . . . there is no authority which suggests that it is appropriate to limit the [agency]'s right to take discovery based upon the extent of its previous investigation into the facts underlying its case.") (internal quotation marks omitted).  That is because the purposes of a pre-complaint investigation are fundamentally different from the purposes of post-complaint discovery conducted under the Federal Rules of Civil Procedure.  During a pre-complaint investigation, the objective is not to prove a case, but to make informed decisions about whether to bring a case.  *See United States v. GAF Corp.*, 596 F.2d 10, 14 (2d Cir. 1979).  Accordingly, courts in government antitrust cases regularly allow

5

full-length depositions of previously deposed witnesses.[2]

Here, the limitation that Defendants seek to impose on Plaintiffs would prejudice Plaintiffs' ability to prosecute its case. The very reason that Plaintiffs deposed witnesses during the investigation is because those witnesses possessed information most relevant to help Plaintiffs make an informed decision to file a complaint. Plaintiffs should not be stripped of their right to conduct a full post-complaint deposition of those witnesses. Defendants' proposal risks giving the government a false choice in the future between taking investigative depositions or retaining the ability to take complete depositions litigation, thus undermining its ability to make sound enforcement decisions.

**Defendants' Rationale:**

As explained above, Plaintiff DOJ has already taken numerous depositions of current of former employees of Defendants in response to pre-litigation Civil Investigative Demands. All of these depositions occurred after Defendants completed an extensive document production (totaling hundreds of thousands of documents) and the bulk occurred following the commencement of the NEA in February 2021. Plaintiff DOJ therefore has had and exercised the opportunity to question these witnesses about the creation and commencement of the NEA, and on an extensive document production made during the investigation. It does not need to start from scratch with these witnesses, but rather, at most, to supplement its fulsome questioning

---

[2] *See e.g.*, *AON plc*, Scheduling and Case Management Order at ¶ 15 (clarifying that "[a]ny Party may further depose any person whose deposition was taken pursuant to a Civil Investigative Demand" without imposing a different time limit for that category of deponent); *Anthem*, Final Case Management Order at ¶ 12(H) (establishing a "maximum of seven hours of examination" for all fact witnesses, without distinguishing those who were deposed in the Investigative stage from those who were not).

regarding the NEA.  Indeed, Defendants have offered to agree to the admissibility of those depositions if Plaintiffs agree to the time limitation that Defendants have proposed.

Plaintiffs have been unwilling to negotiate on this issue and have failed to provide a valid basis why they would need an additional seven hours of deposition time with any individual who Plaintiffs previously deposed.  At most they have suggested that they need to cover new developments since the prior depositions. That can readily be accomplished in three hours.

### C.  Party Deponent Availability within 21 Days

**Plaintiffs' Proposed Language:**

Paragraph 12 (emphasis added):  *The Parties will cooperate in good faith to reduce the burden on witnesses noticed for depositions and to accommodate the witnesses' schedules, **and will make reasonable efforts to make witnesses available for deposition within 21 days' notice.***

**Defendants' Proposed Language:**

Paragraph 12:  *The Parties will cooperate in good faith to reduce the burden on witnesses noticed for depositions and to accommodate the witnesses' schedules.*

**Plaintiffs' Rationale:**

Under each side's proposal, fact discovery is abbreviated, leaving little room for delay. Given that abbreviated timeframe, it is important for Parties to make "reasonable efforts" to schedule depositions quickly.  Twenty-one days affords the Parties ample time to do so.  Defendants have objected to this language on the basis that they cannot guarantee the availability of witnesses in advance, but this argument misunderstands the issue.  Plaintiffs are not asking for guarantees.  Plaintiffs recognize that witnesses may sometimes have commitments that make depositions within 21 days unworkable.  That is why Plaintiffs ask only that the Parties make "reasonable efforts."

**Defendants' Rationale:**

Plaintiffs' proposal seeks to remedy a problem that should never arise if Plaintiffs

exercise reasonable diligence in planning their deposition program. They seek to impose a rule that through an innocuous sounding "reasonable efforts" provision allows them to notice a Party deposition on as little as 21 days' notice. This is unnecessary. The effect of this will fall entirely on Defendants and practically speaking on their most senior executives, whose schedules tend to be the most challenging. The norm is for a party who wishes to take such a deposition to negotiate a mutually convenient date and to start that process much earlier than 21 days before the deposition. That is not just good planning, but common courtesy.

