# EXHIBIT G

Order 2019-11-14
Served November 21, 2019



UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.

Issued by the Department of Transportation
on the 21st day of November, 2019

| | |
|---|---|
| **Joint Application of**<br><br>VIRGIN ATLANTIC AIRWAYS, LTD.<br>DELTA AIR LINES, INC.<br>SOCIÉTÉ AIR FRANCE<br>KONINKLIJKE LUCHTVAART<br>MAATSCHAPPIJ N.V.<br>ALITALIA COMPAGNIA AEREA<br>ITALIANA S.P.A.<br><br>**for Approval of and Antitrust Immunity for Alliance Agreements under 49 U.S.C. §§ 41308 and 41309** | Docket DOT-OST-2013-0068 |

**FINAL ORDER**

**I. SUMMARY**

By this Order, the U.S. Department of Transportation (the Department or DOT) makes final the tentative decision it announced in Order 2019-8-2 (August 2, 2019, the Show Cause Order). With minor modifications to the findings and conclusions, the Department is, therefore, approving, and granting global antitrust immunity (ATI) to, alliance agreements submitted by Delta Air Lines, Inc. (Delta), Société Air France (Air France), Koninklijke Luchtvaart Maatschappij N.V. (KLM), and Virgin Atlantic Airways, Ltd. (Virgin) (collectively, the Joint Applicants).[1]

The approved alliance will remove the existing gaps preventing full coordination between Delta's two existing immunized parallel joint ventures with Virgin on the one hand, and Air France/KLM on the other. As part of this decision, we are also revoking our previous, now obsolete, grants of ATI among the Joint Applicants as well as CSA Czech Airlines (Czech) and Alitalia Compagnia Aerea Italiana S.P.A. (Alitalia) after six (6) months.

---

[1] The agreement is the "Amended and Restated Transatlantic Joint Venture Agreement" (hereinafter, the Amended JVA).

**II. BACKGROUND**

In 2008, the Department approved, and granted ATI to, a joint venture among Delta, Air France, KLM, Northwest Airlines Corp. (Northwest), Czech, and Alitalia (the "SkyTeam" joint venture).[2] Separately, in 2013, the Department approved, and granted ATI to, an alliance between Delta and Virgin (the Delta-Virgin joint venture), covering air transportation between the United States and the United Kingdom (UK).[3] At that time, the Department found that "relatively few passengers fly between the U.S. and London via continental European hubs" and that, "[b]ecause North America-United Kingdom flying will be carved-out of the existing SkyTeam Joint Venture," the operation of the two parallel joint ventures did not present competitive concerns or dilute claimed public benefits.[4] The Department also noted at the time that it was likely the two joint ventures would eventually seek to merge.[5]

Included in the review of the 2013 Delta-Virgin joint venture was approval of a five-way cooperation agreement (the Cooperation Agreement) among Delta, Virgin, Air France, KLM, and Alitalia. The Cooperation Agreement permits global cooperation among the five parties, including joint or coordinated sales and marketing initiatives and activities; joint contracting with corporate and agency accounts; joint purchasing opportunities, including ground-handling services, distribution arrangements and other third-party transactions; and joint advertising and promotion programs. The Cooperation Agreement permits even deeper alignment with respect to U.S.-UK routings, where it permits coordination of pricing (including surcharges and ancillary products and services), inventory management, network and capacity decisions, and cargo services on routings between points in the UK and points in North America.

In this proceeding, Delta, Air France, KLM, and Virgin have sought to expand the Cooperation Agreement and implement a new, single joint venture agreement that will govern their commercial relationship going forward. On July 20, 2018, Delta, Air France, KLM, and Virgin submitted a motion to amend Order 2013-9-14 by replacing the agreements immunized by that order with a new joint venture agreement covering these carriers globally. The Joint Applicants seek to remove the remaining seams from the two parallel joint ventures by merging the two existing immunized joint venture agreements and the Cooperation Agreement into a single agreement, as well as updating and revising the underlying cooperation terms and formulae. Coincident with the transaction, the Air France-KLM Group agreed to purchase a 31 percent equity stake in Virgin Atlantic.

On July 23, 2018, we issued a notice suspending the procedural schedule in the case and, on August 7, 2018, we issued a notice providing access to confidential supporting documents.[6] On

---

[2] Order 2008-5-23, May 22, 2008. Air France and KLM merged in 2004 to form the Air France-KLM Group. Likewise, Northwest and Delta merged in 2008.
[3] Order 2013-9-14, Sep. 23, 2013.
[4] Order 2013-8-21 at 14.
[5] *Id.*
[6] DOT-OST-2013-0068-0034 and DOT-OST-2013-0068-0036.

