# EXHIBIT H

Order 2011-11-16
Served: November 14, 2011



**UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.**

Issued by the Department of Transportation
on the 14th Day of November, 2011

| | |
|---|---|
| Joint Application of<br><br>AIR CANADA,<br>THE AUSTRIAN GROUP,<br>BRITISH MIDLAND AIRWAYS LIMITED,<br>CONTINENTAL AIRLINES, INC.,<br>DEUTSCHE LUFTHANSA AG,<br>POLSKIE LINIE LOTNICZE LOT S.A.,<br>SCANDINAVIAN AIRLINES SYSTEM,<br>SWISS INTERNATIONAL AIRLINES LTD.,<br>TAP AIR PORTUGAL, and<br>UNITED AIR LINES, INC.<br><br>to amend Order 2007-2-16 under 49 U.S.C. §§ 41308 and 41309 so as to approve and confer antitrust immunity | **Docket DOT-OST-2008-0234** |

**ORDER**

**I. SUMMARY**

By this Order, the Department grants the motion of Air Canada, Austrian, bmi, Continental, Lufthansa, LOT, SAS, Swiss, TAP, and United (collectively, the "Joint Movants") to add a new carrier, Brussels Airlines, to an existing immunized alliance and joint venture. Specifically, we are approving (1) the addition of Brussels Airlines to commercial agreements that were previously approved by the Department in July 2009, and (2) some new agreements between Brussels Airlines and the Joint Movants. We are also making an expanded grant of immunity to the Joint Movants to cover the addition of Brussels Airlines.

This is the first alliance case in which the ownership and control of a party is determinative in the Department's analysis. Following Lufthansa's acquisition of a controlling stake in Brussels Airlines in 2009, Brussels Airlines became a close affiliate of Lufthansa. Based on our analysis of the information submitted by the Joint Movants, we have found that Lufthansa's control over Brussels Airlines removes Brussels Airlines' incentive to compete against Lufthansa and its immunized alliance partners. Given the limited presence of Brussels Airlines in North America, and the complementary nature of its network in relation to the other members of the alliance, there will be no substantial reduction in competition associated with granting this motion. Moreover, our decision to grant the motion will provide incremental benefits for consumers in a number of markets, particularly in North America-Africa markets. The expanded grant of antitrust immunity will allow Lufthansa to integrate Brussels Airlines into the

1

established and approved cooperation agreements, including the Atlantic Plus-Plus (A++) joint venture agreement. In this regard, the Department finds that the benefits of the immunized alliance and A++ joint venture, which were discussed in Order 2009-7-10, will be enhanced by the addition of Brussels Airlines.

## II. BACKGROUND

In a series of decisions dating back to 1996, we have approved commercial agreements among various members of the Star Alliance for transatlantic operations and have granted immunity from the antitrust laws for those agreements when we found that the applicable statutory standards were met.[1] The members of the immunized alliance engage in close cooperation on international routes in the areas of pricing, planning, revenue management, sales, and distribution. Of the carriers granted antitrust immunity, three of the carriers – Air Canada, Lufthansa, and United – are principals in a joint venture called A++, which provides for even closer commercial cooperation among its participants.[2]

**The Motion**

On April 21, 2011, the Joint Movants filed a motion in the docket requesting that the Department recognize the participation of Brussels Airlines, an affiliate of Lufthansa, in the alliance agreements and A++ joint venture approved by the Department in Order 2009-7-10, and confer expanded antitrust immunity.[3] Brussels Airlines, with its hub at Brussels International Airport, is a medium-sized European carrier serving 68 cities, including 21 cities in Africa, but it does not operate to North America with its own aircraft.[4]

The Joint Movants state that on September 15, 2008, Lufthansa signed an agreement to acquire a 45-percent voting equity interest in and sole control of SN Airholdings SA/NA ("SNAH"), the holding company for Brussels Airlines. The Joint Movants claim that, although Lufthansa holds a minority interest in Brussels Airlines, the carrier is under the control of Lufthansa and Lufthansa directs the strategic decisions and activities of Brussels Airlines. Further, the Joint Movants state that Lufthansa holds options to purchase the remaining shares of SNAH, which Lufthansa may exercise at its sole discretion. The Joint Movants also support their control arguments with a June 22, 2009, decision of the European Commission ("the Commission"), which found that following its 45-percent equity acquisition of SNAH, Lufthansa

---

[1] The Star Alliance consists of 27 active member airlines. Of the Star Alliance carriers, the above-captioned Joint Movants have been granted antitrust immunity.

