1              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
2

3    _____

4    UNITED STATES OF AMERICA, et al.

5         Plaintiffs,                    Civil Action No.
                                         1:21-cv-11558-LTS
6         v.

7    AMERICAN AIRLINES GROUP, INC.,
     et al.,
8
          Defendants.
9

10   _____

11

12       BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

13

14                   SCHEDULING CONFERENCE
                     Via Videoconference

15

16              Monday, November 29, 2021
                        2:06 p.m.

17

18

19

20

21   John J. Moakley United States Courthouse
     One Courthouse Way
22   Boston, Massachusetts

23
     Rachel M. Lopez, CRR
24   Official Court Reporter
     raeufp@gmail.com
25

1                          **A P P E A R A N C E S**

2

   On behalf of the Plaintiff United States of America:
3

       UNITED STATES DEPARTMENT OF JUSTICE
4      BY:  WILLIAM H. JONES, III, KATE M. RIGGS,
       JAMES H. CONGDON, AND GRANT A. BERMANN
5      450 Fifth Street, Northwest
       Suite 8000
6      Washington, D.C.  20530
       (202) 514-0230
7      bill.jones2@usdoj.gov
       kate.riggs@usdoj.gov
8      james.congdon@usdoj.gov
       grant.bermann@usdoj.gov
9

10
   On behalf of the Plaintiff State of Arizona:
11
       ARIZONA ATTORNEY GENERAL'S OFFICE
12     BY:  ROBERT BERNHEIM
       400 W. Congress
13     Suite S-215
       Tucson, Arizona  85701
14     (520) 628-6507
       Robert.bernheim@azag.gov
15

16
   On behalf of the Plaintiff State of California:
17
       CALIFORNIA DEPARTMENT OF JUSTICE
18     BY:  ROBERT B. MCNARY AND JAMIE L. MILLER
       300 South Spring Street
19     Los Angeles, California  90013
       (213) 269-6283
20     robert.mcnary@doj.ca.gov
       jamie.miller@doj.ca.gov
21

22

23

24

25

1              **A P P E A R A N C E S ,  C o n t.**

2

    On behalf of the Plaintiff District of Columbia:

3

        OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF
4        COLUMBIA
        BY:  ARTHUR THOMAS DURST
5        400 6th Street, Northwest
        Washington, D.C.  20001
6        (202)-442-9853
        arthur.durst@dc.gov
7

8

    On behalf of the Plaintiff State of Florida:

9

        ATTORNEY GENERAL'S OFFICE/ ANTITRUST
10        BY:  COLIN G. FRASER, LIZ A. BRADY, AND
        RACHEL S. BRACKETT
11        PL-01 The Capitol
        Tallahassee, Florida  32399
12        (850) 414-3300
        colin.fraser@myfloridalegal.com
13        liz.brady@myfloridalegal.com
        rachel.brackett@myfloridalegal.com
14

15

    On behalf of the Plaintiff Commonwealth of Massachusetts:

16

        OFFICE OF THE ATTORNEY GENERAL
17        BY:  WILLIAM T. MATLACK AND DANIEL H. LEFF
        One Ashburton Place
18        18th Floor
        Boston, Massachusetts  02108
19        (617) 727-2200
        william.matlack@mass.gov
20        daniel.leff@mass.gov

21

22

23

24

25

1              A P P E A R A N C E S ,   C o n t .

2

     On behalf of the Plaintiff Commonwealth of Pennsylvania:
3
          PENNSYLVANIA OFFICE OF ATTORNEY GENERAL
4         BY:  JENNIFER ANN THOMSON AND JOSEPH STEPHEN BETSKO, SR.
          Strawberry Square
5         14th Floor
          Harrisburg, Pennsylvania  17120
6         (717) 705-2537
          jthomson@attorneygeneral.gov
7         jbetsko@attorneygeneral.gov

8

9    On behalf of Plaintiff Commonwealth of Virginia:

10        OFFICE OF THE ATTORNEY GENERAL
          BY:  SARAH OXENHAM ALLEN
11        202 N. 9th Street
          Richmond, Virginia  23219
12        (804) 786-6557
          soallen@oag.state.va.us
13

14

     On behalf of the Defendant American Airlines Group, Inc.:
15
          LATHAM & WATKINS, LLP
16        BY:  DANIEL M. WALL, DAVID C. TOLLEY, MARGUERITE M.
          SULLIVAN, IAN R. CONNER, ALLYSON M. MALTAS,
17        AND FARRELL J. MALONE
          505 Montgomery Street
18        Suite 2000
          San Francisco, California  04111
19        (415) 391-0600
          dan.wall@lw.com
20        david.tolley@lw.com
          marguerite.sullivan@lw.com
21        ian.conner@lw.com
          allyson.maltas@lw.com
22        farrell.malone@lw.com

23

24

25

1                 A P P E A R A N C E S ,   C o n t.

2

3     On behalf of the Defendant JetBlue Airways Corporation:

4         SHEARMAN & STERLING LLP
          BY:  RICHARD F. SCHWED, MATTHEW CRANER,
          AND JESSICA DELBAUM
5         599 Lexington Avenue
          New York, New York  10022
6         (212) 848-4000
          richard.schwed@shearman.com
7         matthew.craner@shearman.com
          jessica.delbaum@shearman.com
8

