**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA, ET AL.,

Plaintiffs,

v.

AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION,

Defendants.

Civil Action No. 1:21-cv-11558-LTS

**JOINT STATUS REPORT REGARDING DISCOVERY DISPUTE**

Defendants American Airlines Group Inc. ("American Airlines" or "American") and JetBlue Airways Corp. ("JetBlue") (collectively, "Defendants"), and Plaintiffs the United States of America and the States of Arizona, California, Florida, Massachusetts, Pennsylvania, Virginia, and the District of Columbia (collectively, "Plaintiffs") respectfully submit to the Court this Joint Status Report Regarding Discovery Dispute. Defendants respectfully request a hearing on this dispute. Plaintiffs do not believe this dispute requires a hearing.

Defendants served their First Set of Interrogatories (the "Interrogatories") to Plaintiffs on December 3, 2021, and Plaintiffs responded on January 3, 2022, with an amended response on February 4, 2022. *See* Ex. A (Pl.'s Resp. and Obj. to Def.'s First Set of Interrogs.); Ex. B (Amended Exhibit A). Defendants move to compel supplemental responses to their First Set of Interrogatories to Plaintiffs Nos. 1 and 6. Plaintiffs oppose the motion. Pursuant to Local Rule 37.1, the parties met and conferred on a teleconference on January 21, 2022, and then further via email, and were unable to resolve the dispute.

The Interrogatories at issue are:

- **INTERROGATORY NO. 1:**
  Identify all Third Parties, including counsel thereof, with whom You Communicated Relating To the Investigation and/or the Complaint and specify the date, time, participants, and information conveyed to You in connection with each such Communication.

- **INTERROGATORY NO. 6**
  State the Basis, based upon all information and facts currently known to You, (a) indicating that the Northeast Alliance has caused significant harms to consumers, and (b) of your allegation in paragraph 52 of the Complaint that "the Northeast Alliance likely will cause significant and wide-ranging harms to consumers across the country, including in Plaintiff States."

**Defendants' Position**

Defendants request that the Court order Plaintiffs to provide complete, substantive responses to Interrogatories Nos. 1 and 6. There is no arguable interest that justifies Plaintiffs' refusal to provide complete and fulsome responses to Interrogatories Nos. 1 and 6, and Plaintiffs' refusal to respond fully violates Rule 33(b) and substantially prejudices Defendants.

### A. Interrogatory No. 1 Calls For The Disclosure Of Facts That Are Not Protected Attorney Work Product

Plaintiffs investigated the Northeast Alliance (the "NEA") for more than a full year before filing their lawsuit. During that investigation, Plaintiffs apparently discussed the NEA with 53 third parties. Defendants' interrogatories ask what *facts* Plaintiffs learned in those interviews. Plaintiffs provided partial answers, identifying the dates and names of the participants in interviews, but they refuse to disclose facts learned from each on the basis that "such information is protected from disclosure by attorney work product." *See* Ex. C (Jan. 28, 2022 Email).

Plaintiffs' work product argument is categorical: they refuse to disclose *any* facts learned during those discussions with 53 third parties, including even basic facts about airline and airport options available to serve the third party's needs, or any stated basis for supporting, opposing, or remaining neutral toward the NEA. It is elementary, however, that *facts* disclosed by third parties are not attorney work product. The work-product doctrine "protects against disclosure of the

mental impressions, conclusions or legal theories of an attorney." Fed. R. Civ. P. 26(b)(3). Its purpose is to "protect the privacy of the attorney's mental processes," but it does not "extend to the underlying facts contained within" protected materials. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004); *see also Diaz v. Devlin*, 327 F.R.D. 26, 31 (D. Mass. 2018).

Courts have repeatedly rejected DOJ's attempts to apply the work product doctrine to shield from discovery the facts it learned from third parties interviewed during its investigations. *See, e.g.*, *United States v. Dean Foods Co*., No. 10-CV-59, 2010 WL 3980185, at *2 (E.D. Wis. Oct. 8, 2010) (noting a fairness issue in permitting DOJ to withhold "factual information obtained in interviews" because DOJ would "undoubtably rely on certain of the facts obtained from its third-party interviews in supporting its claims"); *United States v. Dentsply Int'l, Inc*., 187 F.R.D. 152, 154 (D. Del. 1999) (requiring DOJ to reveal facts underlying its allegations because DOJ was improperly "attempting [] to extend work product protection to the facts which form the basis of its antitrust lawsuit"). And indeed, the United States itself argued that the work-product doctrine does not protect underlying facts in *United States v. Massachusetts Industrial Financial. Agency*, in which it moved to compel the precise information Defendants seek here—information learned from third parties during interviews. 162 F.R.D. 410, 413 (D. Mass. 1995). Judge Neiman granted the motion on the ground that "the information the United States [was] seeking is not related to an attorney's work product." *Id*. The Court ordered that "information disclosed to the attorneys . . . in interviews with potential third-party witnesses need[ed] to be provided with specificity." *Id*.

