# EXHIBIT C

**From:** Bermann, Grant (ATR) <Grant.Bermann@usdoj.gov>
**Sent:** Friday, January 28, 2022 1:36 PM
**To:** Gettinger, Elizabeth (Bay Area) <Elizabeth.Gettinger@lw.com>; Maltas, Allyson (DC) <Allyson.Maltas@lw.com>; Wall, Dan (Bay Area) <Dan.Wall@LW.com>; Malone, Farrell (DC) <Farrell.Malone@lw.com>; Sullivan, Marguerite (DC) <Marguerite.Sullivan@lw.com>; Baldia, Panya (DC) <Panya.Baldia@lw.com>; Tavernia, Tara (DC) <Tara.Tavernia@lw.com>; Paik, Andrew (DC) <Andrew.Paik@lw.com>; Matthew.Craner@Shearman.com; Jessica.Delbaum@Shearman.com; RSchwed@Shearman.com; Brian.Hauser@Shearman.com; Martha.Vega-Gonzalez@Shearman.com
**Cc:** Jones, Bill (ATR) <Bill.Jones2@usdoj.gov>; Riggs, Kate (ATR) <Kate.Riggs@usdoj.gov>; Congdon, James (ATR) <James.Congdon@usdoj.gov>; Evans, Jeremy (ATR) <Jeremy.Evans2@usdoj.gov>; william.matlack@state.ma.us; Colin.Fraser@myfloridalegal.com
**Subject:** United States v. American Airlines: Plaintiffs' Responses to Defendants' Interrogatories

Hi Beth,

I write to follow-up on our meet-and-confer of January 21st in connection with Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories (the "Response") that we served back on January 3rd.

## Interrogatory No. 1

In response to Interrogatory No.1, Plaintiffs provided a chart attached as Exhibit A that identified each third party we communicated with in connection with our investigation of the Northeast Alliance and subsequent complaint, as well as a point of contact for each third party. Defendants requested that Plaintiffs provide additional information identifying the specific individuals with whom we had spoken and dates of contact.

As you are aware, Plaintiffs previously produced to Defendants numerous written communications with third parties relating to the Northeast Alliance. We understand Defendants to have agreed with Plaintiffs' position during our January 21, 2022 meet-and-confer that these communications need not be logged and accordingly Plaintiffs do not intend to supplement Exhibit A with the dates and participants of written communications with third parties.

With respect to oral communications with third parties, Plaintiffs note that they do not comprehensively log the dates and participants of all their oral communications with third parties, many of which are nothing more than missed calls or calls placed to schedule interviews. Nonetheless, Plaintiffs will provide an updated Exhibit A identifying further information about interviews conducted with third parties. Specifically, Plaintiffs will supplement Exhibit A with two additional columns identifying, as applicable and to the extent we have such information: (1) any individuals with whom Plaintiffs spoke during any such interviews, and (2) the date(s) those interviews occurred. If those two additional columns are empty, then that indicates no interview took place with the third party. Plaintiffs plan to provide an updated Exhibit A by February 4th.

Separately, Defendants requested that we identify all the specific factual topics that we discussed with the third parties during our calls. Plaintiffs will not agree to do so. As we identified in our Response, and explained further on the meet-and-confer, such information is protected from disclosure by attorney work product privilege. As we explained, and as you already know, the interviews were conducted as part of our

investigation into the Northeast Alliance.  Identifying further each specific factual topic discussed during an interview would reveal case strategy and require review of memoranda or our notes containing attorney mental impressions and work product, material that is squarely protected by privilege.  As we told you on the meet and confer, there are no transcripts or recordings of any interviews with third parties and accordingly it would be impossible to respond to your request without intruding on privilege.  Defendants now have all the information you need to contact the same third parties to learn information you deem helpful to your case

**Interrogatories No. 2-4 and 6-10**

Defendants also raised issues concerning Plaintiffs' lengthy responses to these interrogatories.  Your general point, which applied to all these interrogatories, appeared to be that Plaintiffs should have provided "more" information.  Plaintiffs do not agree.

For example, Interrogatory No. 2 sought the basis for Plaintiffs' allegation in the complaint that the "three global alliances (oneworld, SkyTeam, and Star Alliance)" operate as "de facto mergers."  On our meet and confer, we understood Defendants to claim Plaintiffs' response was deficient because it was not "specific" to those alliances.  But that is simply incorrect.  In fact, we quoted JetBlue's CEO Robin Hayes' characterization of the "three large joint ventures," *i.e.*, oneworld, SkyTeam, and Star Alliance, as functionally "hav[ing] a permission slip to collude, set pricing, set scheduling together."  *See* Response at 7.  The response also included JetBlue's complaints – prior to entering the Northeast Alliance – about antitrust-immune joint ventures, of which the three global alliances are examples, including JetBlue's submission to the United Kingdom's Competition and Markets Authority that one such alliance involving American operated as "effectively a merger."  *See id*.  The rest of the response contained numerous citations to Defendants' documents, testimony, and public statements supporting the position that the three specific global alliances identified in the complaint operate as "de facto mergers."

Similarly, Interrogatory No. 3 sought information about an allegation in the complaint that "many passengers traveling to and from JFK or LaGuardia do not view service to Newark Liberty as a reasonable substitute to JFK or LaGuardia."  In response, Plaintiffs provided a detailed response with extensive document citations and testimony from Defendants' executives in which they repeatedly admitted that Newark is distinct from JFK and LaGuardia.  Those admissions include that Defendants offer different pricing by airport and that the airports have different catchment areas from which passengers are drawn—both of which are a function of passenger behavior.  This included prior testimony from JetBlue's Head of Revenue and Planning in which he admitted that Newark had a "very different" catchment area from LaGuardia and JFK.  Response at 10.  We also quoted from other industry participants making this same point.  In our meet and confer, Defendants suggested that this detailed response was somehow deficient on the ground that Defendants expected Plaintiffs to have included quotes or facts gathered from individual passengers.  Plaintiffs believe the detailed information contained in the response fully answers the Interrogatory.

Your points about the other interrogatories were in a similar vein and so there is little point in addressing each in turn.  To be clear, Plaintiffs are not required to provide each and every fact and detail, as such a requirement is overly broad and unduly burdensome.  Nevertheless, Plaintiffs here have properly answered each and every Interrogatory, with 53 pages of responses that each include significant factual detail supported by citations to documents, testimony, and publicly available information.  The Response is more than sufficient under the requirements of the Federal Rules.

Regards,
Grant

**Grant Bermann**
Attorney | U.S. Department of Justice | Antitrust Division

450 Fifth Street NW, Suite 8000
Washington, DC 20530-0001
Phone: 202-436-2651
Email: grant.bermann@usdoj.gov