1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
2

3     _____

4     UNITED STATES OF AMERICA, et al.

5          Plaintiffs,                      Civil Action No.
                                            1:21-cv-11558-LTS
6        v.

7     AMERICAN AIRLINES GROUP, INC.,
      et al.,
8
             Defendants.
9

10    _____

11

12        BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

13

14                      STATUS CONFERENCE
                        Via Videoconference

15

16                  Wednesday, August 17, 2022
                           3:02 p.m.

17

18

19

20

21    John J. Moakley United States Courthouse
      One Courthouse Way
22    Boston, Massachusetts

23
      Rachel M. Lopez, CRR
24    Official Court Reporter
      raeufp@gmail.com
25

1                      **A P P E A R A N C E S**

2

3     On behalf of the Plaintiff United States of America:

          UNITED STATES DEPARTMENT OF JUSTICE
4         BY:  WILLIAM H. JONES, III
          450 Fifth Street, Northwest
5         Suite 8000
          Washington, D.C.  20530
6         (202) 514-0230
          bill.jones2@usdoj.gov
7


8
      On behalf of the Defendant American Airlines Group, Inc.:
9
          LATHAM & WATKINS, LLP
10        BY:  DANIEL M. WALL
          505 Montgomery Street
11        Suite 2000
          San Francisco, California  04111
12        (415) 391-0600
          dan.wall@lw.com
13


14
      On behalf of the Defendant JetBlue Airways Corporation:
15
          SHEARMAN & STERLING LLP
16        BY:  RICHARD F. SCHWED,
          599 Lexington Avenue
17        New York, New York  10022
          (212) 848-4000
18        richard.schwed@shearman.com

19

20

21

22

23

24

25

1                    **P R O C E E D I N G S**

2              (In open court.)

3              THE DEPUTY CLERK:  The United States District Court

4    for the District of Massachusetts is now in session, the

5    Honorable Leo T. Sorokin presiding.

6              Today is Wednesday, August 17th, 2022, and we are

7    on the record in civil action 21-cv-11558, the United States

8    of America, et al., versus American Airlines Group, Inc., et

9    al.

10             Will counsel identify themselves for the record.

11             THE COURT:  You don't all have to identify

12   yourselves.  Why don't we just start -- whoever is going to

13   speak is fine.

14             For the government?

15             MR. JONES:  Good afternoon, Your Honor, Bill Jones

16   with the Department of Justice for Plaintiff United States.

17             THE COURT:  Good afternoon.

18             MR. WALL:  Good afternoon, Your Honor, Dan Wall,

19   Latham & Watkins, for American Airlines.

20             THE COURT:  Good afternoon.

21             MR. SCHWED:  Good afternoon, Your Honor, Rich

22   Schwed, Shearman & Sterling, for Jet Blue.

23             THE COURT:  Good afternoon.

24             Okay.  So is the first and primary issue when are

25   we going to have trial, not just -- but which particular days

1    and times?  Or are there more issues than that that you wish

2    for me to resolve?

3            MR. WALL:  Your Honor, this is Dan Wall.  There are

4    a few related things, certainly that the input into a lot of

5    the things that we need to work on together with the

6    plaintiffs is -- is just understanding the trial schedule and

7    how many days, which days are dark, and, you know, just

8    things like that.

9            THE COURT:  Sure.

10           MR. WALL:  We have a lot of meeting and conferring

11   to do on trust clocks, and things like that, all of which

12   matter.

13           The second thing has to do with a notice to some of

14   the distant witnesses, in particular the senior executives

15   that we would -- we would like to talk about that.

16           There's a couple of -- of other points that have to

17   do -- that help us figure out how the trial will go and the

18   length of the trial, such as how Your Honor wants to receive

19   a deposition designation -- designations and resolve

20   objections to exhibits.

21           And I guess the final thing that we would just like

22   to have Your Honor's views on is how we're going to deal with

23   confidentiality issues, because, typical in a case like this,

24   there's lots of both party and third-party confidential

25   information, and any guidance that we could get from

1    Your Honor about how we're going to deal with that would be

2    very welcome.

3              THE COURT:  Okay.  Let me start with the first,

4    which is the potentially easiest.

5              In terms of scheduling, the following for sure.  We

6    start on -- I was thinking, or planning that we start on

7    Monday, 9/26.  And so excepting the Jewish holidays, and any

8    other religious holiday that somebody else celebrates -- and

9    if they do, then they need to tell me.

10             When I say the "Jewish holidays," I should be clear

11   that what I mean is, for me, we won't sit for the first day

12   of Rosh Hashanah, and we won't sit the one day of Yom Kippur.

13   I haven't looked at the calendar at the moment to map those

14   to when they fall, and the like.

15             If someone doesn't want to work on the second day

16   of Rosh Hashanah, or there are other Jewish or other

17   religious holidays they want to celebrate, tell me, and we'll

18   accommodate that in some way.

19             So with that in mind, starting on 9/26 for -- you

20   talked about three weeks.  So I have for those next --

21   starting on 9/26, those three weeks, for sure, every day,

22   9:00 to 1:00.  9:00 a.m. to 1:00 p.m.  That's blacked out.

23   The only exception to that is, obviously, we're closed on

24   Monday, the 10th.

25             I'm open to, if you wanted to, you know -- if you

1   want to start at 8:30, either always or sometimes, if that's

2   helpful, I'm open to do that.  I prefer -- well, so I leave

3   that as a possibility.

