UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> *Defendants*. | Case No. 1:21-cv-11558-LTS |

**PLAINTIFFS' MOTION *IN LIMINE* NO. 1
TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT RON DILEO**

Plaintiffs move to exclude the testimony of Defendants' proffered expert Ron DiLeo pursuant to Federal Rule of Evidence 702. His opinions are not "based on sufficient facts or data," nor are they "the product of reliable principles and methods." *See* Fed. R. Evid. 702(b), (c). Mr. DiLeo is therefore unable to assist the trier of fact to understand the evidence or determine a fact in issue, rendering his testimony irrelevant. *Ruiz-Troche v. Pepsi-Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).

Mr. DiLeo is a travel industry consultant who seeks to opine on two matters: (1) "the benefits for corporate customers" that the Northeast Alliance ("NEA") provides; and (2) how those benefits match what "corporations and corporate customers value." Expert Report of Ron DiLeo dated July 11, 2022 (attached hereto as "Exhibit 1" and referred to hereinafter as "Ex. 1") at ¶ 11. But Mr. DiLeo has no reliable basis to opine on either of these points.

Mr. DiLeo conceded both that he reached his conclusions before reviewing any materials in the case, and that he conducted "no analysis" to confirm whether the NEA has actually

1

"expanded service," "improved flight schedules," "expanded loyalty programs," "enhanced passengers' experiences at NEA airports and on NEA flights," or permitted American and JetBlue to fly "larger, better-equipped aircraft on NEA routes." Therefore, he should not be allowed to testify that the NEA achieves those benefits.

Additionally, Mr. DiLeo has no reliable basis upon which to testify what "corporate customers value" concerning the NEA. Ex. 1 at ¶ 11. Mr. DiLeo has not interviewed any of Defendants' current or potential corporate customers impacted by the NEA. *See* Transcript of Deposition of Ron DiLeo, dated Aug. 19, 2022 (attached hereto as "Exhibit 2" and referred to hereinafter as "Ex. 2") at 69:9–24. Mr. DiLeo has not performed any quantitative analysis regarding consumer demands or preferences and the impacts of an alliance or merger—not for the NEA or for any other transaction. Ex. 2 at 82:1–3; 41:20–42:2. Nor does Mr. DiLeo reference any surveys of corporate customers to determine their travel "preferences," independent or otherwise, though he admits that surveys are a beneficial way of understanding corporate customers' views. Ex. 2 at 85:7–19. Nevertheless, based solely on his own "experience in the airline industry"—which is, in fact, extremely limited when it comes to actually working with corporate customers—Mr. DiLeo seeks to opine on what "corporate customers value." Ex. 1 at ¶ 11. Courts must reject "opinion evidence that is connected to existing data only by the ipse dixit of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Here, there is nothing to tether the purported expert opinion to some sort of basis other than Mr. DiLeo's willingness to render this opinion based on a generalized familiarity with the industry. Even the most well-credentialed expert in the world cannot testify as to customer preferences without a "reliable foundation" for doing so. *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012) (quoting *Daubert v. Merrell Down Pharm., Inc.*, 509 U.S. 579, 597

(1993)).  By his own admission, Mr. DiLeo has none.

## LEGAL STANDARD

Expert opinion testimony is admissible only if: "(a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702; *Ruiz-Troche v. Pepsi-Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) ("To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed. R. Evid. 402, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue, *see Daubert*, 509 U.S. at 591–92.").

An expert, "whether basing testimony upon professional studies or personal experience, [must employ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Expert testimony premised on experience may be admissible under Fed. R. Evid. 702; but "'[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *Rothe Development, Inc. v. Dep't of Defense*, 107 F. Supp. 3d 183, 196 (D.D.C. 2015) (quoting Fed. R. Evid. 702 Advisory Committee's note (2000)).  And such "testimony based on experience" must still "rest on a reliable foundation."  *United States v. Monteiro*, 407 F. Supp. 2d 351, 357 (D. Mass. 2006).  It not necessary for an expert to offer an *expert* opinion in an area within the common knowledge of the average layperson, because such testimony does not help the fact-finder "understand the

evidence" or "determine a fact in issue." *Id.*; *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009) ("Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson.").

