**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**DECLARATION OF MARK A. ISRAEL**
**IN SUPPORT OF AMERICAN AIRLINES GROUP INC. AND JETBLUE AIRWAYS CORPORATION'S *DAUBERT* MOTION AND MOTION IN *LIMINE* CONCERNING PLAINTIFFS' EXPERT'S MERGER SIMULATION MODEL**

I, Mark A. Israel, declare and state as follows:

1. I submit this declaration in further support of Defendants American Airlines Group Inc. ("American") and JetBlue Airways Corporation's ("JetBlue") *Daubert* Motion and Motion in *Limine* Concerning Plaintiffs' Expert's Merger Simulation Model.

2. I am a Senior Managing Director at Compass Lexecon, an economic consulting firm where I have worked since 2006. I oversee Compass Lexecon's North American antitrust business. From August 2000 to June 2006, I served as a full-time member of the faculty at Kellogg School of Management, Northwestern University. I received my Ph.D. in economics in 2001 from Stanford University, where I also taught courses on economics and the application of mathematics to economics.

3. I specialize in the economics of industrial organization—which is the study of competition in imperfectly competitive markets, including the study of antitrust and regulatory issues—as well as applied econometrics. At Kellogg and Stanford, I taught graduate-level courses covering topics including business strategy, industrial organization economics, and econometrics. My research on these topics has been published in leading economics journals, including *American Economic Review*, *Rand Journal of Economics*, *Review of Industrial Organization*, *International Journal of Industrial Organization*, and *Journal of Competition Law and Economics*.

4. My work at Compass Lexecon has focused on the application of economic theory and econometric methods to competitive analysis of the impact of mergers and antitrust issues, including a wide variety of single-firm and multi-firm conduct, class certification, and damages estimation. My work has involved a range of industries including, ocean shipping and cabotage, various commodity products, food and beverage distribution, railroad shipping, airlines, automotive parts and transportation, wireless telecommunications, broadband Internet access, cable television, other high technology industries, retail, financial markets, pharmaceuticals, publishing, and many more. Two of my colleagues and I authored the chapter on econometrics and regression analysis in the American Bar Association treatise *Proving Antitrust Damages*.

5. I have done substantial work on competition in the airline industry in particular. For example, I served as one of the lead economists working on the Delta-Northwest and American-US Airways mergers and the Delta-Virgin Blue alliance, as well as several other mergers that were considered but not pursued, and as the lead economist for US Airways on the Delta/US Airways slot swap, for Hawaiian Airlines on the Hawaiian-JAL alliance, and for American on various proceedings related to its **one**world alliance and its Atlantic Joint Business. I am the co-author of several papers on airline economics, including a study of the Delta/Northwest merger that focuses on proper application of logit models to determine quality-adjusted prices and consumer welfare effects in airline markets, a

retrospective of the effect of the recent legacy airline mergers, and a comprehensive worldwide study of the effects of international airline joint ventures.[1]

6. I have been consulting with American and JetBlue with respect to the Northeast Alliance ("NEA") since April 2020, well before it was announced. I also worked with American and JetBlue throughout the Department of Transportation and Department of Justice, Antitrust Division ("Division") investigations that preceded this lawsuit. In that capacity, I attended numerous videoconferences and had follow-up phone calls with the staff of the Division, including its economists, and I made a series of submissions to the Division on economic issues related to the NEA before this litigation was initiated.

7. I was asked by Counsel for American and JetBlue to provide testimony about the NEA, including all terms in the contract and how it has been implemented, to address many of the contested issues. Generally speaking, my testimony is intended to explain what the NEA is, what it seeks to accomplish, how it is structured explicitly to meet those goals, the market setting in which the NEA operates, the effects of the NEA in promoting growth and expanding output, and the consumer benefits from the NEA, all from the perspective of an economist and aided by tools of economic analysis. Within this broad charter, I have also been asked to review the expert report of Dr. Nathan H. Miller and to determine whether his analysis and conclusions have any effect on my evaluation of the NEA.

