# EXHIBIT L

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, *et al.*

       *Plaintiffs*,

       v.

AMERICAN AIRLINES GROUP INC.

and

JETBLUE AIRWAYS CORPORATION

       *Defendants*.

Case No. 1:21-cv-11558

**EXPERT REPLY REPORT OF ROBERT J. TOWN, Ph.D.**

**August 8th, 2022**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

110.  A recent working paper takes a different approach.[176]  Bet (2021) also examines the impact of the American-US Airways merger, but reaches a different conclusion from Carlton et al. (2019). Using an increasingly commonly used methodology from the industrial organization literature to assess market power from production data, Bet (2021) studies the effects of airline mergers on production and cost data.  Bet (2021) concludes that "in most cases, mergers did not significantly improve merging parties' productivity, marginal costs, or technology (i.e., scale elasticity)."[177]  In particular, the study finds that the merger increased American's markup by approximately 20 percent, on average, without a corresponding change in productivity or marginal costs,[178] suggesting an increase in market power.[179]

111.  It is worth noting that, these papers generally finds low single digit impacts on price (one way or the other).  For example, Le (2019) finds a five percent decrease in price in nonstop overlap markets, and a five to six percent increase in price in connecting overlap markets (and a combined, overall average increase in price of about three percent).  Das (2019) finds results of a similar magnitude.  The estimated price effect on nonstop routes in Carlton et al. (2019), on the other hand, is a 12 percent reduction, which is quite high compared to the other studies.  As I have discussed, there are methodological flaws in the Carlton et al. (2019) study that would bias results in this direction—in particular, the reliance on only five nonstop overlap routes that are all affected by factors unrelated to the merger that would tend to decrease prices.

112.  In his report, Professor Carlton touts the opinion of the bankruptcy court, which cites his retrospective. However, the Court's opinion does not discuss any of the above identified critical flaws in his analysis, nor any of the contradictory results in the literature.[180]

---

[176]   Bet (2021).

[177]   Bet (2021) at p. 30.

[178]   Bet (2021) at p. 29.

[179]   Carlton et al. (2019) also finds that the Delta-Northwest and United-Continental mergers were procompetitive. The broader literature has not reached a consensus on this, however.  For example, Orchinik and Remer find that the United-Continental merger led to higher prices, and were unable to draw any consistent conclusions about the Delta-Northwest merger (the results depended on the estimation technique; *see* Orchinik, Reed, and Marc Remer, "What's the Difference? Measuring the Effect of Mergers in the Airline Industry," *Econometric Modeling: Corporate Finance & Government eJournal,* 2021, p. 1-67.

[180]   United States Bankruptcy Court for the Southern District of New York, Judgement in *Fjord v. AMR Corp. (In re AMR Corp.)*, filed January 29, 2021.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

274. Finally, though Mr. DiLeo asserts that the benefits he describes as deriving from the NEA could not be achieved by "simply stitching together through codesharing two networks,"[408] he never explains why the activities he describes as generating benefits could not occur in conjunction with a traditional codesharing agreement (which does not include revenue sharing or capacity coordination) or in the context of a relationship similar to the WCIA.

## VIII.  CONCLUSION

275. Defendants claim that the NEA will provide substantial consumer benefits through increased flying and a variety of network enhancements.  Defendants' claims of consumer benefits, however, rest on comparing NEA planned network to American's and JetBlue's network in 2019, and attributing all growth from 2019 levels to the NEA—even growth that would have occurred absent the NEA.  Defendants' monetization of those benefits rely on Dr. Israel's nonsensical assumptions about consumer demand in the marketplace, and are therefore unfounded as a matter of economics and unreliable.

276. Furthermore, Defendants' downplaying of the competitive risks of the NEA also lacks a firm economic and empirical basis.  Professor Carlton's retrospective analysis of the American-US Airways merger is flawed and, even if those flaws could be corrected, the results would not be informative about the benefits and harms of the NEA.  I have demonstrated—here and in my initial report—that the American-US Airways merger occurred during a period in which legacy carriers were exhibiting coordinating and/or accommodating conduct and exercising capacity discipline.  I have further demonstrated that, not only was JetBlue not a participant in capacity discipline, but it also engaged in disruptive growth—especially in the Northeast.  I have thoroughly reviewed (and responded to) Dr. Lee's responses to these opinions, and nothing in his report changes my opinions as expressed in my initial report.  The NEA should be viewed as further consolidation that risks a return to capacity discipline while simultaneously bringing a maverick into the fold.

Robert J. Town, Ph.D.

August 8th, 2022

---

408    DiLeo Report, at ¶ 46.