**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA, ET AL.,

Plaintiffs,

v.

AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION,

Defendants.

Civil Action No. 1:21-cv-11558-LTS

**OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT RON DILEO**

# TABLE OF CONTENTS

**Page**

BACKGROUND .....2

ARGUMENT .....4

I. MR. DILEO'S OPINIONS ARE ADMISSIBLE BECAUSE THEY ARE BASED ON HIS EXTENSIVE KNOWLEDGE OF, AND EXPERIENCE IN, THE CORPORATE TRAVEL INDUSTRY .....4

II. PLAINTIFFS' CRITICISMS OF MR. DILEO'S OPINIONS ARE BASELESS .....7

CONCLUSION .....11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Dial Complete Mktg. and Sales Pracs. Litig.*,
320 F.R.D. 326 (D.N.H. 2017) ....................8

*Dial Corp. v. News Corp.*,
165 F. Supp. 3d 25 (S.D.N.Y. 2016)....................6

*Figueroa v. Bos. Sci. Corp.*,
254 F. Supp. 2d 361 (S.D.N.Y. 2003)....................10

*FTC v. Whole Foods Mkt., Inc.*,
502 F. Supp. 2d 1 (D.D.C. 2007), *rev'd on other grounds*, 533 F.3d 869 (D.C. Cir. 2008) ....................6

*Hearts on Fire Co., LLC v. Circa, Inc.*,
No. 14-CV-11044-DLC, 2017 WL 4364405 (D. Mass. Sept. 29, 2017)....................5, 11

*Iconics, Inc. v. Massaro*,
266 F. Supp. 3d 461 (D. Mass. 2017) ....................10

*Ji v. Bose Corp.*,
538 F. Supp. 2d 354 (D. Mass. 2008) ....................6

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)....................10

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
No. CV 02-4770 MRP, 2004 WL 7094930 (C.D. Cal. May 28, 2004) ....................6

*Navarro v. Procter & Gamble Co.*,
501 F. Supp. 3d 482 (S.D. Ohio 2020) ....................8

*Payton v. Abbott Labs*,
780 F.2d 147 (1st Cir. 1985)....................11

*Popovich v. Sony Music Entertainment, Inc.*,
No. 1:02CV359, 2005 WL 1126756 (N.D. Ohio May 2, 2005) ....................8

*Santos v. Posadas De Puerto Rico Assocs., Inc.*,
452 F.3d 59 (1st Cir. 2006) ....................4

*SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*,
467 F.3d 107 (2d Cir. 2006)....................6

*United States v. Hoffman*,
832 F.2d 1299 (1st Cir. 1987)....5

*Wyman v. Yates-Am. Mach. Co.*,
No. 1:13-CV-00300-JAW, 2016 WL 6441006 (D. Me. Oct. 31, 2016)....5

**RULES**

Fed. R. Evid. 702 .... *passim*

Plaintiffs' motion to exclude the testimony of Defendants' expert Ron DiLeo is a baseless attempt to prevent this Court from hearing valuable real-world evidence of the benefits that the NEA brings to corporate customers and travelers every day. Mr. DiLeo has over 40 years of experience in the airline industry, most notably working with corporate customers and travel management companies ("TMCs") to manage travel programs and negotiate and secure favorable deals with airlines and other travel providers. His expert opinions, based on his knowledge of corporate travel right now, and his extensive experience in that space over several decades, is that the NEA brings real benefits that corporate customers value, including (1) expanded service; (2) improved flight schedules; (3) expanded loyalty programs; (4) an enhanced experience at many NEA airports and on NEA flights; and (5) larger, better equipped aircraft on NEA routes. Expert Report of Ronald DiLeo ("DiLeo Rpt.") ¶ 11 (attached as Exhibit 1 to Plaintiffs' Motion). The value of these benefits is not simulated or hypothetical; Mr. DiLeo knows through his extensive work experience that the NEA provides exactly the types of benefits that enhance the corporate travel experience and meet corporate travelers' demands.

