# EXHIBIT B

| | |
|---|---|
| **From:** | Dan.Wall@LW.com |
| **To:** | Doidge, Dick (ATR); Jessica.Delbaum@Shearman.com |
| **Cc:** | Michael.Egge@LW.com; Farrell.Malone@lw.com; John.Skinner@Shearman.com; Lepore, Robert (ATR); Riggs, Kate (ATR); Goodman, Aaron (ATR); Bruce.Wark@aa.com; James.Kaleigh@aa.com |
| **Subject:** | RE: JetBlue/American NEA |
| **Date:** | Wednesday, November 4, 2020 10:55:10 AM |

Dear Dick,

This has not been easy, but American and JetBlue would permit the Division to share the following with customers—not other airlines:

Coordination:

The agreement between the parties anticipates that they will jointly discuss the best utilization of slots, gates and aircraft at BOS and NYC airports.  In essence, they will engage in network planning as if their Northeast assets were in a single airline, looking for opportunities to expand network coverage, ensure the right aircraft is in the right market, expand connectivity, and get the most productivity out of their assets.  These discussions will result in recommendations to the management of each airline that are not binding; the final decisions on how to deploy aircraft or use slots within each airline's own portfolio will be made exclusively by each airline.  Neither carrier can veto or stop any capacity decision of the other airline on any route, even within the scope of the partnership.

These discussions will not include any discussion of pricing in any form.  They are likely to include discussions about whether there is too much or too little capacity devoted to particular routes, resulting in recommendations to add or reduce capacity on that route.  They are also likely to include discussions about whether a route is best served by both American and JetBlue, or only one or the other, particularly when one of the carriers has a small presence on the route.

Revenue-Sharing

American and JetBlue will be sharing incremental revenues generated on NEA routes, meaning they will pool their NEA revenues but share only aggregate gains or losses.  The aggregate gains or losses will be calculated in reference to a base position metric meant to reflect each airline's performance on a standalone basis.  The formula shares some broad similarities with the revenue-sharing that occurs in the "metal-neutral joint ventures" such as those SkyTeam, **one**world, and Star Alliance airlines operate in transatlantic markets, and is structured to incentivize growth and an expanded network offering by making each carrier indifferent as to which carrier an incremental NEA passenger flies.  In other words, revenues from growth are shared regardless of whether the new passengers fly American or JetBlue.

**PLAINTIFFS EXHIBIT**

**PX0456**

**1:21-CV-11558**

---

I should add that after some effort we have identified the source of one of your quotes as an article from *Cranky Flier,* wherein it says "JetBlue could grow beyond its tiny presence at LaGuardia by utilizing gates and slots that American might not need."  For the record that statement can only be the reporter's spin on something he heard, because Mr. Raja did not say that there are gates or slots that American "might not need."  It would be highly misleading to attribute any such statement to American or JetBlue.

Best regards,
Dan

**Daniel M. Wall**

**LATHAM & WATKINS** LLP
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8240 | M: +1.925.997.2991

**From:** Doidge, Dick (ATR) <Dick.Doidge@usdoj.gov>
**Sent:** Tuesday, November 3, 2020 6:35 AM
**To:** Wall, Dan (Bay Area) <Dan.Wall@LW.com>; Jessica.Delbaum@Shearman.com
**Cc:** Egge, Michael (DC) <Michael.Egge@LW.com>; Malone, Farrell (DC) <Farrell.Malone@lw.com>; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@usdoj.gov>; Riggs, Kate (ATR) <Kate.Riggs@usdoj.gov>; Goodman, Aaron (ATR) <Aaron.Goodman@usdoj.gov>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Dan and Jessica,

Do you have an update on this request?

