# EXHIBIT E

LATHAM&WATKINS LLP      SHEARMAN & STERLING LLP

November 12, 2020

**BY EMAIL**

Robert A. Lepore
Chief, Transportation, Energy & Agriculture Section
J. Richard Doidge
Trial Attorney
Antitrust Division
Department of Justice
450 5th Street, NW, Suite 8000
Washington, DC 20530

Re:   American Airlines and JetBlue Airways

Dear Bobby and Dick:

We are writing to advise you that in response to the concerns stated by DOJ Staff during the October 8, 2020, "state of play" Zoom meeting, American and JetBlue are making certain changes to the Northeast Alliance ("NEA") agreements and their implementation plans.

First, to address DOJ Staff's concerns about potential competitive effects in nonstop overlap routes and revenue-sharing, the Parties will amend the NEA agreements so that the revenue-sharing provisions of the MGIA do not apply to (a) non-seasonal city-pair markets on which American and JetBlue are the only substantial competitors providing nonstop service, and (b) non-seasonal city-pair markets on which American and JetBlue are substantial competitors providing nonstop service and there is only one other competitor providing nonstop service. The amendment will use a 5% passenger market share standard for determining whether American and JetBlue are substantial competitors. At implementation these exclusions will be based on full-year 2019 data, as that is the last full year before the COVID-19 pandemic disrupted the industry. This has the effect of eliminating revenue-sharing on Boston-Phoenix, Boston-Rochester, Boston-Syracuse, Boston-Charlotte, and Boston-Philadelphia. The Parties are also intending to propose a method for applying these principles on an ongoing basis after the industry has recovered from the COVID-19 pandemic. (This is proving challenging given the uncertainties concerning when the industry will recover and what new competitive equilibria may look like.) As contemplated by Appendix A to the NEA Agreement, the parties may continue to codeshare on excluded routes in order to maintain a seamless experience for customers. However, as a result of this amendment, any concerns the DOJ might have about the incentive effects of revenue-sharing will be mitigated by competition from other airlines on all affected routes.

Second, in order to address DOJ Staff's concerns about potential spillover effects from NEA coordination, the Parties will amend the NEA agreements so that there are mandatory

Confidential Pursuant to the Court's Default PO                                                                                    AA-NEA-01526168

Robert A. Lepore
J. Richard Doidge
November 12, 2020
Page 2

limitations on what can be discussed during network planning sessions and how those discussions are conducted.  The amendments will provide (a) there shall be no discussions of future fares, fare levels, or revenue management strategies within or outside of the NEA; (b) there shall be no discussions of route, scheduling, or capacity decisions with respect to any flights outside the scope of the NEA, including any discussion of network adjustments to flying that is not in scope of the NEA; (c) any meetings or teleconferences involving the Senior Planning Team and/or NEA Implementation Team will be conducted under the guidance of in-house and/or external legal counsel and will have pre-established agendas that will only include issues related to the NEA network and routes that are reasonably necessary to implement the NEA; and (d) the parties shall establish and provide to the Department of Transportation for review and comment protocols to ensure that the information being exchanged is necessary to the operation of the NEA and does not disclose information concerning pricing and capacity decisions on routes outside the scope of the NEA.  We are willing to provide the protocols referenced in (d) to DOJ as well, should you wish to review and comment on them.

Third, in order to address DOJ Staff's concerns about potential manipulation of NEA assets to influence a partner's competitive behavior, the Parties will amend the NEA agreements to limit discretion to withdraw assets and assistance provided under the NEA.  A term or terms will be added to prohibit withdrawing, reducing or degrading the provision of NEA Assets in response to, or to influence, a partner's competitive behavior, including but not limited to its pricing, within or outside of the geographies covered by the NEA.  We expect to make the same commitment to DOT in an enforceable agreement.  With respect to slots specifically, we are also amending the "Slot Term" provision of the Northeast Alliance Agreement to substantially limit when and under what conditions slot leases can be terminated or shortened.  This will eliminate any ability to manipulate slots to influence a partner's competitive behavior.

Fourth, in order to ensure that there is accurate and sufficient data maintained about the actual competitive effects of the NEA, and to prepare to provide DOT with a self-assessment we have offered to provide, the Parties will agree to maintain data and records in three areas:  (a) Optimization: American and JetBlue will maintain records and data regarding changes to the NEA "optimized schedule" made by the NEA Implementation Team and, separately, Senior Planning Team, for each year from implementation of the NEA; (b) Market Capacity: American and JetBlue will maintain seat and departure numbers per distinct nonstop O/D market served on a quarterly basis, including data on new or incremental city pairs added, or any city pairs that have been removed; and (c) Market Stimulation: American and JetBlue will maintain data sufficient to determine the incremental passengers that the NEA has added to the total market size, overall and by O/D market served.

Finally, please note that it is possible the parties will make these commitments to DOT in an enforceable agreement, in which case the Parties will not be able to revert to the original NEA terms, or alter these terms, on their own.

///

Confidential Pursuant to the Court's Default PO

AA-NEA-01526169

Robert A. Lepore
J. Richard Doidge
November 12, 2020
Page 3

      Thank you, and please let us know of any questions you may have and whether you would like to discuss changes to these amendments.

                                            Best regards,

                                            Daniel M. Wall
                                            of LATHAM & WATKINS LLP
                                            for American Airlines, Inc.

                                            Jessica K. Delbaum
                                            of SHEARMAN & STERLING LLP
                                            for JetBlue Airways

cc:  Makan Delrahim (by email)