UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**AMERICAN AIRLINES GROUP INC. AND JETBLUE AIRWAYS CORPORATION'S MOTION TO SEAL TRIAL EXHIBITS**

Defendants American Airlines Group Inc. and JetBlue Airways Corporation (collectively, "Defendants"), respectfully move the Court under Local Rule 7.2, the Stipulated Protective Order (Dkt. No. 99), and the Court's Order regarding requests to seal party trial exhibits (Dkt. No. 136) to enter an order to place under seal in whole or in part the trial exhibits identified in Appendices A and B, to the extent the exhibits are offered and admitted into evidence. Defendants further request that the sealed documents remain impounded until further order of the Court.

The Parties have met and conferred regarding the confidentiality of these documents consistent with Paragraph 1 of the Supplemental Scheduling and Case Management Order (Dkt. No. 76). Appendix A identifies exhibits Defendants move to seal to which Plaintiffs object and includes the basis for Plaintiffs' objections. Appendix B identifies exhibits Defendants move to seal to which Plaintiffs do not object.

Recognizing that the public's right to access trial materials is "not unfettered," the First Circuit instructs that the "court must carefully balance the competing interests that are at stake in

the particular case" when a party requests sealing of judicial records. *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998). Defendants move to seal in whole or in part the documents identified in Appendices A and B on the basis of two "important countervailing interests, [which] can, in given instances, overwhelm the usual presumption" of the public's right of access to judicial records. *Id.*; *see also U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *Siedle*, 147 F. 3d at 10). First, Defendants move to seal personal information of individuals, the disclosure of which would infringe upon the privacy rights of those individuals. Second, Defendants move to seal confidential proprietary or competitively sensitive business information, the disclosure of which would likely result in serious competitive injury to Defendants.[1] As detailed in the enclosed Appendices A and B, Defendants have endeavored to narrow any confidentiality claims to the fullest extent possible, including, in many cases, proposing targeted redactions. The narrow categories of information that Defendants seek to remain confidential are set forth below.

**I.     CONFIDENTIAL INFORMATION THAT IMPLICATES INDIVIDUAL PRIVACY INTERESTS**

"Privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records. Third-party privacy interests, in particular, have been referred to as a venerable common law exception to the presumption of access, and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at

---

[1] Plaintiffs have additionally requested that Defendants propose confidentiality redactions for their expert reports and move to seal those reports. The expert reports contain many citations to documents produced by parties and third parties that are marked confidential and highly confidential and subject to this instant motion to seal, as well as upcoming motions to seal to be filed by third parties. To the extent that the Court admits these expert reports as evidence (which should be precluded by Rules 702, 802, and 805), Plaintiffs can redact those reports with the guidance of the Court's rulings on those pending and to be filed motions to seal. It is not efficient for anyone to seek to redact those reports now when they are inadmissible and the confidential information contained within is subject to pending motions.

62 (internal citations and quotations omitted). In order to protect these privacy interests, Defendants have proposed targeted redactions of documents identified in Appendices A and B that fall into the following categories:

### A. Personal Phone Numbers

Defendants move to redact from documents identified in Appendices A and B personal phone numbers. Courts routinely accept targeted redactions of phone numbers. *See, e.g.*, *Jean-Pierre v. J&L Cable TV Servs.*, No. 1:18-cv-11499, 2021 WL 6773087, at *2 (D. Mass. June 28, 2021) (named plaintiffs' personal contact information should remain redacted because those individuals maintained a "legitimate privacy interest in their contact information and there [was] no compelling countervailing interest which require[d] the public disclosure of that information"); *Santiago Garcia v. Costco Wholesale Corp.*, No. 19-1082, 2020 WL 3669642, at *4 (D.P.R. July 6, 2020) ("There is a recognized privacy interest in keeping personal facts away from the public eye.") (internal citations and quotations omitted); *NFocus Consulting Inc. v. Uhl*, No. 2:20-CV-5106, 2020 WL 6791232, at *2 (S.D. Ohio Nov. 19, 2020) (redacting personal cell phone numbers is "narrowly tailored and balances [the moving party's] concern of protecting the witness with the public's interest in accessing the record in this case"); *Am. Auto. Ass'n of N. Cal., Nevada & Utah v. Gen. Motors LLC*, No. 17-CV-03874, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019).

