UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**REPLY IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION AND MOTION *IN LIMINE* CONCERNING PLAINTIFFS' EXPERT'S MERGER SIMULATION MODEL**

## ARGUMENT

This Reply Memorandum develops three points: (1) Dr. Miller's merger simulation model ignores key terms of the agreements it seeks to model and therefore fails *Daubert's* "fit" requirement; (2) the *Sanofi* decision Plaintiffs emphasize undermines Dr. Miller's use of the "Bertrand" competition model; and (3) wildly implausible results at odds with all prior learning show that Dr. Miller's predicted price increases are unreliable.

***First*, Dr. Miller's merger simulation does not model the capacity effects, or the growth incentives, of the NEA.** Much of Plaintiffs' opposition is simply an assertion that the NEA is close enough to a merger to use a merger simulation. There is no need to reply to that. However, Plaintiffs also contend that Dr. Miller's model is not a pure merger simulation, but has been adapted to the NEA. That is a half-truth at best. Dr. Miller has confirmed that at least for nonstop overlap routes—which is where Dr. Miller's merger simulation estimates almost all of the harm—he is in fact modeling the profit-maximizing pricing solution (which is how he predicts fare increases) as if American and JetBlue have merged. *See*, *e.g.*, Ex. D to Memorandum in Support of Defendants' *Daubert* Motion and Motion *In Limine* ("Mot.") (Miller Tr.) 185:14-186:20. More fundamentally, Plaintiffs' contention that Dr. Miller "analyzed the NEA in its entirety" is not the same thing as saying that Dr. Miller modeled the NEA by its terms. He did not. Dr. Miller is crediting terms that he says replicate merger incentives while ignoring the parts of the NEA that undermine the use of a merger simulation: the terms that *preserve competition* between American and JetBlue and the accompanying MGIA that *incentivizes capacity growth*.

One cannot justify modeling the NEA as a merger by ignoring all ways it is not a merger. Imagine if an expert in accident reconstruction offered testimony based on an assumption that the defendant's car was going 100 mph when all available evidence shows it was going 50 mph. No

1

court would permit that because the wrong speed distorts the physics of the reconstruction. Using a merger simulation in a case that is not about a merger has the same effect. Dr. Miller simulates an event, a merger, that like the assumed car going 100 mph carries much greater force than the real car going 50 mph. Competition is obviously constrained much more by a merger than by a collaboration. And to pull this off, Dr. Miller *just says* Defendants will ignore the terms of the NEA agreements, and will instead somehow behave as a merged firm would. The conclusions he reaches about the NEA based on his "merger simulation" are thus not about the actual NEA, but some vision of presumed but not proven post-NEA behavior that Dr. Miller concocted to justify the merger simulation. Dr. Miller's model does not "fit" the NEA, and conclusions based on the model are not arrived at in a "scientifically sound and methodologically reliable fashion." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-93 (1993). There is "simply too great an analytical gap between the data and the opinion proffered" to render Dr. Miller's testimony admissible under Rule 702 or *Daubert*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To be more specific, the heart of both Dr. Miller's model and his rationale for using a merger simulation is revenue sharing. He builds his case for the merger simulation on revenue sharing and the model itself has revenue sharing terms built into the math. Yet, indisputably, it is not the right math. Dr. Miller ignores that the MGIA's revenue sharing formula is *dynamic* and depends on the carriers' share of NEA capacity over time, which incentivizes each carrier to grow. Ex. A to Mot. (Miller Rpt.) at 31, n.68. He assumes and models static profit sharing instead. *Id.* And Dr. Miller claims he can do so simply because he does not believe it is economically rational for Defendants to follow the MGIA terms. Ex. D to Mot. (Miller Tr.) 185:7-13. That is not acceptable. It results in a model of behaviors that are not happening.

Plaintiffs now try to minimize the concession that Dr. Miller did not model the dynamic revenue sharing terms of the NEA by repeatedly stating Dr. Miller considers capacity effects in his model. This is categorically false. He holds capacity ***fixed*** at 2019 levels, in direct contradiction of the terms of the MGIA. To repeat: ***His report states*** that he models the NEA "as though profits are split according to fixed proportions" and "assume[s] these proportions match the Defendants' 2019 shares of NEA capacity." Ex. A to Mot. (Miller Rpt.) at 31, n.68. According to Dr. Miller's model, *at all times*, JetBlue gets 57% and American gets 43%, their respective 2019 overall share of capacity. Ex. D to Mot. (Miller Tr.) 186:13-20. Dr. Miller does this despite having no "empirical evidence" that Defendants behave as if they share profits in these fixed proportions. *Id.* 187:23-188:11.[1]

If Plaintiffs' *lawyers* want to make an argument that the NEA is a disguised merger, so be it. That will merely be unpersuasive, not an admissibility issue. But as an expert, Dr. Miller is required to use scientifically valid methods calibrated to the facts of this case. He must model what the NEA is, not some preferred vision of it that connects to his model only by his *ipse dixit*. There could not be a more obvious "fit" issue. *See Daubert*, 509 U.S. at 591-92 ("expert testimony proffered in the case [must be] sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 154 (1999).

