**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:21-cv-11558-LTS |
| AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, | |
| *Defendants*. | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT RON DILEO**

Defendants' proffered expert Ron DiLeo's testimony and opinions fail to meet the standards of admissibility because they are not "based on sufficient facts or data," nor are they "the product of reliable principles and methods."  *See* Fed. R. Evid. 702(b), (c).  Defendants' opposition ("Opposition" or "Opp.") concedes that Mr. DiLeo has performed no independent verification or analysis of the benefits he purports to identify, and that he has not done *anything* to support his opinions as to what corporate customers want.

The Opposition describes in detail Mr. DiLeo's employment background, but does nothing to respond to Plaintiffs' fundamental argument that Mr. DiLeo has no basis to testify as to the specific opinions he renders.  If Defendants were offering Mr. DiLeo to provide the Court with mere background about the travel industry, Defendants' focus on Mr. DiLeo's background might be appropriate.  But Mr. DiLeo intends to opine that the Northeast Alliance ("NEA") *in fact delivers benefits* to corporate customers.  To render those opinions—offered in an attempt to meet their burden of establishing procompetitive justifications under step two of the rule of

1

reason—the law requires Mr. DiLeo to have done at least *some* independent work.

In response to Plaintiffs' case showing the NEA's significant competitive harms to all passengers on flights to and from Boston and New York, Defendants attempt to justify their pact by claiming it will benefit their corporate customers in particular. Tellingly, however, none of Defendants' corporate customers will testify at trial.[1] Instead, Defendants intend to put Mr. DiLeo on the stand to say what their corporate customers will not. But an expert cannot "plug holes" in the evidentiary record for Defendants. *In re Aluminum Phosphate Antitrust Litig.*, 893 F. Supp. 1497, 1506 (D. Kan. 1995).

## ARGUMENT

### A. Mr. DiLeo Has Not Independently Verified Alleged Benefits of the NEA

Defendants' Opposition confirms that Mr. DiLeo intends not just to provide industry background, but to opine that the NEA "brings real benefits." (Opp. at 1). The Opposition also confirms that, for each of the NEA benefits that Mr. DiLeo touts ("expanded service," "improved flight schedules," "expanded loyalty programs," "enhanced experience," and "larger, better-equipped aircraft,"), he has done no formal analysis to confirm whether any one of those benefits has in fact materialized (and if so, to what extent). Nor has Mr. DiLeo done any analysis to confirm that any purported benefit is attributable to the NEA. (Plaintiffs' Motion in Limine No. 1, ECF No. 140 ("Motion" or "Mot.") at 4).

Defendants do not attempt to refute the line of directly applicable antitrust cases that make clear an expert cannot assert the benefits of a proposed combination by relying

---

[1] Defendants initially identified as a witness a former corporate travel representative for a large Boston corporate customer. However, at deposition, the witness testified that she was in fact not aware of the NEA while in her position, had no idea the NEA was being implemented, and was unaware of any benefits the NEA provided to her corporation's travel program. She also undermined Defendants' claim that JetBlue needs the NEA to compete for corporate customers in Boston, given that JetBlue was already meeting her company's travel needs in Boston prior to entering into the NEA. Not surprisingly, Defendants do not intend to call this witness at trial.

2

"exclusively on documents created by . . . Defendants" without performing "any independent analysis" to verify the same.  *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 83–84 (D.D.C. 2015); *see also FTC v. Wilh. Wilhemsen Holding ASA*, 341 F. Supp. 3d 27, 73 (D.D.C. 2018) ("The court cannot substitute Defendants' assessments and projections for independent verification"). Instead, Defendants rely on cases from entirely different contexts for the non-controversial proposition that experts are generally allowed to testify about "relevant industry conditions" based on their "experience and knowledge."  (*See* Opp. at 5).  *Hearts of Fire Co.* was a breach of contract case where "adherence to [ ] industry standards is recognized as one factor to be considered in determining liability."  2017 WL 4364405 at *1, *4–5; *Ji v. Bose Corp*, 538 F. Supp. 2d 354, 358 (D. Mass. 2008) (same).  That industry experts in those cases were allowed to testify about industry conditions based on their experience—where "industry custom and practice" was a factor in determining liability—provides no support for allowing Mr. DiLeo to testify here.

