UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**REPLY MEMORANDOM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OF DEFENDANTS' ALLEGED CARVE-OUT ROUTES**

The central issue of this case is whether the Northeast Alliance ("NEA") is likely to harm competition. By introducing evidence of their non-binding agreement to carve-out six overlap routes from the revenue-sharing and capacity coordination provisions of the NEA, Defendants are simply trying to distract from that issue. Because Defendants can abandon the agreement at any time, and because the carve-outs are insufficient to resolve the competitive harms of the NEA, evidence about those carveouts is inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403. Nothing in Defendants' Opposition refutes these sound reasons to preclude such non-probative evidence from trial.

## ARGUMENT

### A. Measuring the NEA's Competitive Harm on Carve-Out Routes is Appropriate

Defendants' miss the mark when they assert that Plaintiffs have "made the Carve-out Routes relevant" by measuring the consumer harm that the NEA will cause on these routes. (Opp. at 6). Plaintiffs do not assert that the routes themselves are irrelevant. Rather, Defendants' voluntary "fix"—carving six routes out of revenue sharing and capacity coordination—is irrelevant because it is illusory, fully revocable, and inadequate. The Carve-Out Amendments do not make it more or less probable that the NEA will harm competition because Defendants can both make money by rescinding the amendments the moment this litigation concludes.[1]

Furthermore, Defendants' characterization of Prof. Miller's analysis is misleading. First, Defendants suggest that Prof. Miller's merger simulation ignores their carveouts. Prof. Miller

---

[1] *See* Mot. at 3 n.4, describing the ease with which Defendants can alter or rescind the Carve-Out Amendments. It is for this reason that Defendants' analogies to *AT&T* and *Arch Coal* are distinguishable from this case. Defendants point to *United States v. AT&T, Inc.*, 916 F.3d 1029, 1035 (D.C. Cir. 2019) and *FTC v. Arch Coal, Inc.* 329 F. Supp. 2d 109, 114 (D.D.C. 2004) for the proposition that Courts have allowed evidence of a "fix" even where antitrust enforcers did not view that fix as adequate. But those cases are factually distinguishable. Arch Coal could not simply walk away from its divestiture commitment after litigation ended; the divestiture buyer would have sued. Here, as profit-maximizing enterprises, Defendants have the ability to rescind or amend their agreement after litigation, and doing so would be to the financial benefit of *both* parties—not just one.

provided in his Initial Report an alternative estimate of harm for domestic overlaps that credits Defendants' alleged carveouts,[2] but, as he explained in his deposition, he had concerns about the carveouts' effectiveness.[3]  Additionally, Prof. Miller explained that, even apart from the effects from capacity coordination and revenue sharing, all domestic markets where American and JetBlue compete will likely suffer harm as a result of Defendants engaging in accommodating conduct in the spirit of partnership.  This underscores that the merger simulation is only one component of Plaintiff's experts' analysis of harm likely to result from the NEA.[4]

### B. The Alleged Carve-Outs Do Not Mitigate the Harm Caused by Code-Sharing

In the Motion, Plaintiffs argue that evidence of the alleged carve-outs should be excluded under Rule 403 because of the difficulty of untangling the anticompetitive harm caused by revenue sharing and capacity coordination from the anticompetitive harm caused by code-sharing.  (Mot. at 7).  Defendants did not counter this point.

Code-sharing, along with NEA provisions that enable frequent flyer program reciprocity and permit the parties to engage in joint marketing to and contracting with corporate customers, will lead to significant anticompetitive harm on these routes.  (*Id.* at 6–8).  This is true even if Defendants honor their "intention" to continue carving out revenue sharing and capacity coordination.  (Opp. at 7).  Under the code-sharing provisions, "the carrier marketing a route to

---

[2] That alternative simulation predicts $492 million of harm for domestic overlaps if carve-out routes are excluded from the simulation of consumer harm and $696 million in harm if the carve-out routes are included in the simulation.  Ex. 1, Expert Report of Prof. Nathan Miller at ¶ 251, Ex. 24.

[3] Defendants' selective quotation of Dr. Miller's deposition transcript is misleading.  Defendants asked Dr. Miller whether the harms he quantified with respect to the carve-out routes were likely to materialize.  Dr. Miller responded "I have concerns about the effectiveness of the carve-outs in the contracts in ameliorating harm.  And I'll note that if there is a way for the parties to soften price competition along those routes it would be profitable to do so.  And so I do view it as reasonably likely that harm would occur along those routes."  Opp. Ex. P, Deposition of Nathan H. Miller, Ph.D. ("Miller Tr.") 171:4–11.

