UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.,*<br><br>*Plaintiffs,*<br><br>v.<br><br>AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION,<br><br>*Defendants*. | Civil Action No. 1:21-CV-11558-LTS |

**PLAINTIFFS' OPPOSITION TO AMERICAN AIRLINES GROUP INC. AND JETBLUE AIRWAYS CORPORATION'S MOTION TO SEAL TRIAL EXHIBITS**

Plaintiffs respectfully submit this Opposition to American Airlines Group Inc. ("American") and JetBlue Airways Corporation's ("JetBlue") Motion to Seal Trial Exhibits (ECF. No. 159), and object to Defendants' redactions that would prevent the public from understanding critical elements of this case.

The only dispute between the parties is whether, and to what extent, the information that Defendants ask this Court to seal could harm their competitive standing. Plaintiffs do not object to many of Defendants' requests to seal or redact truly proprietary business strategies and future plans, which competitors could use to unfair advantage. Plaintiffs do object, however, to Defendants' overbroad redactions of information that is publicly available, not current, high-level rather than detailed, and/or for which Defendants have not demonstrated the prospect of competitive harm. Plaintiffs also object to redactions of information essential to a public

1

understanding of the Northeast Alliance ("NEA"), the focus of this litigation.[1] Importantly here, the Court's sealing inquiry is a balancing test: even a legitimate interest in secrecy may yield to the greater public right of access to information on which the Court will rely in determining the parties' substantive rights.

Plaintiffs respectfully request that the Court deny Defendants' motion to seal as to the exhibits listed in Appendix A to Defendants' motion, except to the extent Appendix A reflects Plaintiffs' agreement to certain more limited redactions.

## ARGUMENT

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). There is a "longstanding tradition of public access to trials and pretrial motions in our judicial system—a tradition that is protected both by the common law and the First Amendment." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015). Importantly here, "[t]he appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

A party moving to seal or impound evidence at trial must overcome a strong presumption that the public has a right to see and copy "materials on which a court relies in determining the litigants' substantive rights." *Anderson v. Cryovac*, 805 F.2d 1, 13 (1st Cir. 1986). "[T]he party

---

[1] *See, e.g.*, PX0807 (proposing redactions to JetBlue's submission to the United Kingdom's competition authority regarding JetBlue's assessment of the NEA, including, among others, a slide summarizing the terms of the NEA and slides on the basics of the NEA's revenue sharing).

seeking to overcome the presumption of public access must demonstrate significant countervailing interests, like the existence of trade secrets in the documents or confidential business information." *Skyhook Wireless, Inc. v. Google, Inc.*, Case No. 10-11571-RWZ, 2015 WL 13675231, at *2 (D. Mass. Feb. 18, 2015). The mere fact that a party maintains information as confidential, however, is not enough to seal it. The movant must demonstrate that disclosure during a public trial "might harm a litigant's competitive standing." *In re Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (quoting *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978)). As part of the "balancing equation," the district court must consider the "nature and degree of injury" that will result from disclosure. *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)). Last but not least, the movant it "must ensure that any sealing is narrowly tailored to shield as little from public view as possible." *Bradford*, 109 F. Supp. 3d at 449.

### A. Defendants' Proposed Sealing of Documents is Overbroad.

Defendants have proposed sealing and redacting trial exhibits with too broad a brush. Oversealing threatens the public's ability to understand a case of public importance. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021) (decrying litigants' "overbroad sealing practices that shield judicial records from public view for unconvincing (or unarticulated) reasons"). Closing or restricting the courtroom is disfavored, and can only be justified by specific findings that no narrower restriction will suffice. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1072–73 (3d Cir. 1984) (district court abused its discretion where it closed a hearing without specific findings that closure served an important governmental interest that could not be protected by less restrictive means); *Courthouse News Service v. Quinlan*, 32 F.4th 15, 20–21 (1st Cir. 2022) (under First Amendment, any restriction on public access to court proceedings

must be narrowly tailored to serve a competing interest). For example, Defendants propose redacting the entirety of a 2020 decision by the United Kingdom's Competition and Markets Authority ("CMA") concerning JetBlue's eligibility for slots at London Heathrow Airport, including nine pages of description of the NEA, historical information about Heathrow, and the legal framework for the decision. PX0805 (Exhibit A).[2] Defendants' overbroad redactions will make it exceedingly difficult, if not impossible, to examine witnesses in open court in an intelligible and efficient manner. Conversely, Plaintiffs' proposed narrower redactions will reduce the disruption to the trial and safeguard the public's right of access.

### B. Defendants Propose Redacting High-Level, Historic, and Publicly Available Information Concerning the NEA.

Plaintiffs object to Defendants' oversealing of information that is publicly available, information that is dated or has been overtaken by subsequent events, and high-level operational information that is not competitively sensitive. Documents concerning pre-NEA competition, including between the Defendants in NEA markets where they no longer compete, should not be redacted. For example, Defendants propose broad redactions to a JetBlue February 2018 email concerning a corporate customer proposal that cites competition from American as a factor influencing the offer; the redactions are overbroad and concern a negotiation from more than four years ago. PX0678 (Exhibit B).[3] Defendants have also broadly redacted descriptions of now-public partnerships or strategies, and descriptions of the fundamentals of the airline

---

[2] *See also* PX0468-70 (proposing complete sealing of letters to United Kingdom Competition and Markets Authority ("CMA"), prior to JetBlue's entry on service to London, which contain historical description of JetBlue's effect on fares in the U.S. and of transatlantic competition).

