UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, ET AL.,

Plaintiffs,

v.

AMERICAN AIRLINES GROUP INC. and
JETBLUE AIRWAYS CORPORATION,

Defendants.

Civil Action No. 1:21-cv-11558-LTS

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ATTENDANCE OF DELTA EXECUTIVES AT TRIAL**

I.  **INTRODUCTION**

In this high-profile antitrust litigation, the competitive significance of other domestic airlines, including Delta Air Lines, Inc. ("Delta"), is a crucial and highly contested issue. Plaintiffs argue that legacy airlines such as Delta *benefit* from the Northeast Alliance (the "NEA") because the NEA weakens competition by JetBlue. Defendants argue that the NEA was specifically designed to *compete more effectively with Delta*—the leading airline in the Northeast; that Delta has understood that; and that Delta has responded accordingly. Notably, however, Plaintiffs do not plan to call any witnesses from Delta or United Airlines ("United"). They litigate the case as if these dominant northeast competitors don't exist. It thus falls on Defendants to bring this important perspective to the trial.

Notably, Delta has *not* been silent about the NEA, not internally anyway. As evidenced through the over-eight-thousand documents that Delta produced during this litigation, Delta has conducted multiple detailed assessments of the NEA's impact on competition in the airline industry, and it has frequently brainstormed strategies to respond to the NEA, including by ███████████████████████████████████████ These documents show that Delta disagrees with Plaintiffs' take on the NEA, and agrees with Defendants' assessment, describing it as a ███████ that will ███████ ███████████████████████████████████ DX-0238 ██████████████████████████████ at -0002. Indeed, Joseph Esposito, Delta's Senior Vice President of Network Planning, testified in his deposition that Delta has been ███████████████████████████████████

---

[1] In the aviation context, "upgauging" means to replace a smaller airplane on a route with a larger airplane with increased passenger capacity.

███████████████████████████████████████████████████████████

███████████████████████████████████████. See Esposito Dep. at 87:25-88:13.

The foregoing examples are only a few of the key points discussed in Delta's documents and in Mr. Esposito's deposition testimony. Other significant topics include, but are not limited to, Delta's perception of the competitive landscape in the Northeast; Delta's dominant presence in Boston and New York before the NEA was announced; the significance of having a broad network; the airline features valued by corporate customers; and the benefits of airline partnerships for enhancing an airline's network.

Importantly, this evidence is unique to Delta—no party witness can provide insights into Delta's experiences and plans in the Northeast or its competitive response to the NEA. And based on the documents and testimony developed in discovery, Mr. Esposito and Glen Hauenstein, President of Delta, are the Delta employees who are most knowledgeable about these topics. Mr. Esposito has frequent and in-depth involvement in Delta's competitive assessments and strategies, including in response to the NEA, and Mr. Hauenstein has ultimate responsibility for all aspects of Delta's business. The evidence shows that Mr. Hauenstein uses a top-down leadership model and takes an active role in developing and approving Delta's strategies.[2]

---

[2] Defendants previously served a deposition subpoena on Mr. Hauenstein on March 30, 2022. Delta moved to quash this subpoena in a court outside of this District (the Northern District of Georgia). *See generally* Mot. for Protective Order and To Quash Dep. of Glen Hauenstein, *In re Subpoena to Glen Hauenstein*, No. 1:22-cv-01654-MHC (N.D. Ga. Apr. 12, 2022), ECF No. 1. In support of its motion, Delta primarily relied on the "apex doctrine," which is "an analytical framework used by courts in assessing whether to permit the depositions of individuals at the 'apex' of corporations and other entities." Mem. of Law in Support of Mot. for Protective Order and To Quash Dep. of Glen Hauenstein at 5, *In re Subpoena to Glen Hauenstein*, No. 1:22-cv-01654-MHC (N.D. Ga. Apr. 12, 2022), ECF No. 1-1 (quoting *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015)). That court, which has no involvement in the substantive aspects of this proceeding, granted Delta's motion. *See generally* Order, *In re Subpoena to Glen Hauenstein*, No. 1:22-cv-01654-MHC (N.D. Ga. May 20, 2022), ECF No. 12. However, as discussed *infra* in Section II.A, Delta's documents

