# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | Civil Action No. 1:21-CV-11558-LTS |
| v. | |
| AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, | |
| Defendants. | |

## NON-PARTY DELTA AIR LINES, INC.'S
## MOTION TO SEAL CONFIDENTIAL INFORMATION

Non-party Delta Air Lines, Inc. ("Delta") hereby moves the Court pursuant to Local Rule 7.2, the Stipulated Protective Order (ECF 99), and Section X of the Pretrial Memorandum (ECF 157), to enter an order to place under seal highly confidential information contained in (i) certain documents produced by Delta, as identified in **Exhibit A**, and (ii) certain deposition designations from the deposition of Delta's Senior Vice President of Global Sales, Robert Somers, as identified in **Exhibit B**, which the Parties in this case have informed Delta they may introduce at trial, and to the extent any of those materials are offered and admitted into evidence.[1] Delta further requests that the sealed materials remain impounded until further Order of the Court.

Pursuant to Local Rule 7.1, Delta has met and conferred with Plaintiffs and Defendants (collectively, the "Parties") regarding the relief sought in this motion. The Parties have informed

---

[1] Pursuant to the Stipulated Protective Order (ECF 99) in this case, Delta designated as Confidential or Highly Confidential other portions of Mr. Somers' deposition transcript, as well as portions of the deposition transcripts of the other two Delta employees deposed in this case (Joseph Esposito and Andrew Guenthner), that the Parties have not designated for possible use at trial. Delta maintains and does not waive its confidentiality designations over any portion of those deposition transcripts not identified by the Parties in their deposition designations.

1

Delta that they do not oppose Delta's motion to seal but reserve the right to request that the Court unseal specific Delta documents or deposition testimony and/or to address issues raised during any future court hearing regarding confidentiality.

Recognizing that the public's right to access trial materials is "not unfettered," the First Circuit instructs that the "court must carefully balance the competing interests that are at stake in the particular case" when a party requests sealing of judicial records. *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998). Delta moves to seal the documents identified in Exhibit A and the deposition designations listed in Exhibit B on the basis of "important countervailing interests, [which] can, in given instances, overwhelm the usual presumption" of the public's right of access to judicial records. *Id.*; *see also U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *Siedle*, 147 F.3d at 10). A court considering a motion to seal examines the extent to which the subject matter is "traditionally considered private rather than public." *Kravetz*, 706 F.3d at 62.

More specifically, as explained further below, Delta moves to seal the materials identified because they contain information that Delta protects as confidential proprietary commercial or competitively sensitive information, the disclosure of which would likely result in serious competitive injury to Delta. Courts deny public access to information where "court files might . . . become a vehicle for improper purposes," including "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This Court has recognized "a legitimate and significant interest in protecting . . . sensitive business information" to "avoid the serious competitive injury that dissemination would more than likely entail." *Glass Dimensions, Inc. v. State St. Corp.*, No. CV 10-10588, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (citing *Kravetz*, 706 F.3d at 62); *see also W.N. Motors, Inc., v. Nissan N. Am., Inc.*, 2022 WL 1568443 (D. Mass. May 18, 2022) ("Courts have recognized

2

the propriety of issuing protective orders to limit the disclosure of such sensitive commercial information among competitors, *particularly that of non-parties*.") (emphasis added).

Delta, based on discussions with employees involved in its day-to-day business, have identified a limited number of categories of information that are competitively sensitive that, if revealed would harm Delta's competitive standing. As set forth in the accompanying Declaration of Micah D. Moon (Senior Corporate Counsel – Antitrust & Regulatory at Delta Air Lines) ("Moon Decl.") submitted in support of this motion, Delta has taken reasonable efforts to maintain the secrecy of these documents, and the information in them is sufficiently valuable and secret to afford a potential or actual advantage over others; and their disclosure to existing or potential business competitors, customers, or related parties would cause a material injury to Delta's business, commercial, competitive, or financial interests. Moon Decl. ¶¶ 3-8. The Parties in this case have identified for potential use at trial other Delta-produced documents and deposition testimony, which Delta does not seek to keep sealed. Mindful of the burden on the Court and the public's general right of access, Delta has endeavored to narrow any confidentiality claims to the fullest extent possible.

