UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES GROUP INC.<br>and<br>JETBLUE AIRWAYS CORPORATION,<br><br>    Defendants. | Case No.: 1:21-cv-11558-LTS |

**NON-PARTIES GLEN HAUENSTEIN, JOSEPH ESPOSITO, AND
DELTA AIR LINES INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL
AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH
<u>TRIAL SUBPOENAS TO GLEN HAUENSTEIN AND JOSEPH ESPOSITO</u>**

**INTRODUCTION**

Defendants American Airlines Group Inc. ("American") and JetBlue Airways Corporation ("JetBlue") ask this Court to compel two of the most senior executives of non-party Delta Air Lines, Inc. ("Delta")—Glen Hauenstein (Delta's President) and Joseph Esposito (Delta's Senior Vice President of Network Planning)—to testify at trial in this action. But Defendants have not, and cannot, show "cause" that outweighs the burden on Delta's executives, both of whom reside and work in Atlanta, to interrupt their busy schedules to attend trial in Boston.

As to Mr. Hauenstein, Defendants acknowledge this is not the first time that they have subpoenaed him to testify in this case. Defendants' Memorandum in Support of their Motion (ECF 176) ("Defs' Memo.") at 2 n.2. The Northern District of Georgia quashed the subpoena requiring Mr. Hauenstein to appear for deposition.[1] But both Delta and the court offered Defendants the opportunity to again seek to depose Mr. Hauenstein if the already noticed depositions of other Delta witnesses (including Mr. Esposito) proved insufficient to Defendants' needs. *See* Mitchell Decl. Ex. 4, Order at 11 ("The Court cannot find, *at this juncture*, that American could not obtain the information it seeks through the depositions that it has already scheduled." (emphasis added)); Mitchell Decl. Ex. 3, Delta Reply at 2 ("At a bare minimum, the apex doctrine requires American to take these depositions before seeking Mr. Hauenstein's."). Notably, Defendants did not pursue that opportunity, presumably because the depositions of the three witnesses that Defendants took satisfied their need for information.[2] Defendants never expressed any concern to Delta about the sufficiency of the testimony they obtained during these depositions, or that they needed more

---

[1] *In re Subpoena to Glen Hauenstein*, No. 1:22-cv-01654-MHC (N.D. Ga.), Order dated May 20, 2022 (ECF 12), attached as Exhibit 4 to the Declaration of Michael S. Mitchell ("Mitchell Decl."), filed contemporaneously herewith.

[2] In addition to Mr. Esposito, Defendants also took the depositions of Delta employees Robert Somers (Senior Vice President, Global Sales) and Andrew Guenthner (Director, Alliances).

1

information. When American Airlines' counsel alerted Delta to the trial subpoenas at issue, she stated that Defendants would be willing to forego a trial subpoena for Mr. Hauenstein if Delta would agree to produce Mr. Esposito at trial—indicating yet again that Mr. Esposito's testimony would be sufficient for Defendants' needs. Mitchell Decl. ¶¶ 2-3.

As to Mr. Esposito, the only showing of "cause" that Defendants could muster to require his appearance at trial is based on *his deposition testimony*, which can be shown at trial, and the documents Delta produced in discovery that are equally available for trial—and as to which Defendants have either already questioned him, or chose not to do so when they had the chance. At bottom, Defendants' justification for requiring Mr. Esposito to appear for trial is *not* that it is necessary for him to be present for the Court to hear the substance of his testimony, but that it would be preferable to have him appear live. That is not sufficient reason to compel Mr. Esposito to undergo the burden of traveling to Boston and interfering with his significant professional commitments and personal plans.