There is no reason to depart from the norm in this case. The discovery period is quite long (not ending until early June 2022) and Plaintiffs already know—and in many cases already have deposed—Defendants' relevant executives. Given that extended planning window there is no reason to presume through this rule that it is reasonable to schedule depositions with only three weeks' notice. If anything there should be a presumption to the contrary. This provision is not required by the Court's model Civil Pre-Trial Scheduling Order and not practical given the number of anticipated depositions (particularly if Plaintiffs are permitted to use all 35 depositions on Party employees). The standard practice whereby the Parties coordinate in good faith to schedule depositions upon reasonable notice is appropriate for this case, and any constraints on that practice are unwarranted.

## II.  SUPPLEMENTAL DISCOVERY

**Plaintiffs' Proposed Language:**

<u>Paragraph 8 (emphasis added)</u>:  *All discovery, including discovery served on non-parties, must be served in time to permit completion of responses by the close of fact discovery,* ***except that Supplemental Discovery must be served in time to permit completion of responses by the close of Supplemental Discovery.  For purposes of this Order, "Supplemental Discovery" means document and deposition discovery of non-parties and deposition discovery as to Parties, related to any person identified on a Party's final trial witness list who was not identified on that Party's initial trial witness list.  Depositions and requests for production that are part of Supplemental Discovery must be noticed or served within 7 days of exchanging the final trial witness lists.***

**Defendants' Proposed Language:**

<u>Paragraph 8</u>:  *All discovery, including discovery served on non-parties, must be served in time to permit completion of responses by the close of fact discovery.*

**Plaintiffs' Rationale:**

Litigants should have a fair opportunity to take discovery of an opposing party's witnesses before trial.  Defendants' proposal—which strips away the ability to depose someone on a party's final witness list even if that person has never been subject to discovery—would deprive Plaintiffs of that opportunity.  Defendants could add witnesses to their witness list after fact discovery has closed, with no further opportunity for Plaintiffs to take discovery of those last-minute witnesses.  Indeed, Defendants' proposal incentivizes Parties to withhold important witnesses from the initial witness list.  By contrast, Plaintiffs' proposed provision incentivizes Parties to give accurate and complete initial witness lists, thus ensuring that any supplemental discovery would be limited and obviating any burden concerns.

Theoretically, deposing persons identified in Defendants' Rule 26(a)(1) Initial Disclosures could solve this problem, but this theoretical solution is unworkable.  Under either side's proposal, each side will be subject to a cap of 35 depositions.  Thus, Plaintiffs would be left to decide which handful of individuals to depose out of the limitless number of employees and non-parties that Defendants could list on their Initial Disclosures.  If Defendants then seek to present witnesses who were not disclosed on the initial witness list and were not among those others that Plaintiffs selected, then Plaintiffs would, under Defendants' approach, simply be out of luck.  That outcome would contradict the very purpose of Rule 26, which is to prevent "trial by ambush."  *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003).

Litigation should not be a game of chance.  Rather, to avoid this predictable scenario, Plaintiffs have proposed language allowing for limited supplemental discovery of persons

9

identified on a party's final witness list who were not listed on that party's initial witness list. Any supplemental discovery would be short, tailored, and of minimal burden to Defendants: under Plaintiffs' proposal, supplemental discovery of Defendants' witnesses would be limited to a deposition (not document discovery) and—even then—only if that witness was both newly disclosed and not previously deposed. Supplemental discovery would still end more than two months before trial. By contrast, Defendants' proposal will inevitably result in having to burden the Court with last-minute requests for depositions on the eve of trial.

**Defendants' Rationale:**

Defendants disagree with Plaintiffs' insertion into the CMO of a provision allowing Plaintiffs the right to obtain "Supplemental Discovery" – for a one-month period after the close of fact discovery – solely because a person was not identified on Defendants' initial trial witness list but was identified on a final witness list exchanged right after the close of fact discovery. According to Plaintiffs' proposal, under the aforementioned circumstances Plaintiffs would automatically be entitled to post-fact discovery depositions of the Parties and non-Parties. Moreover, Plaintiffs proposal goes further and would permit Plaintiffs to seek expedited post-fact discovery documents from non-Parties, which is very broad and would impose unnecessary and significant burdens on any such non-Parties.