November 27, 2018, JetBlue Airways Corporation (JetBlue) filed a motion requesting that the Department require the filing of additional information concerning slot holdings by the Joint Applicants, past slot remedies, and slot allocation procedures at certain European airports. On December 28, 2018, the Joint Applicants supplemented the record with information on slot holdings at London-Heathrow (LHR), London-Gatwick (LGW), Paris-Charles de Gaulle (CDG), and Amsterdam-Schiphol (AMS).[7] On January 23, 2019, we issued Order 2019-1-3 denying JetBlue's motion and declaring the record substantially complete and establishing a procedural schedule, including a public comment period. Answers to the Joint Applicant's motion were due no later than February 6, 2019, and replies to answers were due no later than February 15, 2019. Multiple surreplies were filed, the last of which was received on April 2, 2019.

On August 2, 2019, we issued Order 2019-8-2 (the Show Cause Order) tentatively approving and granting ATI to the agreements submitted by the Joint Applicants. The Show Cause Order also tentatively proposed to revoke our previous, now obsolete, grants of ATI among the Joint Applicants as well as Czech and Alitalia after six (6) months. That order directed interested parties to show cause why we should not finalize those tentative findings and directed interested parties to file comments or objections no later than August 16, 2018, and replies no later than August 27, 2019.

### III. RESPONSIVE PLEADINGS

The Department received responsive pleadings from the Joint Applicants, Kalitta Air, LLC (Kalitta), JetBlue, the American Antitrust Institute (AAI), the Delta Master Executive Council of the Air Line Pilots Association-International (Delta MEC), and Travel Fairness Now (TFN).[8] The pleadings as well as the complete public record of the case can be found at www.regulations.gov by searching for docket DOT-OST-2013-0068. We will address the issues and arguments raised in the pleadings below.

#### a. JOINT APPLICANTS[9]

The Joint Applicants filed comments and a reply. In their comments, the Joint Applicants applaud the Department for its tentative approval of the Amended JVA, but request that the Department amend Ordering Paragraph 3 of the Show Cause Order to avoid any potential adverse impact on the authorities that Delta and Korean Air rely on for their joint venture.[10]

We find that the Joint Applicants are correct that the Department did not intend Ordering Paragraph 3 to affect the Delta-Korean joint venture approved in 2017 and no commenters

---

[7] "Joint Response to Unauthorized Sur-Reply of JetBlue and Supplemental Production of Airport Slot Information," Dec. 28, 2018, DOT-OST-2013-0068-0054.
[8] The Department also received a comment from Angela Min, a private citizen. The comment was not properly served on all interested parties in accordance with the Department's procedural regulations (14 C.F.R. Part 302) and therefore will not be considered as part of the record for decision in this proceeding.
[9] "Comments of the Joint Applications on Show Cause Order 2019-8-2," Aug. 16, 2019, DOT-OST-2013-0068-0076, and "Consolidated Reply of the Joint Applicants," Aug. 28, 2019, DOT-OST-2013-0068-0083.
[10] The Joint Applicants' other arguments and rebuttals will be discussed in the following sections.

objected to this request for clarification.[11]  Therefore, the Department will, for the avoidance of doubt, amend the ordering paragraph as requested as it relates to the Delta-Korean joint venture.

### b. KALITTA[12]

Kalitta, a U.S.-based all-cargo carrier, filed comments arguing that a grant of ATI to the Joint Applicants in this matter would "solidify the domination of the Sky Team members over one of the most important, but most restricted, European air transport hubs [AMS]." Kalitta states that its New York (JFK)-AMS service is in immediate jeopardy of being terminated as the Dutch slot coordinator (Airport Coordination Netherlands, ACNL) determined that, in 2017, Kalitta's slots no longer qualified for historic rights as the carrier failed to meet the minimum "use-or-lose" threshold of the applicable slot rule.[13]  Kalitta claims that it always operated the flights for which it held slots, but that these flights often operated at different times because Kalitta operates many of its flights on behalf of the U.S. Department of Defense, which dictates the timing of the flights.  Kalitta states that it may be forced to cease its AMS service as a result.  Kalitta argues that the Department should implement a slot remedy, providing access to carriers that demonstrate they have not been able to obtain slots otherwise (such as Kalitta).