[2] The Star carriers' authority to operate their immunized alliance is derived from the following actions: Docket DOT-OST-2008-0234, Order 2009-7-10 (July 10, 2009); Docket DOT-OST-1996-1116, Order 1996-5-27 (May 20, 1996); Docket DOT-OST-1996-1411, Order 1996-11-1 (Nov. 1, 1996); Docket DOT-OST-1998-7828, Order 2001-1-19 (Jan. 26, 2001); Docket DOT-OST-2001-11029, Order 2003-6-39 (June 30, 2003) and Order 2007-9-12 (Sept. 7, 2007); Docket DOT-OST-2005-22922, Order 2007-2-16 (Feb. 13, 2007); Docket DOT-OST-2008-0234, Order 2009-7-10 (July 10, 2009). Bmi, Austrian, and Swiss also participate in the joint venture as subsidiaries of Lufthansa. Each was acquired by Lufthansa after receiving authority from the Department to participate in the overall alliance as an independent airline. *See* Joint Movants' Response to Clarification Questions at 2 (July 5, 2011).

[3] The Joint Movants filed supplemental material in the docket on July 5, 2011.

[4] Official Airline Guide scheduling data for September 2011.

would be able to exercise direct sole control over SNAH.[5] The Joint Movants request that, under these unique circumstances, the Department treat Brussels Airlines as if the carrier were majority-owned by Lufthansa.

In their filing, the Joint Movants argue that inclusion of Brussels Airlines will not reduce competition and that Brussels Airlines' participation will generate the same public benefits as the inclusion of the other European airlines controlled by Lufthansa.[6] Specifically, the Joint Movants state that the proposed enhanced coordination will enable Brussels Airlines and the Joint Movants to explore improved commercial cooperation, including such activities as joint advertising and marketing programs, joint fares, joint bids for government and corporate travel accounts, revenue sharing, and the coordination of codesharing and operations for the carriers' international services, thereby avoiding the inefficiencies, risks and costs of coordinating their alliance through a series of bilateral discussions and separate agreements.[7]

First, the Joint Movants state that the addition of Brussels Airlines will not reduce competition for several reasons. They note that Brussels Airlines does not currently operate any transatlantic flights, and, although Brussels Airlines markets transatlantic service via Brussels through codeshares on other Star Alliance airline flights, only three percent of its 2009 passengers originated in the United States.[8] The Joint Movants add that because Brussels Airlines currently operates no transatlantic flights itself, new online joint venture service will be created between many points in the U.S. and points throughout Europe and Africa, offering enhanced service options for consumers.[9] They further argue that, because Brussels and most of the points served by Brussels Airlines are also served by the SkyTeam and Oneworld alliances, Brussels Airlines' full participation in immunized activities with other Star Alliance carriers will enhance global competition.[10]

Second, the Joint Movants state that public benefits identified in the Department's recent grant of antitrust immunity, such as an expanded network with many new cities, expanded nonstop service, and cost efficiencies, will also be achieved by including Brussels Airlines in the alliance and joint venture.[11] They claim that including Brussels Airlines will extend the public benefits to an additional hub at the center of Europe, will add the unique Brussels Airlines network to the immunized route network, and will expand inter-alliance and inter-gateway competition with no adverse impact on competition.[12] The Joint Movants emphasize that

---

[5] Commission Decision at 6, June 22, 2009, Case No. COMP/M.5335 Lufthansa/SN Airholding. The Joint Movants attached a copy of the Commission's decision to their Joint Motion. Joint Motion at 39.