9         MCCARTER & ENGLISH, LLP
          BY:  GLENN A. MACKINLAY
10        265 Franklin Street
          Boston, Massachusetts  02110
11        (617) 449-6548
          gmackinlay@mccarter.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  |  |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | (In open court.) |
| 3 | THE DEPUTY CLERK:  The United States District Court |
| 4 | for the District of Massachusetts is now in session, the |
| 5 | Honorable Leo T. Sorokin presiding. |
| 6 | Today is November 29th, the case of United States |
| 7 | of America et al., vs. American Airlines Group and JetBlue |
| 8 | Airways Corporation, civil action 21-11558, will now appear |
| 9 | before this Court. |
| 10 | Counsel, please identify themselves for the record. |
| 11 | (Discussion off the record.) |
| 12 | THE COURT:  Go ahead, counsel, first for the |
| 13 | plaintiffs. |
| 14 | MR. JONES:  Good afternoon, Your Honor, I'm Bill |
| 15 | Jones, with the Department of Justice on behalf of the United |
| 16 | States.  I have with me Ms. Kate Riggs and Mr. Jack Congdon, |
| 17 | along with Mr. Grant Bermann. |
| 18 | THE COURT:  Good afternoon. |
| 19 | And for the other plaintiffs? |
| 20 | MR. BERNHEIM:  Good morning, Your Honor, this is |
| 21 | Robert Bernheim from the Arizona Attorney General's Office, |
| 22 | on behalf of the State of Arizona. |
| 23 | THE COURT:  Good afternoon. |
| 24 | MR. MCNARY:  Good afternoon, Rob McNary for |
| 25 | California. |

```
 1              THE COURT:  Good afternoon.
 2              MS. MILLER:  Good afternoon, Your Honor, this is
 3   Jamie Miller from the California Attorney General's Office
 4   for California, as well.
 5              MR. DURST:  Good afternoon, Your Honor, Arthur
 6   Durst for the District of Columbia.
 7              THE COURT:  Good afternoon.
 8              MR. FRASER:  Good afternoon, Your Honor, Colin
 9   Fraser for the State of Florida.
10              THE COURT:  Good afternoon.
11              MR. MATLACK:  Good afternoon, Your Honor, Will
12   Matlack for the Commonwealth of Massachusetts.
13              THE COURT:  Good afternoon.
14              MR. LEFF:  Good afternoon, Your Honor, Daniel Leff,
15   also for the Commonwealth of Massachusetts.
16              THE COURT:  All right.  I think that's everybody
17   for the plaintiffs, right?
18              MS. BRADY:  I'm sorry, Your Honor, I couldn't
19   unmute myself quick enough.  This is Liz Brady, and I'm also
20   with the State of Florida.
21              THE COURT:  Oh.  Good afternoon.  No problem.
22              MS. THOMSON:  And Your Honor, this is Jennifer
23   Thomson for the Commonwealth of Pennsylvania.  And we're also
24   joined by Joseph Betsko.
25              THE COURT:  Okay.  Welcome.
```

```
 1              MS. OXENHAM ALLEN:  And also Sarah Oxenham Allen
 2    for the Commonwealth of Virginia.
 3              MS. BRACKETT:  And good afternoon, Your Honor.
 4    This is Rachel -- this is Rachel Brackett, also with the
 5    Florida's Attorney General's Office.
 6              THE COURT:  All right.  And then for -- maybe make
 7    it simpler, for American Airlines, who's here?
 8              MR. WALL:  Good afternoon, Your Honor, this is Dan
 9    Wall -- excuse me -- I'm joined by David Tolley, Maggie
10    Sullivan, Ian Conner, Allyson Maltas, and Farrell Malone.
11              THE COURT:  Okay.  Thank you.  Welcome.  Good
12    afternoon.
13              And then for JetBlue?
14              MR. SCHWED:  Good afternoon, Your Honor, Richard
15    Schwed and joined by Matthew Craner, Jessica Delbaum from my
16    firm, and also Glenn MacKinlay from McCarter & English.
17              THE COURT:  Okay.  Good afternoon.  I think
18    that's -- well, just a reminder to everybody who's on this
19    Zoom that although this is a Zoom proceeding, it's governed
20    by all the rules of the federal court and the laws governing
21    federal proceedings as if we were in person, which means that
22    there's no still photography, no audio recording, no video
23    recording, no audio/video recording, no rebroadcasting, no
24    streaming.  Other than that, you can -- okay.
25              So I have the -- the joint statement from all of
```

1    you, and most of which -- or much of which is agreed to.  So

2    I'll enter today, for sure, an order allowing all of that

3    which you agreed to.  I've reviewed all of that and that all

4    seems reasonable and sensible.

5            I have two questions for all of you, really.  One

6    is just to talk a little bit about the trial date, and second

7    is, with respect to the items about which you disagree.  And

8    I think the simplest way to hear those is I've read all the

9    papers.  I'm happy to hear first the Government, because they

10   are the plaintiffs, just -- we're not going to do one by one,

11   but just tell me -- you can go through and tell me why I

12   should take your position.  If I have any questions, I'll ask

13   you.  And then for the defendants, why I should take your

14   view on those issues.