This Court should reach the same result here. Defendants did *not* seek—and made it unmistakably clear to Plaintiffs that they are not seeking—Plaintiffs' protected work product. Defendants have not requested copies of Plaintiffs' interview memos or notes, a list of the questions asked, any of Plaintiffs' views or impressions about any of the third parties, their

strategies for the interviews themselves, or opinions about the information they obtained. Defendants only request, and are entitled to, the *facts* third parties conveyed to Plaintiffs. Indeed, the reason this motion is necessary is that Plaintiffs conducted interviews but *no depositions of third parties*, and now claim work product protection over the interviews.[1] Thus, for the vast majority of these third parties, the only way for Defendants to know the facts they conveyed, and for Defendants to be able to accordingly tailor their discovery efforts and resources, is for Plaintiffs to provide this information in its interrogatory response.

Plaintiffs argue that to respond to this interrogatory Plaintiffs would need to review their interview notes, and that compelling such a review would infringe upon their work product. That makes no sense, since Defendants would have no visibility into that process and are not asking for any. Defendants seek only disclosure of facts, which would come in the form of interrogatory answers Plaintiffs would draft. They could easily provide facts without revealing the specific questions asked, documents discussed, opinions about the information provided, or Plaintiffs' underlying strategy.

Plaintiffs also seem to be saying that work product is necessarily disclosed by revealing facts learned in interviews, *i.e.,* that it would be *impossible* to separate factual information from Plaintiffs' underlying legal strategies. That would mean that facts learned in attorney interviews are never discoverable, which is just not the law as *Massachusetts Industrial Finance Agency* and

[1] Plaintiffs' objections to this interrogatory note that they produced over 700,000 documents in their investigative file. But almost all of it related to *different transactions* or *unrelated conduct.* Only 2,549 documents in that file were created as part of Plaintiffs' lengthy pre-litigation investigation into the NEA, and the vast majority of those documents are non-substantive scheduling emails setting up phone interviews. And on the rare occasion that a third party expressed its position by email during the scheduling process (*i.e.*, before a phone interview took place), and that position was unfavorable to DOJ's case, Plaintiffs cut off contact even when the third party offered to discuss further. Ex. D (AAB6-DOJ-00004047).

many other cases show. Work-product protections cover intangible information only "when necessary to 'shield an attorney's mental impressions from discovery.'" *See, e.g., Arizona Grain Inc. v. Barkley Ag Enterprises LLC*, No. CV-18-03371-PHX-GMS, 2021 WL 3079858, at *1 (D. Ariz. July 21, 2021) (requiring production of statements made during interview because witness's answers "are not sufficiently tied to an attorney's mental processes to warrant protection"). It is therefore *Plaintiffs'* burden to establish that the factual information sought "reflects the attorney's focus in a meaningful, nonspeculative way." *Lobel v. Woodland Golf Club of Auburndale*, 2016 U.S. Dist. LEXIS 177423, at *5 (D. Mass. Dec. 22, 2016); *see also In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988) (noting that "not every item which may reveal some inkling of a lawyer's mental impressions . . . is protected as opinion work product"). Plaintiffs have not made that showing as to any fact learned from any third party, let alone all facts disclosed by all 53 third parties. Furthermore, the fact that this is an interrogatory and Plaintiffs will draft their response leaves them with ample flexibility to avoid disclosing their mental impressions while stating facts.

Plaintiffs' position that Defendants can contact every third party to discover the facts they conveyed is facially burdensome and unnecessary. *See* Ex. C (Jan. 28, 2022 Email). Plaintiffs' proposal would prevent Defendants from efficiently allocating their discovery resources.[2] *See* Fed. R. Civ. P. 1. Instead, easily the most efficient way for Defendants to obtain the facts to which they are entitled is to compel Plaintiffs to answer this interrogatory.[3]

---

[2] Plaintiffs' initial disclosures do not enable Defendants to prioritize third party discovery targets because the initial disclosures list witnesses *Plaintiffs* intend to rely upon at trial. Some of the most relevant information for *Defendants* is likely with witnesses who contradict Plaintiffs' position and so are not listed in the initial disclosures.