4            In terms of afternoons, I'm open to sitting in the

5   afternoons.  I have some other -- I have other proceedings,

6   so I can't -- as I sit here now, I can't promise you every

7   single afternoon in that three-week window.  I certainly

8   can -- some of it depends on all of you.  I'm happy to do two

9   things in the afternoon.  I can identify afternoons where I

10  may be able to give you the whole afternoon.  So say we're on

11  trial 9:00 to 1:00, and then we broke for lunch, and then we

12  resumed at 2:00, and I can give you until 2:00 to 4:00, 4:30.

13  I mean, I can go past that, but I worry that that's a long

14  time for everybody, particularly me, to focus just on what

15  you're presenting.  But something like that.

16           There are other days, if it works for you, that I

17  can't give you the whole afternoon, because I might have some

18  other proceeding, but I can give you some of the afternoon.

19  So if you're open to that, I can tell you, "Well, this day

20  you could have 2:00 to 3:00," or, "On this day you could have

21  2:00 to 3:00 and 4:00 to 5:00," or something like that.

22           So if, in addition to the 9:00 to 1:00, you want me

23  to identify blocks of time in the afternoons, I'm happy to do

24  that.  And I could issue something -- I'd need to go back

25  over the calendar a little more carefully than in this status

1    conference, but I could get you something, issue something by
2    probably next week some time that would tell you, "Here's
3    times you can count on that you have me for in the afternoons
4    during those three weeks, blocks of time."
5          MR. WALL:  I think that would be great, Your Honor,
6    if you could do that.  I'm pretty sure that I speak for all
7    of us that we will consume all of the hours that you offer up
8    to us.
9          THE COURT:  Okay.  So what I'll do, then, is -- I
10   should be able to get that done by the middle of next week.
11   I'll give you something that tells you each day blocks of
12   time.  You can -- you can already know that it will be 9:00
13   to 1:00 every day, but I'll tell you other blocks of time in
14   the afternoons.
15         I take it that three weeks remains reasonable?
16         MR. WALL:  Yes.
17         MR. JONES:  Your Honor, Bill Jones for the United
18   States.  If I may, Your Honor, three weeks does remain
19   reasonable, though I would ask Your Honor if we could revisit
20   this once we get the full schedule of the afternoons that
21   Your Honor would be available and the partial afternoons
22   Your Honor would be available.
23         THE COURT:  Sure.  Okay.  You can further answer
24   that after you look at that.
25         MR. SCHWED:  And Your Honor, if I may, I don't want

1  to start with a negative, but I do believe the 26th is the

2  first day of Rosh Hashanah.

3            THE COURT:  Oh.  Thank you.  Then we won't sit that

4  day.

5            MR. SCHWED:  And I think, from my client's

6  perspective, I think there may be a witness or two who

7  couldn't do the 27th, but I don't think that affects whether

8  we go forward.  There may just be a witness ordering issue if

9  we actually get to witnesses on the 27th.

10            THE COURT:  So my suggestion on that is, number

11  one, for something like that, we shouldn't call that witness

12  on the 27th.  We should take them out of order.  And all of

13  you should work together to figure that out.  I'm not going

14  to make anyone come to court as a witness on a day that they

15  would -- that they would be celebrating a religious holiday

16  that would preclude them in their view to testifying.  So my

17  view would, then, the lawyers and I should accommodate that,

18  and that person will testify on the 28th or the 29th or some

19  other day.  No problem with that at all.

20            So Rosh Hashanah starts on Sunday evening, the

21  25th?

22            MR. SCHWED:  That's what my calendar says.

23  Your Honor.  I believe it's right.

24            THE COURT:  I have no idea.  I haven't looked.

25            MR. SCHWED:  Yeah.

1            THE COURT:  All right.  I think that might be

2    right.  All right.  So then we will start on the 27th.

3            And I think if I were to add days, a day to make

4    that up or a day to make up the federal holiday, I'd likely

5    add it at the other end, rather than beforehand.  I assume

6    you all prefer that, as well.  Okay.  So that's the first

7    item I'll put out the schedule.

8            In terms of deposition designations and objections

9    to exhibits, so let me say one thing, and then I'd like to

10   hear you a little more about what you mean by that and what

11   you're thinking about.  I'm assuming -- correct me if I'm

12   wrong -- that when we're done with the trial, you are all

13   going to want to submit proposed findings of fact and

14   conclusions of law, and you're not going to want to do that

15   until after all the evidence is in; is that right?

16           MR. WALL:  That's correct, Your Honor.

17           MR. JONES:  Yes, Your Honor, that's correct.

18           THE COURT:  Okay.  So the deposition designations,

19   are these designations of depositions that you wish to admit

20   into evidence in lieu of the person testifying live?

21           MR. WALL:  Yes.  That's what we're talking about,

22   yes.

23           THE COURT:  Okay.  So I would say as to that, for

24   the designations, you need to provide me whatever it is I'm

25   going to read, and the -- either the whole thing and the

portions marked.  And then, if it's helpful, if in the
witness -- if in the presence of the trial, it's helpful for
me to have read, you know, deposition X of Mr. Jones, before
day 6 of the trial, because the witness on day 6 in some way
knowing what that -- what the deposition says is meaningful
to understand it, I would like you to tell me that and
provide it to me in advance to read.  And I will do that.
I'll read it in advance.