## ARGUMENT

### A.  Mr. DiLeo Has Not Independently Verified Alleged Benefits of the NEA

Mr. DiLeo's opinions lack the hallmark of proper expert testimony: independent verification and analysis.  It is undisputed that Mr. DiLeo took no steps to independently verify Defendants' claimed benefits of the NEA.  Ex. 2 at 132:1–20, 163:11–15, 205:2–206:3, 221:22–223:6, 223:19–25.  In fact, Mr. DiLeo admits he already formulated his opinion about the NEA and its impact to corporate customers before reviewing *any* materials cited in his report, instead using those documents to "validate[ ] the opinions that [he] had already kind of formed" while failing to conduct, review, or rely on any systematic analyses.  Ex. 2 at 74:19–75:1.

Notwithstanding the lack of any independent verification or analysis, Mr. DiLeo opines that the NEA provides five benefits: "(1) expanded service; (2) improved flight schedules; (3) expanded loyalty programs; (4) an enhanced experience at many NEA airports and on NEA flights; and (5) larger, better-equipped aircraft on NEA routes."  Ex. 1 at ¶ 11.  Mr. DiLeo relied upon a limited set of sources for identifying the alleged benefits of the NEA: (1) a cherry-picked selection of only ***seventeen*** of the Defendants' own documents produced in this case; (2) various news articles and Defendants' own press releases touting the benefits of the NEA; and (3) depositions of Defendants' employees and certain third parties, selected for him by counsel.  *See* Ex. 1 at App'x B.[1]

---

[1] Mr. DiLeo writes in his report that he conducted interviews of American and JetBlue employees (Ex. 1 at ¶ 10), but does not cite them as a basis for any of his particular opinions, nor could he even identify four of the six employees of Defendants he interviewed. Ex. 2 at 61:18–62:6, 67:21–68:2. Moreover, Mr. DiLeo took no notes of these interviews, purportedly relying on his memory of those conversations to shape his report. Ex. 2 at 64:3–18,

Had Mr. DiLeo engaged in the rigor contemplated by Rule 702, he would have identified problems with the alleged NEA benefits he touts. For instance, in his report, Mr. DiLeo cites a December 2021 press release for the proposition that JetBlue and American have added new routes as a result of the NEA. But he fails to note that since the time of that press release, JetBlue has repeatedly announced significant schedule *reductions*, including on routes that Mr. DiLeo lauds as evidence of "growth" that will provide an "improved customer proposition."[2] Ex. 1 at ¶ 38. For each of the benefits that Mr. DiLeo touts ("expanded service," "improved flight schedules," "expanded loyalty programs," enhanced passengers' experience," and "larger, better-equipped aircraft," *see* Ex. 1 at ¶ 11), he has conceded he has done no formal analysis to confirm they in fact exist (or to what extent), nor has he done any analysis whatsoever to confirm that they are properly attributable to the NEA. Ex. 2 at 82:1–18, 106:18–108:7, 138:13–140:10, 167:1–11, 176:22–177:10, 196:12–19, 199:7–12, 223:19–25.

The law supports exclusion of such testimony. An expert cannot tout the benefits of a proposed combination by relying "exclusively on documents created by . . . Defendants" without performing "any independent analysis" to verify the same. *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 83–84 (D.D.C. 2015); *see also FTC v. Wilh. Wilhemsen Holding ASA*, 341 F. Supp. 3d 27, 73 (D.D.C. 2018) ("The court cannot substitute Defendants' assessments and projections for independent verification"). Without "independent analysis" to verify the proposed benefits, Mr. DiLeo's opinions will not assist the Court in understanding the evidence or determining factual

---

68:13–17. In addition, at deposition—many weeks after serving his report—Mr. DiLeo claimed that he looked at other documents (Ex. 2 at 70:13–72:6). To the extent he relied upon those documents, however, he never identified them in his report, as required by Rule 26 and the Expert Disclosure Protocol in this case (Dkt. No. 83). Mr. DiLeo and Defendants therefore deprived Plaintiffs of an opportunity to meaningfully explore the full bases for his opinions.