8. In my opinion, Dr. Miller's evaluation of the NEA's competitive effects using a merger simulation model does not fit the facts of this case. Even if a simulation model were appropriate here, Dr. Miller's application of the model is flawed. Specifically, I have come to the following conclusions about Dr. Miller's application of merger analysis to this case, including his use of a simulation model:

9. Dr. Miller's application of merger analysis to a joint venture unmodified ignores every way in which the effects of the joint venture are unlike a merger. Aligning incentives does not make something a merger. Instead, a merger involves combined control under a single firm, with a single leadership team implementing the strategy of that combined firm. Dr. Miller ignores that American and JetBlue remain separate entities with separate business models, run by separate boards and separate management teams, maintaining independent control of their business decisions, including pricing, aggregate capacity levels, and other strategies. American and JetBlue still separately maximize their own individual profits, each subject to a fiduciary duty to their own shareholders.

---

[1] Mark Israel, Bryan Keating, Daniel L. Rubinfeld, and Robert D. Willig (2008) "The Delta-Northwest Merger: Consumer Benefits from Airline Network Effects," in John E. Kwoka, Jr. and Lawrence J. White, eds., *The Antitrust Revolution*, 6th Ed., New York: Oxford University Press; Mark Israel, Bryan Keating, Daniel L. Rubinfeld, and Bobby Willig (2013), "Airline Network Effects and Consumer Welfare," *Review of Network Economics*, (November): 287–322; Dennis Carlton, Mark Israel, Ian MacSwain, and Eugene Orlov (2019), "Are Legacy Airline Mergers Pro- or Anti-Competitive? Evidence from Recent U.S. Airline Mergers," *International Journal of Industrial Organization* 62(1): 58–95; Robert J. Calzaretta, Jr., Yair Eilat, and Mark A. Israel (2017), "Competitive Effects of International Airline Cooperation," *Journal of Competition Law & Economics*, 13(3): 501–548.

10. In implementing his simulation model, Dr. Miller wrongly assumes that the parties share profits in fixed proportions, contrary to the MGIA's detailed terms about how NEA revenues are shared between the parties. Under the NEA, each firm's incentive to maximize its unilateral profits is affected by the specific revenue sharing terms of the MGIA. The terms of the MGIA govern how NEA revenues are shared between American and JetBlue and thus how the NEA affects each firm's profits. But an analysis of the NEA's effect on incentives must assess those terms as written—a contract that affects the incentives of each firm when it unilaterally maximizes profits through the specific financial terms it specifies—not as a merger. The MGIA terms create incentives to expand capacity and thus lower prices, not to raise prices as implied by Dr. Miller's merger analysis tools. Dr. Miller models incentives from the NEA in direct contradiction to these explicit terms of the MGIA by assuming that each Defendant's share of profits is *fixed* under the MGIA, no matter the changes in capacity by American or JetBlue during the relevant period.

11. Dr. Miller's simulation model assumes that the parties share profits, whereas the MGIA provides for revenue sharing. Under the MGIA, Defendants share incremental net revenue, *i.e.*, revenue minus selling expenses, based on their respective contributions to capacity growth in the NEA. Dr. Miller's simulation model uses an entirely different compensation formula—in the model, each Defendant receives a fixed share of the other Defendant's *profit*, measured by price minus marginal cost.

12. Dr. Miller's simulation model is based on flawed assumptions about competition in the airline industry. Dr. Miller's simulation model assumes "Bertrand" competition, a framework in which each carrier chooses price to maximize profit (holding the prices of all other carriers fixed) and capacity is assumed to automatically adjust to match the requisite demand associated with a firm's pricing decisions. This model ignores each carrier's aggregate capacity decisions even though the MGIA's primary influence is on each carrier's incentive to increase aggregate capacity levels. Airline conduct is more appropriately modeled by "Cournot" competition, a framework in which competition is fundamentally about carriers choosing capacity levels, and prices then "shake out" in equilibrium based on the interaction of demand with those capacity choices.

13. Dr. Miller has not tested his simulation model's predictions against actual data or any other empirical benchmarks. His predictions are dramatically out of line with predicted fare increases in the literature on prior mergers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2022 in Kennebunk, ME.

_____
Mark A. Israel

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

                                                   /s/ Daniel M. Wall
                                                   Daniel M. Wall