Opinions based on industry knowledge and experience are clearly permitted by Federal Rule of Evidence 702, which defines expert opinions expressly to include such testimony. Indeed, these opinions are invaluable in antitrust cases such as this one where experts can provide necessary, straightforward opinions about how customers operate in the industry, what they buy and what they value, and how that relates to the legal issues in dispute.

Plaintiffs half-heartedly admit that Rule 702 permits such testimony, but then confusingly argue that Mr. DiLeo's opinions are nevertheless unreliable because he has not done quantitative analyses to validate that customers actually want this improved and expanded service. That is wrong as a matter of law. As an expert qualified by experience and knowledge, Mr. DiLeo's

opinions are reliable precisely because they are based on that experience and knowledge. He is not required to jump through additional hoops to provide any "formal analyses" or "surveys" to justify opinions based on what he has seen and experienced every day for the past 40 years. To the extent that Plaintiffs seek to challenge or undermine Mr. DiLeo's testimony (as opposing parties always do) because he has not conducted those additional tests, they are free to do so on cross examination where the Court can evaluate his testimony in full. Plaintiffs' complaints are not a basis to exclude Mr. DiLeo's opinions.[1]

## BACKGROUND

Ron DiLeo has more than four decades of experience in the airline industry, including positions at TMCs and travel agencies, as a consultant to both corporate travel managers/buyers and travel suppliers, as an Executive Director of a corporate travel agent association, and as Chief Commercial Officer for a small airline.

Most pertinent for this case is Mr. DiLeo's wealth of experience in corporate contracting for travel service with airlines. Mr. DiLeo worked for over 30 years for Rosenbluth International (then purchased by American Express) a preeminent TMC that provided a variety of services for corporate customers. DiLeo Rpt. at 33. As a general matter, TMCs specialize in working with businesses and organizations that outsource travel management for their employees. *Id.* ¶ 21. TMCs offer a variety of services to corporate customers, including working on behalf of corporate customers to procure the best and most cost efficient service from airlines by negotiating programs

---

[1] It is obvious why Plaintiffs seek to exclude Mr. DiLeo's testimony in this case. In contrast to other government legal challenges in antitrust cases, Plaintiffs here remarkably have not been able to marshal a single customer witness to complain about the NEA and any purported harms that they have experienced (even the government's own homegrown customer, the GSA, does not oppose the NEA). Mr. DiLeo's testimony illustrates why; the NEA provides benefits, not harms, to customers.

and contracts with those airlines. *Id*. ¶¶ 22-23. While at Rosenbluth, Mr. DiLeo worked with customers and suppliers to procure business and leisure travel services for a range of companies. *Id*. ¶ 2. Indeed, Mr. DiLeo saw nearly every aspect of Rosenbluth's business; he started as a delivery person handing the paper tickets to corporate customers in 1978 and worked his way up to the Chief Operating Officer, managing corporate customer accounts and dealing with client retention and growth. Deposition Transcript of Ronald DiLeo ("DiLeo Tr.") (attached as Exhibit A) 12:25–14:5. Following American Express' purchase of Rosenbluth, Mr. DiLeo was in charge of all American Express travel corporate travel business in Europe, the Middle East, and Africa (EMEA), including managing travel agencies in 23 countries. DiLeo Rpt. ¶ 3.

After leaving American Express, Mr. DiLeo started his own consulting company, In the Black, based on the demand he saw for his experience in negotiating supplier contracts and his profound understanding of the relationships between suppliers and agencies. *Id.* ¶ 4. As part of his consulting work, he was hired to manage the commercial work-streams of a startup airline, which gave him insight into creating positive on-board customer experiences, route planning, and establishing a frequent flyer loyalty program. *Id.* ¶ 5. Through In the Black, Mr. DiLeo has consulted with and/or been involved in contracting for companies that span a wide range of industries, including British Airways, International Hotel Group, Ovation, Travelocity, Egencia, Ultramar, Flight Center Group, American Express, Casto Travel, McKesson, and Quintiles. DiLeo Tr. 28:6–7, 27:18–19, 29:23–30:5, 31:2–11, 42:17–19, 118:16–19.