Regards,

Dick

**From:** Dan.Wall@LW.com <Dan.Wall@LW.com>
**Sent:** Wednesday, October 28, 2020 5:06 PM
**To:** Doidge, Dick (ATR) <Dick.Doidge@ATR.USDOJ.gov>; Jessica.Delbaum@Shearman.com
**Cc:** Michael.Egge@LW.com; Farrell.Malone@lw.com; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@ATR.USDOJ.gov>; Riggs, Kate (ATR) <Kate.Riggs@ATR.USDOJ.GOV>; Goodman, Aaron (ATR) <Aaron.Goodman@ATR.USDOJ.GOV>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Fair question.  Candidly, we (AA) are struggling with how to provide "market participants" with any information about revenue-sharing, while maintaining the confidentiality of that information.  I cannot overstate how much we do not want to tell other airlines anything about the MGIA.  Even if you were to exclude them from the "market participants" category, we would be concerned.  But beyond that, the subject is so complex.  Look at the Compass Lexecon treatment of the MGIA.  You could not possibly have conversations with market participants that would do justice to the subject matter.

In all events, we will give you our final answer on this tomorrow.  I appreciate that we can't let it linger.

Dan

**From:** Doidge, Dick (ATR) <Dick.Doidge@usdoj.gov>
**Sent:** Wednesday, October 28, 2020 1:51 PM
**To:** Wall, Dan (Bay Area) <Dan.Wall@LW.com>; Jessica.Delbaum@Shearman.com
**Cc:** Egge, Michael (DC) <Michael.Egge@LW.com>; Malone, Farrell (DC) <Farrell.Malone@lw.com>; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@usdoj.gov>; Riggs, Kate (ATR) <Kate.Riggs@usdoj.gov>; Goodman, Aaron (ATR) <Aaron.Goodman@usdoj.gov>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Dan and Jessica,

It has been over a week since we raised the question below with you.  Do you plan to offer a proposal for alternative language and, if so, when should we expect to receive it?

Regards,

Dick

**From:** Doidge, Dick (ATR)
**Sent:** Tuesday, October 20, 2020 7:42 PM
**To:** Dan.Wall@LW.com; Jessica.Delbaum@Shearman.com
**Cc:** Michael.Egge@LW.com; Farrell.Malone@lw.com; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@ATR.USDOJ.gov>; Riggs, Kate (ATR) <Kate.Riggs@ATR.USDOJ.GOV>; Goodman, Aaron (ATR) <Aaron.Goodman@ATR.USDOJ.GOV>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Dan,

I don't agree with many of your characterizations below, but I don't think an extended exchange by email is likely to be productive. In any event, market participants know some things about the NEA,

but do not know about revenue sharing or capacity and schedule coordination, and as you seem to acknowledge below, if they were aware of the full scope of the NEA, they may (or may not) have different views. That was the genesis of our request to disclose those aspects of the NEA. We will await your proposal for alternative language.

Regards,

Dick

**From:** Dan.Wall@LW.com <Dan.Wall@LW.com>
**Sent:** Tuesday, October 20, 2020 6:54 PM
**To:** Doidge, Dick (ATR) <Dick.Doidge@ATR.USDOJ.gov>; Jessica.Delbaum@Shearman.com
**Cc:** Michael.Egge@LW.com; Farrell.Malone@lw.com; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@ATR.USDOJ.gov>; Riggs, Kate (ATR) <Kate.Riggs@ATR.USDOJ.GOV>; Goodman, Aaron (ATR) <Aaron.Goodman@ATR.USDOJ.GOV>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Dick,

This exchange goes a long way toward explaining why lawyers in private practice frequently express frustration about customer testimony and "complaints" resulting from customer interviews. Your note acknowledges that most of the features of the NEA are known in the marketplace. They would be baked-in to the current absence of significant customer opposition. But now you want to tell people that there is also "revenue sharing and cooperation on scheduling and capacity," which you must want to do because you think there is some prospect that it will result in statements of concern or complaint. It probably will lead to at least a few such statements—if you state that "the revenue sharing formula effectively gives the two carriers a common interest in fares in each of the markets covered by the NEA," and capacity and scheduling coordination "would include such topics as whether one of them should end service in a market and whether they should jointly reduce capacity in a market." The concerns and complaints would be unfounded, but with that kind of stimulus you will likely create concerns in at least a few customers.