### B. Names of Pilots and Flight Attendants

Defendants move to redact from documents identified in Appendices A and B the names of pilots and flight attendants, while leaving their titles within the company unredacted. Although pilots and flight attendants are employees of Defendants, they had no involvement in the business decisions at issue in this case given their unique operational roles within the company. A redaction of only their names would appropriately balance the interest in the substance of the communication between relevant witnesses and pilots and flight attendants while also protecting the privacy of the

3

particular pilots and flight attendants. *See Tourangeau v. Nappi Distribs.*, No. 2:20-CV-00012, 2022 WL 768688, at *8 (D. Me. Mar. 14, 2022) ("[T]he parties may file redacted transcripts to exclude the names, addresses, and contact information . . . , with third party employee names replaced with a pseudonym and a description of their role and gender.").

### C. Personal Discussions

Defendants also move to redact discussions that are highly personal in nature that have no relevance to the case at issue. *See Kravetz*, 706 F.3d at 62 (where information is "highly personal," the "privacy interests implicated by disclosure may overcome the presumption of public access"); *see also U.S. v. Sattar*, 471 F. Supp. 2d 380, 388 (S.D.N.Y. 2006) ("There is no reason to believe that the details of these highly-personal family matters have otherwise been disclosed, and the disclosure of these matters would not promote any of the values associated with public scrutiny of the sentencing process.").

## II. CONFIDENTIAL PROPRIETARY OR COMPETITIVELY SENSITIVE BUSINESS INFORMATION

Defendants also move to seal documents or portions of documents identified in Appendices A and B that contain confidential proprietary or competitively sensitive business information. Courts deny public access to information where "court files might . . . become a vehicle for improper purposes," including "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This Court has recognized "a legitimate and significant interest in protecting . . . sensitive business information" to "avoid the serious competitive injury that dissemination would more than likely entail." *Glass Dimensions, Inc. v. State St. Corp.*, No. CV 10-10588, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (citing *Kravetz*, 706 F.3d at 62). Defendants, based on discussions with employees involved in the day-to-day business of American and JetBlue, have identified a limited

number of categories of information that are the most competitively sensitive that, if revealed, would harm Defendants' competitive standing. Defendants move to seal the exhibits in Appendices A and B falling into each of these categories as described below:

### A. Future Plans and Strategy

Defendants move to seal documents or portions of documents that reflect competitively sensitive information related to Defendants' future plans and strategy. For example, airlines regularly generate network plans that specify where, when, and how they will fly their aircraft in the future. They also generate analyses of other, more strategic plans involving potential partnerships or mergers with other airlines or investing in new product lines or ancillary services. Strategic plans can also include information discussing ongoing strategic initiatives that impact the airlines' immediate and future competitive decision-making.

Disclosure of these types of information would significantly harm Defendants' competitive standing. Competitors could, for example, use the plans to preempt Defendants' growth plans by targeting growth at the same place or pursue a particular partnership more aggressively armed with the knowledge that Defendants plan to pursue a similar partnership. *Williams v. Apple, Inc.*, No. 19-CV-04700, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (information that "would provide competitors with insight that they could use to unfairly compete" qualifies as "business information that might harm a litigant's competitive standing"). As a result, courts accept sealing of future plans or strategy documents. *See, e.g.*, *U.S. v. IBM*, 163 F.3d 737, 739 n.3 (2d Cir. 1998) (noting in an antitrust case that "strategic planning documents [were] filed under seal"); *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should . . . be sealed" where they provide "insight into the parties' business model and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business").

The future plans and strategy documents also reflect investment of substantial time and resources by the Defendants to identify attractive strategies for growth. Thus, the information is proprietary and disclosure would unfairly advantage competitors against the Defendants. *See, e.g.*, *Bauer Bros. LLC v. Nike, Inc.*, No. 09-CV-500, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development."); *Morawski v. Lightstorm Ent., Inc.*, No. CV 11-10294, 2013 WL 12122289, at *2 (C.D. Cal. Jan. 14, 2013) (sealing "prospective business plans" because they contain "proprietary information regarding . . . prospective projects").

Defendants do not seek to seal documents that reflect future plans that are "stale," and have proposed targeted redactions mindful of the need for public access to portions of documents that are relevant to the issues at trial. Defendants' proposed redactions leave available to the public any portions of documents that reflect plans or information regarding plans that no longer provide an insight into what Defendants plan for the future. Defendants also do not seek to seal any information regarding future network plans that have been made public. For example, Defendants have publicized much of the planned growth in New York and Boston since the implementation of the Northeast Alliance through press releases. Defendants do not propose to redact information regarding planned growth in New York and Boston under the Northeast Alliance that has been made public, through press releases or otherwise.

Instead, Defendants seek to seal a narrow set of highly sensitive, non-public future plans and strategic initiatives that would give Defendants' competitors a preview of how Defendants

6

plan to make competitive decisions. The information proposed to be sealed is therefore highly relevant for competition at present, is a product of substantial time and resources by Defendants to identify attractive strategies for growth, and is highly competitively sensitive.