***Second***, **Dr. Miller's merger simulation uses the wrong competition model for the airline industry.** Plaintiffs try to defend the use of a merger simulation in a non-merger case by citing to *Castro v. Sanofi Pasteur, Inc.* 134 F. Supp. 3d 820 (D.N.J. 2015). But Plaintiffs' reliance

---

[1] Plaintiffs cite to statements by Defendants to show, for example, they will "coordinate capacity" as if they were a "single airline" under the MGIA as "evidence." Response to Defendants' *Daubert* Motion And Motion *In Limine* ("Opp.") at 1, 7. But Plaintiffs take these statements entirely out of context. *See* Ex. B to Opp. (PX0456), at 1-2.

on *Sanofi* is mystifying. *Sanofi* involves a bespoke simulation of the economic effects of "bundling," not an effort to apply an off-the-shelf merger simulation to something that is not a merger. *Id.* at 836. As such, it does not refute Defendants' argument that "there is neither economic literature nor judicial precedent for the use of a merger simulation in estimating the effects of a collaboration." Mot. at 2. Plaintiffs cite nothing from any relevant legal or economic literature to support their position.

In addition, the *Sanofi* court stated that using the wrong model of competition in a simulation is a *Daubert* issue: "Improper use of Cournot over Bertrand [or here, Bertrand over Cournot] may justify exclusion of a model, depending on the severity of the error." *Sanofi*, 134 F. Supp. at 838. That is precisely the point Defendants raised.[2] Furthermore, *Sanofi* directly support Defendants' position that "Cournot is the simulation model used for competitive markets where competition is based on quantity." *Id.* at 837. That is how the airline industry operates *according to Plaintiffs' other expert, Dr. Town*. Mot. at 13-14. The use of a Bertrand simulation model in *Sanofi* was appropriate because of the economics of that industry, but not here.

**Third**, **Plaintiffs have no explanation for Dr. Miller's implausibly high predicted fare effects**. Plaintiffs' unease about how out-of-line Dr. Miller's fare predictions are with the known effects of actual airline mergers is palpable. They have now embarked on an effort to convince the Court not to take the predictions literally, including by introducing new arguments that these results could arise from non-price variables such as quality. *See, e.g.*, Opp. at 3. But, merger simulations are designed to calculate *price effects*, and Plaintiffs admit that Dr. Miller's simulation

---

[2] Plaintiffs' answer is that Dr. Miller gets higher estimates of harm using Cournot. But this is not a comparative exercise where one can justify a wrong model by it being less bad for the adversary than the correct model. *Daubert* is about ensuring expert testimony is appropriately tailored to the underlying science and facts of the case. Dr. Miller did not do that.

4

model predicts "price changes." *See id.* at 16.  There must be some validation of those predictions to pass muster under *Daubert*, otherwise the Court has no basis to conclude the model is reliable.  If Plaintiffs want to use a merger simulation, they need to validate it against what the literature shows is the plausible range of effects from mergers or the actual data available.  Mot. at 15-16.

Plaintiffs advance one meaningful argument, which is that Dr. Miller's predictions can be validated by comparisons to "the past effects of JetBlue exit and entry." Opp. at 14.  Not so.  The observed effects of JetBlue entry or exit cannot justify Dr. Miller's estimated price effects because *merger simulations do not model entry and exit.*  They model how *pricing* incentives change based on common ownership and control, and actually hold capacity constant.  There is no new entry, no exits, and no one changes capacity in response to higher pricing.  Entry or exit means that *capacity has changed* and whatever equilibrium existed in the market beforehand has been disrupted.  It has much more dramatic effects than the effects of mergers on pricing incentives.

These entry and exit benchmarks (even if not cherry-picked) are thus inapposite and irrelevant anecdotes.  The same is true of the analyses that supposedly "corroborate" Dr. Miller's simulation results.  *See id.* at 16.  Both analyses—legacy airlines' fare effects and the Boeing 737 MAX grounding—also involve a substantial change in capacity.  They also find much smaller fare changes than Dr. Miller's predictions.  *See* Ex. A to Mot. (Miller Rpt.), ¶¶ 211-22.  In all events, Dr. Miller's predicted fare increases *are not associated with capacity changes*, but rather by what supposedly happens after mergers.  They need to be validated, but are in fact undermined, by the measured effects of prior airline mergers.  Mot. § IV.A; *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181 (D. Mass 2012) (excluding expert's study as unreliable given "the pervasiveness of . . . methodological errors and the lack of congruity between his theory and data").

Dated: September 13, 2022

Respectfully submitted,

/s/ Daniel M. Wall
Daniel M. Wall (pro hac vice)
Elizabeth C. Gettinger (pro hac vice)
Elise M. Nelson (pro hac vice)
Nitesh Daryanani (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

Ian R. Conner (pro hac vice)
Michael G. Egge (pro hac vice)
Farrell J. Malone (pro hac vice)
Allyson M. Maltas (pro hac vice)
Marguerite M. Sullivan (pro hac vice)
Tara L. Tavernia (pro hac vice)
Seung Wan Paik (pro hac vice)
Jesse A. Vella (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant American Airlines Group Inc.*

/s/ Richard Schwed
Richard Schwed (pro hac vice)
Matthew L. Craner (pro hac vice)
Jessica K. Delbaum (pro hac vice)
Leila Siddiky (pro hac vice)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Brian Hauser (pro hac vice)
Ryan Leske (pro hac vice)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant JetBlue Airways Corporation*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Daniel M. Wall
Daniel M. Wall