      Where Defendants actually cite cases with facts and circumstances relevant to the case at hand, those cases actually support Plaintiffs' position.  Indeed, those cases are notable because the underlying facts reveal that the experts at issue there performed the type of work that Mr. DiLeo concededly here has not.  In Defendants' principal case, for example, the plaintiff's industry expert came up with a system—relying on five criteria—for determining the substitutability of products for market definition purposes.  *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 40 (S.D.N.Y. 2016).  The parties debated whether sufficient academic literature supported the industry expert's chosen methodology.  Ultimately, the court determined that the expert had identified "sufficient support for his methodology in academic literature and practitioner studies."  *Id.*  These are not the facts here.  Mr. DiLeo has no methodology, no

criteria, and identified no support in any academic literature nor practitioner studies.  And, crucially, Mr. DiLeo is not providing industry background to assist the Court in understanding competitive dynamics for market definition purposes.  Rather, Defendants are using Mr. DiLeo's testimony in an attempt to meet their "heavy burden" of establishing sufficient procompetitive benefits of the NEA under step two of the rule of reason.  *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 113 (1984).[2]

In short, *none* of Defendants' authority supports the situation here, where Defendants seek to have Mr. DiLeo testify about specific benefits when he has done no independent verification or analysis of the same.  He has simply taken what *Defendants* have identified as "benefits" in a selected set of their own self-serving documents and press releases, and asserted those as the "benefits" of the NEA.[3]  That is not appropriate expert testimony.  *See* In re *Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at *4 (S.D. Cal. Nov. 17, 2011) (excluding proffered expert testimony forming conclusions based on a reading of record evidence because "no specialized or technical knowhow is required to read and draw conclusions" from the documents and testimony cited by the expert).

> **B.  Mr. DiLeo Has No Reliable Basis to Opine on What Corporate Customers "Value"**

In addition to opining about the purported benefits of the NEA, Mr. DiLeo speculates— pointing to no data whatsoever—about what an undefined set of corporate customers value in

---

[2] The same is true, as Defendants concede, of *FTC v. Whole Foods Mkt, Inc.*, where the court accepted industry expert testimony about "the industry generally" (Opp. at 6) because it helped the Court understand the relevant market.  The court almost exclusively cited to the expert's testimony in the portions of the opinion defining the relevant market.  502 F. Supp. 2d 1, 22–34 (D.D.C. 2007).

[3] Defendants improperly seek to bolster the basis for Mr. DiLeo's opinions by referring to his statement at deposition that he reviewed more than just the documents identified in Appendix B to his report.  (Opp. at 9 (citing DiLeo Dep. Tr. at 70:10–71:24)).  However, Mr. DiLeo did not identify those documents at the time of his expert report and could not identify any of them at deposition, instead confirming that he did not rely upon them in forming his opinions.  Any belated claim that these unidentified documents form the basis of his opinion is in violation of both Federal Rule of Civil Procedure 26 and the Expert Protocol entered by the Court in this case (ECF No. 83).

choosing airlines for corporate travel.  (Mot. Ex. 1 at ¶ 11).  Defendants ignore the fundamental premise that even when testifying based on experience, experts must exhibit the "same level of intellectual rigor" of experts in the field.  *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  An expert's methodology must be "consistent with standards of the expert's profession." *SMS Systems Maintenance Services, Inc. v. Digital Equipment Corp.*, 188 F.3d 11, 25 (1st Cir. 1999) (rejecting expert testimony in antitrust case for testifying about "customer satisfaction" without conducting a survey or validating data).  Mr. DiLeo testified that as CEO of the Association of Corporate Travel Executives—the very credential Defendants cite in bolstering his relevant experience—he found surveys "very beneficial" in determining what corporate customers want.  (Mot. at 7).  And *Defendants themselves* have used surveys to assess their business customers' preferences.  Yet Mr. DiLeo conducted no such survey here, nor even so much as spoke to a single corporate customer.  Defendants cannot have it both ways.  If Mr. DiLeo's experience in the field qualifies him as an expert, then he must follow those same "standards" here.  Mr. DiLeo cannot simply assert what corporate customers want based solely on his own *ipse dixit*.