[4] That merger simulation is featured in Section 6.3 of Prof. Miller's Report.  Defendants downplay his discussion of harm in Section 6.4 ("Additional effects of the NEA where standalone American and JetBlue growth was planned"); Section 6.5 ("Additional effects of the NEA in transatlantic routes"); and the entirety of Section 7 ("Effects from the risk of increased coordination or accommodating conduct in domestic markets, whether within or outside the scope of the NEA").

customers will not only receive a commission for any ticket it sells on the flights of the other carrier, it will also apply the other carriers' pricing. These entanglements mean that one carrier's revenues related to these routes are determined in part by the other carrier's pricing, thus blunting incentives to compete on price." (Mot. at 7). Plaintiffs pointed to three examples of the Department of Justice or the Department of Transportation ("DOT") excluding nonstop overlap routes from codeshare agreements due in part to these very concerns. (*Id.* at 8 n.7). Defendants offered no rebuttal because code-sharing on these routes will cause significant competitive harm and there is no way to cleanly separate this harm from the anticompetitive effects of revenue sharing and capacity coordination.

**C. Defendants' Recitation of the Factual Background is Unsupported and Misleading**

Defendants' claim that their carveouts are not illusory because they offered to incorporate the Carve-Out Amendments into their agreement with DOT. That argument does not solve the fundamental problem that the Carve-Out Amendments represent a non-binding commitment. It is also unsound for three reasons. First, Defendants' suggest that DOT only rejected the proposed carve-out provision because it failed to carve out code-sharing. Even if that were true, this only highlights that DOT recognized a crucial inadequacy of Defendants' proposed remedy.[5] Second, as DOT has explained, its agreement with the Defendants failed to address many competitive issues raised by the NEA.[6] Third, Defendants suggest that the only objections that

---

[5] Defendants' suggestion that the Department of Justice "interfered" in negotiations with DOT should nevertheless be disregarded because it is supported only by the say-so of their attorney. *See* Opp. at 6, citing Ex. M, Jan. 12, 2021 Letter from Dan Wall to DOJ (DX-0185). While the Department has consistently raised competitive concerns regarding the NEA, the Department did not "interfere" in negotiations between Defendants and DOT.

[6] *See* Clarification of Departmental Position on American Airlines—JetBlue Airways Northeast Alliance Joint Venture, Dep't of Transportation, 86 Fed. Reg. 53401 (Sept. 27, 2021) (If an alliance agreement appears to be problematic, the Department and DOJ have separate authority to address anticompetitive conduct. … In this context, DOT's review of the NEA under section 41720 was not designed to approve or disapprove the alliance. During the Department's review, American and JetBlue entered into negotiations with DOT. . . . The DOT Agreement did not address all of the Department's concerns resulting from the NEA's impacts on competition . . . ."). Defendants unsupported assertion that DOT "never voiced any fundamental objections to . . . the revenue-

the Department of Justice raised regarding the Carve-Out Amendments was their failure to prohibit code-sharing. This too is incorrect. In fact, the Department consistently raised additional concerns, many of which remain unaddressed. Not only did Defendants fail to carve out code-sharing notwithstanding any short-term carveouts to revenue sharing and capacity coordination, but Defendants have also (1) failed to carve out certain highly-concentrated routes that would qualify as carveouts but-for Defendants' self-serving geographic market definition (i.e. BOS-LGA and BOS-DCA), and (2) failed to carve out certain highly-concentrated routes where more than one additional competitor remains in the market.[7]

Defendants' claim that the Department of Justice has long regarded carve-outs as "an attractive solution" in airline joint ventures is also misleading. The paper that Defendants cite to says only that carveouts might offer a solution "[w]here they are workable."[8] The carveouts referenced in that paper are dissimilar from the NEA's carveouts for two reasons. First, the carveouts referred to in the paper prohibited code-sharing, not just revenue sharing and capacity coordination. Here the NEA *does* allow code-sharing on carveouts, and thus will not safeguard price competition on these routes for the reasons articulated in Section B, *supra*.

In addition, the paper Defendants cite says that carveouts might be workable in the context of international alliances. The competitive issues presented by the NEA are radically different. Because international alliances are typically premised on partners bringing together complimentary networks that each partner has built in *different countries*, they generally only involve a limited number of overlap routes associated with large international airports where

---

sharing and capacity coordination terms", if true, only serves to underscore this point. Opp. at 5.

[7] The Carve-Out Amendments allow Defendants to share revenues and coordinate capacity on highly-concentrated routes so long as two or more other carriers compete on a route. This fails to capture concentrated and lucrative routes such as BOS-LAX and BOS-MIA/FLL. *See* Mot. Ex. 1, First Amendment to the Mutual Growth Incentive Agreement, at ¶ 1.2.

[8] Opp. Ex. G. Ken Heyer, Carl Shapiro and Jeffrey Wilder, The Year in Review: Economics at the Antitrust Division, 2008–2009, Rev. of Indus. Org., Vol. 35, No. 4, (Dec. 2009), 349-367, (DX-1068).

foreign carriers have a presence. *See* Ex. 2, Town Report ¶¶ 126-127 and exhibits 19 and 20 (describing how the issues presented by the NEA are fundamentally different from international alliances). Unlike JetBlue and American, foreign carriers do not have sprawling, overlapping domestic networks—so there are fewer competitive overlaps to carve out.