[3] *See also* PX0666 (2019 presentation about pre-NEA competition, regarding routes that have since been announced); PX0842 (September 2020 chat between JetBlue network planners including a reflection of JetBlue's performance at an airport over the previous three months); PX0936 (redacting September 2019 chart of proposed route launches, including those already announced publicly at the time of the email).

industry. *See, e.g.,* PX0314 at 61–67, 107–115 (Exhibit C) (excerpts of American presentation that includes high-level strategies and historical descriptions of markets).[4] Such documents are not competitively sensitive: they reflect general plans, information that is now public, and/or market conditions that no longer exist.

## C. Defendants Propose Redacting Information Central to the NEA.

The NEA, the text of the agreements, and documents about implementation of the NEA should not be redacted. For example, Plaintiffs object to JetBlue's redaction of Board slides summarizing the terms of the NEA and the basics of the NEA's revenue sharing provisions—all contained in a presentation submitted to the United Kingdom's Competition and Markets Authority. PX0807 (Exhibit D, excerpt of exhibit omitting cover email and additional attachments).[5] Information about the mechanics and structure of the NEA is critical to the litigation of this case, and Defendants' proposal would require closing the courtroom for its presentation, depriving the public of its right to fully understand this case. *Cf. Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (internal citations omitted) ("where documents directly affect an adjudication, or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith").

## D. Defendants Propose Redacting Market Definition Information.

Defendants move to seal 35 exhibits that form the backbone of the expert reports of Plaintiffs' expert, Dr. Nate Miller, and Defendants' expert, Dr. Mark Israel. PX1006–11, PX1037–42, DX-814–19, DX-821–24, DX-832, DX-845–50, DX-890–94, & DX-910. These are

---

[4] Plaintiffs can provide a courtesy copy of the entire 114-page deck if that is the Court's preference.
[5] In an email to Plaintiffs' Counsel dated September 8, 2022, JetBlue agreed to withdraw its confidentiality designation as to page 6 of PX0807. *See also* PX0001-b & DX-093 (Appendix E of the MGIA containing a hypothetical example explaining how the MGIA will work); PX0363 (domestic partnerships deck discussing how Defendants would cooperate and share revenue under the NEA).

all "catchment maps" of the New York, Newark, Boston and Washington, D.C. areas that Professor Miller created from anonymized, aggregated ticket data in order to form his opinions on geographic market definition. PX1009 (Exhibit E) is an example. Defendants state, without substantiation, that these maps could inform competitors of "where marketing could be targeted to capture more of [Defendants'] customers," and thus harm Defendants' competitive standing. ECF No. 159-1 at 83. But antitrust cases that involve geographic market definition typically require an inquiry into where companies' customers are located. As just one example, in *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015), the court's published opinion included a map Dr. Israel generated showing the distribution of each company's local customers. *See id.* at 50. If all 35 catchment map exhibits are sealed, any testimony about them will require closing the courtroom and the public will be left in the dark about an essential element of this case.

### E. Defendants Propose Redacting Employee Discourse regarding the NEA.

Defendants seek to seal or substantially redact text exchanges between Defendants' high-level employees that contain substantial amounts of information that are not competitively sensitive, and concern matters central to this litigation. For example, Defendants propose redacting PX0846 (Exhibit F), a text conversation between Scott Laurence and Warren Christie discussing terms and strategy of transatlantic flights under the NEA.[6] While it may be the case that some of these conversations could be embarrassing to the people involved, that is not a basis for shielding them from disclosure. *See Cornwell Ent., Inc. v. Anchin, Block & Anchin, LLP*, 830 F.3d 18, 38 (1st Cir. 2016) (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) ("[t]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access")); *United States v. Kravetz*, 706 F.3d 47, 64 (1st

---

[6] *See also, e.g.*, PX0842 (September 2020 chat between JetBlue network planners including a reflection of JetBlue's performance at an airport over the previous three months).

Cir. 2013)("[movant's claim] is little more than a fear of adverse publicity, which is insufficient to defeat public access").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to seal as to the exhibits in Appendix A, except to the extent Appendix A reflects Plaintiffs' agreement to certain more limited redactions.

Dated: September 13, 2022                                  Respectfully submitted,

/s/ William H. Jones
William H. Jones, II
Craig L. Briskin
Sarah P. McDonough
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: (202) 514-0230
Fax: (202) 307-5802
Email: bill.jones2@usdoj.gov

*Attorneys for the United States of America*

/s/ Colin G. Fraser
Colin G. Fraser
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3300
Email: colin.fraser@myfloridalegal.com

/s/ Daniel H. Leff
Daniel H. Leff (MA Bar No. 689302)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 727-2200
Email: Daniel.leff@mass.gov

*Attorneys for the State of Florida and the Commonwealth of Massachusetts, and on behalf of the Plaintiff States*