2

As set forth in the enclosed Declaration of Marguerite Sullivan (counsel to American Airlines), Delta has been on notice that American listed Mr. Esposito and Mr. Hauenstein on its trial witness list, and counsel for Delta and American have had several conversations about Mr. Esposito and Mr. Hauenstein's appearance.  *See* Sullivan Decl. ¶¶ 5-9.  Defendants also have informed Delta's counsel that Defendants intended to subpoena both Mr. Esposito and Mr. Hauenstein under Paragraph 20 of the Supplemental Scheduling and Case Management Order, which allows for nationwide service of process in this proceeding.³  *See* ECF No. 76 at 17-18 ("To assist the Parties in planning discovery, and in view of the geographic dispersion of potential witnesses in this action outside this District, the Parties are permitted, under 15 U.S.C. § 23, to issue trial subpoenas that may run into any other federal district requiring witnesses to attend this Court."); Sullivan Decl. ¶¶ 5-9.  Delta's counsel responded last week that Delta would move to quash both trial subpoenas.  *See* Sullivan Decl. ¶ 7.

---

produced in discovery and Mr. Esposito's deposition testimony have made clear that Mr. Hauenstein's testimony will be important for this case.  *See also* Laurence Dep. 57:16-18 ███

███ *id.* at 58:3-5 ███

³ Unlike Delta's motion to quash Mr. Hauenstein's deposition subpoena, discussed *infra* note 2, where the Northern District of Georgia was the proper forum because that subpoena listed Atlanta, Georgia as the place of compliance, the place of compliance listed in Mr. Esposito and Mr. Hauenstein's trial subpoenas is Boston.  And, pursuant to the Supplemental Scheduling and Case Management Order, which allows for nationwide service of process in this proceeding, Boston is a proper place of compliance for the trial subpoenas.  *See* ECF No. 76 at 17-18.  Hence, this Court may exercise jurisdiction over the instant motion to compel.  *See* Fed. R. Civ. P. 45(d)(3)(A) ("On timely motion, the court for the district *where compliance is required* must quash or modify a subpoena." (emphasis added)); Fed. R. Civ. P. 45 advisory committee notes (2013) (Under Rule 45(d)(3), "subpoena-related motions and applications are to be made to the court where compliance is required under Rule 45(c)").

Defendants properly served the subpoenas today, and now respectfully move the Court to compel the testimony of Mr. Esposito and Mr. Hauenstein at the forthcoming trial, scheduled to begin on September 27, 2022.[4]

## II.     ARGUMENT

A party resisting a subpoena "bears the burden of showing that the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 36–37 (D. Mass. 2015) (quoting *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013)).  The onus is on the party resisting the subpoena to establish the burden with "affirmative and compelling proof." *See, e.g.*, *In re New England Compounding Pharmacy*, 2013 WL 6058483, at *6 (internal quotations omitted).  In determining whether a subpoena imposes an "undue burden" on a non-party, courts consider the "relevance, the requesting party's need, the breadth of the request, and the burden imposed." *Satanic Temple, Inc. v. City of Boston, MA*, 2022 WL 1028925, at *3 (D. Mass. Apr. 6, 2022); *see also U.S. v. Berkeley Heartlab, Inc.*, No. CV 9:14-230-RMG, 2017 WL 11673310, at *1 (D.S.C. Dec. 1, 2017) ("The key factors are the relevance of the information requested, the need of the party for the testimony, and whether it is available from another source.").  Delta will not be able to show that the trial subpoenas impose an undue burden in this case.