**1. Business Plans, Network Planning Documents, and Other Corporate Strategy Information.**

Delta moves to seal documents or portions of documents that reflect competitively sensitive information related to Delta's current and future business plans and strategy. For example, Delta, like other airlines, regularly generates network plans that specify where, when, and how it will fly its aircraft in the future. Delta generates analyses of other, more strategic plans involving potential partnerships or mergers with other airlines or investing in new product lines or ancillary services. Delta's plans can also include information discussing ongoing strategic initiatives that impact its immediate and future competitive decision-making. Disclosure of these

3

types of information would significantly harm Delta's competitive standing.  Competitors could, for example, use the plans to preempt Delta's growth plans by targeting growth at the same place or pursue a particular partnership more aggressively armed with the knowledge that Delta plans to pursue a similar partnership.  *Williams v. Apple, Inc.*, No. 19-CV-04700, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (information that "would provide competitors with insight that they could use to unfairly compete" qualifies as "business information that might harm a litigant's competitive standing").  As a result, courts accept sealing of future plans or strategy documents. *See, e.g.*, *U.S. v. IBM*, 163 F.3d 737, 739 n.3 (2d Cir. 1998) (noting in an antitrust case that "strategic planning documents [were] filed under seal"); *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should . . . be sealed" where they provide "insight into the parties' business model and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business").

Delta's plans and strategy documents also reflect investment of substantial time and resources to identify strategies for growth. Thus, the information is proprietary, and disclosure would unfairly advantage competitors against Delta.  *See, e.g.*, *Bauer Bros. LLC v. Nike, Inc.*, No. 09-CV-500, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development."); *Morawski v. Lightstorm Ent., Inc.*, No. CV 11-10294, 2013 WL 12122289, at *2

(C.D. Cal. Jan. 14, 2013) (sealing "prospective business plans" because they contain "proprietary information regarding . . . prospective projects").

Delta does not seek to seal documents that reflect future plans that are "stale" or that reflect plans or information that no longer provide an insight into Delta's plans, methods and strategies. These documents consist of internal Delta commercial strategy documents, business plans, and Network Planning documents that contain confidential proprietary commercial or competitively sensitive information, including on topics related to capacity and route planning, fleet planning, sales, corporate strategy, and revenue, cost and other financial information. Moon Decl. ¶ 5. Many of these documents also contain commercially sensitive process information, including processes and methodologies for Network Planning and Sales. *Id.* All but two of these documents are from 2019 to 2021. *Id.* at ¶ 6.[2] Thus, none of these documents are "stale," particularly since the global COVID-19 pandemic put on hold many of Delta's strategic and commercial plans. *Id.*

Instead, Delta seeks to seal only highly sensitive, non-public future plans, strategic initiatives, and business practices or methodologies, that would give Delta's competitors a preview and/or understanding of how Delta makes competitive decisions. *Id.* at ¶¶ 4, 8. The information proposed to be sealed is therefore highly relevant for competition at present and in the future, is a product of substantial time and resources by Delta to identify attractive strategies for growth, and is highly competitively sensitive.

**2. Sales Information Including Customer Names.**

Delta also moves to seal the documents identified in Exhibit A and the deposition testimony by Robert Somers, Delta's Senior Vice President of Global Sales, identified in Exhibit B, because

---

[2] DX0258 ("Five Year Network Plan") is from November 2018 and DX0259 ("Network Strategy Update") is from August 2018, but both are long-term network planning and corporate strategy documents with substantial amounts of information concerning Delta's present and future plans. Moon Decl. ¶ 6.

they contain certain Sales information including Sales strategies and practices, corporate customer names, Sales information, strategy, and/or methodologies, including, *inter alia*, specific customer names, how Delta measures performance under corporate contracts, discussion of contract terms and discounts to corporate customers, target markets and accounts, response strategies to competition including in specific markets, and bidding strategies or processes including as to specific customers or customer segments.  Moon Decl. ¶¶ 5, 8.  This Court has found that "specific customer lists and pricing information . . . can constitute trade secrets where the information provides its holder with a competitive advantage." *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037, 2015 WL 5447652, at *12 (D. Mass. Sept. 16, 2015).  These materials contain not only the names of corporate customers, but also reveal sensitive strategic discussions or practices regarding customers and relevant factors such as competition and market conditions.