Added to the lack of Defendants' need for the testimony of these non-party witnesses is the heavy and unwarranted burden that compelling their attendance at trial would impose on them. Mr. Hauenstein, as Delta's President and second highest-ranking executive, has a wide variety of responsibilities that require him to maintain a very full schedule. Declaration of Glen Hauenstein ¶¶ 6-7, 10-12 ("Hauenstein Decl."). Similarly, Mr. Esposito, as Senior Vice President of Network Planning, is responsible for Delta's global network strategy and also maintains a very busy schedule. Declaration of Joseph Esposito ¶¶ 6, 10 ("Esposito Decl."). Although Defendants indicate they would intend to call Mr. Esposito and Mr. Hauenstein between October 11 and 14 (Defs' Memo. at 4 n.4), Mr. Hauenstein has significant professional commitments on October 11 and 12 in Atlanta, and will be traveling overseas from October 13-23 for a personal trip that has

been planned for over a year. Hauenstein Decl. ¶ 11. Mr. Esposito is also scheduled to host and attend multiple meetings in Atlanta on October 11 and 12, and will be traveling out of the country for a planned vacation from October 13 to 17. Esposito Decl. ¶ 11. Requiring Mr. Hauenstein and Mr. Esposito to cancel their long-planned personal trips and take time out from their scheduled job responsibilities to instead prepare for, travel to, and sit for trial testimony would impose a significant burden on both Mr. Hauenstein and Mr. Esposito personally, and on Delta.

Finally, the trial subpoenas should be quashed because Defendants failed to provide adequate notice of them. Defendants' delay now only adds to the burden that would be placed on Messrs. Hauenstein and Esposito were they required to appear for trial, in light of their conflicting obligations. Defendants apparently put both Mr. Hauenstein and Mr. Esposito on their final trial witness list on June 13, 2022, but did not bother to inform Delta of that fact, or that they intended to serve trial subpoenas for their testimony until August 25—over two months later, and only a few weeks before trial was scheduled to begin. Delta had no reason to believe Defendants still sought testimony from either witness given the deposition testimony they obtained (including from Mr. Esposito), Defendants' lack of any expressed concern about the sufficiency of that testimony, and their failure to pursue Mr. Hauenstein's deposition after the other Delta depositions were concluded. Defendants' dilatory notice belies their claim of need, and underscores the burden of now requiring Mr. Hauenstein and Mr. Esposito at this late stage to upend their schedules and preexisting commitments.

## ARGUMENT

Ordinarily, the 100-mile limit imposed by Rule 45 would preclude Defendants from seeking to compel Mr. Hauenstein and Mr. Esposito, who are located in Atlanta, Georgia, to appear at trial in Boston. However, the trial subpoenas in question were served pursuant to a special

3

statutory provision permitting nationwide service on witnesses in antitrust lawsuits brought by the United States government,

> Provided, That in civil cases no writ of subpoena shall issue for witnesses living out of the district in which the court is held at a greater distance than one hundred miles from the place of holding the same without the permission of the trial court being first had upon proper application ***and cause shown***.

15 U.S.C. § 23 (emphasis added). While Delta understands this Court's Scheduling Order permits nationwide service of trial subpoenas under 15 U.S.C. § 23 (ECF 76 at 17-18 (¶ 20)), the statute also requires that Defendants must show "cause" to compel non-party Delta's executives, both of whom reside and work in Atlanta, to appear at the trial in Boston. *See United States v. Wyeth*, No. CV 03-12366-DPW, 2015 WL 8024407, at *4 (D. Mass. Dec. 4, 2015) (explaining that under 15 U.S.C. § 23 "cause must be shown for subpoenas issued to distant witnesses").

Moreover, the Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see also United States ex rel. Lutz v. Berkeley Heartlab, Inc.*, No. 9:14-230-RMG, 2017 WL 5624254, at *3 (D.S.C. Nov. 21, 2017) (noting that while 15 U.S.C. § 23 removes the geographic limitation imposed by Rule 45 on trial subpoenas, "Rule 45 provides several bases, other than geographic limitations, for quashing a subpoena—most notably if the subpoena 'subjects a person to undue burden'"). In determining whether a subpoena imposes an "undue burden" on a non-party, courts consider the "relevance, the requesting party's need, the breadth of the request, and the burden imposed." *Satanic Temple, Inc. v. City of Boston*, No. 21-CV-10102-AK, 2022 WL 1028925, at *3 (D. Mass. Apr. 6, 2022); *see also Solamere Cap. v. DiManno*, --- F.Supp.3d ----, No. 22-MC-91197-ADB, 2022 WL 3154551, at *5 (D. Mass. Aug. 8, 2022) (stating "factors to consider" in assessing "undue burden" under Rule 45(d) "include the relevance of the documents sought, the necessity of the documents sought, the breadth of the