Such "Supplemental Discovery" is unnecessary and unduly burdensome because the Parties will be identifying in their Rule 26(a)(1) Initial Disclosures, to be exchanged by the Parties in the early stage of fact discovery, those individuals who have information that the Parties may use to support their claims or defenses. Other witnesses will be disclosed through discovery as is permitted by Rule 26(e)(1)(A). And, Plaintiffs further have already conducted a thorough and lengthy investigation concerning the very dispute at issue in this litigation, and

therefore have a significant advantage at this very early stage of the case concerning the scope of relevant potential witnesses that plaintiffs typically do not have. Accordingly, all Parties will have sufficient opportunity to determine where to focus their discovery efforts during the discovery period.

In the unlikely circumstance that there is a true surprise concerning a trial witness who Plaintiffs could not reasonably have known about, they can seek leave of this Court upon a showing of good cause to take a limited deposition following the close of fact discovery.  Such practice is standard and reasonable.  It is therefore unnecessary and would be unfair and burdensome to Defendants to include in the CMO Plaintiffs' proposal automatically allowing Plaintiffs such a presumptive and broad right to obtain "Supplemental Discovery."

### III.  ABILITY TO SUPPLEMENT INITIAL EXHIBIT LISTS

**Plaintiffs' Proposed Language:**

Schedule (emphasis added): *Parties exchange any further additions to exhibit lists,* ***which shall be limited to materials contained in any expert report and/or used as an exhibit(s) in any expert deposition***

**Defendants' Proposed Language:**

Schedule:  *Parties exchange any further additions to exhibit lists.*

**Plaintiffs' Rationale:**

Plaintiffs and Defendants have agreed to an orderly series of deadlines by which to exchange exhibit lists (July 27, 2022), allow Parties to object to the admissibility of exhibits and resolve any disputes as to such objections (August 10, 2022), and afford non-parties an opportunity to protect confidential information in those exhibits (August 17, 2022).  Where the Parties differ is that Plaintiffs propose that the Parties finalize their exhibit lists by identifying any necessary additions based on expert discovery.  Defendants, by contrast, propose to render meaningless the previous orderly process for objections and resolving disputes, by allowing for

11

unlimited additions to their exhibit list for any reason, even if those documents could have been identified previously.

The only justification for such a loophole is that Defendants want the ability to add cherry-picked documents about the ongoing implementation of the Northeast Alliance up to the date of trial. But such a right would severely prejudice Plaintiffs, who—with fact discovery closed—would have no ability to seek discovery to rebut such evidence. It is precisely this fairness concern that motivated Plaintiffs to seek the initial exchange of exhibits close to the end of fact discovery, to which Defendants agreed. Defendants' open-ended proposal for limitless supplementation of exhibits would invite abuse, render the earlier agreed-upon deadlines meaningless, and force the Court to deal with disputes on the eve of trial that could have easily been avoided or addressed sooner.

**Defendants' Rationale:**

Even though this Court's model Civil Pre-Trial Scheduling Order and the local rules do not provide for the exchange of initial exhibit lists, Defendants are agreeable to including such provision in the case schedule. The Parties agree that the exchange of such initial exhibit lists should occur on July 27, 2022, approximately seven weeks after the close of fact discovery (i.e., after fact depositions have been completed), and that the exchange of final exhibit lists should occur on August 25, 2022. Plaintiffs seek to limit any new exhibits added to the Parties' final exhibit list to materials contained in any expert report and/or used as exhibits in any expert deposition. Defendants disagree that there should be any such limitation and submit that they should be entitled to add exhibits, which Defendant anticipate would be limited in number. This always happens. It is not realistic to expect parties to identify all documents they are going to need four months in advance of trial. Something always needs to get added to these exhibit lists,

whether through inadvertence or unanticipated needs.  It is impractical and inappropriate to say it cannot happen in this case, no matter what.  The disclosure of any additional exhibits would occur more than one month in advance of trial so Plaintiffs cannot claim surprise or prejudice.  Defendants willingness to include in the CMO the exchange of initial exhibit lists two months in advance of trial should not be used by Plaintiffs against them to prejudice Defendants later ability to supplement their final exhibit list.