We note that, while Kalitta argues that it is being prevented from obtaining slots at AMS because of SkyTeam's dominance there, it has had slots at AMS for at least 14 years.[14]  As Kalitta states in its comments, its slots have been revoked by the Dutch slot coordinator because Kalitta's flights have been, by its own admission, "often substantially delayed (or sometimes moved ahead in time)."[15]  While Kalitta claims these operational issues are outside of its control, the fact remains that it has not complied with the established slot rules in place at AMS and has presented no evidence that it is being unjustly or unreasonably discriminated against.[16]  If Kalitta feels that it has been unjustly or unreasonably discriminated against at AMS, it has other, more appropriate forms of recourse, including filing another IATFCPA complaint.[17]  Kalitta has failed to demonstrate how a slot remedy in this proceeding would resolve its operational issues that are the root-cause of its access issues, or how approval of the Amended JVA will cause it any particular harm that should be addressed through a slot remedy.

---

[11] "Approval of Joint Venture Arrangement between Delta Air Lines, Inc. and Korean Air Lines Co., Ltd.," Nov. 20, 2017, DOT-OST-2002-11842-0021.
[12] "Comments of Kalitta Air, LLC," Aug. 16, 2019, DOT-OST-2013-0068-0075.
[13] *Id.* at 2-3.
[14] *Id.*
[15] *Id.*
[16] EC Regulation 95/93, Article 14.4 states, "Air carriers that repeatedly and intentionally operate air services at a time significantly different from the allocated slot as part of a series of slots or uses slots in a significantly different way from that indicated at the time of allocation and thereby cause prejudice to airport or air traffic operations shall lose their status…"
[17] On January 29, 2019, Kalitta filed a complaint under the International Air Transportation Fair Competitive Practices Act (49 U.S.C. § 41310) (IATFCPA).  On May 1, 2019, the Department issued Order 2019-5-2, dismissing the complaint, without prejudice, and terminating the proceeding.  At that time, ACNL was implementing a "local rule" that Kalitta believed would address its problems.

### c. JETBLUE[18]

JetBlue filed comments and an answer. In its comments, JetBlue argues that the Department should have conducted a *de novo* review of the application. JetBlue states that, under such a standard, the Department would not have applied a "presumption" in favor of granting the Joint Applicants' motion. JetBlue also argues that the public benefits identified by the Department are insufficient to warrant a grant of ATI.

The Department fully addressed the standard of review in the Show Cause Order. There we stated that "the issue we face is how to provide adequate review of the Amended JVA to ensure that the arrangement will not reduce or eliminate competition and will provide sufficient public benefits to warrant a grant of ATI."[19] JetBlue's assertion that the Department applied a presumption in favor of approval is incorrect. The Department did not *presume* the public benefits generated by those alliances. Rather, as we explained in the Show Cause Order, "We…look for evidence that those benefits are occurring."[20] This proceeding did not require the Department to engage in a predictive analysis to determine the likelihood of proposed future benefits resulting from a new alliance. Rather, the request before us was to approve, and grant ATI to, updated alliance agreements covering previously immunized alliances. As such, the Department's analysis sought to confirm the *actual* benefits that have flowed from those preexisting alliances, ensuring that those benefits would continue under the Amended JVA, and examining any new competitive issues that may result. The presence of those benefits is uncontested by JetBlue or others, and the Department has added new conditions, namely the self-assessment provision, in response to identified competitive concerns. JetBlue seems to argue that, because the Department cited the Joint Applicants' motion as evidence of these benefits, we were deferential in our analysis. The information cited by the Department is verifiable through widely-available industry data sources and, in some cases, public information. Finally, JetBlue does not present any evidence to dispute that the cited benefits have occurred and are occurring.

JetBlue also argues that, because the Brueckner-Singer study found that gateway-to-gateway passengers experience fare increases as a result of immunized alliances, passengers in those markets would be better off if ATI were revoked. The Brueckner-Singer study is an independent work that the Department commissioned to contribute to the understanding of airline competition and not to drive outcomes in any particular market. Even if the Department were to adopt JetBlue's interpretation of the study's results, we note that JetBlue misapplies those results to this case. The study found that "cooperation in fare setting on gateway-to-gateway routes where alliance partners overlap leads to higher economy fares, with a grant of ATI or [joint venture]

---

[18] "Comments of JetBlue Airways Corporation on Order to Show Cause 2019-8-2," Aug. 19, 2019, DOT-OST-2013-0068-0078, and "Answer of JetBlue Airways Corporation," Aug. 28, 2019, DOT-OST-2013-0068-0082.
[19] Order 2019-8-2 at 3.
[20] *Id.* at 10.