[6] Brussels Airlines was not an affiliate of Lufthansa at the time the Department issued Orders 2007-2-16 and 2009-7-10. Therefore, Brussels Airlines was not considered and included within the scope of the Department's prior approval and grant of antitrust immunity.

[7]   *See* Joint Motion at 14.

[8]   *See* Joint Motion at 9.

[9]   *See* Joint Motion at 5.

[10]  *See* Joint Motion at 9.

[11]  *See* Joint Motion at 3.

[12]  *See* Joint Motion at 2.

Brussels Airlines has an extensive African network, which enhances the overall network of the Joint Movants and the A++ joint venture.[13]

The Joint Movants argue that the addition of Brussels Airlines as a participant in the A++ joint venture will expand the carriers' combined network, create operating efficiencies, enhance the alliance members' competitiveness, and deliver maximum consumer benefits.[14] The Joint Movants contend that the benefits will be particularly evident in city-pairs involving travel between the United States and points unique to Brussels Airlines' network.[15] They maintain that recognizing Brussels Airlines' participation in the alliance agreements will enhance fare combinability and result in the elimination of double marginalization for passengers traveling between points throughout the current joint venture network and points served by the Brussels Airlines network via Brussels.[16] The Joint Movants contend that the economies of density will be expanded, particularly on transatlantic Brussels flights.[17] The Joint Movants claim that the A++ joint venture will continue to foster a commercial environment of "metal neutrality" in which the joint venture partners will share common economic incentives to promote the interests of their alliance over their individual corporate interests.[18]

Further, the Joint Movants state that they will not move forward with Brussels Airlines' participation in the alliance agreements without immunity.[19] The Joint Movants note, however, that such circumstances would result in disparate treatment by Lufthansa of Brussels Airlines versus the other Lufthansa affiliates.[20]

Since the motion was filed, the Department has provided access to confidential documents,[21] obtained additional evidence to supplement the record,[22] and provided an opportunity for public comment.[23] During the prescribed comment period, no pleadings in opposition to the motion were filed.[24] We are proceeding now to an order granting the request.

---

[13]  *See* Joint Motion at 6.
[14]  *See* Joint Motion at 10.
[15]  *See* Joint Motion at 8.
[16]  *See* Joint Motion at 8.
[17]  *See* Joint Motion at 8.
[18]  *See* Joint Motion at 11.
[19]  *See* Joint Motion at 15.
[20]  *See* Joint Motion at 15.
[21]  *See* Notice (April 29, 2011).
[22]  *See* Order 2011-6-15 (June 14, 2011).
[23]  *See* Notice (Aug. 2, 2011).
[24]  On April 28, 2011, American filed a motion requesting an extension of time to file answers. Because the Department accommodated that request by suspending the procedural schedule, American's motion was denied.

Additionally, on August 18, 2011, UNITE HERE, a labor group, submitted a letter concerning the Joint Motion to Susan L. Kurland, Assistant Secretary for Aviation & International Affairs, in the docket. UNITE HERE also submitted an additional filing on September 19, 2011. However, neither the August 18 filing nor the September 19 filing was served on all interested parties in accordance with the Department's procedural rules. Further, the September 19 document was filed late without being accompanied by a motion for leave to file late as is required by our rules. Accordingly, these documents are not properly filed pleadings and will not be considered as part of the record for decision in this case.

## III. DECISIONAL STANDARDS

Under 49 U.S.C §§ 41308-41309, we normally engage in a two-step analysis of foreign air transportation agreements submitted for our approval. We first determine under § 41309(b) whether the agreements *are adverse* to the public interest because they would substantially reduce or eliminate competition (the "competitive analysis"). If we make that affirmative determination, § 41309 (b)(1)(A) directs us to decide whether they are nevertheless necessary to meet a serious transportation need or to achieve important public benefits; U.S. foreign policy goals are a key element of these benefits. If we make that finding, and also find that those public benefits cannot be met or achieved by reasonably available and materially less anticompetitive alternatives, we *must* approve the agreements pursuant to § 41308(b). Section 41309(c)(2) provides that a party opposing approval has the burden of showing that the agreement or request would substantially reduce or eliminate competition and that less anticompetitive alternatives are available. On the other hand, the party seeking approval of the agreement or request must establish the transportation need or public benefits.