15           But first, to circle back on the trial date, so

16   what I'm -- let me tell you what I'm understanding from what

17   you've given me.  What I'm understanding is you have agreed,

18   not fully, but substantially on a schedule for this, that

19   culminates in a trial beginning in, your hope, September 26,

20   2022.  And this would be, my understanding, is a bench trial.

21   You're anticipating about three weeks, and then post-trial

22   filings, and then thereafter I'll render a written decision

23   and judgment.  And what you'd like to do is have me lock in

24   the time now as to the start of the trial.

25           Is that fair?

1          MR. WALL:  That's correct, Your Honor.

2          MR. JONES:  Your Honor, Bill Jones.  Yes, that is

3    correct.

4          THE COURT:  So this is what -- that makes sense to

5    me, to block out the time.  I will do that.  I think I want

6    to look back at the calendar.  It will be some time between

7    the date -- it won't be earlier than September 26th, because

8    I understand the consequences to the schedule if I do that.

9    It will be somewhere between September 26th and not much

10   later than that.  And I'll take care of that no later than

11   tomorrow, if not today, with one issue, the case management

12   order.  I just want to check a couple of dates.

13         And are you thinking for a trial schedule, what

14   sort of schedule each day are you thinking?

15         MR. JONES:  Your Honor, Bill Jones for the United

16   States.  We -- we are amenable to whatever works for Your

17   Honor.  We have not discussed that with the defendants.

18         THE COURT:  Well, it came up on three weeks, all of

19   you.  Did you think three weeks was 9:00 to 1:00 or 9:00 to

20   4:00 or 9:00 to 5:00?

21         MR. JONES:  Your Honor, my apologies, sorry.

22         THE COURT:  No, no.  No apologies needed.  Go

23   ahead.

24         MR. JONES:  From our standpoint, Your Honor, we

25   would anticipate full trial days, if that is available with

1    Your Honor's calendar.

2         THE COURT:  Okay.  And that's what you were

3    thinking about when you said three weeks.  You were imagining

4    that kind of schedule.

5         MR. WALL:  Your Honor, this is Dan Wall for

6    American.  I mean, to be candid, I think we were hoping that

7    you might give us substantially that amount of time, not

8    necessarily all that amount of time.  We realize that's

9    asking for a lot.  But this is certainly a case that is

10   likely to require something on the order of ten to 12 full

11   trial days of time.

12        THE COURT:  Okay.

13        MR. WALL:  Now, whether that's spread out in some

14   other way, shorter days, fewer days a week, that's what it

15   feels like it's going to take.

16        THE COURT:  All right.  Then what we'll do is this.

17   I'll block out the time.  I'll give you a start date around

18   September 26th.  I just want to look back at the calendar.

19   Those are helpful questions.  In a bench trial, I'm fine to

20   go, for me, all day, subject to other matters.  So I think

21   you should assume that it's unlikely we'll go 9:00 -- we'll

22   go full days every single day from the day we start to the

23   day we end, because that would pretty much preclude the

24   possibility for me to have any other proceedings in any other

25   case.  On the other hand, you should assume we'll be doing

1    substantially that, and I'll see -- I think that for -- given

2    the nature of the case and what I imagine a lot of the

3    witnesses -- some of the witnesses are better done, to the

4    extent that some of them will spill over maybe more than a

5    day.  But the more we can get done in blocks is better, I

6    think, for all of you, and certainly for me, and we can work

7    that out as we get a little further along.

8         Okay.  So then with respect to the -- the issues

9    about which you disagree -- let me just see.  I'm happy to

10   hear you briefly.  I don't have a -- a lot of questions.  But

11   I'm happy to -- and I will say this:  If you say nothing,

12   you've waived nothing.  You're only going to waive something

13   if you use the following phrase, "I waive"; then what

14   follows, you've waived.  Okay.  But if you just say, "Judge,

15   we're happy to rest on the papers," no problem, you won't

16   waive anything.  You've all made your arguments.  I hear it.

17   But I'm happy to hear you if there's anything that you want

18   to add to whatever is set forth in the joint statement as to

19   the issues about which you disagree.

20        And I'll hear first from you, Mr. Jones, because

21   it's your case.

22        MR. JONES:  I thank you, Your Honor.  And let me

23   say, first, that we have worked really hard with the

24   defendants to reach an agreement on a large number of

25   matters, as you can tell from the joint proposed order that

1   we submitted.  But those areas of dispute that remain live

2   disputes, from our standpoint, are substantial disagreements,

3   and in this regard, Your Honor, they seem to have a common

4   throughput theme here of defendants seeking to limit our

5   ability to take discovery while really preserving for

6   themselves the possibility of doing things like adding

7   witnesses at a time that we would not have an opportunity to

8   conduct discovery or being able to add unlimited documents to

9   an exhibit list late in the day.  Your Honor, those are

10  important issues for us in terms of preserving our ability to

11  adequately put on our case for Your Honor.

12          And also, a significant issue, as well, is the

13  notion of limiting our depositions of those executives who

14  have already been deposed to some amount of time shorter than

15  that allowed by Rule 30.  And we think, as any other

16  litigant, the plaintiffs here should be able to have all of

17  the discovery rights and responsibilities of any other

18  litigant, despite the -- despite the fact that we did a

19  precomplaint investigation to ensure that -- that we were

20  making an informed decision to bring this action.