[3] If work product immunity applies, the facts requested here would be ordinary work product, not opinion work product, and Defendants have shown a "substantial need" for it sufficient to justify disclosure of the facts. *See City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 10 (D. Mass. 2000).

### B. Interrogatory No. 6 Requests Evidence That Goes To The Heart Of Plaintiffs' Claim; They Must Provide It Or Admit That It Doesn't Exist

This Court also should compel Plaintiffs to supplement their response to Interrogatory No. 6 or, if they have no information to provide, confirm that fact. Interrogatory No. 6 squarely confronts the most critical issue in this case, asking Plaintiffs to provide any "information and facts currently known to You . . . indicating that the Northeast Alliance has caused significant harms to consumers." *See* Ex. A at 18. Plaintiffs' response to this portion of the interrogatory does not identify any facts that shows that the NEA has harmed consumers, yet they simultaneously refuse to acknowledge that they have no such evidence. *See id.* at 18-23; Ex. C (Jan. 28, 2022 Email).

Plaintiffs' main objection—that proof of existing harm is not the relevant standard and this information is therefore irrelevant (which Defendants disagree with)—is meritless. *See* Ex. A at 19. First, a plaintiff must plead and prove facts showing "substantial anticompetitive effects." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). Even if Plaintiffs could meet this burden with "indirect proof" of "likely" effects (which they cannot), that would not foreclose Defendants from obtaining discovery concerning the existence of any actual anticompetitive harm. Relevancy is broadly construed and unquestionably encompasses *both sides* of the anticompetitive harm issue. Second, even if actual effects were not required, the presence or (likely) absence of actual effects more than eight months after the NEA was implemented is unquestionably relevant to Plaintiffs' core claim that the NEA is "inherently anticompetitive." Compl. ¶ 22.

Interrogatory No. 6 also is not "premature[]," as Plaintiffs assert in their objection to this interrogatory. *See* Ex. A at 19. Interrogatory No. 6 seeks information *currently* in Plaintiffs' possession, including facts gathered over the course of a year of investigating. Tellingly, Plaintiffs provided in other interrogatory responses the purported bases and evidence of other elements of their claim. If Plaintiffs have no facts showing that the Northeast Alliance has harmed consumers,

they should be required to make that clear. *See Guarriello v Family Endowment Partners, LP*, 2015 U.S. Dist. 178002, at *13 (D. Mass. 2015).

**Plaintiffs' Position**

**I. Interrogatory No. 1**

Defendants seek to invade Plaintiffs' work product by compelling the disclosure of all "facts" that Plaintiffs extracted during interviews conducted in anticipation of this litigation. But no transcripts or recordings of those interviews exist. Instead, any "facts" that Plaintiffs elicited through their questioning reside only in internal memoranda and notes created by Plaintiffs' attorneys, or those working under their supervision, for purposes of this litigation. The Supreme Court, courts in this Circuit, and other courts around the country have all held that such information is squarely protected by the attorney work product doctrine.

The work product doctrine allows an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). "Under ordinary circumstances, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production." *Id.* at 512–13.

Defendants know that they are not entitled to Plaintiffs' internal memoranda and notes created in anticipation of this litigation. So instead, as a workaround, Defendants' tactic is to contend that all they want is for Plaintiffs to write out the "facts" contained in Plaintiffs' work product. But that argument—made by the *same Defendant* against the *same Plaintiff* about the *same interrogatory*—has been rejected as a "a distinction without difference." *United States v.*

*US Airways Grp., Inc.*, No. 13-1236, 2013 WL 12341600, at *3 (D.D.C. Oct. 10, 2013) ("*US Airways*"), *adopted* 2013 U.S. Dist. LEXIS 206515, at *6 (D.D.C. Oct. 10, 2013) (unavailable on Westlaw); *see also United States. v. National Cinemedia, Inc.*, No. 14-8732, slip op. at 1 (S.D.N.Y. Feb. 5, 2015) ("*Cinemedia*") (Ex. E) (defendants' argument "exalts form over substance"). In *US Airways*, Defendant American Airlines contended, as now, that the U.S. Department of Justice should be required to draw "facts" from its attorneys' privileged work product and turn them over to the defendants. The Special Master rejected that argument. "The reality," the Special Master explained, "is that the interrogatory at issue ultimately is an effort by Defendants to find out what facts were important to Plaintiffs. From such factual analysis it is a very small step to looking at the facts deemed relevant to Plaintiffs' counsel and deriving insight and understanding into the legal theories and approaches of Plaintiffs." *US Airways*, at *3; *see also Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (disclosing material from interview memoranda necessarily "reveal[s] the attorneys' mental processes in evaluating the [information]"). *US Airways* is consistent with at least five other recent antitrust cases where courts have rejected the same attempts to force the government to recite "facts" learned in investigative interviews.[4]