So in terms of objections, you know, I guess it's a
little bit different than -- ordinarily I would say I want to
resolve the --

If this were a jury trial, I would tell you this:

Make your motions in limine in advance.  I'll
resolve them or defer them.  We meet every morning before
9:00 a.m. to go over your objections and evidentiary issues
that relate to that day, so we wouldn't waste the jury's time
watching us argue about things at sidebar.  And then I would
resolve them as they came up, if I hadn't resolved them in
advance or in the morning.  Here it's a little bit different
because there is no jury.

And so -- but still, I think in some general way --
I'd rather not resolve all of the evidentiary issues
afterwards.  I'd rather resolve them as we go.  It seems to
make more sense or in advance.  But I'm not sure what
you're -- beyond that general overview, what you're exactly

1    driving at.

2              MR. WALL:  Your Honor, if I may, I mean, I think

3    the issue with -- is there are a lot of exhibits that are

4    going to be put on the list, probably a lot more exhibits

5    that you'll ever read or ever need to deal with.  And while

6    that's on us, it's just the reality of how this happens.  And

7    our proposal is that the Court resolve and make any decisions

8    about the admission of exhibits as they are used.  That

9    limits it to your work to only having to deal with the

10   objections that pertain to something that is used and not

11   just the great mass of documents.  And that's how we would do

12   it.

13             Now, we realize fully that sometimes in court

14   trials, the judge will just hear the objection and just say,

15   "I'll take it under advisement," and move on.  But even

16   that's better than a process where we have to try to make

17   what could be a very, very large number of unnecessary

18   determinations of admissibility.

19             THE COURT:  Mr. Jones, what do you say?

20             MR. JONES:  Your Honor, the process for dealing

21   with objections to exhibits has been in place, and we've

22   lived under that -- that laid-out process in the case

23   management order since November of last year.  We think -- we

24   think these should be adjudicated in advance as best we can.

25   The parties should work hard to narrow the number of disputes

1    that are presented to Your Honor, but we think we can push

2    through and resolve these in advance.  And in part,

3    Your Honor, not all of the exhibits will be necessarily for

4    live presentation.  Some will be cited in the papers, as

5    Your Honor mentioned, in the post-trial papers.

6            We think that one purpose of having exhibit lists

7    due two months before trial was to try to resolve these as

8    best we can in advance.  And that's consistent with the CMO,

9    and it's consistent with what we understand the local rules

10   lay out, in terms of trying to resolve these issues before

11   trial.

12           THE COURT:  Print the case management order.

13           I just want to take a look at the case management

14   order.

15           So what you're saying is that -- I confess, I

16   apologize, I didn't reread that.  I haven't looked at it

17   since I approved it a year ago.  But what you're saying is

18   what's laid out in the case management order is a process to

19   disclose exhibits, resolve objections, sort of as typically

20   occurs before any civil trial.  And then what's left gets

21   resolved by way of motions or objections in the course of the

22   pretrial and trial phase, Mr. Jones?

23           MR. JONES:  Yes, sir.  That is exactly what I'm

24   suggesting and laying out.

25           MR. WALL:  Your Honor, if I may.

1          THE COURT:  Yeah.

2          MR. WALL:  Actually, the case management order

3   doesn't require the Court to resolve things at any given

4   point of time.  That's why we're having this disagreement.

5   It requires this exchange.

6              To give you a sense of why we're balking a little

7   bit in trying to process all of this, the plaintiffs put

8   1,800 exhibits -- actually, excuse me, the combined number of

9   exhibits is 1,800 that we put on this.  We're not going to

10  use 1,800 exhibits in this trial.  And so, you know, rather

11  than go through a process that I think is largely pointless

12  of trying to figure out the admissibility of 1,800 exhibits,

13  we just thought it made sense to actually impose some

14  discipline on the process by limiting the arguments over

15  admissibility to those that people feel are worth making at

16  the time that something is used.

17         THE COURT:  Give me a minute to -- I'm just

18  printing out the CMO.  Let me take a look at one thing there.

19             (The Court reads the CMO.)

20         THE COURT:  Well, Mr. Wall, here's my question.

21  Like most case management orders, this imposes lots of

22  obligations on you, and not very many on me.  So my question

23  is, are you saying to me, "Look, Judge, we're going through.

24  We're partway through the process," by the dates, assuming

25  you're on track, "and what we're saying is we might submit

1    and say we object to all of these things, but we'd rather not

2    have you engage us lawyers in a process where you adjudicate

3    the admissibility of the 1,800 exhibits, but rather defer

4    that -- subject to one or two exceptions I'll describe, defer

5    that to when they come up, because many of them may just fall

6    away.  And we'll have done that process.  We'll have narrowed

7    it, and we won't have resolved them all, obviously."  And

8    then you'll make them and make them as they go.  But what we

9    don't want to -- what you're asking me is, "Don't, Judge,

10   plan on having hearings, and don't feel the need to rule on

11   all," however many of the objections there are, but

12   presumably a fair number.