[2] *See, e.g.*, Zach Griff, *JetBlue Cuts 20 Routes, Trims New Canada Service, to Boost Summer Reliability,* The Points Guy (May 17, 2022), https://thepointsguy.com/news/jetblue-massive-summer-route-cuts.

issues, and there is no value to the Court in having an "expert" testify who simply summarizes and parrots back Defendants' own self-serving documents.  *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 469 (D. Mass. 2017) (an expert "may not blindly rely on his client's representations" in forming an opinion (citing *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999)).  Accordingly, Mr. DiLeo's report and opinions are not the product of reliable methods reliably applied, and should be excluded.  *See Earley Info. Sci., Inc. v. Omega Eng'g, Inc.*, 575 F. Supp. 3d 242, 244 (D. Mass. 2021) (citing *Samaan*, 670 F.3d 21) (explaining that Fed. R. Evid. 702 requires expert testimony be based on reliable methods and the reliable application of those methods).

### B. Mr. DiLeo Has No Reliable Basis to Opine on What Corporate Customers "Want" or "Value"

In addition to the purported benefits of the NEA, Mr. DiLeo speculates about what corporate customers value in choosing airlines for corporate travel.  Ex. 1 at ¶ 11.  Specifically, Mr. DiLeo claims that "corporate customers" prefer their airline partners offer: (1) a broad airline network; (2) loyalty program benefits; (3) smooth travel experiences; and (4) comfortable, well-equipped airplanes.  Ex. 1 at ¶ 54.

Expert testimony must "rest on a reliable basis."  *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).  In cases where courts permit experts to testify regarding customer preferences, the experts' opinions have been based on systematic, rigorous research methods, such as surveys whose procedures and data meet scientific, statistical standards.  *See, e.g.*, *In re Dial Complete Marketing and Sales Practices Litig.*, 320 F.R.D. 326, 331–33 (admitting surveys used in conjoint analysis as a "well-accepted economic methodology"); *Navarro v. Procter & Gamble Co.*, 501 F. Supp. 3d 482, 497–98 (S.D. Ohio 2020) (admitting expert testimony only after concluding that a survey forming the basis of the opinion met *Daubert*'s reliability standards);

*Popovich v. Sony Music Entertainment, Inc.*, 2005 WL 1126756, at *8 (N.D. Ohio, May 2, 2005) (excluding expert testimony regarding consumer preferences where the expert had performed no quantitative analysis or reliable study, and thus opinion rested on an "unsupported foundation").

As Mr. DiLeo testified at his deposition, during his time as Executive Director of the Association of Corporate Travel Executives, he regularly conducted surveys of the group's members in order to find out what it is that member corporate customers thought and valued. Ex. 2 at 83:1–85:19. Here, however, Mr. DiLeo confirmed that he did not conduct "surveys of any kind" in connection with his report. Ex. 2 82:19–25. In fact, Mr. DiLeo did not speak to a single corporate customer, a single travel agency, a single travel management company, or any business travelers about the NEA. Ex. 2 at 69:13–24. Indeed, Mr. DiLeo's expert report does not cite *any* data on which he based his conclusions. Rather, the entire basis of Mr. DiLeo's opinion is the time he spent, several years ago, working with "corporate customers"—of which he identifies only two by name. Ex. 1 at ¶ 27–28; Ex. 2 at 11:4–18. Thus, Mr. DiLeo's opinions were generated without "reliable methods" that have been "reliably applied," *Earley Info. Sci.*, 575 F. Supp. 3d at 244, and do not exhibit the "same level of intellectual rigor" of experts in the field. *Kumho Tire Co.*, 526 U.S. at 152. His opinions cannot survive scrutiny under Fed. R. Evid. 702 and, consequently, Mr. DiLeo's testimony should be excluded.

At best, Mr. DiLeo's opinion about the preferences of corporate customers falls under Fed. R. Evid. 701, which permits opinion testimony by lay witnesses. Even so, Mr. DiLeo's opinions fail to meet the standards set out in that rule. Mr. DiLeo has no first-hand knowledge of corporate customer preferences writ large; his report only references two corporate customers with whom he worked many years ago. And in drafting his opinions, Mr. DiLeo did not even look at any corporate customer contracts affected by the NEA. Ex. 2 at 132:1–9. He has not

7

interviewed a single corporate customer, travel agency, travel management company, or business traveler regarding impacts of the NEA. Ex. 2 at 69:9–24. Mr. DiLeo therefore has no first-hand knowledge required even of a lay witness that would assist the Court in determining a fact in issue.