In the Black negotiates agreements with airlines on behalf of travel agencies and TMCs together with the agency's or TMC's supplier relations executive. DiLeo Tr. 28:25–29:11. Mr. DiLeo is in the room with the agency or TMC as they negotiate with airlines and other suppliers. *Id.* 29:12–18. In the last five years, In the Black has helped customers to negotiate agreements

with United Airlines, Delta Air Lines, and American Airlines, as well as with alliance groups. *Id.* 31:22–32:6. Mr. DiLeo has also served as the Executive Director of the Association of Corporate Travel Executives, a trade association that focused on education for the travel industry, where he trained travel executives on best practices for negotiating airline contracts. DiLeo Rpt. ¶ 6. In this role, he identified best practices from different companies and showcased them through experiential learning opportunities for buyers, TMCs, and suppliers, such as airlines, in the business travel segment. DiLeo Tr. 21:6–23:5. Throughout the entirety of his decades-long career, he has worked closely with corporate customers to secure the best agreements for those customers, observing what they value and demand from suppliers and learning how airlines compete to meet customer demand.

Defendants are proffering Mr. DiLeo as an industry expert to show that corporate customers value the types of improvements offered by the NEA, including (1) expanded service; (2) improved flight schedules; (3) expanded loyalty programs; (4) an enhanced experience at many NEA airports and on NEA flights; and (5) larger, better equipped aircraft on NEA routes. DiLeo Rpt. ¶ 11. His opinions draw on his decades-long personal involvement in the airline industry, including the procurement of business travel and corporate contracting.

## ARGUMENT

### I. MR. DILEO'S OPINIONS ARE ADMISSIBLE BECAUSE THEY ARE BASED ON HIS EXTENSIVE KNOWLEDGE OF, AND EXPERIENCE IN, THE CORPORATE TRAVEL INDUSTRY

As Plaintiffs concede, expert testimony premised on experience and knowledge, such as that proffered by Mr. DiLeo, is admissible under Fed. R. Evid. 702. Plaintiffs' Motion *In Limine* No. 1 to Exclude Testimony of Defendants' Expert Ron DiLeo ("Mem.") at 2. Rule 702 makes clear that an expert can testify based on knowledge and experience when the expert's "technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue." Fed. R. Evid. 702; *see also Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 63 (1st Cir. 2006) (stating "experts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field" (citing *United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987) (explaining that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies" and emphasizing the value of "extensive practical experience[.]"))).

When an expert witness is serving as an industry expert and "relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Notes; *see also Wyman v. Yates-Am. Mach. Co.*, No. 1:13-CV-00300-JAW, 2016 WL 6441006, at *8 (D. Me. Oct. 31, 2016) ("[t]he test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field, through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." (internal quotation omitted)).

In the First Circuit, courts routinely allow experts qualified by their extensive experience and knowledge to testify about relevant industry conditions. In *Hearts on Fire Co., LLC v. Circa, Inc.*, for example, the plaintiff moved to exclude the opinion of an industry expert regarding standards and practices in the advertising industry where participants bartered for services. No. 14-CV-11044-DLC, 2017 WL 4364405, at *2 (D. Mass. Sept. 29, 2017). Judge Cabell found that the expert's opinion was admissible and reliable because he "grounds his opinions and conclusions in his forty year-plus professional experience in the barter industry, during which he engaged in hundreds of barter negotiations and transactions on behalf of his clients." *Id.* at *5. After denying

plaintiff's motion, the court directed the plaintiff to explore any potential deficiencies in the opinion on cross examination. *Id*. Similarly, in *Ji v. Bose Corp*., Judge Gorton denied a motion to exclude an expert with nearly 20 years of experience in the modeling industry to testify because "[i]n non-technical areas, long experience in a field can confer expertise upon a witness." 538 F. Supp. 2d 354, 358 (D. Mass. 2008); *accord SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 132 (2d Cir. 2006) (finding an expert with 31 years of insurance industry experience qualified to testify about customs and practices in the insurance industry).