To illustrate my point, consider revenue-sharing under the MGIA. It is trivially correct that under the MGIA formula, the parties have a common interest in their NEA fares. They do not set fares together, they pursue very different pricing strategies, and while fares are set on routes there is no route-level revenue-sharing, but sure: fares affect revenues, revenues are part of the revenue-sharing formula, so it necessarily follows that, literally if not meaningfully, the parties have a common interest in their NEA fares. But why on earth would you want to tell the customers that instead of the fact that the MGIA is structured to incentivize capacity growth, which is well-understood to lower fares? Why wouldn't you tell them that there is a probability that AA will end up subsidizing JetBlue growth, which will spread the reach of the JetBlue effect? Surely you can understand why, from my perspective, allowing you to tell a

quarter of the story, emphasizing the potential negatives, seems imprudent.

Regardless, we will consider your invitation to propose alternative, balanced language.

Best,
Dan

**Daniel M. Wall**

**LATHAM & WATKINS** LLP
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8240 | M: +1.925.997.2991

**From:** Doidge, Dick (ATR) <Dick.Doidge@usdoj.gov>
**Sent:** Tuesday, October 20, 2020 2:54 PM
**To:** Wall, Dan (Bay Area) <Dan.Wall@LW.com>; Jessica.Delbaum@Shearman.com
**Cc:** Egge, Michael (DC) <Michael.Egge@LW.com>; Malone, Farrell (DC) <Farrell.Malone@lw.com>; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@usdoj.gov>; Riggs, Kate (ATR) <Kate.Riggs@usdoj.gov>; Goodman, Aaron (ATR) <Aaron.Goodman@usdoj.gov>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Dan,

In providing these bullets, our intention was to provide an overview of the main elements of the NEA. We did not mean to suggest that every one of them had not been publicly disclosed. Plainly, the primary components of the NEA about which American and JetBlue are not telling the marketplace are revenue sharing and cooperation on scheduling and capacity. I take from your responses below that you are open to allowing us to disclose these two components of the NEA, but have questions about the phrasing in our letter. Let me turn to each of these:

- **The Northeast Alliance would also share revenue on all flights in/out of La Guardia, Kennedy, Newark, and Boston (excluding any future JetBlue transatlantic flights). One purpose of the revenue sharing is to "make each carrier indifferent as to which carrier an incremental passenger flies."**

  o We should first note that, as far as we are aware, it is not just the "particulars of a revenue sharing formula" that has not been publicly disclosed. As best we can tell, American and JetBlue have not disclosed the fact that the NEA contains revenue sharing at all.

  o Our proposed description of the revenue sharing component simply reflects the fact that under the NEA all revenues from affected flights are pooled and then shared between the two airlines. Though sharing of the pool is tied to the determination of a pre-alliance baseline, that simply serves as a mechanism for allocating the pool. For example, if post-alliance revenues

exceed the baseline as a result of increased fares with zero capacity growth, the revenue gains driven by those fare increases are shared. If post-alliance revenues fall short of the baseline for whatever reason, the revenue loss is shared. Notwithstanding your emphasis on the terms "aggregated, incremental," the revenue sharing formula effectively gives the two carriers a common interest in fares in each of the markets covered by the NEA. As your prior advocacy has conceded, the purpose of the revenue sharing is to "make each carrier indifferent as to which carrier an incremental passenger flies." Replacing "decremental" for "incremental" in this passage would be equally true.

○ In light of this, we believe our proposed statement of the revenue sharing component is fair and accurate. That said, if you would like to propose alternative language, we are open to your suggestion. However, any alternative that you propose should accurately depict the aligned incentives that the revenue sharing component of the NEA creates.