### B. Pricing Strategy

Defendants also move to seal in whole or in part documents that discuss Defendants' pricing strategies. Pricing in the airline industry is technical and airlines spend considerable resources to monitor other airlines' pricing in order to remain competitive and find an edge to win customers. Allowing competitors access to detailed confidential information that reveals Defendants' pricing strategies, including, for example, how and when Defendants decide to match the pricing of competitors or undercut pricing of competitors, would "provide competitors with insight that they could use to unfairly compete" and harm Defendants' competitive standing. *Williams*, 2021 WL 2476916, at *4, 7; *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 3:20-CV-01765, 2022 WL 3578260, at *2 (S.D. Cal. Aug. 18, 2022) (finding that "pricing models and approaches," if disclosed, could hurt competitive standing).

### C. Financial Data

Defendants move to redact portions of documents identified in Appendices A and B that reveal detailed and granular financial data regarding revenue, cost, and profitability for Defendants' flights. Detailed financial data are routinely sealed in federal court proceedings. *See, e.g., Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (finding that "confidential financial information . . . outweigh the presumption of access"); *Cohen v. Trump*, No. 10-CV-0940, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016) ("Where parties have been able to point to concrete factual information or expert testimony that the material sought to be sealed contained confidential business material, such as marketing strategies, product development plans, licensing agreements, and profit, cost, and

7

margin data, courts have been willing to find that information confidential."); *Trapp v. SunTrust Bank*, No. 1:15-CV-937, 2016 WL 6833986, at *2 (M.D.N.C. Nov. 18, 2016) ("The court may seal . . . confidential and proprietary commercial information such as highly sensitive financial and business information.") (internal quotations and citations omitted).

The need to prevent disclosure of granular financial data regarding Defendants' flights is particularly important in the airline industry, where airlines are constantly assessing where to deploy their aircraft to compete more effectively. Access to granular confidential data that would allow a competitor to conclude that one of the Defendants has struggled to generate profits on a certain route or at a certain airport, for example, could motivate that competitor to dial up the pressure for Defendants to exit those routes or airports by adding more capacity to those routes or airports. Conversely, access to granular financial data would allow a competitor to identify routes or airports where Defendants are successfully generating substantial revenue as attractive strategic targets for future growth.

Given the significant advantage that disclosure of this data would provide to Defendants' competitors at substantial harm to Defendants, *see Williams*, 2021 WL 2476916, at *4, Defendants do not view historical granular financial data as stale. The information that competitors can glean from historical financial data regarding relative profits, revenues, or costs of certain routes remain highly relevant to competition today and in the future. Defendants, however, do not propose to seal general references regarding profitability, costs, or revenue in certain regions or airports.

### D.     Customer Names and Specific Pricing or Discount Information

Defendants move to redact from documents identified in Appendices A and B certain corporate customer names and references to specific pricing or discounting information or customer-specific bidding strategy. This Court has found that "specific customer lists and pricing information . . . can constitute trade secrets where the information provides its holder with a

8

competitive advantage." *See Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037, 2015 WL 5447652, at *12 (D. Mass. Sept. 16, 2015). Importantly, Defendants move to redact only portions of documents—names of corporate customers and specific pricing or discount information—despite the fact that many of these documents contain sensitive strategic discussions regarding the customer and relevant factors such as competition and market conditions. Defendants have proposed these highly targeted redactions in order to balance the anticipated use of these documents at trial with Defendants' need to protect the most sensitive information in these documents. Revealing identities of Defendants' corporate customers or specific terms provided to these customers would allow competitors to target Defendants' customers with knowledge they have gained regarding Defendants' customers and the terms provided to those customers through this trial. *See Trade W. Inc. v. E.-W. Aloha Corp.*, No. CV 01-00096, 2016 WL 11713185, at *2 (D. Haw. Aug. 22, 2016) (finding public disclosure of customer lists would harm a litigant's competitive standing).

Disclosure of customer names would also infringe upon the privacy rights of Defendants' customers. As discussed above, "[t]hird-party privacy interests . . . have been referred to as a venerable common law exception to the presumption of access and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted).

Similarly, specific pricing and discount terms or targeted bidding strategies for specific customers are trade secrets, the disclosure of which would cause significant harm to the competitive standing of Defendants. *See, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (pricing information "plainly falls" within the definition of trade secrets and should be sealed). The proposed targeted redactions would prevent this harm while allowing the public to access the relevant substantive discussions around competition and other strategic factors

contained in the documents. Plaintiffs' objections to these redactions are identified in Appendices A and B.