Contrary to Defendants' claim, these questions do not merely go to the weight of Mr. DiLeo's testimony. (Opp. at 10–11).  Questions about the details of an expert's methodology may go to the weight; but where, as here, there is no methodology, the testimony should not be allowed.  *See SMS Systems*, 188 F.3d at 25 ("expert testimony that offers only a bare conclusion is insufficient to prove the expert's point").

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion in Limine No. 1 (ECF No. 140), the Court should exclude Mr. DiLeo as an expert witness.

Dated: September 13, 2022

/s/ William H. Jones II
William H. Jones II
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-514-0230
Fax: 202-307-5802
Email: bill.jones2@usdoj.gov

*Attorneys for Plaintiff United States of America*

MARK BRNOVICH
Attorney General

/s/ Robert Bernheim
ROBERT BERNHEIM (AZ Bar No. 024664)

Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Tel: (520) 628-6507
Email: robert.bernheim@azag.gov

*Attorneys for Plaintiff State of Arizona*

ROB BONTA
Attorney General
KATHLEEN E. FOOTE
Senior Assistant Attorney General
NATALIE S. MANZO
MICHAEL W. JORGENSON
Supervising Deputy Attorneys General
ROBERT B. McNARY
JAMIE L. MILLER
Deputy Attorneys General

/s/ Robert B. McNary
ROBERT B. McNARY
Deputy Attorney General
California State Bar No. 253745
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Phone: 213-269-6283
E-mail: robert.mcnary@doj.ca.gov

*Attorneys for Plaintiff State of California*


KARL A. RACINE
Attorney General
KATHLEEN KONOPKA (DC Bar No.
495257)
Deputy Attorney General

/s/ Arthur T. Durst
ARTHUR T. DURST (DC Bar No.
888273305)
ADAM GITLIN
Office of the Attorney General for the
District of Columbia
400 Sixth Street NW, Tenth Floor
Washington, DC 20001
Tel: (202) 442-9853
Email: arthur.durst@dc.gov

*Attorneys for Plaintiff District of Columbia*

ASHLEY MOODY
Attorney General

/s/ Colin G. Fraser
LIZABETH A. BRADY (FL Bar No.
457991)
RACHEL S. BRACKETT (FL Bar No.
109775)
COLIN G. FRASER (FL Bar No. 104741)

Office of the Attorney General, State of
Florida
PL-01, The Capitol
Tallahassee, FL 32399
Tel: (850) 414-3300

7

Email: Liz.Brady@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

MAURA HEALEY
Attorney General

/s/ William T. Matlack
WILLIAM T. MATLACK (MA Bar No. 552109)
DANIEL H. LEFF (MA Bar No. 689302)

Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Tel: (617) 727-2200
Email: William.Matlack@mass.gov
Email: Daniel.leff@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

JOSH SHAPIRO
Attorney General
JAMES A. DONAHUE, III (PA Bar No. 42624)
Executive Deputy Attorney General
Public Protection Division

/s/ Jennifer A. Thomson
TRACY W. WERTZ (PA Bar No. 69164)
JOSEPH S. BETSKO (PA Bar No. 82620)
JENNIFER A. THOMSON (PA Bar No. 89360)

Pennsylvania Office of Attorney General
Antitrust Section
14th Floor Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
Email: twertz@attorneygeneral.gov

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

JASON S. MIYARES
Attorney General

/s/ Tyler T. Henry
TYLER T. HENRY (VA Bar No. 87621)
Assistant Attorney General
Antitrust Unit
Office of the Virginia Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Tel: (804) 692-0485
Email: THenry@oag.state.va.us

*Attorneys for Plaintiff Commonwealth of Virginia*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the

CM/ECF system, will be sent electronically to all registered participants as identified on the Notice

of Electronic Filing.

/s/ James H. Congdon
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-299-4574
Fax: 202-307-5802
james.congdon@usdoj.gov

*Attorney for United States of America*

10