### D. Trial Courts Should Faithfully Apply Rule 403 in Bench Trials

Defendants argue that excluding evidence because of undue prejudice is a "useless procedure" in a bench trial. Opp. at 14. But that misses the mark because contrary to Defendants' assertions, Plaintiffs are not relying on prejudice as the animating factor in Rule 403, but rather the danger of confusing the issues, undue delay, and wasting time. While bench trials and jury trials may pose different challenges with respect to the application of the Federal Rules of Evidence, it is certainly not the case that the Rules of Evidence are fully suspended in bench trials. Indeed, the First Circuit has not adopted the bright-line rule Defendants advocate, and nothing in the Federal Rules of Evidence limits Rule 403's applicability to jury trials. *See e.g., United States v. Raymond*, 697 F.3d 32, 38–39 (1st Cir. 2012) (finding that a court conducting a bench trial properly weighed evidence under 403).[9] Indeed, Defendants rely only on persuasive authority from other courts to support the proposition that Rule 403 has no application in a bench trial. Under these circumstances—where the parties have only 67.5 hours to put in all of their evidence, and the challenged evidence is irrelevant and confusing—this Court should exercise its discretion under Rule 403 and exclude evidence of Defendants' unnecessary and misleading distraction. This is precisely the purpose of Rule 403.

---

[9] *See also Gulf States Utilities Co. v. Ecodyne Corp.,* 635 F.2d 517, 519 (5th Cir. 1981) ("Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair prejudice" is a useless procedure."); Fed. R. Evid. 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons, Fed. Rules of Evidence Rule 403 (2022 ed.) (noting that while judges are assumed to exclude any unfair prejudice, this idea is often applied "overbroadly" to support the unfounded proposition that Rule 403 "does not apply at all to bench trials").

Dated: September 13, 2022

/s/ William H. Jones II
William H. Jones II
Brandon Storm
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-514-0230
Fax: 202-307-5802
bill.jones2@usdoj.gov

*Attorneys for United States of America*


MARK BRNOVICH
Attorney General

/s/ Robert Bernheim
ROBERT BERNHEIM (AZ Bar No. 024664)

Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Tel: (520) 628-6507
Email: robert.bernheim@azag.gov

*Attorneys for Plaintiff State of Arizona*


ROB BONTA
Attorney General

KATHLEEN E. FOOTE
Senior Assistant Attorney General

NATALIE S. MANZO
MICHAEL W. JORGENSON
Supervising Deputy Attorneys General

ROBERT B. McNARY
JAMIE L. MILLER

Deputy Attorneys General

/s/ Robert B. McNary
ROBERT B. McNARY
Deputy Attorney General
California State Bar No. 253745
300 South Spring Street, Suite 1702
Los Angeles, California 90013
Phone: 213-269-6283
E-mail: robert.mcnary@doj.ca.gov

*Attorneys for Plaintiff State of California*


KARL A. RACINE
Attorney General

KATHLEEN KONOPKA (DC Bar No. 495257)
Deputy Attorney General

/s/ Arthur T. Durst
ARTHUR T. DURST (DC Bar No. 888273305)
ADAM GITLIN

Office of the Attorney General for the District of Columbia
400 Sixth Street NW, Tenth Floor
Washington, DC 20001
Tel: (202) 442-9853
Email: arthur.durst@dc.gov

*Attorneys for Plaintiff District of Columbia*


ASHLEY MOODY
Attorney General

/s/ Colin G. Fraser
LIZBETH A. BRADY (FL Bar No. 457991)
RACHEL S. BRACKETT (FL Bar No. 109775)
COLIN G. FRASER (FL Bar No. 104741)

7

Office of the Attorney General, State of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Tel: (850) 414-3300
Email: Liz.Brady@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*


MAURA HEALEY
Attorney General

/s/ William T. Matlack
WILLIAM T. MATLACK (MA Bar No. 552109)
DANIEL H. LEFF (MA Bar No. 689302)

Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Tel: (617) 727-2200
Email: William.Matlack@mass.gov
Email: Daniel.leff@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*


JOSH SHAPIRO
Attorney General

JAMES A. DONAHUE, III (PA Bar No. 42624)
Executive Deputy Attorney General
Public Protection Division

 /s/ Jennifer A. Thomson
TRACY W. WERTZ (PA Bar No. 69164)
JOSEPH S. BETSKO (PA Bar No. 82620)
JENNIFER A. THOMSON (PA Bar No. 89360)

Pennsylvania Office of Attorney General
Antitrust Section

8

14th Floor Strawberry Square
Harrisburg, PA 17120
Tel: (717) 787-4530
Email: twertz@attorneygeneral.gov

*Attorneys for Plaintiff Commonwealth of Pennsylvania*


JASON S. MIYARES
Attorney General

/s/ Tyler T. Henry
TYLER T. HENRY (VA Bar No. 87621)
Assistant Attorney General
Antitrust Unit
Office of the Virginia Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Tel: (804) 692-0485
Email: THenry@oag.state.va.us

*Attorneys for Plaintiff Commonwealth of Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

    /s/ James H. Congdon
James H. Congdon
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-299-4574
Fax: 202-307-5802
james.congdon@usdoj.gov

*Attorney for United States of America*