---

[4] Given that Mr. Esposito and Mr. Hauenstein are called only in Defendants' case, their likely appearance would occur during the week of October 10, 2022.  Moreover, Defendants will afford Mr. Esposito and Mr. Hauenstein flexibility in scheduling their appearance and testimony that week to accommodate any conflicts.

A.   **Trial Testimony From Delta Witnesses Is Clearly Highly Relevant to This Case**

First, there is no question here that the testimony Defendants seek is highly relevant. The thousands of documents that Delta has produced during discovery—as well as Mr. Esposito's testimony during his deposition—show that ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Thus, Delta's position and actions in response to the NEA demonstrate *precisely* what Defendants have long been arguing and will emphasize at trial: the NEA enhances competition in the airline industry and spurs other carriers to add new flights, increase route frequencies, and upgauge aircraft. Delta's trial testimony will also address several other important topics in this litigation, including Delta's perception of the competitive landscape in the Northeast; Delta's dominant presence in Boston and New York before the NEA was announced; the significance of having a broad network; the airline features valued by corporate customers; and the benefits of airline partnerships for enhancing an airline's network.

Mr. Esposito and Mr. Hauenstein are "key witnesses" in this case who can offer this valuable testimony about the impact of the Northeast Alliance on the airline industry. *See Hardisty v. Moore*, No. 11-CV-01591-BAS BLM, 2014 WL 4472718, at *1 (S.D. Cal. Sept. 10, 2014). As Senior Vice President of Network Planning, Mr. Esposito has unique insight into the day-to-day effects of the Northeast Alliance on Delta's network operations, and his testimony at trial will help to show that the Northeast Alliance has spurred competitive growth among JetBlue and American's competitors. Documents produced by Delta in this litigation demonstrate that Mr. Esposito was closely involved with Delta's monitoring and assessment of the NEA's impact on competition in the airline industry. For example, ████████████████████████████

5

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

DX-0241 at -0001.  Just two days later, ████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████  DX-0243 at 0001.

Mr. Esposito's deposition testimony also demonstrates that he has firsthand knowledge of topics central to this proceeding.  For example, Mr. Esposito stated that the goal of the NEA was to address JetBlue and American's competitive deficiencies, noting that, ████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████ Esposito

Dep. at 157:16–21; *see also id.* at 158:8–13 ████████████████

███████████████████████████████████████

███████████████████ Mr. Esposito █████████████████

███████████████████████████████████████

████  *See, e.g., id.* at 88:6-9 ("[W]e monitor [the NEA] like we monitor any other competitor in any other part of the world that we . . . participate."); *id.* at 99:17-100:15 ████████████

███████████████████████████████████████

6

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ *id.* at 114:7-18 █████

███████████████████████████████████████████████

████████████████████████████ *id.* at 122:3-9 █████████

███████████████████████████████████████████████

██████████ *id.* at 135:3-8 ███████████████████████████

███████████████████████████████████████████████

█████████████████████████████

In addition, Mr. Esposito discussed several other topics that are important to this case, including Delta's perception of the competitive landscape in the Northeast, *see id.* at 47:2-7 ████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████ *id.* at 234:2-8 ████████████████████████████████

███████████████████████████████████████████████

████████████████; Delta's dominant presence in Boston and New York before the NEA was announced, *see id.* at 52:14-53:5 ██████████████████████████ 58:8-59:19 ████

████████████████████; the significance of having a broad network, *see id.* at 28:13-24 ███

7

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

the airline features valued by corporate customers, *see id.* at 85:7-25 (testifying that airline passengers value more options, increased scheduling flexibility, and reciprocal loyalty agreements derived from partnerships), *id.* at 162:6-24 ███████████████████████