Revealing identities of Delta's corporate customers or terms provided to these customers would allow competitors to target Delta's customers with knowledge they have gained regarding Delta's customers and the terms provided to those customers through the trial.  *Trade W. Inc. v. E.-W. Aloha Corp.*, No. CV 01-00096, 2016 WL 11713185, at *2 (D. Haw. Aug. 22, 2016) (finding public disclosure of customer lists would harm a litigant's competitive standing).  Disclosure of customer names would also infringe upon the privacy rights of Delta's customers.  "Third-party privacy interests . . . have been referred to as a venerable common law exception to the presumption of access and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted).

Similarly, discount terms or bidding strategies for specific customers are trade secrets, the disclosure of which would cause significant harm to the competitive standing of Delta.  *See, e.g.*,

*In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (pricing information "plainly falls" within the definition of trade secrets and should be sealed).

*   *   *   *

With only one exception, the parties have not identified for Delta what portions of the documents listed in Appendix A they intend to use at trial.[3] Nor have the Parties confirmed which if any documents or deposition testimony they will in fact offer into evidence. Moreover, many of these Delta-produced exhibits at issue are voluminous, and contain substantial amounts of sensitive information that have no bearing or relevance to this case. For these reasons, it is not practical at this point for Delta to propose redactions in an effort to balance the anticipated use of these materials at trial with Delta's need to protect the sensitive information in these documents.

From Section X of the Pretrial Memorandum, Delta understands that the Court intends to address any non-party's request to seal confidential information "before the non-Party's Confidential Information is used at trial." ECF 157 at 21-22. Delta therefore respectfully requests that, in the event a Party intends to offer any Delta-produced material identified in Exhibits A and B to this Motion to Seal, and the Court intends to unseal any such materials, Delta first be afforded the opportunity to, within a reasonable timeframe, redact such materials to ensure that confidential information contained therein, and especially such information that has no relevance to the lawsuit or the Parties' intended use of such materials, is not disclosed publicly.

---

[3] Plaintiff United States has told Delta that they intend to use slides 1 and 5 of the presentation that is part of PX 406. Delta seeks to seal and objects to the public disclosure of these pages because they contain confidential, competitively sensitive information about, *inter alia*, Delta's current and future network planning strategies, revenue projections, existing and future alliances, and Sales information.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that this Court grant its Motion to Seal.

September 19, 2022                               Respectfully submitted,

/*s/ Benjamin Solomon-Schwartz*
Benjamin Solomon-Schwartz (BBO 688674)
James P. Denvir (*pro hac vice*)
Michael S. Mitchell (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
jdenvir@bsfllp.com
mmitchell@bsfllp.com
bsolomon-schwartz@bsfllp.com

*Counsel for Delta Air Lines, Inc.*

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that on multiple occasions Delta met and conferred in good faith with counsel for the Parties regarding the confidentiality of the Delta materials set forth in Exhibits A and B.  The Parties have informed Delta that they do not oppose Delta's motion to seal but reserve the right to request that the Court unseal specific Delta documents or deposition testimony and/or to address issues raised during any future court hearing regarding confidentiality.

/s/ Michael S. Mitchell
Michael S. Mitchell (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
mmitchell@bsfllp.com

*Counsel for Delta Air Lines, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Benjamin Solomon-Schwartz
Benjamin Solomon-Schwartz (BBO 688674)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
bsolomon-schwartz@bsfllp.com

*Counsel for Delta Air Lines, Inc.*