4

request, and the expense and inconvenience.") (internal quotations omitted); *United States ex rel. Lutz v. Berkeley Heartlab, Inc.*, 9:14-230-RMG, 2017 WL 11673310, at *1 (D.S.C. Dec. 1, 2017) ("The key factors are the relevance of the information requested, the need of the party for the testimony, and whether it is available from another source."). Importantly, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Solamere*, 2022 WL 3154551, at *5 (alteration in original) (quoting *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014)).

Mr. Hauenstein, Mr. Esposito, and Delta oppose Defendants' motion to compel and move this Court to quash the subpoenas under Federal Rule of Civil Procedure 45(d) because there is no "cause" under 15 U.S.C. § 23 to compel their appearance at trial in Boston—Defendants have not and cannot show any need for their live trial testimony—and doing so would impose an undue burden.

## I.     The Trial Subpoena to Mr. Hauenstein Should Be Quashed.

Defendants cannot show "cause" for the trial subpoena to Mr. Hauenstein because they have not demonstrated that Mr. Hauenstein's testimony is necessary and unavailable from another source—namely Mr. Esposito's deposition. Indeed, a sister court has already found that it is not, and American Airlines' counsel has conceded as much.

Defendants have already sought to compel testimony from Mr. Hauenstein once in this case through a deposition subpoena. Delta filed a motion to quash.[3] In opposing Delta's motion, American Airlines argued that it needed Mr. Hauenstein to testify about certain information for which he supposedly had unique, first-hand knowledge, specifically: "Delta's competitive

---

[3] Pursuant to Federal Rule of Civil Procedure 45, Delta's and Mr. Hauenstein's motion to quash his deposition subpoena was filed in the United States District Court for the Northern District of Georgia because that is where compliance was required.

strategies generally and its strategic and competitive response to the Northeast Alliance specifically"; "the formation and effects of joint ventures and code-sharing agreements in the airline industry"; and "the relevant market definition for New York City airports." Mitchell Decl. Ex. 4, Order at 8. American argued that Mr. Hauenstein "personally oversees Delta's response to the Northeast Alliance," and that given his broad "scope of responsibilities," only he (and Delta's CEO) "can speak definitively for Delta on the full breadth of key disputed issues." Mitchell Decl. Ex. 2, American Airlines Opp'n at 2.

Magistrate Judge Christopher Bly of the United States District Court for the Northern District of Georgia rejected those arguments and quashed the deposition subpoena pursuant to the apex deposition doctrine. *See* Mitchell. Decl. Ex. 4, Order. In its Order, the court explained that American Airlines failed to show the requisite need to depose such a senior executive of Delta. *Id.* at 12-13. The court reviewed the evidence American Airlines presented as demonstrating the need for Mr. Hauenstein's deposition, and found nothing that indicated lower level, but still senior, employees at Delta—including Mr. Esposito—could not competently testify on the subjects sought. *Id.* at 9-11. This Court should quash the trial subpoena to Mr. Hauenstein for the same reasons.