## IV. TRIAL WITNESS LISTS

### A. Whether to Include Provisions Relating to Trial Witness Lists

**Plaintiffs' Proposed Language:**

Paragraph 18:  *Plaintiffs collectively are limited to 25 persons (including experts) on their initial trial witness list, and Defendants collectively are limited to 25 persons (including experts) on their initial trial witness list.  Plaintiffs collectively are limited to 20 persons (including experts) on their final trial witness list, and Defendants collectively are limited to 20 persons (including experts) on their final trial witness list.  Each side's final trial witness list may identify no more than 4 witnesses that were not identified on that side's preliminary trial witness list.  If any new witnesses are added to a final trial witness list that were not on that side's preliminary trial witness list, discovery may be had with respect to such person(s), even if out of time, and the provisions of Paragraph 8 on Supplemental Discovery shall apply.  A deposition(s) by the other side of such witness(es) will not count against the other side's total depositions.*
   *No Party may call a person to testify as a live witness at trial unless (a) that person was identified on any Party's final trial witness list; (b) all Parties agree that that Party may call that person to testify; or (c) that Party demonstrates good cause for allowing it to call that person to testify, despite that Party's failure to identify that person sooner.  Witnesses whose testimony will be offered into evidence at trial through designated portions of their deposition testimony need not be identified on trial witness lists, and those witnesses do not count against the limits on the numbers of persons who may be identified on those lists.*

**Defendants' Proposed Language:**

Defendants propose no that there be no provision in the CMO regarding limitations or restrictions on trial witness lists.

**Plaintiffs' Rationale:**

Plaintiffs seek to include in the CMO basic provisions governing the exchange of initial and final witness lists, the number of witnesses to be included on those lists, and a limitation on

the number of new witnesses who can be added to a final witness list. These provisions are necessary to facilitate a fair discovery process.

These provisions are needed now, in the supplemental CMO, because they are intertwined with the Parties' planning for discovery, including other provisions in the initial CMO. For example, Plaintiffs' proposed cap of 35 depositions was based, in part, on knowing that there would be accompanying limitations on the number of witnesses at trial. Similarly, Plaintiffs have sought to ensure that fact discovery will be efficiently used to prepare for trial by limiting the number of witnesses that can be added to a witness list once fact discovery has closed.

Defendants, however, outright reject the inclusion of these common-sense measures in the CMO. In doing so, Defendants continue a pattern of seeking to limit Plaintiffs' ability to take discovery, while keeping Plaintiffs in the dark about what Defendants might present at trial. For example, Defendants' proposed approach to this order would limit the number of depositions Plaintiffs can take of Defendants' witnesses during fact discovery, but deny Plaintiffs any sense of how many witnesses might actually appear at trial. Not only that, but Defendants reserve for themselves an unlimited ability to add witnesses to the witness list *after* fact discovery closes, while outright denying Plaintiffs any discovery of those new additions. That approach would not only significantly prejudice Plaintiffs' ability to prepare for and present their case at trial, but would also make discovery significantly less efficient, and likely burden the Court with inevitable disputes on the eve of trial. Accordingly, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed provisions.

**Defendants' Rationale:**

Plaintiffs' insistence that limitations on trial witness lists must be included in the CMO is

misplaced and premature. This case is at the beginning of the discovery process and Defendants are in no position at this time to negotiate or finalize any agreements with Plaintiffs regarding the limitations on the number of individuals who may be included on initial or final trial lists, or any other limitations concerning trial witnesses. Defendants have advised Plaintiffs they are willing to address this issue later when Defendants are in a position to address what would be an appropriate rule.

This Court's model Civil Pre-Trial Scheduling Order does not contain any provision governing trial witness lists. And for good reason. That is not what a CMO is for. While the Parties will seek to reach agreement on these issues at a later stage in the case, it is premature and unnecessary to do so as part of the CMO process.

### B.     The Date When the Parties Would Exchange Initial Trial Witness Lists

**Plaintiffs' Proposed Language:**

<u>Schedule</u>: *Parties exchange initial trial witness lists — May 2, 2022*

**Defendants' Proposed Language:**

<u>Schedule</u>: *Parties exchange initial trial witness lists — May 16, 2022*

**Plaintiffs' Rationale:**

Defendants' proposal to exchange witness lists on May 16, 2022 is untenable. Defendants seek to exchange witness lists only three weeks prior to the close of fact discovery while also denying Plaintiffs' ability to take discovery of any witnesses on the witness list after fact discovery—even if Plaintiffs become aware of the witnesses only when witness lists are exchanged. Such a combination would unfairly prejudice Plaintiffs' ability to take discovery they are entitled to under the Federal Rules.