5

status to previously nonaligned carriers equivalent to removing a competitor from the route."[21] In the case before us, neither Virgin, Air France, or KLM operate overlapping gateway-to-gateway routes. Neither Air France nor KLM operate transatlantic services from the UK, and Virgin does not operate transatlantic services from continental Europe. Further, Brueckner-Singer found that, in fact, removing joint ventures in two representative gateway-to-gateway markets would harm overall consumer welfare: "the upside of alliances dominates the downside, with removal of [joint ventures] on two representative [gateway-to-gateway] routes leading to decreases in consumer welfare for economy passengers. The calculations show that the harm to [joint venture] connecting passengers, who lose from higher fares when the [joint venture] is removed, more than offset the gains to [gateway-to-gateway] passengers[.]"[22]

JetBlue also reiterates its arguments that slot controls at LHR and AMS prevent access and restrict competition, creating an oligopoly on transatlantic routes among the three major alliances. JetBlue questions why the Department did not impose a slot remedy in this case as it did in the Delta-Aeromexico proceeding.[23]

We have recognized JetBlue's concerns and established a self-assessment process to monitor developments both generally, and specifically with regard to AMS (see Ordering Paragraphs 1.b. and 3.). As we stated in the Show Cause Order, the concentration resulting from the Amended JVA, including Virgin's acquisition of Flybe, does not pose competitive concerns at LHR.[24] The SkyTeam alliance would still be a distant third-place competitor to the Oneworld and Star alliances at LHR. Likewise, the European Union's Directorate General for Competition (DG COMP) examined the acquisition of Flybe by a consortium of which Virgin is a member and did not find that the resulting concentration would result in competition concerns.[25, 26]

In the Delta-Aeromexico proceeding cited by JetBlue, the Department found, in conjunction with the foreign competition regulator (Comisión Federal de Competencia Económica, COFECE),

---

[21] Brueckner, Jan K. and Singer, Ethan, Pricing by International Airline Alliances: A Retrospective Study Using Supplementary Foreign-Carrier Fare Data (2019). CESifo Working Paper No. 7649. Available at SSRN: https://ssrn.com/abstract=3422230, at 38.
[22] *Id.*
[23] *See* DOT-OST-2015-0070.
[24] Order 2019-8-2 at 7.
[25] "The Commission also investigated the effects of the transaction on several other markets, such as passenger air transport to/from Amsterdam Schiphol airport, cargo air transport services, ground-handling services or airport infrastructure services but did not find competition concerns in any of these." "Commission approves the acquisition of Flybe by Connect Airways, subject to conditions," Jul. 4, 2019, https://ec.europa.eu/commission/presscorner/detail/en/ip_19_3790.
[26] DG COMP did find competition issues related to two intra-Europe routes (Amsterdam-Birmingham and Paris-Birmingham) on which the parties would have a quasi-monopoly post-transaction. To resolve these concerns, the parties have agreed to release slots for use by competitors on those routes, among other commitments. After three years of proper use, the slots become eligible for use on any route. *See* Order 2019-8-2 at 7-8 and 13. The commitments can be found at:
https://ec.europa.eu/competition/elojade/isef/case_details.cfm?proc_code=2_M_9287.

that there was a competition concern based on concentration.[27] In that case, COFECE required the divestiture of eight slot pairs at Mexico City. Here, the foreign competition authority (DG COMP) did not find a concentration problem and, based on the record in this proceeding, we agree.[28] In the Delta-Aeromexico proceeding, the Department required additional slot divestitures beyond COFECE's due to the anticompetitive and opaque slot regime then in-place at Mexico City: "[A]t the time COFECE issued its decision, its investigative arm had not yet published the findings of its investigation into the slot administration regime at MEX. As such, COFECE imposed a traditional antitrust remedy by requiring only the divestiture of the incremental gain in slots due to the transaction."[29] The Department found that, "[u]nlike other slot-constrained airports, MEX does not follow the International Air Transport Association Worldwide Slot Guidelines (IATA WSG) or have functionally equivalent transparent rules for slot allocation and administration."[30] The Department does not have similar concerns regarding AMS. ACNL follows the European Union's slot regulation, which closely mirrors the IATA WSG, and provides transparent access to slot allocations and monitoring data.