If, however, we do not find the agreements to be adverse to the public interest, § 41309(b) directs us to approve them. In that event, we next decide whether there are sufficient public benefits to grant immunity under 49 U.S.C. § 41308(b) (the "public benefits analysis"). In that subsection, Congress has given the Department the authority to exempt airlines from the antitrust laws to the extent necessary to allow a proposed transaction to proceed, provided that the exemption is *required by* the public interest. While the public interest determination under both §§ 41309(b) and 41308(b) entails a comparison of anti-competitive effects and public benefits, the standard in § 41308(b) ("required by" rather than "not adverse to") is higher.[25]

The intended commercial effects of the Joint Movants' cooperation are similar to those resulting from a merger. As part of our overall analysis, we apply the Clayton Act test, which is used to predict the competitive effects of a proposed merger.[26] The Clayton Act test requires us to consider whether a grant of antitrust immunity is likely to substantially reduce competition and facilitate the exercise of market power – that is, to allow the Joint Movants to profitably charge supra-competitive prices or reduce service or quality below competitive levels in any relevant market. To determine whether an alliance is likely to create or enhance market power, we primarily consider whether the alliance would significantly increase market concentration, whether the alliance causes potential competitive harm, and whether new entry into the market would be timely, likely, and sufficient either to deter or to counteract the potential competitive harm.

## IV. ANALYSIS

In this matter, the overarching issue is whether the addition of a new carrier, Brussels Airlines, to an existing immunized alliance and joint venture would be pro-competitive and beneficial to the traveling public. The Joint Movants ask the Department to treat Brussels Airlines as a subsidiary of an existing party, Lufthansa, and thus to "recognize" Brussels

---

[25] *See, e.g.,* Star Alliance Case, Docket DOT-OST-2008-0234, Show Cause Order 2009-4-5, at 18 (April 7, 2009), *quoting* Northwest/KLM, Order 93-1-1, at 11 (January 11, 1993).

[26] *See* Acquisition of Northwest/Wings Holdings, Inc., Show Cause Order 92-11-27, at 13 (November 16, 1992); SkyTeam II Case, Show Cause Order 2008-4-17, at 5 (April 9, 2008).

Airlines' participation in the alliance and joint venture as covered by previous grants of antitrust immunity.[27]

The Department's policy requires holders of antitrust immunity to demonstrate on the record that the addition of new carriers to the alliance, including affiliates, meets all applicable statutory and policy standards. The Joint Movants do not dispute this policy. They have, therefore, submitted a substantial amount of information regarding Brussels Airlines' participation in the alliance in the Joint Motion and their response to the Department's evidence request.[28]

The extent of Brussels Airlines' affiliation with Lufthansa is relevant to – and in this case determinative in – the competitive analysis that is required by 49 U.S.C. § 41309. Economic theory assumes that affiliates that are at least majority-owned or controlled by a parent corporation will not compete vigorously with the parent corporation (or the parent corporation's immunized partners) because their incentive to compete and earn profits is tied to the strategic management of the parent corporation. For this reason, we have been willing to extend our grants of immunity to certain wholly-owned, majority-owned, or controlled affiliates when the requests were made at the time of the initial application, there was no substantial reduction in competition associated with the addition of the affiliate,[29] and sufficient public benefits were likely.

The Joint Motion presents a unique situation in our case history. Brussels Airlines became an affiliate of Lufthansa after the members of Star Alliance last petitioned the Department for antitrust immunity in 2008 and was not, therefore, considered in that proceeding.[30] However, Lufthansa's interest in Brussels Airlines is now a minority interest. Crucially, however, Lufthansa claims to control the commercial decisions of Brussels Airlines. If true, Lufthansa's claim would provide a sound basis for the Department to treat Brussels Airlines like a subsidiary or majority-owned and controlled affiliate in the course of its competitive and public benefits assessment.