21          Other than that, Your Honor, I would ask that --

22  that our papers speak for us on this.  We think that so long

23  as we're able to have adequate discovery of late breaking

24  witnesses and late breaking documents, that's what we are

25  seeking to achieve in our positions and the joint papers.

1           THE COURT:  Okay.  Thank you.

2           For the defendants, or one by one?

3           MR. SCHWED:  Thank you, Your Honor.  Mr. Wall and

4    I, I would say, divvied up the issues, so maybe I'll just

5    start and kind of -- and talk generally about the ones I was

6    prepared to talk about, and then Mr. Wall can carry forward.

7           On the issues of the number of depositions and the

8    length of depositions for the executives and employees that

9    have already been deposed, I think a common starting point

10   for all of these disputes, in some sense, is we started with

11   what's normally in a case management or what do the federal

12   rules and the local rules provide, and then also had to layer

13   in the fact that, unlike a lot of cases, we're not starting

14   from an equal position as the Department of Justice.

15          They have been effectively conducting discovery for

16   a year.  They've issued -- had the power to and certainly did

17   issue CIDs, get documents from third parties, depose third

18   parties, get witness statements from third parties.  We

19   actually, the day after the complaint was filed, raised this

20   issue with the Department of Justice and said it would be

21   much easier to negotiate a case management order and figure

22   out what needs to be done, and we could get started much more

23   quickly if we had that file.

24          And their position -- and the rules don't require

25   them to do otherwise, but their position was:  We're not

1    going to give you that until after there's a case management

2    order.

3                    So for the last two months, we've been in the dark

4    as to whether they've interviewed ten third parties or 50

5    third parties, whether they have witness statements, et

6    cetera.  And so part of what is driving our positions is that

7    lack of knowledge.

8                    And so on the number of depositions of the parties

9    themselves, the starting point -- the other starting point we

10   had is that the local rules and the federal rules say ten per

11   side.

12                   Now, we recognize this is a case that doesn't need

13   ten per side.  It needs more.  But -- and we agreed with them

14   on 35.  But the main driver of that number was the potential

15   for third party witnesses.  And again, we don't know how many

16   there are, because we don't have the file.  But we, of

17   course, needed to give us, ourselves, the ability to protect

18   ourselves from surprises with third parties.

19                   There's no reason -- we had offered ten per

20   defendant, and then we had said, well, up to 12, with a

21   maximum of 12.  The DOJ has not articulated or the plaintiffs

22   have not articulated any real reason they need more than

23   that, which is a lot more than the default rule.  And they

24   have had plenty of time to know who our witnesses are, and we

25   think that is more than enough for them to get done what they

1    need to get done.  And of course, if the order says a certain

2    number, and later on they have good cause, nothing prevents a

3    party from coming back and seeking more.  But our view is

4    there should be a limit, and they shouldn't get to, in

5    essence, use the uncertainty about the number of third

6    parties we're going to need to create more of an opportunity

7    to depose our witnesses.

8            Turning to the length of depositions of those

9    witnesses who have already given testimony, there were 11

10   witnesses between the two defendants who gave testimony.

11   Most of the testimonies were -- most of the testimony took

12   place over a full day or the better part of a day.  And there

13   were a number of senior executives, up to the CEO, about

14   three-and-a-half months ago, or three-and-a-half months

15   before the complaint was filed.

16           Why executives of the defendants?  We understand

17   they have the right or want the right to talk about things

18   that have happened since then.  They want the ability to ask,

19   maybe, things they didn't ask.  But they don't need 14 hours

20   of testimony from employees and executives of the defendants.

21   They say there was a different purpose of those depositions,

22   but frankly, I don't think anybody on the plaintiffs' side

23   could, in good faith, say they asked a whole lot of questions

24   they wouldn't be asking -- or they'd ask a whole different

25   set of questions if they'd done it after the complaint was

1  filed rather than a few months before the complaint was

2  filed.

3              And the cases they cite, none of them have to do

4  with this issue.  One, the case they mostly rely on, the

5  Court had tried to -- or the defendant has said the SEC

6  didn't get any discovery.

7              If I could just go out of order a little bit, just

8  so that way Mr. Wall and I don't go back and forth, I think

9  there's also a broad issue of what needs to be in this case

10 management order, such as the number of witnesses on a

11 witness list.  That's not something that's ordinarily in a

12 case management order.  That's not something that is easy to

13 do at this stage.  Again, maybe the DOJ can do it, because

14 they've got a lot of discovery.  But for us, to try to say

15 how many witnesses we're going to be able to identify today,

16 when we've had no discovery and we're ten months away from

17 trial, is not something that's in this case management order,

18 because it really doesn't make a lot of sense.

19             Obviously, we will negotiate that in good-faith at

20 the right time, but we don't believe that now is the right

21 time.

22             And with that, in an effort to keep it brief, I

23 will turn it over to Mr. Wall.