This Court has previously rejected Defendants' argument as well. In *Dimaria v. Concorde Ent., Inc.*, a party moved to compel the disclosure of statements contained in incident reports, claiming that they were "purely factual in nature." No. 12-11139, 2013 WL 4056213, at

[4] *See In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-2724, 2022 WL 110423, at *2–4 (E.D. Pa. Jan. 11, 2022); *Fed. Trade Comm'n v. Staples, Inc.*, No. 15-2115, 2016 WL 259642, at *1–5 (D.D.C. Jan. 21, 2016); *Cinemedia*, at 1–2; *United States v. Apple Inc.*, No. 12-2826, slip op. at 2 (S.D.N.Y. Sept. 14, 2012) (Ex. F); *United States v. Blue Cross Blue Shield of Michigan*, No. 10-14155, 2012 WL 12930840, at *4 (E.D. Mich. May 30, 2012). Each of these courts has expressly or implicitly considered and rejected any prior case law to the contrary.

*2 (D. Mass. Aug. 9, 2013) (J. Sorokin). The Court denied the motion, concluding that the statements at issue "were shaped by specific questions discussed during the attorney's interviews and, thus, their content reflect[ed] her strategies, thoughts and mental impressions." *Id.* (*citing Hickman*, at 510). In the present case, Plaintiffs' specific questions have similarly shaped any statements obtained through third-party interviews.

"As the work product sought here is based on oral statements from witnesses, a far stronger showing is required than the 'substantial need' and 'without undue hardship' standard applicable to discovery of work-product protected documents and other tangible things." *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988). Here, Defendants have made no such showing. Nor could they. Plaintiffs have already given Defendants, to the extent available: (1) the name of every third party with whom Plaintiffs communicated during the investigation, (2) the date of every interview conducted; (3) the name of every individual who participated in those interviews on behalf of a third party; (4) every non-privileged written communication between Plaintiffs and third parties during the investigation; (5) initial disclosures, identifying each third party likely to have discoverable information that may support Plaintiffs' case; and (6), for each third party listed in the initial disclosures, a physical address, a phone number, and a list of specific subjects about which the third party is likely to have discoverable information. Even with all that information, Plaintiffs further offered to represent that the subject matters discussed in Plaintiffs' interviews accord with the subject matters listed in the initial disclosures. Defendants rejected that offer, instead seeking nothing less than Plaintiffs' work product.

Plaintiffs have provided Defendants with all they need to "conduct their own investigation and independently obtain facts and reach their own conclusions about the utility and importance of any information" without "piggyback[ing] on the fact-finding investigation of

their more diligent counterparts.'" *US Airways*, at *3. Indeed, most of Plaintiffs' interviews have been with Defendants' own customers or business partners. Defendants are uniquely positioned to conduct their own inquiries of those parties, and Plaintiffs understand that Defendants have already been doing just that for over a year. Defendants' motion to compel with respect to Interrogatory No. 1 should be denied.

## II. Interrogatory No. 6

Defendants' Interrogatory No. 6(a) is a broad contention interrogatory seeking "all information and facts . . . (a) indicating that the Northeast Alliance has caused significant harm to consumers." Ex. A at 18.[5] Despite the premature and overbroad nature of the Interrogatory, Plaintiffs provided a detailed response replete with factual support, including citations to Defendants' own documents. Ex. A at 18–23.