13         The exception to that approach is that maybe you or

14   Mr. Schwed or Mr. Jones may want to make an evidentiary

15   motion in limine that's sort of more broad-based, rather than

16   about the admissibility of this question/answer in line 800

17   of this deposition.  But it might be there's a line of

18   evidence, or what have you, that is not admissible, or it is,

19   and then may want to make that.  And that may be worth --

20   that probably is worth, if there is such a swath --

21         MR. WALL:  Yes.

22         THE COURT:  -- making the motion.  And I might

23   adjudicate that, or I might hear it and defer adjudicating it

24   until I hear the evidence.  You're not talking about that.

25   You're talking the first piece.

```
 1          MR. WALL:  I am.  And everything you're describing
 2     is capturing our thinking exactly, Your Honor.
 3          THE COURT:  So you're thinking, then, you're not
 4     asking me, for example, in the case management order, it
 5     says, "Submit this joint submission," by this date.  You're
 6     not saying, "Don't do that," which is part of what Mr. Jones
 7     sounds like he wants to do.  You're saying, "After you get
 8     that, Judge, we don't want you to engage us, necessarily, in
 9     a process about every single one."
10          MR. WALL:  I think that, Your Honor, that we will
11     find that a lot of the disputes that might be indicated by
12     that submission will disappear in the course of the trial and
13     never require your attention.  So that's the benefit of
14     deferring it.
15          THE COURT:  So if -- are you asking me to defer the
16     ruling, or are you asking you to defer the submission?
17          MR. WALL:  The ruling.
18          THE COURT:  Yeah.
19          MR. WALL:  The idea is --
20          THE COURT:  I think I got it.  Hold on.
21          MR. WALL:  Yeah.
22          THE COURT:  So what you're saying is, you want to
23     do all the things that are set out in the CMO about the joint
24     submissions and the conferrals.  You simply don't -- what
25     you're telling me, really, is that the army, I imagine, that
```

1    is behind you and Mr. Schwed, that they may come up with a

2    large number of objections, and you don't want to -- me to

3    think that you are going to be asking me to, like, resolve

4    those.  Really what you want me to do is then when I get all

5    of that, putting aside ones that are the subject of an actual

6    motion in limine because they're broad-based or they're

7    larger or they determine whether an expert is admissible, or

8    what have you, something like that, that those -- that it

9    would be most efficient for me, in your view and for all of

10   you lawyers, is for me to resolve those as we go, that is, as

11   the trial is occurring.

12              MR. WALL:  Exactly, Your Honor.

13              THE COURT:  That doesn't seem -- at least what

14   you've told me so far, Mr. Jones, that doesn't disagree with

15   anything that you've described.

16              MR. JONES:  Well, Your Honor, if I may.

17              THE COURT:  Yeah.

18              MR. JONES:  Stepping back just for a moment.  There

19   are not objections lodged to the entire list of around 1,800

20   documents, so we're not dealing with all of them.

21              THE COURT:  Sure.

22              MR. JONES:  Some of the exhibits on both lists are

23   objected to.  So we're not dealing with 1,800.

24              The second point that I would make, Your Honor, is

25   the meet-and-confer process just started to try to resolve

1    these.  And I think it's incumbent upon both sides here to
2    engage in that process to try to resolve some objections, at
3    least as many as we can work through, on each of the
4    documents that -- that we have disagreements over, to narrow
5    the set.
6          Right now, we can't say definitively for Your Honor
7    how many disputes over documents or even buckets of documents
8    would exist after completing rigorous, good-faith
9    meet-and-confer process to try to resolve the objections that
10   we've exchanged over the initial list.
11         THE COURT:  I think one thing that you both need
12   to -- or all three of you need to think about is this.  You
13   need to engage in a meaningful way in the meet-and-confer
14   process so that you'll know -- to narrow, number one, the
15   extent of the objections, and, two, so you each understand
16   what the nature of the objections are.  And you particularly
17   need to do that not so much for questions of waiver or
18   something like that, but because it will -- for these
19   reasons:
20         One, it will make a better presentation for all of
21   you and a better argument about the evidentiary issues, to
22   the extent you've engaged with it and each side knows what
23   the other side is thinking and can be prepared to respond to
24   it.
25         And the second reason is because this is a bench

1    trial, if, suppose, there's an issue that arises in --

2    Mr. Wall, you object to something that Mr. Jones has, or vice

3    versa, and the proponent of the evidence is, "Well, Judge,

4    they didn't bring that up in the meet-and-confer," you know,

5    what have you, what -- I'm not saying this happens every

6    time, but a possibly scenario, depending on what it is, is

7    like, well, okay, here's what it is; and I can take it under

8    advisement, and you can figure it out.  I can't as easily do

9    that in a jury trial, but I can do that here, and that, to

10   some extent, drags out the proceedings, which isn't to the

11   benefit of any of you.

12         So I think the answer to this at the moment, I'm

13   going to think about -- first of all, I'm really glad you

14   brought it up because it's very helpful.  And the answer is I

15   do think that you should engage in a meaningful way in the

16   meet-and-confer process, so you understand the nature of each

17   other's objections so you can engage with it, you can deal

18   with it.  That is fair for all of you, and it makes it easier

19   for all of you to plan about what likely will get into

20   evidence.  You can make your assessments about that or what

21   objections you can overcome.

22         And I think the answer to the resolution of the

23   question is simply it kind of depends, which is sort of where

24   I started before.  There's obviously big-picture evidentiary

25   issues that I would resolve or try to resolve that affect the

1    scope of the evidence, or what have you, if they're capable

2    of resolution.