## CONCLUSION

For the reasons set forth above, the Court should exclude Mr. DiLeo as an expert witness because he fails to satisfy the criteria set forth in Federal Rule of Evidence 702 and articulated in *Daubert*. Mr. DiLeo has neither the technical or factual basis to offer opinions concerning the benefits of the NEA or the preferences of an undefined set of "corporate customers" when selecting airline partners. As such, Mr. DiLeo's testimony should be excluded.

Dated: September 2, 2022

/s/ William H. Jones II
William H. Jones II
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-514-0230
Fax: 202-307-5802
bill.jones2@usdoj.gov

*Attorneys for Plaintiff United States of America*

MARK BRNOVICH
Attorney General

/s/ Robert Bernheim
ROBERT BERNHEIM (AZ Bar No. 024664)

Arizona Attorney General's Office

2005 North Central Avenue
Phoenix, AZ 85004
Tel: (520) 628-6507
Email: robert.bernheim@azag.gov

*Attorneys for Plaintiff State of Arizona*


ROB BONTA
Attorney General
KATHLEEN E. FOOTE
Senior Assistant Attorney General
NATALIE S. MANZO
MICHAEL W. JORGENSON
Supervising Deputy Attorneys General
ROBERT B. McNARY
JAMIE L. MILLER
Deputy Attorneys General

/s/ Robert B. McNary
ROBERT B. McNARY
Deputy Attorney General
California State Bar No. 253745
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Phone: 213-269-6283
E-mail: robert.mcnary@doj.ca.gov

*Attorneys for Plaintiff State of California*


KARL A. RACINE
Attorney General
KATHLEEN KONOPKA (DC Bar No. 495257)
Deputy Attorney General

/s/ Arthur T. Durst
ARTHUR T. DURST (DC Bar No. 888273305)
ADAM GITLIN
Office of the Attorney General for the District of Columbia
400 Sixth Street NW, Tenth Floor
Washington, DC 20001
Tel: (202) 442-9853

9

Email: arthur.durst@dc.gov

*Attorneys for Plaintiff District of Columbia*

ASHLEY MOODY
Attorney General

/s/ Colin G. Fraser
LIZABETH A. BRADY (FL Bar No. 457991)
RACHEL S. BRACKETT (FL Bar No. 109775)
COLIN G. FRASER (FL Bar No. 104741)

Office of the Attorney General, State of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Tel: (850) 414-3300
Email: Liz.Brady@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*


MAURA HEALEY
Attorney General

/s/ William T. Matlack
WILLIAM T. MATLACK (MA Bar No. 552109)
DANIEL H. LEFF (MA Bar No. 689302)

Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Tel: (617) 727-2200
Email: William.Matlack@mass.gov
Email: Daniel.leff@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*



JOSH SHAPIRO

10

Attorney General
JAMES A. DONAHUE, III (PA Bar No. 42624)
Executive Deputy Attorney General
Public Protection Division

 /s/ Jennifer A. Thomson
TRACY W. WERTZ (PA Bar No. 69164)
JOSEPH S. BETSKO (PA Bar No. 82620)
JENNIFER A. THOMSON (PA Bar No. 89360)

Pennsylvania Office of Attorney General
Antitrust Section
14th Floor Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
Email: twertz@attorneygeneral.gov

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

JASON S. MIYARES
Attorney General

/s/ Tyler T. Henry
TYLER T. HENRY (VA Bar No. 87621)
Assistant Attorney General
Antitrust Unit
Office of the Virginia Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Tel: (804) 692-0485
Email: THenry@oag.state.va.us

*Attorneys for Plaintiff Commonwealth of Virginia*

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I conferred with counsel for Defendants in a good faith effort to resolve or narrow the issues presented in this motion prior to filing. Defendants confirmed that they opposed the motion.

    /s/ James H. Congdon
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-299-4574
Fax: 202-307-5802
james.congdon@usdoj.gov

*Attorney for United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

    /s/ James H. Congdon
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-299-4574
Fax: 202-307-5802
james.congdon@usdoj.gov

*Attorney for United States of America*