Looking specifically at antitrust cases, testimony from industry experts such as Mr. DiLeo has been found to be admissible because it is helpful to the trier of fact. *See Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 40 (S.D.N.Y. 2016) (rejecting *Daubert* challenge to an industry expert in an antitrust case who opined based on his experience how Defendant's customers of store promotion products decide which products to purchase and which products are substitutes for various needs); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV 02-4770 MRP, 2004 WL 7094930, at *4 (C.D. Cal. May 28, 2004) (denying motion to exclude testimony of industry expert in antitrust case with significant knowledge of healthcare management Group Purchasing Organizations who testified about industry conditions leading to the defendant's market share); *FTC v. Whole Foods Mkt., Inc.*, 502 F. Supp. 2d 1, 13 (D.D.C. 2007), *rev'd on other grounds*, 533 F.3d 869 (D.C. Cir. 2008) (considering expert testimony about an industry generally because the state of the industry was an important factor in the case).

Mr. DiLeo is qualified by his more than 40 years of experience and extensive knowledge about corporate travel to opine as an industry expert about industry preferences and practices for purchases of airline travel. As Mr. DiLeo explains, "[t]hrough my experience in the airline industry, I have gained a deep understanding of what corporations and corporate travelers demand

when choosing airlines for corporate travel." DiLeo Rpt. ¶ 11. This deep understanding was gained through his nearly 30 years (from 1978 to 2007) of work for two corporate TMCs and agencies, Rosenbluth International and American Express. *Id.* at 33. While at Rosenbluth, Mr. DiLeo worked with customers on procuring business and leisure travel. *Id.* ¶ 2. In his role at American Express (which acquired Rosenbluth), Mr. DiLeo was in charge of all corporate business including travel agencies' networks in 23 countries. *Id.* ¶ 3. Since 2007, he has also operated his own consultant company where he and his team negotiate with airlines on behalf of agencies, travel management companies and their corporate customers. *Id.* ¶ 4. Mr. DiLeo's opinions about the NEA and the benefits that it brings to corporate customers are firmly grounded in this extensive industry experience and admissible under Rule 702.[2]

## II. PLAINTIFFS' CRITICISMS OF MR. DILEO'S OPINIONS ARE BASELESS

While Plaintiffs give lip service to the provisions of Rule 702, they also argue to exclude Mr. DiLeo's testimony because it is purportedly not sufficient for an expert to provide an opinion based on his extensive experience and knowledge. Specifically, Plaintiffs seek to exclude Mr. DiLeo because he relied on that knowledge and purportedly did not conduct "systematic analyses" and "surveys" to "verify" his opinions. Mem. at 4, 6. But, Plaintiffs provide no legal support for their arguments and none of that purported analysis or verification is required by Rule 702.

***First***, Plaintiffs' claim that Mr. DiLeo cannot opine about what corporate customers "want" and "value" because he has not conducted customer interviews or a survey is flatly wrong. Plaintiffs do not cite a single case requiring an expert who is qualified by experience and

[2] Given Mr. DiLeo's extensive experience with corporate contracting, Plaintiffs' assertion that Mr. DiLeo does not actually have significant experience with corporate customers is baffling, and clearly evidences Plaintiffs' unfamiliarity with the corporate travel industry and Mr. DiLeo's work history.