- **The airlines would coordinate on airport facilities and schedules, with the goal that, for example, "JetBlue could grow beyond its tiny presence at LaGuardia by utilizing gates and slots that American might not need." These discussions would include such topics as whether one of them should end service in a market and whether they should jointly reduce capacity in a market.**

  ○ Though there are some public statements touching on this aspect of the NEA, to the best of our understanding they have not clearly disclosed the fact that American and JetBlue will be regularly engaged in joint discussions about how much joint capacity should be flying in a market and who will be flying that capacity. The statements made by American during the 2Q 2020 earnings call that you link below are no different:

    ▪ "Last week, we announced a new partnership with JetBlue that will provide seamless connectivity for travelers in the Northeast and create more choice for customers across our complementary domestic and international network. The JetBlue partnership and the West Coast alliance of Alaska that we announced earlier this year will further strengthen our network and will help to ensure we are positioned for success over the long term."

    ▪ "With JetBlue, American Airlines is historically -- and New York City is a great case study for this. Historically, we have a 10% originating share in the largest air travel market in the world. We operate 50-seat jets in some of the most expensive aircraft -- most extensive airports in the world. And so by doing this, we leverage the strength of both of these companies. The play here is very much that if we can do this, we go and attract more customers to our joined-up networks."

    ▪ "Look, the way we've envisioned it, it would be really a pretty broad partnership where, of course, we would have extensive code sharing back and forth, frequent flyer benefits and a big amount of corporate dealing. A big part of what makes this go, certainly as we look at it, is something that we think will be great for customers and for our team, too. We envision being able to take out things like 50-seat regional jets, which are, in many ways, really uncompetitive product

DOJ-NEA-00002191

in a place like New York or Boston and arrange a number of slot moves within JFK and LaGuardia such that, certainly, AA can grow its mainline presence. That's where you see us adding more long-haul services in New York. And indeed, over time, we anticipate being able to do a whole lot more of that. And then, of course, also for our new partner, JetBlue, they also get to go and expand. So in doing that, we see a lot of ways that we can get work together that may be a little unconventional from traditional code shares in the past, but can create a huge benefit for our customers, a very big benefit to our team and can help both of these airlines really participate in the recovery as and when it happens."

o At most, these statements suggest that each carrier may take unilateral scheduling or capacity actions enabled by the codeshare ("taking out things like 50-seat regional jets" – "JetBlue… [gets] to go and expand), but they do not disclose the direct cooperation on scheduling and capacity decisions that will occur under the NEA. We certainly haven't canvassed all of American's or JetBlue's public statements. In speaking to third-parties, we have remained mindful of our confidentiality obligations with respect to your information. If you are telling us that the degree of cooperation on scheduling and capacity encompassed in the NEA has been fully disclosed publicly, that is helpful for guiding us in future conversations with market participants. Please let us know if that is the case.

o In any case, we believe our proposed statement regarding cooperation on scheduling and capacity under the NEA is fair and accurate. It captures that cooperation may involve growth opportunities as well as reductions. That said, if you would like to propose alternative language, we are open to your suggestion. However, any alternative you propose should fairly reflect that the cooperation includes the possibility of joint capacity reductions, including complete exit by one the airlines.

Please let me know if you have further questions.

Regards,

Dick

**From:** Dan.Wall@LW.com <Dan.Wall@LW.com>
**Sent:** Monday, October 19, 2020 3:20 PM
**To:** Doidge, Dick (ATR) <Dick.Doidge@ATR.USDOJ.gov>; Jessica.Delbaum@Shearman.com
**Cc:** Michael.Egge@LW.com; Farrell.Malone@lw.com; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@ATR.USDOJ.gov>; Riggs, Kate (ATR) <Kate.Riggs@ATR.USDOJ.GOV>; Goodman, Aaron (ATR) <Aaron.Goodman@ATR.USDOJ.GOV>; Bruce.Wark@aa.com; James.Kaleigh@aa.com
**Subject:** RE: JetBlue/American NEA

Dick, I can't argue with that, but let's go through these. Most of what you propose to say is already public, and therefore already baked-in to the absence of meaningful customer complaint about this deal. The rest, frankly, does not seem very well aligned with the stated

goal of providing customers "an understanding of what American and JetBlue actually propose to do under the NEA."