### E. Proprietary Tools

Defendants move to redact portions of the documents identified in Appendices A and B that reveal certain highly sensitive features of Defendants' proprietary tools used to make strategic decisions. For example, certain documents identified in Appendices A and B discuss American's proprietary forecasting tool called "Raven," which American uses in the ordinary course of business to analyze its future plans. Confidential and proprietary tools used for important business decisions are "the kind of confidential and proprietary non-public business information that could harm a party's competitive standing if disclosed." *Fortson v. Garrison Prop. & Casualty Ins. Co.*, No. 1:19-CV-294, 2022 WL 824802, at *4 (M.D.N.C. Mar. 18, 2022) (allowing a valuation services company to redact information regarding the methodology used in valuing loss vehicles).

As a result, Defendants have proposed targeted redactions of highly specific information about features of Raven. Information regarding the general purpose, use, and output of Raven, particularly those relevant to Defendants' use of Raven to analyze the Northeast Alliance remain unredacted.

### F. The Northeast Alliance Agreements

Finally, Defendants move to seal or redact in part of the Northeast Alliance Agreements. Defendants recognize that there is a compelling need for fulsome access to the core Northeast Alliance Agreements that are at issue in this case, which are the Northeast Alliance Agreement (the main agreement that governs the Northeast Alliance), the Mutual Growth Incentive Agreement (the agreement that governs revenue sharing in the Northeast Alliance), the Codeshare Agreement (the agreement that governs codesharing in the Northeast Alliance), and the amendments to the Northeast Alliance Agreement and the Mutual Growth Incentive Agreement.

Thus, Defendants have proposed very few redactions to these agreements that protect the following most competitively sensitive information.

First, Defendants move to redact terms that pose risk of gamesmanship by competitors, including, for example, terms that specify percentage thresholds relating to slot usage obligations and specific financial terms relating to termination of the Northeast Alliance.  Second, Defendants move to redact a few references to specific financial terms or mathematical formulas that are at the level of granularity that would not interfere with an open discussion and demonstration of the inner workings of the Mutual Growth Incentive Agreement by the witnesses at trial.  Disclosure of these terms would "provide competitors with insight that they could use to unfairly compete," *Williams*, 2021 WL 2476916, at *4, or put Defendants "at a disadvantage in future negotiations" with other partners that could leverage that information to extract more favorable terms from Defendants.  *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844, 2015 WL 984121, at *3 (N.D. Cal. Mar. 4, 2015) ("[T]he Court is satisfied that disclosing the terms of these agreements would put Specialized at a disadvantage in future negotiations for similar agreements.").

Additionally, Defendants move to seal in full certain ancillary agreements to the Northeast Alliance, such as the Parties' Frequent Flyer Agreements and Special Prorate Agreement, that govern at a very technical level how the Parties will implement specific elements of their cooperation.  Sealing these agreements will not interfere with a fulsome public discussion of the features of the Northeast Alliance while disclosing the agreements would reveal proprietary information that would harm Defendants' competitive standing.

For these reasons, Defendants move to seal or redact in part the Northeast Alliance Agreements as specified in Appendices A and B.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant their Motion to Seal Trial Exhibits.

Dated:  September 9, 2022                                    Respectfully submitted,

/s/ Daniel M. Wall
Daniel M. Wall (*pro hac vice*)
Elizabeth C. Gettinger (*pro hac vice*)
Elise M. Nelson (*pro hac vice*)
Nitesh Daryanani (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

Allyson M. Maltas (*pro hac vice*)
Ian R. Conner (*pro hac vice)*
Michael G. Egge (*pro hac vice*)
Farrell J. Malone (*pro hac vice*)
Marguerite M. Sullivan (*pro hac vice*)
Tara L. Tavernia (*pro hac vice*)
Seung Wan Paik (*pro hac vice*)
Jesse A. Vella (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
allyson.maltas@lw.com
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant*
*American Airlines Group Inc.*

/s/ Richard Schwed
Richard Schwed (*pro hac vice*)
Matthew L. Craner (*pro hac vice*)
Jessica K. Delbaum (*pro hac vice*)
Leila Siddiky (*pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Brian Hauser (*pro hac vice*)
Ryan Leske (*pro hac vice*)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*

13

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I hereby certify that on multiple occasions, including August 23, 2022 and September 1, 2022, Defendants met and conferred in good faith with counsel for Plaintiffs regarding the confidentiality of the Parties' trial exhibits. Plaintiffs' objections to Defendants' proposed confidentiality designations following these conferences are set forth in Appendix A.

/s/ Daniel M. Wall
Daniel M. Wall

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Daniel M. Wall
Daniel M. Wall