████████████████████████████████████████ the benefits of airline partnerships for enhancing an airline's network, *see id.* at 31:6-32:32-5, 35:3-5 (discussing Delta's global partnerships with various airlines, and concluding that the ultimate rationale for those partnerships is "to give maximum opportunity for customers to connect globally"), 84:10-85:5 (discussing the benefits of codesharing as allowing customers "to buy one ticket all the way through to a destination versus two separate tickets"); and the difficulty of organic growth in New York airports due to slot constraints, *see id.* at 157:5-9 ██████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████

As for Mr. Hauenstein, in his role as Delta's President, he has firsthand knowledge of the issues that are highly relevant to the underlying action. He personally oversees Delta's response to the Northeast Alliance, demonstrated by numerous documents Delta has produced in this case, as well as by Mr. Esposito's deposition testimony. For example, ████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

8

██████████ DX-0247 at -0003.  The next day, ██████████ *Id.* at -0001.  On another occasion, ██████████ DX-0249 at -0002.  Furthermore, Mr. Esposito testified that he has ██████████ *See* Esposito Dep. 96:15–97:2.  Mr. Esposito also stated that ██████████ *Id.* at 223:5–23.

Not only is this testimony relevant, Defendants have a tremendous need for the testimony and cannot obtain it from any other source.  Information about Delta's internal views and high-level strategies in response to the NEA can be obtained only through the testimony of the highest ranking officers at Delta who have been most involved in developing, coordinating, and organizing

9

Delta's assessments of the NEA—*i.e.*, Mr. Esposito and Mr. Hauenstein. Such information plainly is not public knowledge, and lower-ranked Delta employees lack the airline-industry experience and high-level network strategizing skills that Mr. Esposito and Mr. Hauenstein possess (as indicated in numerous Delta documents and in Mr. Esposito's deposition testimony, identified above) to provide it adequately.

### B. Delta Cannot Identify Any Particularized Burden That Outweighs the Relevance and Need for This Testimony

Delta has no actual, particularized burden that can outweigh Defendants' need for this critical testimony. It is well established that asking two individuals to appear for a few hours each on a single day at trial (even if they have to travel to get there) is not excessively burdensome. *See, e.g.*, *Kirschner v. Klemons*, No. 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony"); *Tijerina v. Guerra*, No. 7:19-CV-285, 2020 WL 1663181, at *5 (S.D. Tex. Apr. 1, 2020) (denying motion to quash subpoena where plaintiff failed to make specific arguments explaining why compliance was unreasonable); *Ispat Inland, Inc. v. Kemper Environ., Ltd.*, No. CIV 06-60 PAM/JSM, 2007 WL 737786, at *2 (D. Minn. Mar. 8, 2007) (refusing to quash subpoena when moving party only made sweeping, broad statements of alleged undue burden).

Delta's counsel has not articulated *any* reason why it would be particularly onerous or burdensome for Mr. Esposito or Mr. Hauenstein to attend and testify at the trial. They just do not want to appear. But that is not a valid basis for failing to comply with a subpoena. *Cf. In re New England Compounding Pharmacy*, 2013 WL 6058483, at *7 (denying in part a motion to quash a subpoena on non-parties where those parties made "no showing as to the nature and extent of the actual burden they would face" in complying with the subpoenas); *see also Green*, 152 F. Supp.

3d at 38 (rejecting defendant's argument that her subpoena should be quashed for undue burden where she "failed to show that her deposition would be unreasonably cumulative or duplicative or that sitting for a deposition would impose an undue burden"). Indeed, any allegation of burden is belied by the fact that Mr. Esposito and Mr. Hauenstein reside in Atlanta and are high-ranking officers of an airline (Delta) that has hubs in both Atlanta and Boston, with numerous daily non-stop flights between those cities.

To the extent Delta believes that prior deposition testimony relieves that witness from an obligation to comply with a validly issued subpoena to testify at trial, that position is plainly incorrect. As an initial matter, Mr. Hauenstein has not been deposed in this case, so that argument is inapplicable to his trial subpoena. And "[t]he fact that [Mr. Esposito] has already been deposed . . . does not per se entitle [him] to a protective order." *Deines v. Vermeer Mfg. Co.*, 133 F.R.D. 46, 48 (D. Kan. 1990) ; *see also U.S. v. Int'l Bus. Mach. Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("There is a strong preference for live testimony, long recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness.").