Undeterred, Defendants now put forward the same rejected arguments to require Mr. Hauenstein to appear at trial—a far *greater* burden than a deposition in Atlanta in addition to no demonstrated need, in light of deposition testimony from three Delta executives. In particular, Defendants recycle the same rejected arguments that Mr. Hauenstein "has firsthand knowledge of the issues that are highly relevant to the underlying action" because he "has ultimate responsibility for all aspects of Delta's business," "uses a top-down leadership model and takes an active role in

developing and approving Delta's strategies," and "personally oversees Delta's response to the Northeast Alliance." Defs' Memo. at 2, 8.[4]

Despite Defendants' conclusory assertions, the evidence they cite shows—just as the Georgia court found—that Mr. Hauenstein delegated to others primary responsibility for developing Delta's response to the Northeast Alliance. Mitchell Decl. Ex. 4, Order at 9 ("[F]rom the evidence American cites in support of its assertion that Mr. Hauenstein has knowledge in these areas, it appears that there are others more directly involved in the planning and strategizing relevant to the underlying action who could provide the necessary information that American seeks."); *see also* Hauenstein Decl. ¶¶ 8-9. For example, Mr. Esposito's deposition testimony cited by Defendants shows Delta's decision-making on the Northeast Alliance was not made by Mr. Hauenstein, but "coalesced as a commercial group." Defs' Memo. at 9 (citing Esposito Dep. at 96:15-97:2).[5]

Similarly, DX 247 reflects a meeting between the leaders of Delta's Network Planning department and Mr. Hauenstein on July 30, 2020, during which Mr. Hauenstein's "feedback" and

---

[4] Defendants' motion to compel identifies several more topics that they claim justify compelling the testimony of Mr. Esposito and Mr. Hauenstein, but do not argue that only Mr. Hauenstein, as opposed to Mr. Esposito, can provide such testimony. To the contrary, they readily admit Mr. Esposito can testify, and in fact already has testified, as to those topics. Defs' Memo. at 2 ("The foregoing examples are only a few of the key points discussed in . . . Mr. Esposito's deposition testimony."); *see also id.* at 6-8 (quoting Mr. Esposito's deposition testimony).

[5] In support of their motion to compel Mr. Hauenstein's appearance at trial, Defendants cite the deposition testimony of Scott Laurence, identified as a "former Delta employee." Defs' Memo. at 2-3 n.3. Defendants fail to mention that Mr. Laurence is also a former employee of Defendant JetBlue, and a current employee of Defendant American. So Mr. Laurence is hardly unbiased. Even more incredibly, Defendants neglect to mention that: Mr. Laurence was a Delta employee for less than a month in early 2022 (long after the NEA was announced in June 2020); reported to Mr. Esposito, not Mr. Hauenstein; and was walled off from discussions, if any, about the "Northeast Alliance." Esposito Decl. ¶ 8. Thus, he is not in a position to speak credibly, much less knowledgeably, about either Mr. Hauenstein's "leadership model" or his role in assessing Delta's response to the Northeast Alliance.

"guidance" was for others to "spool up a team to further the analysis and develop" Delta's response plan.  Notably, Joe Esposito is copied on the email, and American Airlines examined him about it in his deposition.  Esposito Dep. at 102:19-120:4 (discussing DX 247 (Esposito Dep. Ex. 3, DAL-00015450)).  As Mr. Esposito testified, Mr. Hauenstein's only feedback raised "the same questions we all had about what it means for us and understanding the pros and cons."  Esposito Dep. at 96:20-22.  Defendants also neglect to inform the Court that Mr. Hauenstein did not even attend the follow up meeting, which was instead requested by Mr. Esposito.  DX 241 (Aug. 18, 2020 email: "Joe has requested that we get together this week and review the strategy and next steps . . . .").[6]

Even more unhelpful to Defendants is DX 249, which reflects an email exchange in which the leader of Delta's Domestic Network Planning team summarizes for Mr. Hauenstein Defendants' "next set of NYC/BOS route additions," and lays out Delta's planned announcement of its Fall 2021 schedule on certain routes.  DX 249.  Nothing in the email indicates Mr. Hauenstein's comments were directed in response to the Northeast Alliance; they were rather focused on Delta's own plans.  Defendants again neglect to mention that Mr. Esposito is copied on the email, and that they chose not to ask him about it at his deposition.  Instead, Defendants ask this Court to issue a subpoena to a non-party competitor's second-highest executive so they can solicit trial testimony about a single document of questionable relevance they decided not to inquire about while deposing the individual with knowledge about the document.