As an example, if a third party appears on Defendants' witness list, Plaintiffs must be able to serve document and deposition subpoenas on those non-parties with sufficient time for the non-parties to respond before the close of fact discovery. Defendants' proposal would foreclose Plaintiffs from doing so. Nor would Rule 26(a)(1) Initial Disclosures protect Plaintiffs from "trial by ambush." *See Macaulay*, 321 F.3d at 50. Defendants have no limits on the number of individuals they can identify on Initial Disclosures; Plaintiffs, meanwhile, are capped at only 35 depositions.

**Defendants' Rationale:**

Once again Plaintiffs are complicating a CMO with issues appropriately addressed much later in this case. This Court's model Civil Pre-Trial Scheduling Order does not contain any provision for the exchange of initial trial witness lists. Defendants would prefer to defer this issue to a later time. Nevertheless, Defendants are agreeable to Plaintiffs' request to include such a provision in this case schedule provided that any exchange of initial trial witness lists takes place no fewer than three weeks before the close of fact discovery (May 16, 2022). Defendants cannot commit at this time, before any discovery, to a date five weeks before the close of fact discovery (May 2, 2022) as Plaintiffs have proposed. Defendants' ability to frame a witness list is highly dependent on the progress of third-party discovery, which tends to get compressed toward the end of the discovery period. Plaintiffs' proposal would therefore likely require the Parties to make determinations regarding trial witnesses during a time when a substantial portion of fact discovery remains.

## CONCLUSION

Plaintiffs and Defendants (i) respectfully request that the Court enter the proposed attached Initial Scheduling and Case Management Order reflecting the Parties' agreements and (ii) respectfully request that the Court address the Parties' remaining areas of disagreement, for

which the Parties agree that a hearing is necessary to resolve.

Dated: November 19, 2021         Respectfully submitted,

                                        /s/ William H. Jones II
William H. Jones II
Grant A. Bermann
James H. Congdon
Sarah P. McDonough
Kate M. Riggs
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 7000
Washington, DC 20530
Phone: 202-514-0230
Facsimile: 202-307-5802
E-mail: bill.jones2@usdoj.gov

*Attorneys for Plaintiff United States of America*

                                        /s/ Colin G. Fraser
Colin G. Fraser (FL Bar No. 104741)
Office of the Attorney General, State of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3300
E-mail: Colin.Fraser@myfloridalegal.com

                                        /s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 727-2200
E-mail: William.Matlack@mass.gov

*Attorneys for the State of Florida, the Commonwealth of Massachusetts, and on behalf of the Plaintiff States*

/s/ Daniel M. Wall
Daniel M. Wall (*pro hac vice*)
Elizabeth C. Gettinger (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com

Ian R. Conner (*pro hac vice*)
Michael G. Egge (*pro hac vice*)
Farrell J. Malone (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
Marguerite M. Sullivan (*pro hac vice*)
Tara L. Tavernia (*pro hac vice*)
Seung Wan Paik (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
tara.tavernia@lw.com
andrew.paik@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant*
*American Airlines Group Inc.*


/s/ Richard Schwed
Richard Schwed (*admitted pro hac vice*)

        Matthew L. Craner (*admitted pro hac vice*)
        Jessica K. Delbaum (*admitted pro hac vice*)
        Shearman & Sterling LLP
        599 Lexington Avenue
        New York, NY 10022
        Telephone: (212) 848-5445
        rschwed@shearman.com
        matthew.craner@shearman.com
        jessica.delbaum@shearman.com

        Brian Hauser (*admitted pro hac vice*)
        Shearman & Sterling LLP
        401 9th Street, NW
        Washington, DC 20004
        Telephone: (202) 508-8005
        brian.hauser@shearman.com|


        /s/ Glenn A. MacKinlay
        Glenn A. MacKinlay, BBO #561708
        McCarter & English, LLP
        265 Franklin Street
        Boston, MA 02110
        Telephone: (617) 449-6548
        gmackinlay@mccarter.com

        *Attorneys for Defendant*
        *JetBlue Airways Corporation*

## CERTIFICATE OF SERVICE

I certify that on November 19, 2021, I filed the foregoing document with the United States District Court for the District of Massachusetts using the CM/ECF system, and caused it to be served on all registered participants via the notice of electronic filing ("NEF").

                                              */s/ William H. Jones II*
                                          William H. Jones II
                                          U.S. Department of Justice, Antitrust Division
                                          450 Fifth Street, NW, Suite 7000
                                          Washington, DC 20530
                                          Phone: 202-514-0230
                                          Facsimile: 202-307-5802
                                          E-mail: bill.jones2@usdoj.gov

                                          *Attorney for Plaintiff United States of America*