JetBlue argues that the self-assessment provision proposed by the Department does not provide sufficient transparency and public accountability for the Department's oversight of its ATI grants. We disagree. The Department cannot conduct meaningful oversight and monitoring of the alliances without the cooperation of those alliances in providing commercially-sensitive information. A public review process would reduce carriers' willingness to provide detailed, confidential information to the Department. In this scenario, the process proposed by JetBlue would likely have the perverse effect of reducing the oversight that JetBlue seeks. Furthermore, consistent with standard antitrust practice, the Department does not want the review process to facilitate the exchange of sensitive business plans that could reduce competition.[31] The Department encourages all applicants to publicly release information they feel will demonstrate the benefits of the alliance. Moreover, we require that a significant amount of public information be included in applications and motions on the record, to facilitate transparency and public comment. JetBlue and other interested parties are encouraged to submit comments, studies, or any other relevant information either directly to the Department, in the docket, or both. Furthermore, the Department is not bound by the five-year term of the self-assessment to address any competition issues that may arise. We also require annual reports (Ordering Paragraph 3) and, as stated in Ordering Paragraph 8 below, the Department retains the right to amend, modify, or revoke the authority granted herein at any time.

---

[27] See "Joint Applicants' Response to Order Requesting Additional Information – COFECE Plenary Translation," Jun. 1, 2016, DOT-OST-2015-0070-0037.
[28] Supra note 25.
[29] Order 2016-11-2 at 26.
[30] Id. at 16.
[31] The Department has previously noted similar concerns in response to findings in a recent Government Accountability Office report. See "International Air Alliances: Greater Transparency Needed on DOT's Efforts to Monitor the Effects of Antitrust Immunity," United States Government Accountability Office, Mar. 2019, https://www.gao.gov/assets/700/697690.pdf at 35.

Finally, in its answer, JetBlue argues that the Department should not accommodate the Joint Applicants' request to provide a procedural path for Alitalia to continue its ATI grant pending the carrier's addition to the Amended JVA at a later date. In their comments, the Joint Applicants requested that the Department amend Ordering Paragraph 3 to allow the current ATI-enabled cooperation between the Joint Applicants and Alitalia to continue without interruption while the Department reviews a motion for approval of a revised commercial agreement that would govern cooperation in the future. The Joint Applicants argue that even a temporary interruption of ATI-enabled cooperation with Alitalia would result in diminished public benefits. JetBlue argues that such a request is legally impermissible and procedurally invalid.

We agree with JetBlue. The Department's intent is to remove obsolete and/or unused grants of immunity. As the Joint Applicants note in their comments, since at least 2002, the Department has issued orders granting ATI to various combinations of Delta, Northwest, Air France, KLM, and other partners. These grants have sometimes been modified by subsequent orders and some of the authority granted has gone unused. The Department seeks to clarify this situation so that, going forward, all authority required by the Joint Applicants to operate their transatlantic joint venture will be contained in this Order and any unused or obsolete grants of ATI will cease.

Once the Amended JVA becomes effective, the preceding agreements that outlined Alitalia's cooperation with the other parties will cease to exist, removing the underlying predicate for immunity. The Department is aware that Delta is seeking to reach commercial terms with Alitalia to continue cooperation under the Amended JVA; however, the Joint Applicants' request to include Alitalia in its revised joint venture is premature. The Department does not have a basis to guarantee a continuing grant of immunity upon the filing of a hypothetical future agreement. If the Joint Applicants and Alitalia come to a commercial agreement before the six-month wind down period expires, they may petition the Department to extend the immunity at that time and the Department will evaluate the request in the docket with all due process.

  d.   AMERICAN ANTITRUST INSTITUTE[32]

AAI argues that it raised issues that were not presented by JetBlue or others and that the Show Cause Order was not responsive to AAI's comments. The Department disagrees. For example, AAI argues that the new agreement is more than just the sum of its two preceding agreements and approval of the Amended JVA would allow the Joint Applicants to "coordinate in more and different ways[.]"[33] As the Department explained in the Show Cause Order, all transatlantic cooperation between Delta and Air France/KLM on the one hand, and Virgin on the other, is already immunized under their existing authorities. Included in the Department's approval of the

---

[32] "American Antitrust Institute Comments in Response to Show Cause Order," Aug. 19, 2019, DOT-OST-2013-0068-79.
[33] *Id.* at 5.