Below, in response to the Joint Motion, we will examine the request to add Brussels Airlines to the immunized alliance and joint venture. We will begin by focusing on Lufthansa's relationship with Brussels Airlines and continue by conducting the competitive and public benefits assessments that are necessary to evaluate an immunity request.

We note that the Commission has already examined the competitive effects of the Lufthansa-Brussels Airlines relationship, and implicitly, Brussels Airlines' participation in A++. In June 2009, the Commission published a decision declaring Lufthansa's acquisition of a minority stake in Brussels Airlines to be compatible with the European common market, subject to certain

---

[27] *See* Joint Motion at 1-2.

[28] *See* Joint Motion (April 21, 2011); Joint Movants' Response to Clarification Questions (July 5, 2011).

[29] *See, e.g.*, Delta-Alitalia-Air France-Czech Case, Docket DOT-OST-2001-10429, Order 2002-1-6 (January 22, 2002)
  *See also* Star Case, Docket DOT-OST-2008-0234, Order 2009-7-10 at ordering paragraph 1 (July 10, 2009).

[30] Although Lufthansa signed the agreement to purchase Brussels Airlines in September 2008, the parties did not close the transaction until after the Commission decision in June 2009.

remedies. The Commission stated that Lufthansa would exercise "direct sole control" of Brussels Airlines.[31]

**Ownership and Control**

As noted above, the Department has allowed certain majority-owned affiliates of alliance partners to enjoy the benefits of antitrust immunity when the strategic decisions of the majority-owned affiliates are solely directed by the alliance partner.[32] Under such circumstances, the alliance partner, as the commercial decision-maker, considers the operations of all its majority-owned affiliates when making strategic decisions for each carrier, such as those pertaining to markets, pricing, revenue and capacity management, and codesharing. Also, in approving alliance agreements and granting antitrust immunity, the Department evaluates requests with full disclosure of each alliance partner's affiliates, and interested parties are able to examine both the majority-owned affiliate's relationship with the alliance partner and, therefore, the entire scope of strategic decision-making within the alliance.

Unlike past cases in which alliance members sought to extend antitrust immunity to their majority-owned affiliates, in this case Lufthansa has acquired a minority equity interest in the holding company for Brussels Airlines, SNAH. Because Brussels Airlines is not a majority-owned affiliate of Lufthansa, the Department must consider Lufthansa's ability to control the strategic and commercial decisions of Brussels Airlines, as well as Lufthansa's motivation to exercise such control.

As stated previously, Lufthansa holds 45-percent of the voting interest in SNAH, and is SNAH's single largest shareholder. Vexair Limited ("Vexair") is the second largest shareholder, with a 16.4 percent voting interest.[33] The remaining 38.6 percent of the company is held by 30 other independent shareholders, only one of which holds an equity interest greater than 5 percent.[34] Generally, when a concentration of equity exists and the remaining shareholders are diverse unrelated entities, such as in this case, the remaining shareholders are unable, as a practical matter, to exercise control over the company through voting rights. Even if the 30 other shareholders decided to vote collectively in a manner contrary to the Lufthansa vote, they would still be in the minority without also receiving a supporting vote from Vexair. Likewise, Vexair, would need the support of the vast majority of the 30 other shareholders to pass a measure contrary to the Lufthansa vote. Thus, although it is theoretically possible, with enormous coordination efforts, for the other shareholders to vote contrary to Lufthansa, such occurrence is not likely.

To address the possibility of a contrary majority vote as posited above, Lufthansa was given veto rights over all strategic business decisions, such as approval of the budget or major

---

[31] Commission Decision at 6, June 22, 2009, Case No. COMP/M.5335 Lufthansa/SN Airholding. The Joint Movants attached a copy of the Commission's decision to their Joint Motion. Joint Motion at 39.

[32] *See, e.g.,* Delta-Alitalia-Air France-Czech Case, Docket DOT-OST-2001-10429, Order 2002-1-6 (January 22, 2002)
*See also* Star Case, Docket DOT-OST-2008-0234, Order 2009-7-10 at ordering paragraph 1 (July 10, 2009).

[33] *See* Joint Movants' Response (July 5, 2011), Exhibit B.