24             THE COURT:  All right.  Mr. Wall?

25             MR. WALL:  Thank you.

1          Your Honor, the issues that I was going to talk

2     about really relate to what Mr. Jones said at the beginning,

3     where -- as I noted it down, they're concerned about that

4     we're seeking provisions that would limit their ability to

5     take discovery of late-breaking things and add witnesses

6     later on.  And that has led them to this idea of this sort of

7     supplemental discovery period and also this related idea that

8     would be presumptively reasonable to schedule a deposition on

9     21 days' notice.  And I just want to make it clear that the

10    way that we -- we look at it just entirely the opposite.

11         That, as Mr. Schwed said, the unusual thing about a

12    case like this is the Government has this head-start, which

13    is based not just on the time it has and the CID powers, but

14    the fact that it's the Government allows it to go after the

15    third parties and say, "We want to talk to you about this

16    deal.  We want to hear about this."  They have a huge

17    head-start in the identification of witnesses, and the

18    defendants play catch-up.  And I'm not complaining about it;

19    it's just the reality of it.  They -- it's asymmetric for the

20    preinvestigation period.  Those are the rules, and we play

21    catch-up.  So be it.

22         As a result of that, there's just a lot of things

23    that we're not, sort of, ready to commit to for a long time,

24    because we're playing catch-up.  And instead, they're making

25    an argument that they're facing the potential for prejudice

1    by being the ones that learn about things late; and from

2    that, there's this idea of actually building into the

3    schedule something which is entirely novel.  It's not in any

4    of the templates -- they cite a lot of templates from their

5    other cases, Your Honor.  It's not in any of them to have

6    this supplemental discovery period, where it -- it's based

7    upon the idea that there's two rounds of initial -- of

8    witness disclosure.  And if somebody is on the second list

9    but not the first one, then you get this problematic period

10    of time to take discovery of them.

11            And all we said in response to that is we have got

12    background rules that we apply in every lawsuit, about what

13    happens if there is unfair surprise at some point in time.

14    And we don't need to anticipate that, in this case, those

15    rules will be inadequate.  And then simply write in a

16    provision that sort of automatically says that, if a name is

17    only on the second list, that there is both document and

18    deposition discovery, particularly when, if you look at the

19    calendar that we've created, that would occur in July, most

20    likely, which is, along with August, are the two most packed

21    months in this entire schedule.

22            And so our view is that -- a little bit of that

23    fear about Parkinson's law coming into this, and work will

24    expand the time that is permitted for this it.  And if we put

25    this thing in place, which is not necessary and is not

1    normal, then it's going to affect how people make disclosures

2    and it's going to end up creating -- you can just take it to

3    the bank that we will have a bunch of this discovery, when it

4    ought to be rare.  There's nothing about that that's

5    gamesmanship or trying to hem them in.  They've got every

6    opportunity over the next six months, on top of --

7            THE COURT:  Here's the question, though, Mr. Wall,

8    with respect to that, that I'm thinking about.  It's this.

9            MR. WALL:  Yeah.

10           THE COURT:  It's true that the standard form case

11   management order doesn't include that.  Mine, for example, as

12   you all pointed out, or any others of which I'm aware -- of

13   course, standard form is also not to -- this is essentially

14   the Rule 16 conference, or this is the Rule 16 conference, to

15   schedule, at least in most districts, a definite trial in

16   which there are no other cases on for trial at that time.

17   Because that's what I'm going to do.  I'm going to schedule

18   this for trial.  And I know one of you commented that it was

19   a long discovery period.  But I don't really think that this

20   was a long --

21           I mean, I will tell you that typically I think six

22   months for fact discovery, in a garden variety case.  This

23   case is not, in its complexity or scope, garden variety in

24   its size, as for no other reason witnessed by the number of

25   lawyers on the plaintiffs' side or the defendants' side.

1   This is not a diversity auto accident case in which there's
2   two drivers and one witness and maybe two reconstruction
3   excerpts talking about what happened in the course of four
4   minutes, if that.  And so -- and I understand why.
5          First of all, I commend all of you for agreeing to
6   all of the things that you did, because I think that
7   that's -- you'll be happier with what you agree with, than
8   laying it all before me and having me just dictate all of
9   these things, when you're much more familiar with the case.
10  And I think that -- so I commend all of you for that.
11         And no problem that you didn't agree on everything.
12  I understand how that works out.
13         But with this -- but it's my experience that, in
14  lots of cases, what happens at the end, people disclose
15  witnesses at the end, and there is this sort of -- the rules
16  don't particularly address it, and in a small case, where
17  there's a lot more time often between each stage, they're
18  more easily addressed.  But sort of the point that someone --
19  you can add someone late in the game, but then the other side
20  gets to have a deposition, sort of resolves some of that.  It
21  seems like a sort of reasonable resolution of it.
22         I understand that it, to some degree, front loads
23  back.  Typically witness lists will be filed closer to trial
24  than these dates you're talking about.  But on the other
25  hand, this whole process is compressed.  So I'm wondering,

1     given the compression, given the sort of schedule that we're

2     adopting with like we're going on whatever date in September,

3     or thereabouts, that why it isn't sensible to, sort of, in

4     some way, fair -- it may be that that's -- the motivation

5     that you ascribe to the Government may be their reason.  I'm

6     indifferent to that.  I'm -- I'm not moved, necessarily, by

7     their motivation, reason, but it's practical that, like, both

8     of you might be in this situation.  You could be in -- as you

9     point out, you're playing catch-up.  You could be in the

10    situation wanting to take advantage of -- and it seems fair.