As Plaintiffs' response explains, before the Northeast Alliance, American and JetBlue competed vigorously in Boston and New York. The benefits of that competition included "lower fares," Ex. A at 20–21 (specific price reductions following JetBlue's entry into new markets); better service, Ex. A at 22 (American and other airlines "improved their front cabin product to better compete with [JetBlue's] Mint"); and increased capacity, Ex. A at 21–22 (JetBlue's impact on traffic at JFK airport, and American's plans to grow in Boston to compete against JetBlue). The Northeast Alliance eliminates that significant competition and diminishes American's and JetBlue's incentives to compete elsewhere across their networks for the benefit of consumers. *See id*. at 21–23. For the reasons explained in Plaintiffs' opposition to Defendants' motion to

---

[5] Unlike part (a), part (b) seeks support for a specific allegation in the Complaint—that the Northeast Alliance "will cause significant and wide-ranging harms to consumers." Ex. A at 18 (quoting Compl., Dkt. No. 1, at ¶ 52). Notably, Defendants have not moved to compel with respect to that subpart.

dismiss, that *is* harm to competition and consumers. *See* Plaintiffs' Opposition to Motion to Dismiss, Dkt. No. 80 at 9–21.

Defendants now seek to manufacture a dispute by claiming Plaintiffs have not provided all the facts Defendants think should be presented. But discovery has just begun, and Defendants only recently started to produce evidence that would allow Plaintiffs to further evaluate the Northeast Alliance's effect on consumers, including documents related to their implementation of the Northeast Alliance. The documents that Defendants produced in response to Plaintiffs' pre-complaint civil investigative demands cut off in September 2020—six months before Defendants actually began to implement the Northeast Alliance. *See* Defendants' Memorandum in Support of Motion to Dismiss, Dkt. No. 68 at 1 ("implementation began in February 2021"). The claim that Plaintiffs' response is deficient because it does not contain enough evidence, when Defendants themselves have not yet produced that evidence, is simply wrong. *See HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-11020, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021) ("[T]he requests are premature, particularly given that HealthEdge . . . [is] not in a position to exhaustively identify all documents supporting its claims and contentions.").

Defendants' objective is transparent. They do not want more detail, but instead are angling for a soundbite admission that Plaintiffs cannot currently show that the Northeast Alliance "has" caused harm to consumers. As explained above, Plaintiffs *have* shown harm to competition. In any event, Defendants' argument is premised on the same fundamental legal error as Defendants' motion to dismiss—that Plaintiffs must show the Northeast Alliance has *already* caused increased prices or reduced output before bringing suit, a contention that is contradicted by more than a century of well-settled law and should be soundly rejected. *See*

Plaintiffs' Opposition to Motion to Dismiss, Dkt. No. 80 at 9–21 (collecting law). Defendants' motion to compel with respect to Interrogatory No. 6 should be denied.

Dated: February 14, 2022

/s/ Daniel M. Wall

Daniel M. Wall (*pro hac vice*)
Elizabeth C. Gettinger (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com

Ian R. Conner (*pro hac vice)*
Michael G. Egge (*pro hac vice*)
Farrell J. Malone (*pro hac vice*)
Allyson M. Maltas (*pro hac vice*)
Marguerite M. Sullivan (*pro hac vice*)
Seung Wan Paik (*pro hac vice*)
Tara L. Tavernia (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant*
*American Airlines Group Inc.*

/s/ Richard Schwed

Richard Schwed (*pro hac vice*)
Matthew L. Craner (*pro hac vice*)

Jessica K. Delbaum (*pro hac vice*)
Martha E. Vega-Gonzalez (*pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
martha.vega-gonzalez@shearman.com

Brian Hauser (*pro hac vice*)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*

/s/ William H. Jones II
William H. Jones II
Grant A. Bermann
James H. Congdon
Marisa Dieken
Eric D. Dunn
Kate M. Riggs
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 7000
Washington, DC 20530
Phone: 202-514-0230
Facsimile: 202-307-5802
E-mail: bill.jones2@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/ Colin G. Fraser
Colin G. Fraser (FL Bar No. 104741)
Office of the Attorney General, State of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3300
E-mail: Colin.Fraser@myfloridalegal.com

/s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 727-2200
E-mail: William.Matlack@mass.gov

*Attorneys for the State of Florida, the Commonwealth of Massachusetts, and on behalf of the Plaintiff States*

**LOCAL RULE 7.1 AND 37.1 CERTIFICATION**

Pursuant to Local Rules 7.1(a)(2) and 37.1(b), undersigned counsel hereby certifies that counsel for Defendants has conferred with counsel for Plaintiffs regarding the relief requested in this motion, and Plaintiffs join in bringing this status report regarding the instant discovery dispute.

/s/ Daniel M. Wall
Daniel M. Wall

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Daniel M. Wall
Daniel M. Wall