3            I think, as a practical matter, it's likely, I

4    think -- I'm not telling you anything that you don't know

5    when I say that I would think it's conceivable that the

6    armies that at least the defendants have and the department

7    may have its own army, I don't know, are capable of

8    generating more evidentiary objections than I'm capable of

9    rendering a detailed federal opinion on every single

10   evidentiary issue.

11           I'll resolve everything that I have to resolve

12   that's put to me, and I'll do it to the best of my ability.

13   And I won't, like, compromise a careful resolution.  But so I

14   will -- but depending on how many there are, I have to -- I

15   will adjust how I do it.  If there's one evidentiary issue

16   and it's worthy of an opinion, I might write it.  As you

17   know, I'm not writing an opinion about 500 evidentiary

18   objections.

19           And I don't know if that is sufficiently

20   clarifying, but I think that they're -- oftentimes there are

21   evidentiary issues that can't be resolved until I hear the

22   evidence.  And I certainly don't intend -- there's enough

23   difficulty issues, likely, that will be presented to me in

24   this case that I don't intend to resolve more than I need to

25   or resolve questions that I don't have to resolve.

1          MR. WALL:  Thank you, Your Honor.  I think we're

2     good for now.  Thank you.

3          THE COURT:  Okay.

4          MR. JONES:  Your Honor, if I may?

5          THE COURT:  Yes.

6          MR. JONES:  One additional point on this topic.

7     For those -- for those exhibits that are unobjected to, on

8     either list, we would ask that those exhibits at the

9     appropriate time be both admitted, if there are no objection

10    lodged by either side.

11         THE COURT:  I guess I would -- my thought would be

12    this.  If there are no objections, then they're available to

13    either -- to anybody to put into evidence without a problem.

14    And I'm happy to do it the -- if you -- I have no problem

15    with somebody saying, "We want to offer now these one, ten,"

16    however many, "exhibits that are not objected to; we just

17    offer them into evidence."  And you can do that, and that's

18    fine.  And you don't -- if there's no objection, you don't

19    necessarily need to have a witness or other things,

20    foundation, or what have you.

21              The only observation that I would make about that

22    is that it -- you should think about what you want me to look

23    at.  So if you admit it into evidence, I will think it's

24    something that I should look at.  And though I understand why

25    there will be some things that maybe there's the back --

1        For example, you might have ten exhibits -- you
2   might have a summary chart, and you might want to introduce
3   into evidence the ten -- a box of documents that supports the
4   summary chart.  The summary chart is not objected to.  I
5   might only need to look at the summary chart; you might want
6   to put in the box, and that's okay.
7        On the other hand, you might have a box that you're
8   putting in.  If it never gets referred to in the trial, I'm
9   going to be wondering what was the purpose of that box, and
10  what do I do with that.  And -- so you should just think
11  about that, much the way you would in a jury trial, if you --
12  why are you introducing exhibits that you never talked about,
13  never asked the witness about, never referred to in your
14  opening or closing.  And sometimes there's a reason, like the
15  box for the summary chart, for the record, so to speak,
16  but -- so that's just the caveat, because --
17        And the only reason that I make the observation --
18  I'm not going to preclude you from doing it, but I make the
19  observation because there definitely is not an army behind
20  me.  And so I want to -- I intend to read everything that I
21  need to read in this case, and I'll do it carefully.  And,
22  you know, my goal would be after you make your proposed
23  finding of fact and conclusions of law, to issue a decision,
24  you know, in a -- I'm not going to give it time, because I
25  don't know who's on the call, but I would -- I have no doubt

1    that I would want to issue it faster than it will be issued

2    because it will just take time to go through it.  And so but

3    the more there is -- you should just think about that.

4            But there's no problem with offering them up, if

5    they're a group.  But I'm not sure why you'd want -- if

6    there's 1,800, I guess I would ask you to think about why are

7    you going to offer 1,000 exhibits, if they're not going to be

8    referred to in any way.

9            Is that helpful, Mr. Jones?

10           MR. JONES:  Yes, sir.  Thank you.

11           THE COURT:  Do you want to raise anything else?

12           Okay.  All right.

13           In terms of the confidentiality, so what we're --

14   what are you thinking about?

15           MR. WALL:  We're just thinking about the practical

16   problems.  I will tell you from experience, Your Honor, that

17   oftentimes that the third parties who have been subpoenaed,

18   in this case the other airlines, get very, very protective

19   about the materials that they have produced and file motions

20   and try to have the courtroom sealed and things like that.

21           And from experience, courts don't all see it the

22   same way.  I've had cases like this in front of judges who

23   would just not ever seal the courtroom and are very strict

24   with allowing any confidentiality, other cases there has been

25   more protection.  So I just think we wanted to kind of open a

1    dialogue so that we can kind of guess about what to expect.

2              THE COURT:  Sure.

3              Do you have anything that you want to add to that,

4    Mr. Jones?

5              MR. JONES:  The only thing that I would say,

6    Your Honor, thank you, is that I think this is not quite ripe

7    for Your Honor.  I think there's more that the parties can do

8    to come up with proposals, concrete proposals for Your Honor,

9    or where we can't or where we disagree, to lay those out in

10   writing for Your Honor, versus just kind of an --

11             THE COURT:  I'm not going to resolve it now, but

12   I'm glad -- it's helpful to me to alert me to these issues,

13   so I can begin thinking about them.