knowledge to support or verify their opinion with additional fact-gathering or surveying. In fact, *Popovich v. Sony Music Entertainment, Inc*., which Plaintiffs cite to support the above claim, actually supports the admission of Mr. DiLeo's testimony. No. 1:02CV359, 2005 WL 1126756 (N.D. Ohio May 2, 2005). In that case the court refused to admit expert testimony because the expert sought to opine about the historical importance of the artist Meat Loaf but had no experience with his body of work and only relied on the information provided to him by counsel. *Id*. at *7. Moreover, he had no expertise in consumer preferences and his opinions were based only on his "perceptions" about consumer preferences. *Id*. at *8. In contrast, the court *did* admit the testimony of a second expert who based his opinion on the importance of branding and brand recognition on his extensive experience. *Id*. at *5.[3] Like the second expert in *Sony Music*, Mr. DiLeo has expertise and knowledge about corporate contracting and what corporate customers value from which to render his opinions.

***Second***, Plaintiffs' contention that Mr. DiLeo has somehow erred by "reach[ing] his conclusions before reviewing any materials in the case" (Mem. at 1) is just another inappropriate avenue to exclude Mr. DiLeo solely for providing opinions based on his own knowledge and experience. Plaintiffs complain that Mr. DiLeo had an impression and opinion of the NEA prior to his retention; but that is not surprising at all given that he is intimately involved in and extremely knowledgeable about the corporate travel industry. The NEA was announced in July 2020 and covered extensively in travel news sources and blogs that Mr. DiLeo regularly follows.[4] The fact

---

[3] Both *Navarro v. Procter & Gamble Co*., 501 F. Supp. 3d 482 (S.D. Ohio 2020) and *In re Dial Complete Mktg. and Sales Pracs. Litig*., 320 F.R.D. 326 (D.N.H. 2017) address the admissibility of surveys but neither case stands for the proposition that industry experts are required to conduct such surveys.

[4] *See, e.g.*, Ben Mutzabaugh, "American, JetBlue Jolt Industry With Plans for Northeast Alliance," *The Points Guy* (July 16, 2020); Edward Russell, "American Airlines Teases Reciprocal Upgrades on Alaska, JetBlue as Partnerships Move Forward," *The Points Guy* (Nov. 17, 2020).

that Mr. DiLeo knew about the NEA and had a preliminary opinion about it is to be expected given the general interest the NEA has garnered in the travel industry. Anyone with genuine expertise in the travel industry is very likely to have had an impression of the NEA upon hearing the announcements, without any need for a study or analysis. Every third party airline had an immediate reaction to the NEA's announcement. All of these reactions are indications of industry experience and expertise. Indeed, it would call into question Mr. DiLeo's claimed experience and knowledge of the travel industry had he *not* heard of and formed some impression of the NEA in the many months prior to his retention in this case. Significantly, Mr. DiLeo was not wedded to his initial views of the NEA; he testified that he remained open to changing his views regarding the benefits of the NEA as he learned more and reviewed more materials. DiLeo Tr. 74:16–75:14 ("[I]f something would have come up that invalidated . . . [my] opinions, I would have said that . . . . I take this stuff very seriously.").

***Finally***, Plaintiffs' claim that Mr. DiLeo did not do enough independent research about the NEA is both factually wrong and legally irrelevant. To start with, Plaintiffs' assertion that Mr. DiLeo reviewed only 17 documents and certain press releases and depositions (all allegedly "cherry-picked" by counsel) is false. Mr. DiLeo testified that he reviewed much more than the documents listed in Appendix B of his Report, and Appendix B listed only the documents that provided incremental knowledge and that he relied on to render his opinions. *Id.* 70:10–71:24. As Plaintiffs concede, Mr. DiLeo also interviewed multiple employees at American and JetBlue to supplement his knowledge about the NEA and he reviewed publicly available material about the NEA. In rendering his opinion, Mr. DiLeo did not rely exclusively on the documents created by Defendants, and certainly did not "parrot" them, as Plaintiffs claim. Mem. at 5. His opinions are premised on what he has seen occurring in the market since the implementation of the NEA, and

how those changes will positively impact corporate customers. *Id.* 85:22–86:10 ("I've got 44 years . . . of understanding of what makes customers happy and what they look for . . . and what puts them off. I know that stuff cold."). Mr. DiLeo's opinions here are certainly nothing like that proffered in the *Iconics, Inc. v. Massaro* case cited by Plaintiffs, where the expert relied upon code provided by the party that retained him and could neither explain it nor identify any part that was relevant to the case. 266 F. Supp. 3d 461, 469 (D. Mass. 2017).