- **The Northeast Alliance involves multiple components.**

Our messaging has rather consistently been that there are multiple components, and multiple agreements, addressing codesharing, frequent flyer program integration, and other topics. Our initial press release is an example of this, which could be shared: https://news.aa.com/news/news-details/2020/JetBlue-and-American-Airlines-Announce-Strategic-Partnership-to-Create-More-Competitive-Options-and-Choice-for-Customers-in-the-Northeast-NET-ALP-07/default.aspx. JetBlue's 8-K is another: http://otp.investis.com/clients/us/jetblue_airways/SEC/sec-show.aspx?Type=html&FilingId=14275774&CIK=0001158463&Index=10000.

- **There would be code sharing on flights originating or ending at LaGuardia, Kennedy, Newark, and Boston airports (excluding any future JetBlue transatlantic flights).**

Again, this has been disclosed. You could, for example, share American's 10-Q on the partnership, https://americanairlines.gcs-web.com/static-files/30362e5e-3869-4171-a4c3-80ce327d09dc, which among other things states: "This arrangement, once finalized, includes an alliance agreement with reciprocal codesharing on domestic and international routes from New York (JFK, LGA and EWR) and Boston…. The arrangement does not include JetBlue's future transatlantic flying."

- **The Northeast Alliance would also share revenue on all flights in/out of La Guardia, Kennedy, Newark, and Boston (excluding any future JetBlue transatlantic flights). One purpose of the revenue sharing is to "make each carrier indifferent as to which carrier an incremental passenger flies."**

AA has not shared this information publicly. The particulars of a revenue sharing formula are not something we would ever share publicly. Furthermore, the proposed statement is highly misleading, as it would make someone think that all revenues are shared, when as you know only aggregated, incremental revenues are shared. Perhaps AA would be willing to authorize the use of a statement addressing this issue, but that is something we would need to work out with JetBlue to ensure its accuracy and objectivity.

- **The airlines would coordinate on airport facilities and schedules, with the goal that, for example, "JetBlue could grow beyond its tiny presence at LaGuardia by utilizing gates and slots that American might not need." These discussions would include such topics as whether one of them should end service in a market and whether they should jointly reduce capacity in a market.**

There is an ample supply of public statements the parties have made about coordination and optimization.  Indeed, optimized schedules has been one the points we have emphasized from the start, and it has not been lost on anyone that one cannot optimize schedules without coordination.  Among the things you could share is the transcript of American's Q2 2020 Earnings Call, Q2 2020, available at https://finance.yahoo.com/news/edited-transcript-aal-oq-earnings-010642446.html, in which Vasu Raja addresses a question about coordination.  That is far more informative than the proposed statement that the parties "would coordinate on airport facilities and schedules," and then "illustrating" that only in relation to JetBlue growth through use of "slots that American might not need."  That does not provide a balanced "understanding of what American and JetBlue actually propose to do under the NEA."

With respect to what topics the parties might discuss in the course of the NEA, you are also proposing a misleading statement.  To get a fair reading on what customers think of the NEA, you can't only tell them that there will be discussions about what they might find most concerning, and without any context or explanation.  There is a rationale for every proposed exit or capacity reduction tied not to restricting output, but rather enhancing the efficiency and competitiveness of the partnership.  If you want to provide a fair and balanced statement on this topic, we will work with you.  But there is work to do.

- **American and JetBlue intend to offer joint frequent flyer benefits and jointly bid for corporate contracts.**

I can only assume that this is really about the joint bidding for corporate contracts, because there is a mountain of disclosure and reporting on joint frequent flyer benefits.  AA would be comfortable with DOJ sharing the statement about this that I made in my October 4 email to you, providing that JetBlue also agrees:  "The parties plan to inform customers that the parties are willing to offer a joint offering (an 'NEA offering') to any corporate customer that wishes to receive such an offer.  Customers who request an NEA offering would get a proposal for seamless access to the NEA network based on one competitive offer."