Lastly, because Mr. Hauenstein and Mr. Esposito have always appeared on Defendants' witness list, and all parties have known about both individuals' crucial involvement with the subject matter before this Court, they should be compelled to comply with the subpoenas. *See Hardisty*, 2014 WL 4472718, at *1 (denying without prejudice a motion to compel appearance at trial because no subpoena had been issued, but "preliminary determin[ing]" that the witnesses should appear because there the movant had "indicated at every opportunity he intend[ed] to call [the potential witnesses] at trial," and the movant had "listed [the potential witnesses] as witnesses he expected to call at trial"). In short, while "[s]ubpoenas may not be used to hale random persons

11

into court without cause[,] . . . a previously deposed . . . [individual] identified as a witness . . . is not such a person." *Berkeley Heartlab*, 2017 WL 11673310, at *1 (citation omitted).[5]

## III. CONCLUSION

There is more than sufficient evidence that Mr. Esposito and Mr. Hauenstein possess firsthand perspectives on issues that go to the heart of the underlying action and to Defendants' main arguments in defense of the Northeast Alliance. As some of the highest-ranked Delta employees, Mr. Esposito and Mr. Hauenstein possess an important perspective on industry competition in the Northeast and how initiatives like the Northeast Alliance impact competition in the airline industry. The Court should grant Defendants' motion to compel the attendance of Mr. Hauenstein and Mr. Esposito at trial.

Dated: September 13, 2022

Respectfully submitted,

*/s/ Daniel M. Wall*
Daniel M. Wall (pro hac vice)
Elizabeth C. Gettinger (pro hac vice)
Elise M. Nelson (pro hac vice)
Nitesh Daryanani (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

---

[5] In addition, given that the Supplemental Scheduling and Case Management Order endorsing nationwide service of trial subpoenas (entered November 30, 2021) was entered prior to Mr. Esposito's deposition (which occurred on June 21, 2022), Defendants had no expectation at the time his deposition was taken that his deposition testimony would be a substitute for trial testimony. It would therefore be unfair to require Defendants to use only his deposition testimony at trial.

Ian R. Conner (pro hac vice)
Michael G. Egge (pro hac vice)
Farrell J. Malone (pro hac vice)
Allyson M. Maltas (pro hac vice)
Marguerite M. Sullivan (pro hac vice)
Tara L. Tavernia (pro hac vice)
Seung Wan Paik (pro hac vice)
Jesse A. Vella (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com
David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant American Airlines Group Inc.*

/s/ Richard Schwed
Richard Schwed (pro hac vice)
Matthew L. Craner (pro hac vice)
Jessica K. Delbaum (pro hac vice)
Leila Siddiky (pro hac vice)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

13

> Brian Hauser (pro hac vice)
> Ryan Leske (pro hac vice)
> Shearman & Sterling LLP
> 401 9th Street, NW
> Washington, DC 20004
> Telephone: (202) 508-8005
> brian.hauser@shearman.com
> ryan.leske@shearman.com
>
> Glenn A. MacKinlay, BBO #561708
> McCarter & English, LLP
> 265 Franklin Street
> Boston, MA 02110
> Telephone: (617) 449-6548
> gmackinlay@mccarter.com
>
> *Attorneys for Defendant JetBlue Airways Corporation*

## CERTIFICATE OF SERVICE

    I hereby certify that a true, unredacted version of the foregoing document was served by electronic mail on all counsel of record, as well as on Michael Mitchell of Boies Schiller Flexner LLP, counsel to Delta Air Lines, Inc., this 13th day of September, 2022.

> */s/ Daniel M. Wall*
> Daniel M. Wall