In sum, none of the arguments or evidence proffered by Defendants warrants this Court revisiting the ruling of a sister district court.  What was true in discovery is true at trial.  There is nothing to suggest that Mr. Hauenstein's testimony is needed, or that any testimony he might

---

[6] American Airlines also examined Mr. Esposito about DX 241 (DAL-00011908) (and DX 242, 00011909) in his deposition.  *See* Esposito Dep. at 121:20-122:7 (discussing Esposito Dep. Ex. 4).

8

provide is unique, and unavailable from others. Rather, their motion makes clear they already obtained testimony on the subjects they identify from Mr. Esposito's deposition. As Defendants admit, Mr. Esposito's deposition testimony "demonstrates that he has firsthand knowledge of topics central to this proceeding," and he "extensively discussed" those topics, especially Delta's response to the Northeast Alliance, at his deposition. Defs' Memo. at 6-8. Thus, there is no "cause" to justify haling Mr. Hauenstein into court to testify at trial.

Defendants' conduct following Judge Bly's Order quashing the deposition subpoena further belies their supposed need for Mr. Hauenstein's trial testimony. Both Delta and the court invited Defendants to again seek to depose Mr. Hauenstein if the already noticed depositions of the witnesses Delta had offered (including Mr. Esposito) proved insufficient to Defendants' needs.[7] But Defendants never followed up. Following the three Delta depositions they took, Defendants did not inform Delta that they believed Mr. Hauenstein's testimony was still needed, or that the various Delta employees deposed had provided insufficient testimony—until a trial subpoena was raised for the first time on August 25. Mitchell Decl. ¶ 2. If Defendants believed they needed Mr. Hauenstein's testimony in this case, they should have sought his deposition, or at the very least, informed Delta long ago that Defendants had put him on their final trial witness list on June 13, 2022, and of their intent to serve him with a trial subpoena. Yet Defendants did none of that. What's more, counsel for American Airlines told Delta's counsel that they would forego the trial subpoena to Mr. Hauenstein if Delta would agree to make Mr. Esposito available. *Id.*

---

[7] *See* Mitchell Decl. Ex. 1, Delta Memo. at 11-12 ("The Court should require American Airlines take Mr. Esposito's deposition (and others if necessary), before requiring Mr. Hauenstein to sit for deposition. Only after such other depositions occur can there be any meaningful assessment of whether Mr. Hauenstein's deposition is necessary . . . ."); *see also* Mitchell Decl. Ex. 4, Order at 11 ("The Court cannot find, at this juncture, that American could not obtain the information it seeks through the depositions that it has already scheduled.").

at ¶ 3. That concession alone vitiates any cause Defendants might have under 15 U.S.C. § 23. And it should eliminate any concern the Court might have about depriving Defendants of testimony from Mr. Hauenstein that Defendants claim they need.

Finally, the burden on Mr. Hauenstein to fly to Boston to testify at trial is undue. As the Northern District of Georgia court recognized in quashing his deposition subpoena, Mr. Hauenstein is the President of Delta and second highest-ranking executive in the company. Mitchell Decl. Ex. 4, Order at 2. Mr. Hauenstein's varied responsibilities require him to maintain a very full schedule, and compelling him to take time out from those job responsibilities to prepare for, travel to, and sit for trial testimony would impose a significant burden on both him and Delta. Hauenstein Decl. ¶¶ 6-7, 10-13. And with respect to the period during which American says it would likely seek Mr. Hauenstein's appearance (*i.e.*, the week of October 10) (Defs' Memo. at 4 n.4), Mr. Hauenstein is scheduled to travel overseas from October 13 through October 23 for a personal trip that has been planned for over a year. *Id.* at ¶ 11. On October 11 and 12, Mr. Hauenstein has several meetings in preparation for Delta's quarterly earnings release on October 13, 2022, as well as a number of other executive level meetings. *Id.*[8] As discussed in more detail below *(see infra* at Section III, p. 14), Defendants' failure to provide adequate notice of the trial subpoena to Mr. Hauenstein further underscores the undue burden of forcing him to modify or cancel his plans to attend the trial in Boston.