Delta-Virgin joint venture was a five-way cooperation agreement that permits global cooperation in many areas.[34]

AAI also argues that the Department's approach in assessing competitive effects on nonstop routes, while assessing public benefits on all routes is asymmetric.  The Department takes a holistic view of public benefits, crediting certain "out-of-market" efficiencies in determining whether the public at-large will derive benefits from immunized alliances.  While a grant of ATI may effectively increase concentration on a nonstop route, the ensuing cooperation across a number of markets allows for more interline itineraries at lower fares, which result in overall net consumer benefits.[35]

AAI further argues that the Department has given greater weight to the proposed public benefits than the risk of adverse competitive effects.  We disagree.  The Department conducted a thorough competitive analysis and found that, on the whole, approval of, and immunity for, the Amended JVA is unlikely to result in competitive harm and weighed this against the substantial public benefits that have been derived from the pre-existing SkyTeam and Delta-Virgin alliances that the Department found are likely to continue and incrementally increase.[36]

Finally, AAI argues that the Department focuses only on market dominance and not on market concentration, as measured by the Herfindahl-Hirschman Index (HHI).  "The proposed grant of immunity in the Show Cause Order is based on a competitive analysis that focuses exclusively on unilateral effects… highly concentrated alliance markets raise the specter of alliances coordinating on fares and other competitive variables in those markets."[37]  In conducting its network competitive analysis, the Department examines both market shares and the number of competitors in the market pre- and post-transaction, the inputs to the HHI.[38]  However, many of the public benefits that flow from immunized joint ventures are a direct result of the joined networks' breadth, and are not captured in an HHI analysis.  AAI is correct that the Department's competitive analysis focuses on unilateral effects (*i.e.,* those that may be expected to result from granting immunity to the alliance whose application is at issue in the docket).  This is the appropriate analytical framework, since the Department is only granting immunity to that alliance.  AAI seems to argue that the major alliances in the transatlantic market (SkyTeam, Star, and Oneworld) may be coordinating among each other in an anticompetitive manner, or could do

---

[34] Order 2019-8-2 at 2.
[35] "Consistent with economic theory and the experience of other alliances, the proposed alliance is likely to significantly reduce fares on "interline" routes in which only one partner operates one segment and only another partner operates another segment." Order 2010-2-8 at 31.  "This proposed expansion will increase international service options, particularly for traffic to or from cities beyond and behind major gateways. The alliance will enable the partners, for example, to provide on-line service between points behind their gateways in the United States and points beyond Warsaw, Lisbon, and Zurich, among other cities." Order 2006-12-17 at 17-18.
[36] Order 2019-8-2 at 4-12.
[37] "American Antitrust Institute Comments in Response to Show Cause Order," Aug. 19, 2019, DOT-OST-2013-0068-79 at 5.
[38] As all of the transatlantic cooperation contemplated under the Amended JVA is already immunized under pre-existing authorities, there is no change to either of these figures as a result of our approval of the Amended JVA.

9

so after our approval of this motion. However, the Department has not granted *inter*-alliance antitrust immunity. AAI has presented no evidence that illicit coordination is occurring, and if it were to occur, those actions by the carriers would be subject to enforcement under the antitrust laws.

    e. **DELTA MASTER EXECUTIVE COUNCIL – AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**[39]

The Delta MEC filed comments arguing that the Department should impose additional conditions on its approval of the Amended JVA. Specifically, the Delta MEC argues that, while it supported the Delta-Virgin joint venture in 2013, the benefits promised to Delta pilots and flight crews have not materialized. The Delta MEC states that Virgin's joint venture service offerings have increased in lieu of, and sometimes at the expense of, Delta's U.S.-UK operations and that Delta's JFK-LHR operations have decreased. In sum, the Delta MEC argues that, "in allocating joint venture capacity growth almost exclusively to Virgin, Delta has utilized the alliance mechanism to functionally reduce labor costs and circumvent the higher negotiated labor standards to which it agreed in its pilot collective bargaining agreement."[40] In their reply, the Joint Applicants dispute these factual assertions.[41] The Joint Applicants state that Delta has expanded its U.S.-UK operations by commencing service on five new U.S.-UK routes since 2014, with another two expected in 2020. They further state that the joint venture seeks to allocate each partner's flying to where it is best suited, for example, by replacing a Virgin-operated ATL-LHR flight with Delta metal to reflect Delta's relative strength in its home market. The Joint Applicants also state that Delta will be retaking a JFK-LHR frequency from Virgin in 2020.