[34] One shareholder holds a voting interest of 6.36 percent.

investments; and appointment of senior management requires Lufthansa's affirmative vote.[35] We find that these rights clearly place Lufthansa in a position to exercise control over vital decisions pertaining to the operations of Brussels Airlines.

Additionally, Lufthansa holds options to purchase the remaining 55 percent of the voting stock from the other SNAH shareholders, which Lufthansa may exercise at its discretion.[36] Thus, Lufthansa has the ability to become SNAH's majority shareholder, or to make Brussels Airlines a wholly-owned affiliate., These rights further solidify its existing control over the carrier.

We accordingly find that Lufthansa has the ability to control the strategic and commercial decisions of Brussels Airlines, and thus Lufthansa has substantially the same ability and incentive to treat Brussels Airlines like its other affiliates in the context of its international services.

**Competitive Analysis**

Under § 41309(b), we must determine whether the amended and expanded alliance agreements submitted by the Joint Movants are adverse to the public interest because they would substantially reduce or eliminate competition. The Joint Movants already have effective authority to implement a number of bilateral and multilateral cooperation agreements, including the A++ agreement.[37] They are now requesting an expanded grant of antitrust immunity to cover Brussels Airlines' participation in the A++ agreement, as well as two new bilateral cooperation agreements and an amended coordination agreement.[38]

We have reviewed the record in this case and find that the addition of Brussels Airlines to the immunized Star network will not meaningfully reduce competition in affected markets, especially since, from the perspective of U.S. consumers, Brussels Airlines does not operate to the United States with its own aircraft. We also find and agree with the Joint Movants that the addition of Brussels Airlines will not substantially reduce competition, and that it represents an "end-to-end" combination that will enhance competition.[39] Moreover, we find that the addition of Brussels Airlines to the alliance agreements and the A++ joint venture, will enable the immunized carriers within Star Alliance to be more competitive with SkyTeam on services to Africa, and that their services between North America and Brussels will be more competitive.[40] In fact, we find that Lufthansa's acquisition of a controlling stake in 2009 removed Brussels Airlines' ability and incentive to compete against Lufthansa or the other members of the immunized alliance. There is, therefore, no reduction in potential competition either.

---

[35]  *See* Joint Motion at 4, footnote 7.

[36]  *See* Joint Motion at 4, footnote 7.

[37]  *See* Order 2009-7-10 at 27, footnote 114.

[38]  *See* Joint Motion at 10-13 and Exhibit JM-1. The new agreements include (1) bilateral cooperation agreements between Brussels Airlines and United/Continental, facilitating cooperation such as code sharing and frequent flyer program participation, and (2) an amended agreement addressing coordination among the Joint Movants to include Brussels Airlines.

[39]  *See* Joint Motion at 5-6, 15.

[40]  *See* Joint Movants' Response at 2 (July 5, 2011).

Our review also indicates that the addition of Brussels Airlines to the immunized Star Alliance group will allow the alliance to serve four additional points in Europe and 12 additional points in Africa on an immunized basis.[41]  With Brussels Airlines' developed African network, the immunized Star Alliance will become more competitive with the market leader, SkyTeam, for traffic flows to Africa from Europe and North America.  According to scheduling data, the immunized Star Alliance will serve 58 points in Africa, while the immunized SkyTeam alliance will serve 85 points.[42]

In summary, we see no potential for the Joint Movants, as a result of this transaction, to impose and sustain supra-competitive fares or to reduce service levels below current competitive levels.  These factors support the conclusion that the proposed alliance expansion is not adverse to the public interest and should therefore be approved under § 41309.

**Public Benefits**

Having approved the alliance under § 41309, we must now determine whether it is appropriate to make a grant of antitrust immunity under § 41308.  As we have stated in past cases, we are only willing to grant immunity if the parties to the alliance agreements would not otherwise go forward without it, and if we find that the public interest requires that we grant antitrust immunity.  Our public interest examination focuses on the public benefits that will be created by the proposed alliance and the extent to which a grant of antitrust immunity is required to realize those benefits.