11    That's what I'm wondering about.

12           So I'm wondering -- it's a long -- I'm not sure

13    it's -- not an example of the kind of question you should ask

14    at trial, but why isn't it fair, in the circumstances, (a),

15    to sort of push back the witness list, and (b), then to give

16    people the chance to take a deposition of someone who they

17    didn't know about?

18           MR. WALL:  Well, I think that you're not going to

19    get an argument from us that people shouldn't be able to take

20    a deposition of someone they didn't know about, but that's

21    precisely the point.  The point that we made to the

22    Government is, look, this is one thing if it is a person --

23    like, for example, in a case like this, witnesses are going

24    to come from different constituencies, like competitors

25    versus customers.  The competitor constituency is a small,

1    identifiable constituency, and nobody should be shocked if

2    either one of us puts a senior sales or strategy person from

3    another airline, you know, on a witness list, because those

4    people are in play right now.  We all know it today.  Before

5    we get initial disclosures, we know that those people are in

6    play.

7         On the other hand, if that's -- if it is like an

8    individual consumer that's going to testify, or something

9    like that, there's no way we would be able to figure that

10   out.  So people are not in a --

11        THE COURT:  But it's sort of the same, both those

12   groups, really.  Right?  Like you all know individual

13   consumers are in play, but you don't know which ones, right,

14   and there's too many to possibly figure it out.  And you all

15   know these sales marketing people are all in play.  But even

16   with the relatively -- I'm assuming what we're really talking

17   about is the four -- what they denominate as the four major

18   carriers, plus there's like six or eight others that they

19   list, sort of, that have the vast majority of the market

20   share, then you're talking about senior marketing or strategy

21   people from these companies.

22        But there's still a fair number of people at those

23   companies.  People come and people go.  There are people who

24   are in the industry; they went to a consulting firm; they

25   went somewhere else.  Like you might -- you know all of those

1   people who are in play, but you don't know, like -- and even

2   if you knew that X was, like, in the zone, if you haven't

3   talked to X, you might want to talk to X before the trial,

4   and like what's the problem?

5           MR. WALL:  Well, I mean, one of the problems is

6   we're just going to have to work on the schedule a bit more

7   to make this time happen.  Because if that's the case, it is

8   actually calling for earlier disclosure of witnesses, not

9   later, right?

10          THE COURT:  Right.

11          MR. WALL:  Which --

12          THE COURT:  As I understand it, so we're clear --

13          Maybe, Mr. Jones, correct me if I'm wrong, what

14  this is proposing is a bit earlier than otherwise would occur

15  disclosure of witnesses, the purpose being that both sides

16  get the chance, then, to be sure if they want to, they get to

17  take the deposition of people either in phase -- with list

18  one or list two.

19          MR. WALL:  Well, but this supplemental discovery

20  only applies to people who were not on the first list and

21  were on the second list.  Right?  So --

22          THE COURT:  Right.  But the first list you have a

23  crack at during regular discovery out of your 35, if you

24  haven't blown through all of your 35 already, right?

25          MR. WALL:  That is correct.  Indeed.  Right.  And

1    in fact, we ought to have a crack at them from the time of

2    initial disclosures, because, you know, they should be

3    identifying these people very, very shortly, not just in a

4    witness list, trial witness list.

5           THE COURT:  Sure.  If it's conceivable -- in fact,

6    not only conceivable, but it's almost guaranteed -- well,

7    you're saying the only people they're disclosing are the

8    people upon whom they're relying, not just people with

9    knowledge.

10          MR. WALL:  Right.  And so this is the thing that

11   maybe I'm losing the thread on, Your Honor, but they ought to

12   have a pretty good idea today who, during the yearlong

13   investigatory process, gave them, you know, colloquially,

14   good stuff.  And as a result of that is someone that should

15   at least be on an initial disclosure list.  And we will

16   depose them right away when -- you know, we'll make

17   judgments, but we will get on that and not back load it.  So

18   again, we're not trying to -- we're not trying to say that if

19   there's any kind of surprise, there shouldn't be a

20   deposition.  We're going to want that right, too.

21          THE COURT:  Right.  I see.

22          So what you're really saying is, given the

23   precomplaint investigation, they should have a pretty good

24   idea of who their people are, and so their Rule 26

25   disclosures will be identifying that.  Your Rule 26

1   disclosures about who you're relying on are likely to evolve,

2   because you're playing catch-up.  And so, even though it's a

3   seemingly two-way thing --

4              MR. WALL:  Right.

5              THE COURT:  -- it imposes more difficulty on you.

6   Because in order to accomplish it, it requires an earlier

7   disclosure of witnesses than otherwise would occur.

8              MR. WALL:  Right.  And then just fundamentally,

9   that the identification of trial witnesses is not supposed to

10  be kind of a critical path item in discovery.  It's supposed

11  to be -- you're culling down at that point.  Right?  That's

12  what we're supposed to be doing is culling down, not acting

13  as if that is when you're going to actually finally tell

14  people who you think the important third parties are.