14             So what I would tell you all is, without resolving

15   any of these potential disputes that could fall across a

16   whole range of levels of confidentiality or arguable

17   confidentiality of information, would be, one, sealing a

18   document is different, in my view, than sealing the

19   courtroom.  And sealing the courtroom is a big deal, and I

20   have sealed courtrooms.  But, off the top of my head, most of

21   the time I've sealed a courtroom has been in criminal cases,

22   not during trials, and mostly about matters that implicated,

23   for example, an attorney-client privilege or the safety of a

24   person, for example, a cooperator who might -- cooperating

25   witness or something where there's not -- we're not during

1    the trial or we're discussing, or something like that, and it

2    implicates the safety of an individual.

3            I'm not saying I wouldn't do it, but I think the

4    second observation is I'd likely look at the standards that

5    govern, you know, if you want to seal the courtroom, you're

6    going to have to show me the case law that says "seal the

7    courtroom," and the standard, and you'd have to meet that

8    standard.  But I'm reluctant to seal the courtroom, and I'm

9    reluctant to seal the reasoning behind my decision, whatever

10   it is.

11           But that said, I can see -- and I'm not resolving

12   this now.  I could imagine that this might be the kind of

13   case where I might issue a sealed decision or invite you to

14   comment about whether certain portions needs to be sealed

15   depending on what shakes out and what information and what

16   grounds and the decision, what have you, and receive some

17   input.  I certainly want your input on all of these issues

18   from all of you.  I don't have more general guidelines at the

19   moment to offer you on that.

20           But you know, on a summary judgment, the only thing

21   that I would say is summary judgment motion, you know, I

22   often seal all sorts of business information at the request

23   of a party because they say it's confidential, and I often

24   don't probe that more deeply.  And typically, the decision

25   that I render on summary judgment is not sealed, and

1    typically the hearing on the motion for summary judgment is

2    not sealed.  So that, for whatever -- that doesn't dictate

3    the answer to any particular issue that might arise under

4    this topic, but that's some guidance.

5            MR. WALL:  Thank you, Your Honor.  I agree with

6    Mr. Jones that we have a lot to talk about on this, and

7    directionally, this is helpful.  So appreciate it.

8            THE COURT:  Okay.  Sure.

9            The last topic that I think you raised is the

10   senior executives.

11           MR. WALL:  Right.  And this is a limited issue,

12   about half a dozen people, Your Honor.  This is not -- we'll

13   deal with the uncertainty generally, but, you know,

14   plaintiffs have included six very high level American and

15   Jet Blue executives, CEOs, and people that are in the

16   so-called C suite on their witness list.

17           We have an agreement, which is good news for

18   everyone, that when the government calls a witness like this,

19   we'll be able to cross-examine beyond the scope so that they

20   don't have to come back a second time.  We'll get them on and

21   off.  But we started a dialogue just trying to see if we

22   could at least get some reasonable prediction of when, in the

23   course of plaintiff's case-in-chief, they need the likes of

24   our CEOs or our chief commercial officers, you know, board

25   members, and so forth.

1          And I completely appreciate that there's some

2     uncertainty about that on the Department of Justice's side,

3     but they're proposing that we not resolve it until the

4     pretrial conference, which is a week before trial, which is a

5     little difficult.  And so we were just hoping, as a matter of

6     courtesy to these witnesses, that we could have some sort of

7     guidelines or rules that, you know, at least give us some --

8     it's going to be the first week, it's going to be the end of

9     the first week, it's going to be the middle -- the beginning

10    of the second week, something that we can target and we can

11    rely on.

12          And also, just a representation that, in fact, they

13    are going to call these people.  It's not mandatory, just

14    because they're on the witness list, but something that we

15    can rely on so that people can plan their lives.

16          THE COURT:  Anything you want to say, Mr. Jones?

17          MR. JONES:  Yes, sir, Your Honor.  A couple of

18    things.  First, I think our conversation at the beginning of

19    the hearing kind of illustrates the difficult spot that we

20    are in, in terms of giving precise predictions as to when

21    someone may be called.  And so we would like to have some

22    more clarity in that sense.

23          But second, Your Honor, we certainly don't oppose,

24    and intend to, and if proposed, offering no less than seven

25    days' notice, which is consistent with the local rules for

1    when a witness would be called to testify.  So we

2    certainly -- we certainly intend and have proposed that to

3    defendants.

4              Defendant's proposal was for a longer notice

5    period, and I think that's where the kind of disconnect comes

6    here.  Defendants had proposed a 30-day notice period, which

7    for us, that is --

8              THE COURT:  I have a suggestion for all of you.

9    Okay?  First suggestion is, I will, no later than middle of

10   next week, issue for you a schedule that tells you exactly

11   the times that you have.  That will help the government,

12   which is the plaintiff, plan a little more about their case.

13   And then my suggestion is you talk to each other further

14   about these six individuals, with these further observations

15   in mind.

16             I understand, Mr. Jones -- first of all, I

17   understand, Mr. Jones, why now --

18             I'm sorry if I keep turning, but there's different

19   screens here, so I'm trying to look at you and to see --

20   different ones of you appear on different screens, so it's a

21   little awkward.