Moreover, Mr. DiLeo is qualified to opine on the accomplishments he sees the NEA achieving in the market based on his own experiences in and knowledge of the industry. Given Mr. DiLeo's actual knowledge and experience with the NEA and corporate contracting, he is not required to conduct some undefined "formal analysis" to confirm that the changes he sees and experiences in the travel industry every day in fact exist. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); *Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003) ("[e]ven assuming that [the expert] had no data to support his opinions . . . [a]n expert may base his opinion on experience alone"); *see generally* Fed. R. Evid. 702 Advisory Committee Notes ("experience alone—or experience in conjunction with other knowledge, skill, training or education—may [] provide a sufficient foundation for expert testimony").

As Plaintiffs' own authority shows, they are free to explore with Mr. DiLeo on cross examination any materials that they believe he should have considered but did not, and any purported aspects of the NEA that Plaintiffs believe Mr. DiLeo has ignored (*see* Mem. at 5 regarding purported schedule reductions by JetBlue). As the court held in *Iconics*, to the extent Plaintiffs identify anything Mr. DiLeo did not consider or was ignored, that can go to the weight

of his testimony, not the admissibility. 266 F. Supp. 3d at 470 ("Zatarain's reliance on BaxEnergy employees to assist him in interpreting the code at issue coupled with his struggles to explain the relevant code at his deposition may be a rich subject for cross-examination. But, absent evidence that Zatarain merely adopted defendants' statements about the trade secrets wholesale, the jury should be given the opportunity to evaluate the credibility of Zatarain's opinion."); *see also Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985) ("[i]f the factual underpinnings of [the experts'] opinions were in fact weak, that was a matter affecting the weight and credibility," and not admissibility, of their testimony); *Hearts on Fire Co.,* 2017 WL 4364405, at *16 (declining to disqualify an expert with "considerable experience in the [ ] industry" when any deficiencies could be explored on cross examination). The Court will have ample opportunity to consider Mr. DiLeo's testimony and any criticisms that Plaintiffs have of it at trial. There is no basis to exclude Mr. DiLeo's opinions wholesale.

**CONCLUSION**

Mr. DiLeo is an industry expert amply qualified by over 40 years' experience in the airline industry and with corporate travel. His opinions regarding the benefits that the NEA will bring to corporate customers and travelers are reliable and will be useful to this Court in assessing Plaintiffs' claims against the NEA. The Court should deny Plaintiffs' motion to exclude.


Dated: September 9, 2022					Respectfully submitted,

/s/ Daniel M. Wall
Daniel M. Wall (pro hac vice)
Elizabeth C. Gettinger (pro hac vice)
Elise M. Nelson (pro hac vice)
Nitesh Daryanani (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

Ian R. Conner (pro hac vice)
Michael G. Egge (pro hac vice)
Farrell J. Malone (pro hac vice)
Allyson M. Maltas (pro hac vice)
Marguerite M. Sullivan (pro hac vice)
Tara L. Tavernia (pro hac vice)
Seung Wan Paik (pro hac vice)
Jesse A. Vella (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant American Airlines Group Inc.*

/s/ Richard Schwed
Richard Schwed (pro hac vice)
Matthew L. Craner (pro hac vice)
Jessica K. Delbaum (pro hac vice)
Leila Siddiky (pro hac vice)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Brian Hauser (pro hac vice)
Ryan Leske (pro hac vice)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant JetBlue Airways Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Daniel M. Wall
Daniel M. Wall