Happy to discuss this at your convenience.

Best,
Dan


**Daniel M. Wall**

**LATHAM & WATKINS** LLP
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8240 | M: +1.925.997.2991

**From:** Doidge, Dick (ATR) <Dick.Doidge@usdoj.gov>
**Sent:** Monday, October 19, 2020 11:53 AM
**To:** Wall, Dan (Bay Area) <Dan.Wall@LW.com>; Jessica.Delbaum@Shearman.com
**Cc:** Egge, Michael (DC) <Michael.Egge@LW.com>; Malone, Farrell (DC) <Farrell.Malone@lw.com>; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@usdoj.gov>; Riggs, Kate (ATR) <Kate.Riggs@usdoj.gov>; Goodman, Aaron (ATR) <Aaron.Goodman@usdoj.gov>
**Subject:** RE: JetBlue/American NEA

Dan,

As you know, in its investigations the Division typically interviews market participants to gain a better understanding of market conditions and the impact that a proposed merger or other collaboration may have on those conditions. To have meaningful discussion about changes in those conditions with market participants, we believe it would be helpful if they had an understanding of what American and JetBlue actually propose to do under the NEA.

Regards,

Dick

**From:** Dan.Wall@LW.com <Dan.Wall@LW.com>
**Sent:** Monday, October 19, 2020 11:18 AM
**To:** Doidge, Dick (ATR) <Dick.Doidge@ATR.USDOJ.gov>; Jessica.Delbaum@Shearman.com
**Cc:** Michael.Egge@LW.com; Farrell.Malone@lw.com; John.Skinner@Shearman.com; Lepore, Robert (ATR) <Robert.Lepore@ATR.USDOJ.gov>; Riggs, Kate (ATR) <Kate.Riggs@ATR.USDOJ.GOV>; Goodman, Aaron (ATR) <Aaron.Goodman@ATR.USDOJ.GOV>
**Subject:** RE: JetBlue/American NEA

Dick, respectfully, "[t]o have more informed conversations with market participants" tells us nothing about the purpose of disclosing this information. Can you be more specific?

Best,
Dan

**Daniel M. Wall**

**LATHAM & WATKINS** LLP
505 Montgomery Street | Suite 2000 | San Francisco, CA 94111-6538
D: +1.415.395.8240 | M: +1.925.997.2991

**From:** Doidge, Dick (ATR) <Dick.Doidge@usdoj.gov>
**Sent:** Monday, October 19, 2020 8:03 AM
**To:** Jessica Delbaum <Jessica.Delbaum@Shearman.com>; Wall, Dan (Bay Area)
<Dan.Wall@LW.com>
**Cc:** Egge, Michael (DC) <Michael.Egge@LW.com>; Malone, Farrell (DC) <Farrell.Malone@lw.com>;
John Skinner <John.Skinner@Shearman.com>; Lepore, Robert (ATR) <Robert.Lepore@usdoj.gov>;
Riggs, Kate (ATR) <Kate.Riggs@usdoj.gov>; Goodman, Aaron (ATR) <Aaron.Goodman@usdoj.gov>
**Subject:** JetBlue/American NEA

Dan and Jessica,

Please see attached letter.

Regards,

Dick

J. Richard Doidge
Trial Attorney
U.S. DOJ, Antitrust Division, TEA Section
202-514-8944 (office)
202-384-0836 (mobile)

The information contained in this e-mail is government privileged and confidential information intended only for the use of the
addressee(s). If the reader of this message is not the intended recipient(s),
you are hereby notified that any dissemination, distribution or copying of the e-mail is strictly prohibited. If you have received this e-
mail in error, please immediately notify the sender. Thank you.

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

DOJ-NEA-00002196