## II. The Trial Subpoena to Mr. Esposito Should Also Be Quashed.

Defendants also cannot show "cause" for Mr. Esposito's trial testimony, let alone to overcome the undue burden that would be imposed by forcing him to Boston for trial.

---

[8] With respect to earlier periods in the trial schedule, Mr. Hauenstein has other significant pre-existing professional and personal commitments. Hauenstein Decl. ¶ 12.

Mr. Esposito already sat for a deposition in this matter on June 21, 2022. At that video recorded deposition, American Airlines and the United States each extensively questioned Mr. Esposito. Defendants gave no indication at the time, or any time before August 25, that Mr. Esposito's testimony was insufficient for their needs. Nor did Defendants ever suggest that they felt they needed more deposition time with Mr. Esposito. Defendants should not now be permitted to impose the burden on Mr. Esposito of preparing for and attending a trial in Boston just so they can get a second bite at the apple.

Defendants' motion makes clear that Mr. Esposito's trial testimony is unnecessary. Defendants argue they need Mr. Esposito's trial testimony on the following topics: "Delta's perception of the competitive landscape in the Northeast": "Delta's dominant presence in Boston and New York before the NEA was announced"; "the significance of having a broad network"; "the airline features valued by corporate customers"; and "the benefits of airline partnerships for enhancing an airlines network." Defs' Memo. at 1-2. But in arguing the need for his trial testimony on those topics, Defendants devote three pages of their brief to quoting from Mr. Esposito's deposition *on those very topics*. *See, e.g.*, *id.* at 6-7 (explaining that Mr. Esposito could testify about the purported competitive justification of the Northeast Alliance and Delta's attention to it, by quoting extensively from Mr. Esposito's deposition transcript); *id.* at 7-8 (same for Delta's "perception of the competitive landscape in the Northeast"). Defendants do not have "a tremendous need for the testimony" from Mr. Esposito that they cannot obtain "from any other source" (Defs' Memo. at 9), because they already have it *from Mr. Esposito,* whose video

deposition can be shown at trial. The same is true of the documents produced by Delta, which are equally available for use at trial.[9]

The burden here on Mr. Esposito is also undue. Mr. Esposito is Delta's Senior Vice President of Network Planning. Esposito Decl. ¶ 6. He oversees Delta's entire Network Planning department and is responsible for Delta's global network strategy—responsibilities that involve a busy and full schedule. *Id.* at ¶¶ 6, 10. From October 10 to October 13, Mr. Esposito has multiple business meetings in Atlanta, before leaving the country on the afternoon of October 13 for a long-planned personal trip through October 17. *Id.* at ¶ 11.[10] Compelling Mr. Esposito to cancel or modify his trip, and take time out of his job responsibilities to prepare for, travel to, and sit for trial testimony, would impose a significant burden, especially when he has already provided a day of deposition testimony in this matter. *Id.* at ¶ 13. Defendants' delay in notifying Delta of their intention to subpoena Mr. Esposito for trial, and seeming satisfaction with the testimony he has already given, have only added to the current disruption to his schedule that Mr. Esposito would face if he were required to appear for trial.

Defendants create a strawman that Mr. Esposito seeks to quash exclusively on the basis that he has already been deposed. Defs' Memo. at 11. As described above, Mr. Esposito establishes the burden that compliance would place on him. And even the cases cited by Defendants show why Mr. Esposito should not be compelled to appear at trial. In *Deines v.*

---

[9] Defendants cite two Delta-produced documents as the basis for their need for Mr. Esposito's trial testimony. *Id.* at 5-6 (citing DX 241 & DX 243). Defendants have already questioned Mr. Esposito extensively at his deposition about DX 241 (Esposito Dep. Ex. 4) (*see* Esposito Dep. 120:12-137:14), as well as others on their trial exhibit list: DX 232 (Esposito Dep. Ex. 8), DX 237 (Esposito Dep. Ex. 6), DX 239 (Esposito Dep. Ex. 5), DX 242 (part of Esposito Dep. Ex. 4), DX 247 (Esposito Dep. Ex. 3), DX 248 (Esposito Dep. Ex. 7). Defendants did not bother to ask Mr. Esposito about DX 243 at his deposition, which belies their claim about it being necessary.