The Delta MEC requests that the Department expand the scope of its proposed five-year review to include the Amended JVA's impact on U.S. aviation jobs and the balance of flying and growth opportunities generated in joint venture markets. Further, it requests that the Department implement an interim review of the Amended JVA on December 31, 2019.

The Department recognizes that one of the advantages of a metal-neutral joint venture is the ability to deploy the partners' assets where they are best suited, benefiting the joint venture's common bottom line. It is beyond the scope of this proceeding to adjudicate labor arrangements reached between Delta and its flight crews. However, the request that the Joint Applicants address the Amended JVA's impact on U.S. aviation jobs is not unreasonable. We therefore direct the Joint Applicants to discuss this subject in their self-assessment. We will not, however, direct the Joint Applicants to file an interim review on December 31, 2019. This date is less than three months from now. The Department believes that five years is an appropriate timeframe to assess what effects have occurred in the relevant markets as a result of the Amended JVA. As

---

[39] "Comment of the Delta Master Executive Council of the Air Line Pilots Association, International," Aug. 16, 2019, DOT-OST-2013-0068-0077.
[40] *Id.* at 8.
[41] "Consolidated Reply of the Joint Applicants," Aug. 28, 2019, DOT-OST-2013-0068-0083.

we noted in response to JetBlue above, the Delta-MEC is welcome to submit comments to the Department, docket, or both, regarding this topic.

### f. TRAVEL FAIRNESS NOW[42]

TFN filed objections to the Show Cause Order. TFN argues that the Department should reconsider its tentative determination not to impose conditions on distribution practices that, TFN argues, harm consumers. TFN argues that Delta, in violation of 49 U.S.C. § 41712, imposes restrictions on Global Distribution Systems (GDSs) and Online Travel Agencies (OTAs) that prevent their dissemination of the carrier's fare and schedule information to third-party metasearch or other online travel websites. It goes on to argue that the Department should impose a carve-out that would preserve the "public's access to fare, schedule and availability information through third-party travel entities (along with the associated fare rules and restrictions and any mandatory or relevant fee information)."[43] TFN argues that these practices result in consumer harm as they restrict consumers' ability to easily and quickly compare airlines, fares, and schedules.

The crux of TFN's argument is that Delta's conduct with third-party distributors violates competition standards under 49 U.S.C. § 41712, and thus the Department should not grant immunity under 49 U.S.C. § 41308 to Delta that would cover its distribution activities with its foreign partners. TFN emphasizes that Delta's conduct is anticompetitive because it prevents consumers from seeing all of their travel options. These arguments are not persuasive in the context of an antitrust immunity proceeding in which little, if any, evidence has been produced showing consumer harm from distribution practices. Furthermore, the Department has not found in any proceeding that Delta's alleged restrictions on OTAs or metasearch sites violates 49 U.S.C. § 41712. Therefore, there is no foundation in this proceeding to apply the condition that TFN seeks. Additionally, TFN's premise that Delta prohibits consumers from seeing all of their travel options is not supported by the evidence. If Delta itself does not wish to participate in the OTA/metasearch marketplace, that is its own commercial decision. Delta's fare, schedule, and other information is still available on its own website; therefore, consumers are not "prohibited" from seeing all of their travel options. TFN has not established that any harm to consumers resulting from the conduct TFN alleges outweighs the consumer benefits identified by the Department that result from the Amended JVA. As we explained in the Show Cause Order, coordinating sales and distribution practices is necessary to achieve metal neutrality, which is the foundation of the alliance's ability to generate public benefits.[44]

---

[42] "Travel Fairness Now Objections to Order 2019-8-2 - Order to Show Cause," Aug. 19, 2018, DOT-OST-2013-0068-0080.
[43] Id. at 4.
[44] Order 2019-8-2 at 9.