The Joint Movants argue that making a grant of antitrust immunity to include Brussels Airlines will produce all of the same benefits that the Department previously recognized in 2009, when it approved the A++ joint venture.[43]  The Joint Movants go on to state that including Brussels Airlines will expand the alliance and joint venture networks by adding thousands of new online city-pairs involving a U.S. point, enhance competition, produce cost efficiencies, and strengthen the financial position of Brussels Airlines as well as that of the Joint Movants.[44]  The Joint Movants believe that a grant of immunity will bring all of the benefits of the A++ joint venture, recognized by the Department in an earlier order, to Brussels and the other points in the Brussels Airlines network.[45]

Our benefits assessment for this transaction is unusual because the new carrier seeking antitrust immunity, Brussels Airlines, does not operate to the United States with its own aircraft.  However "indirect" the benefits may appear under these unique circumstances, we agree with the Joint Movants that the addition of Brussels Airlines will enhance the benefits of the existing Star immunized alliance and the A++ joint venture, which are focused on improving transatlantic services.  The evidence suggests that the Brussels Airlines network will increase traffic flows

---

[41] Official Airline Guide scheduling data for September 2011.  The points in Europe are Stockholm (BMA), Bristol (BRS), Lamezia-Terme (SUF), and Strasbourg (SXB).  The points in Africa are Abidjian (ABJ), Agadir (AGA), Banjul (BJL), Bujumbura (BJM), Conakry (CKY), Cotonou (COO), Entebbe (EBB), Kinshasa (FIH), Kigali (KGL), Lome (LFW), Ouagadougou (OUA), and Monrovia (ROB).

[42] Official Airline Guide scheduling data for September 2011.

[43] *See* Joint Motion at 2-3 (April 21, 2011).

[44] *See* Joint Motion at 5 (April 21, 2011).  *See also* Joint Movants' Response at 3 (July 5, 2011).

[45] *See* Joint Motion at 12 (April 21, 2011).

9

over the Brussels hub and create new options for travelers on the immunized Star network, which will have a compounding effect on the economies of density, scale, and scope that we recognized as beneficial to the traveling public in Order 2009-7-10.[46] We find, therefore, that the incremental benefits are substantial enough to justify a grant of immunity.

Further, we find that the incremental benefits of adding Brussels Airlines are likely to be passed on to consumers in a timely fashion – that is, the benefits will be proximate to our grant of antitrust immunity.[47] The likelihood that benefits are passed on to consumers, and the timeliness in which that occurs, are important factors in our assessment of whether a proposed alliance meets the high standard necessary to obtain antitrust immunity. In some past cases, the Department has expressed concern when the details of proposed cooperation were not negotiated or explained on the record in sufficient detail to support the applicants' assertions that consumers will benefit from the alliance.[48] Here, however, the Joint Movants make the necessary showing because the Lufthansa-Brussels Airlines acquisition has taken place, providing certainty as to the partners' strategic plans, and the Joint Movants have decided to add Brussels Airlines to an alliance and joint venture, building on an arrangement that has already been developed, approved, and implemented.

Finally, we find that a grant of immunity is required by the public interest in this case. In addition to the legal uncertainty that would exist if we did not grant the Joint Movants' request – the Joint Movants indicate they will not go forward with the alliance absent immunity[49] – we are persuaded by the argument that adding Brussels Airlines is necessary to ensure "metal neutrality" among the A++ partners, including the Lufthansa-controlled airlines. In Order 2009-7-10, we analyzed the A++ agreement and determined that the arrangement was adequately structured to encourage the participating carriers to set aside their parochial commercial interests in favor of selling the joint network and offering the customer the most desirable itinerary at the best price, regardless of which carrier would use its "metal" to operate the service.[50] Such a "metal-neutral" arrangement requires carriers to jointly plan their services and balance the economic benefits they receive from the venture.

According to the Joint Movants, the A++ cooperation could, in theory, continue without Brussels Airlines, but the partners would be incentivized to keep traffic on the joint venture network, even if a better or more convenient option involved Brussels Airlines. We agree. Excluding Brussels Airlines would reduce the overall benefits of the A++ joint venture and introduce inefficiencies within the alliance given that some of Lufthansa's other similarly situated affiliates, such as bmi, Austrian, and Swiss, are full members of the alliance.