15             THE COURT:  Okay.

16             MR. WALL:  Your Honor, I was going to discuss other

17  issues --

18             THE COURT:  Sure.

19             MR. WALL:  But in the interest of time, I'll just

20  go ahead and end there.

21             THE COURT:  Okay.  Mr. Jones, did you want to say

22  something?

23             MR. JONES:  Your Honor?

24             THE COURT:  Yeah, go ahead.

25             MR. JONES:  Yes, sir, Your Honor.  It seems like

1    part of the backdrop here of the dispute is, really, kind of

2    a fiction here about the Government's so-called head-start.

3              Your Honor, the defendants are the ones with --

4    with every day, nearly 24/7 access to their own executives,

5    their own employees, the people who negotiated the deals that

6    are at the heart of this case, the people who are

7    implementing these deals as we speak.  They have access to

8    those, ready access.  They have ready access to their own

9    documents.  So Your Honor, those will be critical items in

10   the case that they, of course, as they should, it's their

11   clients, to have ready access to.  But beyond that, Your

12   Honor, in thinking about third parties, particularly third

13   parties that fall in the category of customers, such as

14   business customers, corporate customers, they also have

15   business relationships with that category of folks where they

16   are aware of who they compete for and who they have competed

17   for, and they have relationships with those folks.

18             So Your Honor, this notion that the Government is

19   really ahead really just ignores a fundamental fact that

20   counsel for the defendants are working closely, I presume,

21   with their clients, who are in this industry every day;

22   whereas, on the plaintiffs' side, we're -- you know, we're

23   lawyers for the United States and for the plaintiff states,

24   we work on this industry now, we work on other things, but

25   we're not kind of in the day-to-day competitive scrum of

1    their industry with their employees.  So Your Honor, that's a

2    bit of a misnomer that I wanted to correct.

3            THE COURT:  Okay.  Thank you.

4            I'm going to think about this, but I'll resolve the

5    case management order issues -- I'm going to adopt the case

6    management order as to everything you agreed upon.  I'll

7    issue it shortly, once I resolve these couple other issues.

8    I want to think about what you said, all of you, and look

9    back at the disputed issues.  And I'll establish the trial

10   date on or about the date you propose.

11           Just a couple other quick questions.

12           For proceedings like this, I mean, there's a lot of

13   you, and none of you are here in Boston.  That was a

14   reflection of your own choices, and I can't account for that.

15   But it's generally, now -- "now" being the last couple

16   months -- been my practice for things, proceedings like

17   status conference and Rule 16s, to ordinarily do them by

18   Zoom, because Zoom is more than sufficient for that and it's

19   such an efficiency tool, but for motion hearings to typically

20   do those in person.

21           I am bringing this up because there's a lot of you,

22   and I understand that to have something in person just

23   requires a tremendous expense for everybody.  So I guess my

24   question for all of you is, if, for example, I have a hearing

25   on the motion to dismiss, once it's ripe, is there any reason

1   I shouldn't do it in person?  I'm not offended -- I've done a

2   lot of them during COVID not in person, but I'm wondering if

3   you have views about that?  Because if you don't, I'm telling

4   you about -- that's my general practice.  So what you would

5   expect, a status conference to be done by Zoom.

6           I'm happy to do any of them in person.  I'm here.

7   We're doing trials.  We're doing plenty of proceedings in

8   person.  I'm doing this by Zoom not because of COVID, but

9   because it just seems more efficient and practical.

10          So if you have a view about motion hearings -- the

11  final pretrial conference would probably be in person.

12  Obviously, I'm anticipating that the trial would be in

13  person.  But if you have general views about that and you

14  want to express them, you can express now or you can express

15  them another time.  But that's what I'm going to do, unless

16  somebody objects or suggests otherwise.  I'm happy to hear

17  the suggestion or objection.

18          MR. WALL:  I strongly agree with that.  I

19  definitely would like to do motion to dismiss hearings,

20  anything substantive in person.  And the travel is no issue.

21          THE COURT:  Okay.  All right.

22          MR. JONES:  Your Honor, we're amenable to that, as

23  well, on behalf of the United States.

24          THE COURT:  Okay.  Fine.

25          MR. SCHWED:  And for JetBlue, as well, we're

1  comfortable with what Your Honor proposes, with what tends to

2  be normal practice.

3          MS. OXENHAM ALLEN:  Your Honor, this is Sarah Allen

4  from Virginia.

5          THE COURT:  Hold on.  Let me just -- oh, there you

6  are.  Okay.  Go ahead.

7          MS. OXENHAM ALLEN:  I'm sorry, my camera doesn't

8  seem to be working.

9          THE COURT:  No problem.

10          MS. OXENHAM ALLEN:  But anyway, I was wondering if,

11  since there are so many plaintiffs, would it be possible to

12  have in-person hearings, but also on Zoom?

13          THE COURT:  Yes.  So for example, if the motion to

14  dismiss is being argued by Mr. Jones, just say, for example,

15  and the state AG plaintiff counsels are not planning -- not

16  planning on making oral argument at the hearing, yes, it's

17  totally fine.  And so we can work out a hybrid where you

18  could Zoom into the courtroom, and the other people would be

19  in court.  And that would be fine.