22             So I understand why, (a), it's difficult for you to

23   figure any of this out, Mr. Jones, until you know when you

24   can -- what times you have for trial.  You'll have that by, I

25   think, close of business Wednesday.  And so then you can

1    puzzle over that a little bit and map things out, and that
2    will put you in a better position, I think, all of you, but
3    particularly the plaintiff.  That will help you with that.
4            The second observation is I think you should talk
5    some more -- after that, you should talk some more about it.
6            The third considerations to keep in mind is this.
7    While the -- if the local rule is seven days' notice, that's
8    applicable to everyone.  These six people as human beings,
9    they're not special.  Okay?  They're like every other witness
10   as people.  They don't get a -- they're not special.  They're
11   not -- as human beings, they're just people.  They're not any
12   more important than any other witness.
13           But they hold offices, and the offices they hold
14   impose upon them bigger responsibilities and obligations that
15   are separate from them as human beings.  They may perceive
16   that and they may not perceive that, depending on how they
17   are as human beings, but that's how I perceive it.
18           So I don't see any courtesy to the CEO as a human
19   being, any more courtesy than I would give to any witness.
20   All witnesses deserve courtesy.  But as the CEO of a major
21   public company, he or she has lots of -- and this is
22   applicable, I assume, likely to the six -- you haven't named
23   them, but those six people that you're referring to,
24   Mr. Wall.  They have lots of other responsibilities.  There's
25   periodic, for example, probably quarterly board meetings, and

1    those board meetings are scheduled in advance and they have

2    to go to those board meetings.  They have to prepare.  And

3    there's a lot of obligations, and there's public filings and

4    responsibilities that relate to those board meetings and

5    other things that fall with their office.

6         And they are the person who holds that office, and

7    so I'm not so sure the seven day rule, which is a rule of

8    general application for all witnesses, is really sensibly

9    applied exactly to those -- to people who hold that kind of

10   office.  And given they have an array of other meaningful

11   responsibilities, and it's not just -- it's not them as

12   people, individuals, and it's not just them, personal, like

13   they're -- this isn't just their personal business.  They

14   don't own these businesses.

15        And I think they're both publically traded, right,

16   Mr. Wall?

17             MR. WALL:  Yes.

18             THE COURT:  So I think that's a consideration to

19   think about.  But I think that -- that's why I think you

20   should be mindful of that.  That said, you know, it doesn't

21   mean that the government has to decide next Friday that

22   they're going to testify on September 29th at 9 o'clock, and

23   just then, or what have you.

24        I think another -- so -- I think in the first

25   instance, after you have that schedule, you should talk to

1     each other and think about these considerations.  The
2     government is entitled to be able to figure out its trial
3     schedule, too.  But you may be able to do sort of a
4     winnowing, rather than like some time in these three weeks.
5     Maybe it will winnow it down a little bit some time in this
6     period, so even if that doesn't resolve exactly when, that is
7     helpful, the amount of time that they have to hold is less.
8              I will say, as applicable to them, and more
9     generally to other witnesses who maybe there might be other
10    considerations applicable to, you could also think about, I'm
11    fine to take witnesses out of order.  So for example, if you
12    end up in that winnowing process and the CEO is going to
13    testify in a certain place, you know, you could potentially
14    agree that, well, that person will testify 9:00 a.m. on
15    Thursday.  And if we haven't finished Wednesday's witness,
16    we'll break Wednesday's witness, do the CEO, do everything,
17    be done with the CEO, and then return to the other witnesses.
18    I'm okay with that, I do that in jury trials for individual
19    witnesses as appropriate, so I think that's a reasonable
20    consideration.
21             I don't think it's fair to ask the government now
22    to decide when they'll call these people specifically, but I
23    think the considerations that animate what I understand
24    Mr. Wall to be raising are fair and reasonable.  And you need
25    to think about them, Mr. Jones, and that's part of, like,

1    what I suggest to you, you'll get the schedule.  Talk to each

2    other.  Maybe you can winnow it a little bit.  Some of this

3    relates to your other trial schedule and planning, as the

4    other issues are unfolding.  And so I hear that.

5            I'm hopeful -- I think that will be helpful to you,

6    that kind of guidance.  I'm happy to talk to you again about

7    this.  I will tell you, I'm not -- I'm not going to be

8    available at all between close of business next Wednesday and

9    Labor Day.  I mean, I can -- I may be able to look at

10   something in e-mail, but I won't -- there will be no hearings

11   in that window of time.  But I'm happy to be talking to you

12   about issues as they come up.

13           If it's helpful to have another conference, for

14   example, in early September or weekly, or what have you, I'm

15   happy to do that.  And --

16           MR. WALL:  Thank you, Your Honor.

17           THE COURT:  Are there other issues that the

18   government wishes to raise today?

19           MR. JONES:  Your Honor, one minor issue, and that's

20   just at some point we anticipate working with the defendants

21   to ask the Court about the potential of finding space in the

22   courthouse.  But that, also, Your Honor, is something that we

23   need to discuss with defendants, I think, before approaching

24   Your Honor.

25           THE COURT:  So what -- let me just cut -- I might

1    be able to short circuit that.

2              So if you want -- there's a couple places that you

3    can have space.  One, if you're comfortable, you can leave

4    some boxes or materials in the courtroom, on the side.  I'll

5    be having other proceedings, in addition to your proceedings

6    during the afternoons.  I'm okay with that.  But you have to

7    understand that they won't be under lock and key at all times

8    or, you know, the watchful eye of anybody from the court,

9    necessarily.