[10] Mr. Esposito also has significant personal and professional obligations, including pre-existing trips, during the rest of the scheduled trial period. Esposito Decl. ¶ 12.

*Vermeer Manufacturing Co.*, 133 F.R.D. 46 (D. Kan. 1990), the plaintiff in a product liability action sought a *second deposition* of the defendant company's founder, who remained on its board of directors and who was involved in the design and manufacture of the product alleged to have caused the plaintiff's injury. *Id.* at 48-49. The plaintiff had expected the witness to be available at trial until the witness's doctor sent a letter claiming he would not be able to testify due to a medical condition, and on that basis the court permitted a second deposition. *Id.* at 47. Even then, the court imposed restrictions on the conduct of the deposition. *Id*. at 49. Critically, the court did not discuss factors relevant to non-party testimony or whether good cause exists to compel trial testimony from a competitor's executive when he has already been deposed.

*United States v. IBM* addresses the admissibility of party depositions, but it too undercuts Defendants' request to compel Mr. Esposito to appear at trial to the extent it is based on some perceived deficiency in the deposition record. *United States v. Int'l Bus. Machs. Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981). In that case, the government objected to the defendant's proposed admission of deposition testimony because the government had taken only "incomplete," "discovery" depositions rather than "evidentiary" depositions intended for trial. *Id.* The court rejected that argument, and held that the "admission of unfavorable deposition records was a risk the government assumed when it chose to limit its questioning." *Id.* Thus, even if "Defendants had no expectation at the time [Mr. Esposito's] deposition was taken that his deposition would be a substitute for trial testimony" (Defs' Memo at 12 n.5), they assumed that risk.[11]

---

[11] Defendants argue the Scheduling Order permitting nationwide service of trial subpoenas somehow meant Defendants had no reason to expect Mr. Esposito's "deposition testimony would be a substitute for trial testimony." Defs' Memo. at 12 n.5. This suggests Defendants knew they were going to subpoena Mr. Esposito for trial before they took his deposition, but then did not alert him of that fact for over two more months until trial was a month away.

13

At bottom, Defendants' justification for requiring Mr. Esposito to appear for trial is not that it is necessary for him to be present for the Court to hear the substance of his testimony, but that it would be preferable to have him appear live. That is not sufficient reason to compel Mr. Esposito to undergo the burden of traveling to Boston and disrupting his significant pre-existing commitments.

**III.   Defendants' Inadequate Notice to the Witnesses and Delta Further Warrants Quashing the Subpoenas.**

Defendants' failure to provide Mr. Hauenstein, Mr. Esposito and Delta with adequate notice in seeking to compel their trial testimony further supports quashing the trial subpoenas. The deadline for the parties to exchange final trial witness lists was June 13, 2022. ECF No. 76 at 2. Defendants apparently included both Mr. Hauenstein and Mr. Esposito on their final trial witness list but never bothered to tell Delta. Instead, Defendants inexplicably waited until August 25—almost two and half months later—to inform Delta's counsel for the first time that they planned to seek to compel them to attend a trial to begin (by that point) in a month. Mitchell Decl. ¶ 2. Until then, as far as Delta, Mr. Hauenstein and Mr. Esposito knew, Defendants were satisfied they had obtained everything that they needed from Mr. Esposito's deposition and Defendants' Motion to compel does not claim otherwise. Thus, as far as Mr. Hauenstein and Mr. Esposito knew, they were free to make plans that conflicted with the trial in this case, and they did so. Even after Delta confirmed on August 30 that Delta would move to quash the subpoenas if served, Defendants then waited another two weeks (September 13) to actually serve the subpoenas. ECF 177, Declaration of Marguerite M. Sullivan, at ¶¶ 6, 8 ("Sullivan Decl."). Defendants offer no explanation for these