**ACCORDINGLY:**

1. Subject to the ordering paragraphs below, we approve and grant antitrust immunity to the Amended and Restated Transatlantic Joint Venture Agreement among Delta Air Lines, Inc., Société Air France, Koninklijke Luchtvaart Maatschappij N.V., Virgin Atlantic Airways, Ltd., and the majority owned corporate affiliates of the aforementioned carriers. The approval and grant of antitrust immunity is limited as follows:

   a. The approval and grant of immunity will expire within six (6) months of the date of this Final Order unless the Joint Applicants have, prior to that six-month expiration date, submitted in the docket verified statements by officers of Delta Air Lines, Inc., Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Virgin Atlantic Airways, Ltd., attesting that the Amended JVA has been implemented, that the relevant parties have complied with the commitments agreed to with the Directorate General for Competition of the European Commission in case number M.9287, and unless the Joint Applicants have submitted to the Director of the Office of Aviation Analysis a complete and unredacted copy of the most recent agreement(s) and any appendices;

   b. Four years and six months after the date of this Final Order, the Joint Applicants are directed to submit a detailed Self-Assessment to the Director of the Office of Aviation Analysis, consistent with the guidance provided in this Order and Order 2019-8-2, including specifically the areas described in Section VIII.b. of Order 2019-8-2;

2. We determine that on a date six (6) months after the date of this Final Order, our prior grants of antitrust immunity made among any combination of Delta Air Lines, Inc., Société Air France, Koninklijke Luchtvaart Maatschappij N.V., Virgin Atlantic Airways, Ltd., CSA Czech Airlines, and Alitalia Compagnia Aerea Italiana S.P.A. will terminate. For the avoidance of doubt, nothing in this paragraph should be construed to terminate or otherwise impact the grant of immunity conferred by Order 2002-6-18 to the Alliance Agreements by and between Delta Airlines Inc. and Korean Air Lines Co., Ltd.;

3. We direct the Joint Applicants to submit annual progress reports as described in Order 2019-8-2, to the Director of the Office of Aviation Analysis, beginning one year from the effective date of ATI, and continuing each year thereafter while the alliance agreements are effective;[45]

---

[45] We expect the Joint Applicants to deliver the progress report by the close of business on the anniversary date of the issuance of a Final Order. If that date falls on a weekend or Federal holiday, the Joint Applicants may deliver the report by the close of business on the following business day.

4. We direct Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Virgin Atlantic Airways, Ltd., to continue to report full-itinerary Origin-Destination Survey of Airline Passenger Traffic for all passenger itineraries that include a U.S. point;[46, 47]

5. We determine that the Joint Applicants shall submit for prior approval any subsequent subsidiary agreements implementing the Amended JVA;[48]

6. We determine that the Joint Applicants shall obtain prior approval if they choose to hold out service under a common name or use common brands;

7. We direct Delta Air Lines, Inc., Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Virgin Atlantic Airways, Ltd., to remain withdrawn from participation in any International Air Transportation Association tariff coordination activities that discuss any proposed through fares, rates, or charges applicable between the United States and any countries whose airlines have been or are subsequently granted antitrust immunity, or renewal of, to participate in similar alliance activities with a U.S. airline(s).  We delegate to the Director of the Office of International Aviation the authority to determine the applicability of the directive set forth in this paragraph as to specific prices, markets, and tariff coordination activities, consistent with the scope and purpose of the condition, as previously described;[49]

8. We may amend, modify, or revoke this authority at any time, without hearing;

9. We will not entertain petitions for reconsideration of this Order; and

---

[46] We expect Air France, KLM, and Virgin to continue to report the O&D data.  Detailed instructions are available from the Department's Office of Airline Information at the Bureau of Transportation Statistics.  We treat the foreign airlines' O&D data as confidential, do not allow U.S. airlines any access to the data, and do not allow foreign airlines any access to U.S. airline O&D Survey data.  We use these data only for internal analytical purposes.
[47] Czech and Alitalia must continue reporting full-itinerary Origin-Destination data until the date established in ordering paragraph 2.
[48] Regarding this requirement, we do not expect the Joint Applicants to provide the Department with minor technical understandings that are necessary to implement fully their day-to-day operations but that have no additional substantive significance. We do, however, expect and direct them to provide the Department with all unredacted contractual instruments that implement or materially alter, modify, or amend the cooperation agreements, joint ventures, or confidentiality/antitrust guidelines.  Any appropriate documents shall be submitted to the Director of the Office of Aviation Analysis.
[49] This provision also applies to Czech and Alitalia until the date established in ordering paragraph 2.

10. We will serve this Order on all parties on the service list in this docket, as well as CSA Czech Airlines and Alitalia Compagnia Aerea Italiana S.P.A.

By:

**JOEL SZABAT**
Assistant Secretary
Aviation and International Affairs

(SEAL)

*An electronic version of this document is available at:* http://www.regulations.gov