In sum, we find that an expanded grant of immunity, to include Brussels Airlines, is required by the public interest.

---

[46] *See* Order 2009-7-10 at 12-16 (July 10, 2009).

[47] *See* Delta/Virgin Australia Case, Docket DOT-OST-2009-0155, Order 2010-9-4 (Sept. 8, 2010) (describing the Department's public benefits standard).

[48] *See, e.g.,* Delta/Virgin Australia Case, Docket DOT-OST-2009-0155, Order 2010-9-4 (Sept. 8, 2010).

[49] *See* Joint Motion at 15 (April 21, 2011).

[50] *See* Order 2009-7-10 at 15 (July 10, 2009).

**V. DECISION**

For the reasons stated above, we determine that the Joint Movants' request to add Brussels Airlines to their alliance will be pro-competitive and beneficial to the traveling public. We therefore decide to approve the alliance agreements submitted by the Joint Movants, which include Brussels Airlines as a party, and we confer antitrust immunity to the carriers to implement those agreements.

**ACCORDINGLY:**

1. We amend Order 2009-7-10 by striking Ordering Paragraph 1 and replacing it with the following text, including the footnote (new text bolded and underlined):

   We approve and grant antitrust immunity to the Alliance Agreements between and among Air Canada, The Austrian Group, British Midland Airways, Ltd., **Brussels Airlines NV/SA,** Continental Airlines, Inc., Deutsche Lufthansa AG, Polskie Linie Lotnicze LOT S.A., Scandinavian Airlines System, Swiss International Air Lines Ltd., TAP Air Portugal, and United Air Lines, Inc., and the majority-owned affiliates of the aforementioned carriers in so far as such agreements relate to foreign air transportation;[51]

2. We amend Order 2009-7-10 by striking Ordering Paragraph 11 and replacing it with the following text (new text bolded and underlined):

   We direct Air Canada, The Austrian Group, British Midland Airways, Ltd., **Brussels Airlines NV/SA,** Continental Airlines, Inc., Deutsche Lufthansa AG, Polskie Linie Lotnicze LOT S.A., Scandinavian Airlines System, Swiss International Air Lines Ltd., TAP Air Portugal, and United Air Lines, Inc. to withdraw, or to remain withdrawn, from participation in any International Air Transport Association tariff coordination activities that discuss any proposed through fares, rates, or charges applicable between the United States and any countries whose airlines have been or are subsequently granted antitrust immunity, or renewal thereof, to participate in similar alliance activities with a U.S. airline(s);

3. We amend Order 2009-7-10 by striking Ordering Paragraph 13 and replacing it with the following text, including the footnote (new text bolded and underlined):

   We direct Air Canada, Austrian, British Midland Airways, **Ltd., Brussels Airlines NV/SA,** Deutsche Lufthansa, Polskie Linie Lotnicze LOT, Scandinavian Airlines System, Swiss, and TAP Air Portugal to continue to report full-itinerary

---

[51] Alliance Agreements shall mean those agreements referred to on page 2, Footnote 2, and Exhibit JA-1, of the Joint Application filed on July 23, 2008**, as well as those agreements referred to in Exhibit JM-1 of the Joint Motion filed on April 21, 2011. Effective immediately, the Department considers the term "Joint Applicants," as used in the orders in Docket DOT-OST-2008-0234 to include Brussels Airlines**.

11

Origin-Destination Survey of Airline Passenger Traffic for all passenger itineraries that include a U.S. point;[52]

4. We will serve this Order on all parties on the service list in this docket.

By:

**SUSAN L. KURLAND**
Assistant Secretary for Aviation
and International Affairs

*An electronic version of this document is available at:*
*http://www.regulations.gov*

---

[52] We treat the foreign airlines' O&D data as confidential, do not allow U.S. airlines any access to the data, and do not allow foreign airlines any access to U.S. airline O&D Survey data. We use these data only for internal analytical purposes.