20          And you could -- when I schedule it, if I schedule

21  it in person for a hearing, substantive hearing like that,

22  and you want to come and you're either not planning on making

23  argument because you're relying on the Government, the

24  federal Government's argument, or it's a very tiny, niche

25  issue, maybe one small nuance related to something about

1    Virginia law, for example, or Virginia, then you could just
2    work that out with the clerk to appear by Zoom.
3              MS. OXENHAM ALLEN:  Okay.  Thank you, Your Honor.
4              THE COURT:  No problem.
5              All right.  Any other -- is there anything else
6    related to that?
7              Are there any other matters anybody else wants to
8    bring up that aren't ones that I brought up?
9              MR. JONES:  None for the United States, Your Honor.
10             THE COURT:  Okay.
11             MR. WALL:  No, Your Honor.
12             MR. SCHWED:  Nothing for JetBlue, Your Honor.
13             THE COURT:  You might want to think about this --
14   and I'm not going to schedule this now, but given that we
15   have this tightly integrated schedule, whatever I resolve
16   about the disputed issues, it might make sense to check in
17   along the way with some status conferences to be sure we're
18   on track.  And so I won't schedule one now, because
19   there's -- at least we'll see what happens on the motion to
20   dismiss, and we'll sort of have a hearing or what it looks
21   like after I see the response.  And so you can -- you should
22   feel free, if you think it would be helpful, at any point, to
23   just ask for it, and I'll schedule it.  That's not a problem.
24             The other thing that I'll just tell you, what I'm
25   about to tell you I'm imagining might be hypothetical, but

1    just in case it's not.  Sometimes parties in civil cases have

2    discovery disputes, and so I will tell all of you, I'm

3    perfectly content, if you can't -- if you're unable to work

4    it out, you can file a motion to compel or a motion for

5    protective order and an opposition and a reply, and I'll

6    address it and that's fine.

7        But one thing that I do in many cases -- I don't

8    require it, necessarily, and to some extent I rely on the

9    judgment of the lawyers as to whether this alternative

10   procedure for the particular issue makes more sense or not,

11   but what I find sometimes presents the issue faster, which,

12   in a case like this matters, I think, and often more than --

13   less expensively, is if you do a -- prepare and submit a

14   joint status report.  And I'll give you an example.

15       Suppose there's an interrogatory from -- it doesn't

16   matter which side, one side, and you're unhappy with the

17   answer.  So you give me -- you know, the joint status report

18   says, "Well, plaintiff served this interrogatory, and here's

19   the answer.  And here's the supplemental answer after the

20   meet and confer.  And here's plaintiffs' explanation," kind

21   of like you did in the -- about the issues you couldn't agree

22   upon in the case management order.  Here's plaintiffs'

23   position as to why a more fulsome answer is required, and

24   here's defendants' explanation of why not.  And it could be

25   one interrogatory, or it could be ten.  And I find that tends

1    to be faster than the motion -- two week response, week

2    reply, plus it's just all laid out there and each --

3            That's how I'm going to resolve the issues.  I'm

4    just going to put your papers together and resolve them that

5    way.  And you can group -- if there's three interrogatories

6    or three requests for production that turn on one --

7    essentially you win them all or you lose them all, probably.

8    Maybe there's some nuances a little bit, and you can present

9    those, but they make sense to be grouped together and thought

10   about together, you can present them altogether that way.

11           And so I'm not -- I don't require it.  It's a

12   practice that I often follow and suggest to people, because I

13   do think it saves time and money.  You'll get a faster,

14   better result from the Court.  So you might want to think

15   about that.  If -- I say it's a little bit hypothetical,

16   because you might be able to work everything out.  But if you

17   can't, okay.

18           I don't think I have anything else.

19           Anything else for the Government?

20           MR. JONES:  No, Your Honor.  Thank you.

21           THE COURT:  All right.  Anything else for you,

22   Mr. Wall?

23           MR. WALL:  No, Your Honor.  Thank you very much for

24   making the time for us today.

25           THE COURT:  Is it -- am I saying it right if I say

1    Mr. Schwed?

2              MR. SCHWED:  Yes, that's good.  Thank you, Your

3    Honor.  Nothing here, Your Honor.

4              THE COURT:  Good enough, or correct?

5              MR. SCHWED:  I say Schwed, but I am not very

6    particular.

7              THE COURT:  Okay.  Well, I would rather be right

8    than close enough.

9              All right.  Thank you very much.

10             MR. SCHWED:  Thank you, Your Honor.

11             THE COURT:  All right.  We're adjourned.

12             (Court in recess at 2:47 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5     and for the United States District Court for the District of

6     Massachusetts, do hereby certify that pursuant to Section

7     753, Title 28, United States Code, the foregoing pages

8     are a true and correct transcript of the stenographically

9     reported proceedings held in the above-entitled matter and

10    that the transcript page format is in conformance with the

11    regulations of the Judicial Conference of the United States.

12

13                        Dated this 24th day of January, 2022.

14

15

16

17                   /s/ RACHEL M. LOPEZ

18

19

20         _____

                   Rachel M. Lopez, CRR
21                 Official Court Reporter

22

23

24

25