10             There is a -- between the courtroom and the public

11    doors, there's one conference room that's like a lawyer

12    conference room.  We might be able to make that available to

13    you.  And if you want to get further space in the courtroom

14    to store things or for meetings --

15             Is it to store things or for meetings?

16             MR. JONES:  Your Honor, it's storage, but also

17    potentially for short meetings, as well.

18             THE COURT:  Okay.  Meetings where, like, you

19    might -- the government might want to meet with people just

20    the government and people, or the defense might want to meet,

21    or each other?

22             MR. JONES:  Yes, sir.

23             THE COURT:  All three of those.

24             MR. WALL:  Private, I think he's talking about.

25             THE COURT:  Say it again.

1          MR. WALL:  I think he's talking about the former, a

2     space where the government can meet, and then, perhaps, a

3     space where we can meet.  Honestly, we hadn't thought about

4     this, but it makes sense that he's raising it.

5          MR. JONES:  That's right, Your Honor.

6          THE COURT:  So I think what I would suggest is

7     this.  You can talk -- I would suggest that you reach out, if

8     you want that -- the conference room, you're welcome to use

9     at any time to meet with, and it's big enough for probably

10    six to eight people -- eight would be kind of tight, but you

11    could do it -- to have a private meeting.  It's right behind

12    the courtroom.  That's always available to anybody.  There

13    are other such rooms outside every courtroom, so you could

14    always use another one.  Beyond that, I would suggest that

15    you talk to Rob Farrell, the clerk, or -- and you can tell

16    him that I suggested that you talk to him, you're looking for

17    space.  But I don't know off the top of my head, other than

18    those rooms, that there's much space.

19         I think you might, for the government, be

20    looking -- I would say you call the US Attorney's Office

21    office and get space from them.  They're in the building, and

22    I assume they could give you space and accommodate you.  I

23    don't know that there's a lot of other space in the building,

24    other than those rooms.

25         But I would talk to Mr. Farrell about it.  And I

 1    would be supportive, if there is a space, to let you use it.

 2    I just don't know what there is.

 3              Anything else for the government or the defendants?

 4              MR. JONES:  No, sir, Your Honor.  Thank you very

 5    much for the time.

 6              MR. WALL:  Likewise, Your Honor.  Thank you very

 7    much for accommodating our requests.  Appreciate it.

 8              MR. SCHWED:  Thank you.

 9              THE COURT:  No problem.

10              So two last things, then, for all of you.  One, I'm

11    happy to meet with you.  If you need another status

12    conference, you can just ask.  You can just -- you can

13    explain to me what it's about, or you could just say, "We

14    want to have it," and I'll do it promptly, other than that

15    window of time that I told you.

16              Second, I want to remind all of you that, even

17    though that I know that this is a really big case for

18    everybody, I encourage -- I encourage people, lawyers, law

19    firms, and the government, to give opportunities to more --

20    to speak in court, whether it's argue or examine witnesses to

21    more than just the most senior lawyers on the case.  I

22    understand why that's somewhat challenging generally and more

23    challenging in a high stakes case, as I assume this might be.

24    I still encourage it.

25              I will tell you what I have told individuals at

1   hearings, which is, if someone allows a less senior lawyer to

2   argue something, I'm fine with the rule -- or I will follow

3   the following, that if the more senior lawyer then wishes to

4   retract something, I will allow the more senior lawyer both

5   to clean up, to stand up and say, "Well, I want to add this

6   point or clarify that point," but also I will allow that

7   person to retract something that the person said, so that

8   there's not a risk that the younger lawyer did something

9   that, like, can prejudice the client.  That is, the senior

10   lawyer can say, "You know what, Judge?  That thing the person

11   said, we disavow that."  You say that, I'll be fine.  It's in

12   the record, but I won't treat it as said.  I'll disavow it.

13   And that's part of encouraging them to give them the chance.

14          So I just say that to all of you.  You don't have

15   to -- I'm not going to -- if you don't -- if only three of

16   you talk the whole time, I'm not going to complain.  But know

17   that I do encourage that, and I will have that view about

18   claw-backing statements and willing to do other things to

19   accommodate people's interest so that they can do that and

20   not feel that it puts risk and takes on a risk that they

21   can't take.

22          Okay?

23          MR. JONES:  Thank you, Your Honor.  Thank you on

24   behalf of my team.  Thank you.

25          THE COURT:  Sure.  All right.  Have a good rest of

1    your summer, and --

2              MR. WALL:  Thank you.

3              THE COURT:  Thank you.  It's good seeing you all.

4              MR. SCHWED:  Thank you, Your Honor.

5              (Court in recess at 3:52 p.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5     and for the United States District Court for the District of

6     Massachusetts, do hereby certify that pursuant to Section

7     753, Title 28, United States Code, the foregoing pages

8     are a true and correct transcript of the stenographically

9     reported proceedings held in the above-entitled matter and

10    that the transcript page format is in conformance with the

11    regulations of the Judicial Conference of the United States.

12

13                          Dated this 18th day of August, 2022.

14

15

16

17                          /s/ RACHEL M. LOPEZ

18

19

20                          _____

21                          Rachel M. Lopez, CRR
                            Official Court Reporter

22

23

24

25