14

delays, all of which suggest Defendants were not especially concerned about the need for Mr. Hauenstein's and Mr. Esposito's attendance at trial.[12]

Without apparent irony, Defendants argue that "because Mr. Hauenstein and Mr. Esposito have always appeared on Defendants' witness list, and *all parties* have known about both individuals' crucial involvement with the subject matter before this Court, they should be compelled to comply with the subpoena."  Defs' Memo. at 11 (emphasis added).  But Delta is not a party.[13]

## **CONCLUSION**

Mr. Hauenstein, Mr. Esposito, and Delta respectfully request that the Court quash Defendants' trial subpoenas to Mr. Hauenstein and Mr. Esposito.

---

[12] Defendants' assertion that they "will afford Mr. Esposito and Mr. Hauenstein flexibility in scheduling their appearance and testimony [the week of October 10] to accommodate any conflicts" (Defs' Memo. at 4. n.4) rings hollow given their failure to provide sufficient notice of the trial subpoenas.

[13] Nor is this the only time that Defendants lose sight of Delta's third party status. For instance, Defendants repeatedly cite *Hardisty v. Moore*, where the witnesses sought to be compelled to appear at trial *were the Defendants*. *Hardisty v. Moore*, No. 11-cv-01591-BAS(BLM), 2014 WL 4472718, at *1 (S.D. Cal. Sept. 10, 2014).  A more appropriate analogy would be to the defendant (but third-party witness as to the plaintiff seeking the subpoena) in *Johnson v. Bay Area Rapid Transit District*, No. 09-CV-0901-EMC, 2014 WL 2514542, at *2 (N.D. Cal. June 4, 2014), who was deposed but then deployed overseas prior to trial.  Weighing the interests of justice, the court declined to issue a subpoena because "it is not 'impractical' for Plaintiffs to obtain the information they reasonably need from [the witness] without his presence because (1) an extensive video deposition of [the witness] has been taken on the facts underlying this action and (2) the Federal Rules expressly provide a vehicle for admission of this deposition testimony." *Id*.  Nor does this case present unique factors requiring in-person testimony for the benefit of the fact-finder.  *Cf. Pac. Gas & Elec. Co. v. Howard P. Foley Co.*, No. 85-cv-2992, 1993 WL 299219, at *10 (N.D. Cal. July 27, 1993) (ordering third-party witness to appear at trial to permit counsel to "raise adverse inferences against witnesses who refuse to testify in response to probative evidence").

Dated: September 21, 2022                Respectfully submitted,

                                         */s/ Michael S. Mitchell*

                                         James P. Denvir (*pro hac vice*)
                                         Michael S. Mitchell (*pro hac vice*)
                                         Benjamin Solomon-Schwartz (BBO 688674)
                                         BOIES SCHILLER FLEXNER LLP
                                         1401 New York Avenue, N.W.
                                         Washington, DC 20005
                                         Telephone: (202) 237-2727
                                         Fax: (202) 237-6131
                                         jdenvir@bsfllp.com
                                         mmitchell@bsfllp.com
                                         bsolomon-schwartz@bsfllp.com

                                         *Counsel for Non-Parties Glen Hauenstein,*
                                         *Joseph Esposito and Delta Air Lines, Inc.*

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 21, 2022

                                         */s/ Michael S. Mitchell*
                                         Michael S. Mitchell (*pro hac vice*)
                                         BOIES SCHILLER FLEXNER LLP
                                         1401 New York Avenue, N.W.
                                         Washington, DC 20005
                                         Telephone: (202) 237-2727
                                         Fax: (202) 237-6131
                                         mmitchell@bsfllp.com

                                         *Counsel for Non-Parties Glen Hauenstein,*
                                         *Joseph Esposito and Delta Air Lines, Inc.*