# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |
|---|---|
| *In re Subpoena to Glen Hauenstein* | Case No. 1:22-mi-00029-MHC-CCB <br><br><br> <u>Underlying Litigation:</u> <br> *United States v. Am. Airlines Grp. Inc.*, <br> No. 1:21-cv-11558-LTS (D. Mass.) |

## OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND TO QUASH DEPOSITION SUBPOENA TO GLEN HAUENSTEIN

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION .........................................................................................1

II.  BACKGROUND ..........................................................................................3

III.  ARGUMENT ...............................................................................................7

    A.  Legal Standard..................................................................................7

    B.  Mr. Hauenstein Has Unique, Firsthand Knowledge Of Facts That Are At Issue In The Underlying Action And Are Central To American's Defenses.................................................................12

    C.  Other Avenues Of Discovery Would Not Provide An Adequate Substitute For Mr. Hauenstein's Deposition ......................................16

    D.  A Deposition Would Not Unduly Burden Mr. Hauenstein.................18

    E.  Alternatively, This Court Should Transfer This Action To The District Of Massachusetts...................................................................20

IV.  CONCLUSION...........................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Balfour Beatty Rail, Inc. v. Vaccarello*,
No. 3:06-CV-551-J-20MCR, 2007 WL 842765 (M.D. Fla. Mar. 20, 2007)........8

*Cameron v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*.,
No. 11CV06714YGRTSH, 2021 WL 485709 (N.D. Cal. Jan. 26, 2021) ...*passim*

*Clarity Sports Int'l LLC v. Silver*,
No. 1:21-CV-676-MHC-WEJ, 2021 WL 2480110 (N.D. Ga. Mar. 2, 2021) ......7

*Cochran v. Brinkmann Corp.*,
No. 1:08-CV-1790-WSD, 2009 WL 10668460 (N.D. Ga. Feb. 11, 2009) ......8, 9

*In re Early*,
No. 221CV00029SCJJCF, 2021 WL 2636020 (N.D. Ga. Apr. 20, 2021)
.............................................................................................................19, 20, 21

*Fitzhugh v. Topetzes*,
No. 1:04-CV-3258-RWS, 2005 WL 8154753 (N.D. Ga. Sept. 1, 2005) .............7

*Gamache v. Hogue*,
No. 1:19-CV-21 (LAG), 2022 WL 989483 (M.D. Ga. Mar. 30, 2022) ...............7

*Hickey v. N. Broward Hosp. Dist.*,
No. 14-CV-60542-BLOOM, 2014 WL 7495780 (S.D. Fl. Dec. 17, 2014) .......18

*Jernigan v. Scholastic, Inc.*,
2018 WL 11323497 (M.D. Fl. Sept. 17, 2018) ..................................................17

*In re K.M.A. Sunbelt Trading Co.*,
No. 8:17-MC-55-30AAS, 2017 WL 2559790 (M.D. Fla. June 13, 2017) ...20, 21

*Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*,
No. CIV. 10-11041-NMG, 2013 WL 1833010 (D. Mass. Apr. 30, 2013).....9, 15

*In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*,
No. 4:08-MD-2004 (CDL), 2009 WL 4730321 (M.D. Ga. Dec. 1, 2009)
...........................................................................................................10, 16

*Palmisano v. Paragon 28, Inc.*,
No. 21-60447-CIV, 2021 WL 1686928 (S.D. Fla. Apr. 23, 2021) ...................15

*Powertech Techs., Inc. v. Tessera*,
No. C 11–6121 CW, 2013 WL 3884254 (N.D. Cal. July 26, 2013) ...................9

*Robinson v. Bay Club L.A., Inc.*,
No. CV2103578DMGRAOX, 2021 WL 6618819 (C.D. Cal. Dec. 22, 2021) ..15

*SEC v. Merkin*,
283 F.R.D. 689 (S.D. Fla. 2012)........................................................................7

*The Dispatch Printing Co. v. Zuckerman*,
No. 16CV80037BLOOMVALLE, 2016 WL 335753 (S.D. Fla. Jan. 27, 2016)
...........................................................................................................20

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C-07-05634 CRB (DMR), 2014 WL 939287 (N.D. Cal. Mar. 6, 2014).....11

*Travelers Rental Co. v. Ford Motor Co.*,
116 F.R.D. 140 (D. Mass. 1987).................................................................10, 11

*Virnetx, Inc. v. Apple Inc.*,
No. 13-80769-MC, 2013 WL 12108440 (S.D. Fla. Sept. 26, 2013) .................19

**RULES**

Fed. R. Civ. P. 26 ................................................................................................4

Fed. R. Civ. P. 26(b)(1)......................................................................................7

Fed. R. Civ. P. 45 ...............................................................................................7

Fed. R. Civ. P. 45(d)(3)(A)(iv) .........................................................................7

Fed. R. Civ. P. 45(f)...................................................................................19, 20

iii

## I.    INTRODUCTION

Movant Delta Air Lines, Inc. ("Delta") and Glen Hauenstein seek to avoid the deposition of a key witness in *United States v. Am. Airlines Grp. Inc.*, No. 1:21-cv-11558 (D. Mass. Sept. 21, 2021) (the "underlying action"), a complex antitrust lawsuit through which the Department of Justice ("DOJ") and several states seek to enjoin the Northeast Alliance between American Airlines Group Inc. ("American") and JetBlue Airways Corp. ("JetBlue").  Their motion to quash should be denied.

At the heart of the underlying action is the question of how the Northeast Alliance will affect competition in the U.S. airline industry—an industry plaintiffs allege is dominated by four airlines, including Delta.  Key questions of fact include how airlines compete on pricing, service quality, route and network selection, scheduling, and capacity.  Thus, in this high-profile antitrust litigation, Delta's competitive strategies and its reactions to the Northeast Alliance are important and highly-contested factual questions.

Glen Hauenstein is undoubtedly the right Delta employee to question on these issues.  He oversees Delta's network, revenue management, reservation sales, customer care, customer engagement and loyalty strategies, "masterminded the transformation of the airline's network," *see* Ex. 5, and routinely speaks for Delta publicly on competitive strategies, including its network strategies specifically.  For

example, at Delta "Investor Days," during which Delta employees update the public on the company's general strategies, Mr. Hauenstein is the person who addresses Delta's network strategies, its "unmatched competitive advantages," and its strategies for particular airports, including Boston Logan International Airport and John F. Kennedy International Airport ("JFK").  *See* Ex. 6 at 17, 19, Delta Air Lines, Inc., *Investor Day Transcript* (Dec. 12, 2019).  Mr. Hauenstein regularly addresses Delta's strategies for competing with low-cost carriers ("LCCs") like JetBlue, and he personally oversees Delta's response to the Northeast Alliance.  Mr. Hauenstein is also unique in the way the scope of his responsibilities matches the competitive strategy issues relevant to his case.  Only two people can speak definitively for Delta on the full breadth of key disputed issues: Edward H. Bastian (Delta's Chief Executive Officer ("CEO")) and Mr. Hauenstein.  Delta's demand that American depose more junior employees who cannot speak to the full ambit of the contested issues ignores Defendants' need for a definitive voice on Delta's strategies.  Indeed, Plaintiffs and Defendants have noticed the deposition of Mr. Hauenstein's counterparts at United Airlines, Inc. ("United") and Alaska Airlines ("Alaska"), and both have agreed to be deposed.  Nothing distinguishes Mr. Hauenstein from these executives.

The Court should deny Delta's motion, which is premised exclusively on the "apex doctrine." That doctrine is *not* a general license for executives to avoid depositions and provides no basis to quash here where there is no potential for "numerous, repetitive, harassing, and abusive depositions" of Delta or Mr. Hauenstein and Defendants have a crystal clear need for his deposition. In the alternative, the Court should transfer Delta's motion to the District of Massachusetts so that the judge presiding over this action may decide whether Mr. Hauenstein's deposition is appropriate.

## II.   BACKGROUND

The underlying action was commenced on September 21, 2021. The fundamental dispute is whether the Northeast Alliance between American and JetBlue restrains competition, as Plaintiffs allege, or promotes competition by making American and JetBlue more competitive against Delta and United in the Northeast. That makes Delta a central actor in plaintiffs' theory of the case. Delta is mentioned several times in the complaint, more than any other non-party airline. Ex. 3, Compl. ¶¶ 1, 23, 26, 29, 33, 34, 60, *United States v. Am. Airlines Grp. Inc.*, No. 1:21-cv-11558-LTS (D. Mass. Sept. 21, 2021), ECF No. 1. Plaintiffs contend that "legacy" airlines like Delta *benefit* from the Northeast Alliance, because the Alliance *weakens* competition by JetBlue against legacy airlines. *See id.* ¶¶ 25–29,

3

75.   Defendants, on the other hand, contend that the Northeast Alliance was specifically designed to *compete more effectively with Delta*, and that Delta has responded accordingly.  Ex. 4, Mem. in Supp. of Mot. to Dismiss at 8, No. 1:21-cv-11558-LTS (D. Mass. Nov. 22, 2021), ECF No. 68.

Looming over all of this is the nature of airline competition, and in particular how legacy airlines—American, United and Delta—compete with one another and with LCCs such as Southwest and JetBlue.  Plaintiffs contend that legacy airlines do not compete hard against one another, but are forced to compete on price because of pressure from LCCs.  Decl. of Daniel M. Wall in Supp. of Resp. to Mot. to Quash ("Wall Decl.") ¶ 3.  Defendants, on the other hand, maintain that there is vigorous "network competition" among airlines, including specifically among legacy airlines. *Id.*  Thus, while Plaintiffs suggest that the Northeast Alliance is anticompetitive because it softens competition from JetBlue, Defendants argue that the Alliance is an example of, and promotes, network competition by making both American and JetBlue more competitive in the Northeast against Delta and United.

This puts Delta and its strategies at the heart of this case.

There is no dispute between the parties to this case regarding the need for discovery from Delta about its competitive strategies.  Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties exchanged their initial disclosures on

December 14, 2021; Plaintiffs and Defendants all identified Delta as an entity that is likely to have discoverable information that the disclosing party might use to support its claims or defenses. On January 17, 2022, American served a subpoena *duces tecum* on Delta. To date, Delta has made five document productions totaling several thousand documents in response to American's subpoena. Wall Decl. ¶ 2.

The trial of this action is set to begin on September 26, 2022, and to that end, fact discovery must be completed by June 8, 2022—just six weeks from now. Anticipating the need to call one or more Delta witnesses at trial, American's lead counsel called Delta's outside counsel on March 4, 2022, to arrange for Mr. Hauenstein's deposition. *Id.* ¶ 5. While the Motion to Quash suggests that American just dropped a subpoena on Mr. Hauenstein without considering its options, that is not true. In the first place, American's management, which is well versed in Delta's strategies and public statements, identified Mr. Hauenstein as the key person in Delta with respect to overall competitive strategy, network strategy, pricing strategy and sales strategy. *Id.* ¶ 4. As Delta admits, Mr. Hauenstein oversees many critical aspects of Delta's business, strategy, and operations, including "responsibility for the overall performance and strategy of the business, managing and overseeing senior level executives responsible for Delta's network, revenue management, reservation sales, customer care, customer engagement and loyalty strategies, and

representing Delta at industry events." *See* Mem. in Supp. Mot. for Protective Order and to Quash Dep. Subpoena to Glen Hauenstein ("Motion to Quash"), ECF No. 1-1 at 2–3. He is, in short, Delta's senior executive spokesperson on these issues, fitting perfectly Defendants' need for an authoritative Delta voice on these issues. The same process and thinking went into the identification of Andrew Nocella (Mr. Hauenstein's counterpart at United) as United's senior executive spokesperson on these issues—and he agreed to testify.

Delta makes much of the fact that Defendants "started" with Mr. Hauenstein before exhausting other options, but that is misleading at best. American began this process by calling Delta's counsel concerning Mr. Hauenstein *as a courtesy*, stating expressly that while Defendants would need to depose lower-level Delta employees too, they needed to depose Mr. Hauenstein (or Delta's CEO) and wanted to be sensitive to his scheduling needs. Wall Decl. ¶¶ 5–7. When Delta resisted, American's counsel discussed options with Delta's counsel. *Id*. ¶¶ 5–10. But the alternatives Delta proposed—Eric Beck, Delta's Managing Director for Domestic Network Planning, and Amy Martin, Delta's Managing Director for International Network Planning—are too junior to speak definitively and cannot speak to the full breadth of Delta's competitive strategies. *Id*. ¶¶ 8-9. Ignoring this fact, Delta demanded that American depose those employees first. *Id*. ¶¶ 8–10. On April 12,

6

2022, Delta moved this Court to quash the subpoena on the grounds that the "apex doctrine" bars American from taking Mr. Hauenstein's testimony.

## III.  ARGUMENT

Delta's arguments in support of its motion to quash fail for three reasons: (1) Mr. Hauenstein possesses unique, firsthand knowledge of issues that go to the heart of the underlying action; (2) other avenues of discovery, including the deposition of lower-level Delta employees, are not an adequate substitute for Mr. Hauenstein's testimony; and (3) Delta has not demonstrated that Mr. Hauenstein's deposition would be unduly burdensome.  Accordingly, this Court should deny Delta's motion to quash.  In the alternative, this Court should transfer Delta's motion to the District of Massachusetts.

### A.  Legal Standard

Rule 45 of the Federal Rules of Civil Procedure "provides a means for parties to subpoena testimony and documents from nonparties." *Clarity Sports Int'l LLC v. Silver*, No. 1:21-CV-676-MHC-WEJ, 2021 WL 2480110, at *2 (N.D. Ga. Mar. 2, 2021).  Because "Rule 45 is decided under the same standards set forth in Rule 26(b)," a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id.* at *3 (internal quotations omitted)

7

(quoting Fed. R. Civ. P. 26(b)(1)).  A court must "quash or modify a subpoena" that "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).

There is a "heavy burden" on the party moving to quash the subpoena to show "that compliance with the subpoena would be unreasonable and oppressive." *Fitzhugh v. Topetzes*, No. 1:04-CV-3258-RWS, 2005 WL 8154753, at *4 (N.D. Ga. Sept. 1, 2005) (internal quotations omitted).  Thus, "it is highly unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *SEC v. Merkin*, 283 F.R.D. 689, 694 (S.D. Fla. 2012); *accord Gamache v. Hogue*, No. 1:19-CV-21 (LAG), 2022 WL 989483, at *3 (M.D. Ga. Mar. 30, 2022) (noting that "a protective order which prohibits a deposition is rarely given").

Courts in this District sometimes apply the so-called "apex doctrine" when assessing the propriety of depositions of high-ranking corporate executives.  *See, e.g.*, *Cochran v. Brinkmann Corp.*, No. 1:08-CV-1790-WSD, 2009 WL 10668460, at *2–3 (N.D. Ga. Feb. 11, 2009).  That doctrine exists for a specific and limited purpose, which Delta describes correctly:

> "The rationale for barring such depositions is that 'high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Robinson v. Wells Fargo Bank, N.A.*, No. 1:10-CV-3819-TCB-GGB, 2012 WL 13130022, at *6 (N.D. Ga. June 7, 2012) (quoting *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).

Mem. of Law in Supp. Mot. for Protective Order and to Quash Dep. Subpoena to Glen Hauenstein ("Mot. to Quash") at 5.  In other words, "highly-placed executives are not immune from discovery." *Balfour Beatty Rail, Inc. v. Vaccarello*, No. 3:06-CV-551-J-20MCR, 2007 WL 842765, at *4 (M.D. Fla. Mar. 20, 2007).  Instead, they (and the corporation) are protected against *harassment* in the form of unnecessary and abusive depositions, *e.g.*, when in "a lawsuit by someone who slipped on a banana peel in the produce aisle at Safeway [plaintiff] seeks to depose Safeway's CEO." *Cameron v. Apple Inc. (In re Apple iPhone Antitrust Litig.).*, No. 11CV06714YGRTSH, 2021 WL 485709, at *4 (N.D. Cal. Jan. 26, 2021).  Depositions of high-level executives are permissible when those executives have "specific and unique knowledge related to the suit" and "other avenues of discovery have not or could not provide an adequate substitute." *Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, No. CIV. 10-11041-NMG, 2013 WL 1833010, at *1 (D. Mass. Apr. 30, 2013).  And even where courts have found that a deposition of an apex executive would be unduly burdensome, the doctrine ordinarily "limits the length of a deposition, rather than barring it altogether," unless there are "extraordinary circumstances." *Cameron*, 2021 WL 485709, at *3, 5 (N.D. Cal. Jan. 26, 2021); *see also Cochran*, 2009 WL 10668460, at *3 (permitting apex deposition

due to witness's "unique personal knowledge" of "fundamental issues in this case," but limiting the deposition in time and to particular topics).

It is well established that "the party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, where a corporate officer may have **any** first-hand knowledge of relevant facts, the deposition should be allowed." *Cameron*, 2021 WL 485709, at *5 (internal quotations omitted) (emphasis added); *see also Powertech Techs., Inc. v. Tessera*, No. C 11–6121 CW, 2013 WL 3884254, at *2 (N.D. Cal. July 26, 2013) (holding that the party seeking the deposition "was not required to prove that [the apex deponent] certainly has [relevant] information"). Accordingly, "where conduct and knowledge of the highest corporate levels are relevant in the [underlying] case, a deposition of the executive is generally permitted." *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2009 WL 4730321, at *1–2 (M.D. Ga. Dec. 1, 2009).[1]

---

[1] While witness declarations are necessary for a party to successfully seek a protective order, self-serving affidavits rarely suffice to establish that an apex witness has no relevant information. *See, e.g.*, *In re Mentor Corp.*, 2009 WL 4730321, at *2 (allowing apex depositions and finding that witnesses had direct knowledge of relevant issues despite declarations to the contrary); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 143 (D. Mass. 1987) (characterizing affidavits that high-ranking executives knew nothing about certain topics were

In antitrust litigation, where high-level competitive strategy is at issue, it is commonplace and entirely proper to depose senior executives. As the court in *Cameron* put it, "[w]hen a lawsuit concerns important aspects of a company's business model that are plainly the result of high-level executive decisions, we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional, and the depositions will not be abusive or harassing." 2021 WL 485709, at *4. Similarly, in an antitrust case in the District of Massachusetts, the court rejected Ford Motor Company's argument that plaintiff sought depositions of high-level executives "solely for the purpose of harassment" because the plaintiff "outlin[ed] the connections between the four executives and the evidence and issues in this lawsuit." *Travelers Rental Co.*, 116 F.R.D. at 146–47 ("When the motives behind corporate action are at issue, an opposing party usually has to depose those officers and employees who in fact approved and administered the particular action."); *see also, e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 939287, at *4 (N.D. Cal. Mar. 6, 2014) (denying motion for protective order because apex witness's "position

---

"plainly insufficient to support a motion to quash," given that the executives "were personally involved in matters relevant to this case").

as the supervisor in charge of this department could provide unique, firsthand information relevant to Plaintiffs' claims").

**B.  Mr. Hauenstein Has Unique, Firsthand Knowledge Of Facts That Are At Issue In The Underlying Action And Are Central To American's Defenses**

Mr. Hauenstein has firsthand knowledge of issues that are highly relevant to the underlying action.  Delta has consolidated in its President (the title Mr. Hauenstein has maintained from 2016 to the present) supervision of "a team responsible for Delta's network, revenue management, reservation sales, customer care, customer engagement and loyalty strategies"—functions that are central to understanding the effects of the Northeast Alliance on the airline industry and Delta's competitive response.  *See* Ex. 5, *Glen Hauenstein, President*, Delta (June 15, 2020).  Mr. Hauenstein's public statements and documents produced in the underlying action show that Mr. Hauenstein has firsthand knowledge of Delta's competitive strategies generally and its strategic and competitive response to the Northeast Alliance specifically.  He routinely speaks to these issues, publicly, in investor presentations, earnings calls, and other settings.  *See, e.g.*, Ex. 6 at 14–19, Delta Air Lines, Inc., *Investor Day Transcript* (Dec. 12, 2019).  In another antitrust case, Mr. Hauenstein testified that he provides input to, and signs-off on, decisions relating to Delta's capacity levels and operating plans.  Ex. 7, G. Hauenstein Dep.

Tr., *In re: Domestic Airlines Travel Antitrust Litig.*, No. 1:15-MC-01404-CKK (D.D.C. June 11, 2019), ECF No. 500-25 at 23–41.

Mr. Hauenstein personally oversees Delta's response to the Northeast Alliance, as demonstrated by numerous documents Delta has produced in the underlying action. For example, after a "debrief" on the Northeast Alliance, Mr. Hauenstein instructed Delta employees to "█████████████████████

███████████████████████████████████████████

████████████████████████████████████████." *See* Ex. 8, DAL-00015453. Similarly, Mr. Hauenstein helped establish Delta's plans to "██████

███████████████████████████████████████████

███████████████████████████████████████████

████████████. *See* Ex. 9, DAL-00022126, at -22129. And Mr. Hauenstein presented ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████. *See* Ex. 10, DAL-00001543, at -1547–50, -1553–54, -1565; *see also* Ex. 11, DAL-00006117, at -6117 (email from Mr. Hauenstein ████████████████████

██████████████████████████████████████). Mr. Hauenstein's first-hand expertise in Delta's response to the Northeast Alliance—and

his involvement in establishing network plans, setting capacity strategy, and competing for passengers generally—are critical to gauging the effects of the Northeast Alliance on competition and output in the airline industry. This soars over the bar needed to justify his deposition.

In addition, Mr. Hauenstein possesses firsthand information regarding at least two other central issues in this case: (1) the formation and effects of joint ventures and code-sharing agreements in the airline industry, and (2) the relevant market definition for New York City airports. Mr. Hauenstein sets and oversees Delta's alliance strategy; his official biography credits him with Delta's "trans-Atlantic joint venture with Air France-KLM and Alitalia and a newly formed joint venture with Virgin Atlantic Airways." Ex. 5, *Glen Hauenstein, President*, Delta (June 15, 2020).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████. *See* Ex. 10, DAL-00001543. Mr. Hauenstein's deep knowledge of Delta's efforts to leverage partnerships to compete more effectively will help Defendants rebut Plaintiffs' assumption that alliances are inherently bad for competition.

Similarly, Mr. Hauenstein has overseen efforts to "establish[ ] a leading presence [for Delta] in New York at both LaGuardia Airport and John F. Kennedy

International Airport" and led "Delta's historic expansion at LaGuardia." Ex. 5, *Glen Hauenstein, President*, Delta (June 15, 2020). Documents produced in the underlying action show Mr. Hauenstein discussing ████████████████████████ ████████████████. *See* Ex. 12, DAL-00020016, at -20016–17. And a slide deck ████████████████████████████████████████████████████████ ████████████████████. *See* Ex. 13, DAL-00011344, at -11344, -11348. Central to Plaintiffs' case in the underlying action is the argument that Newark Liberty International Airport is not part of the same geographic market as New York's LaGuardia Airport or JFK. Mr. Hauenstein clearly has uniquely high-level insight into how Delta perceives competition among these airports.

In short, there is more than sufficient evidence that Mr. Hauenstein possesses a firsthand perspective on issues that go to the heart of the underlying action and to Defendants' main arguments in defense of the Northeast Alliance. As the second-in-command at one of three "legacy" carriers in the United States, Mr. Hauenstein has a singular perspective on the relevant markets in this case and how initiatives like the Northeast Alliance impact competition in the airline industry. Defendants should be permitted to develop that record.

### C.   Other Avenues Of Discovery Would Not Provide An Adequate Substitute For Mr. Hauenstein's Deposition

Delta's argument that American can obtain information from other "less burdensome and less intrusive means," Mot. to Quash at 10, is meritless.  To begin with, American is not required to take other executives' depositions "before requiring Mr. Hauenstein to sit for deposition."  *Id*. at 11.  The apex doctrine is not a sequencing requirement.  If it appears that a senior executive's deposition might be ***needless***, then "exhaustion of other discovery methods" can be "an important, but not dispositive, consideration."  *Cameron*, 2021 WL 485709, at *5.  The issue, however, remains whether the deponent has "specific and unique knowledge related to the suit."  *Koninklijke*, 2013 WL 1833010, at *1.  In other words, courts consider whether "other avenues of discovery have not ***or could not*** provide an adequate substitute."  *Id.* (emphasis added).[2]  When it is clear, as it is here, that a senior

---

[2] To the extent it matters, Defendants have exhausted other, non-testimonial means of discovery by serving Delta with a subpoena for the production of documents responsive to twenty-six requests.  *Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686928, at *3 (S.D. Fla. Apr. 23, 2021) (affirming on reconsideration the denial of a motion to quash an "apex" subpoena where "[prior] document requests were not fruitful"); *Robinson v. Bay Club L.A., Inc.*, No. CV2103578DMGRAOX, 2021 WL 6618819, at *5 (C.D. Cal. Dec. 22, 2021) (granting a motion to compel an apex deposition subpoena where the parties seeking the deposition had initially "propounded a significant amount of written discovery, including requests for production").  In order to avoid overburdening Delta in its response to the subpoena, American did not seek the production of Mr. Hauenstein's

executive has a specific expertise and knowledge base about a relevant subject matter, sequencing arguments never prevail.

Delta's offer of lower-ranking employees like Mr. Esposito is not a sufficient replacement for the breadth of Mr. Hauenstein's knowledge about matters central to the underlying action. Indeed, many of Mr. Hauenstein's relevant documents and emails do not involve Mr. Esposito at all, demonstrating that their knowledge does not overlap in many respects. *See* Exs. 8-11, 13. Documents produced by Delta show that the company's competitive response to the Northeast Alliance is wide-ranging and relates to many aspects of Delta's business—not only network planning, but also marketing, revenue management, and customer care. In all events, a collection of lower-level employees cannot possibly replicate the firm-wide perspective on strategy and competition in the airline industry that Mr. Hauenstein possesses. *See In re Mentor Corp.*, 2009 WL 4730321, at \*1–2 ("[W]here conduct and knowledge of the highest corporate levels are relevant in the [underlying] case, a deposition of the executive is generally permitted."). Again, only Delta's CEO

---

custodial documents. Thus, Delta's document productions cannot adequately provide insight into Mr. Hauenstein's knowledge of relevant facts. But even Mr. Hauenstein's emails that are contained in the productions cannot replace his testimony and the opportunity to question Mr. Hauenstein about those emails.

and Mr. Hauenstein can provide what Defendants need in the way of authoritative Delta perspectives on these issues. We are limiting ourselves to the least-apex of the two.

Moreover, the condensed schedule in the underlying action means that American cannot take the deposition of numerous other Delta employees first and hope that those depositions will be an adequate replacement for Mr. Hauenstein's testimony. Fact discovery in this matter closes in six weeks. Scheduling depositions of busy executives and coordinating travel during the pandemic present particular difficulties, and Delta's suggestion that American should take a wait-and-see approach to how discovery develops in the underlying action is simply not practicable. *See Jernigan v. Scholastic, Inc*., 2018 WL 11323497, at *1–2 (M.D. Fl. Sept. 17, 2018) (granting motion to compel and rejecting argument that apex deposition should be "delayed until all other depositions are completed" because of the approaching deadline for fact discovery).

In sum, no other means of discovery provides an adequate replacement for Mr. Hauenstein's testimony.

### D.    A Deposition Would Not Unduly Burden Mr. Hauenstein

To the extent Delta argues that a deposition of Mr. Hauenstein would be "harassing" or "abusive," *see* Mot. to Quash at 5, that argument is belied by the

18

record in the underlying action. His deposition would be conducted in Atlanta, where he is currently located. American remains committed to finding a mutually agreeable date and time for Mr. Hauenstein's deposition. And American has made clear that it will endeavor to limit Mr. Hauenstein's deposition as much as possible in time and scope. Delta has not attempted to identify any supposed harassment or abuse here—because none exists.[3]

If there were any doubt about this, the fact that Plaintiffs and Defendants are deposing similarly situated executives at other airlines removes it. Defendants noticed the deposition of Mr. Hauenstein's counterpart at United, and Plaintiffs have counter-noticed that deposition. Wall Decl. ¶ 11. Plaintiffs noticed the deposition of Mr. Hauenstein's counterpart at Alaska, and Defendants intend to counter-notice that deposition. *Id.* ¶ 12. Neither United nor Alaska claimed harassment or sought protection under the apex doctrine. And this is standard fare in antitrust cases, where corporate strategies "that are plainly the result of high-level executive decisions" are at issue, such that "we should expect that high-level executives will be deposed, and

---

[3] Even if there were some undue burden or expense associated with Mr. Hauenstein sitting for a deposition, courts frequently limit the time or scope of the deposition rather than denying a deposition altogether. *See, e.g.*, *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542-BLOOM, 2014 WL 7495780, at *3–4 (S.D. Fl. Dec. 17, 2014) (allowing apex deposition to proceed on limited topics).

their testimony will be relevant and proportional, and the depositions will not be abusive or harassing." *Cameron*, 2021 WL 485709, at *4.

### E. Alternatively, This Court Should Transfer This Action To The District Of Massachusetts

If the Court has any doubt about the propriety of this deposition, Defendants respectfully request the Court transfer Delta's motion to quash to the District of Massachusetts, where the underlying action is being litigated.

When the court where compliance of a subpoena is required did not issue the subpoena, the court may transfer a motion to quash the subpoena to the issuing court if the court finds "exceptional circumstances." Fed. R. Civ. P. 45(f). "Courts faced with a transfer motion must account for the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation," and they must further "balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings." *In re Early*, No. 221CV00029SCJJCF, 2021 WL 2636020, at *2 (N.D. Ga. Apr. 20, 2021). "Exceptional circumstances" justify a Rule 45(f) transfer where, as here, "the underlying litigation is highly complex and therefore transfer would be the most efficient use of limited court resources." *Virnetx, Inc. v. Apple Inc.*, No. 13-80769-MC, 2013 WL 12108440, at *3 (S.D. Fla. Sept. 26, 2013).

Delta's motion to quash stems from a complex antitrust case that involves numerous alleged relevant product and geographic markets, and which the plaintiffs have brought under a novel legal theory arguing for merger analysis under Section 7 of the Sherman Act to apply to a Section 1 claim. Those complex issues, in turn, inform American's need to depose Mr. Hauenstein. Given the presiding judge's familiarity with the underlying action, transfer under Rule 45(f) is proper. *Cf. In re Early*, 2021 WL 2636020, at *2 (granting a Rule 45(f) motion to transfer due to the transferee court's "intimate knowledge of the underlying litigation," and noting that the transferee court was "better positioned to understand the full scope and implications of the issues in this subpoena dispute"); *The Dispatch Printing Co. v. Zuckerman*, No. 16CV80037BLOOMVALLE, 2016 WL 335753, at *3 (S.D. Fla. Jan. 27, 2016) (noting that "familiarity with the underlying action . . . is a compelling factor in highly complex cases where the issuing court is aware of the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation" (internal quotations omitted)).

Moreover, the underlying action is on an expedited schedule, with a fact discovery cutoff in early June and trial scheduled for September. "Considering these impending deadlines as well as the trial schedule, transfer is warranted to 'avoid disrupting the issuing court's management of the underlying litigation.'" *In re*

*K.M.A. Sunbelt Trading Co.*, No. 8:17-MC-55-30AAS, 2017 WL 2559790, at *2 (M.D. Fla. June 13, 2017) (quoting Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments) (granting transfer under Rule 45(f)).

Lastly, requiring Delta to litigate the instant motion in the District of Massachusetts would not impose an undue burden or cost. *See In re Early*, 2021 WL 2636020, at *3. The parties will have briefed Delta's motion to quash before this Court, and there is no indication that the court in Massachusetts would hold a hearing, so any potential litigation or travel expenses are highly speculative at this point. *Cf. id.* (finding no undue burden in granting a Rule 45(f) transfer where the subpoenaed party had "already filed a brief opposing the [subpoena-related] motion," "he would not have to make significant alterations to that brief if he were required to file it in the [transferee court]," and "the parties ha[d] not sought a hearing on this motion, and there [was] no reason to believe that one would be necessary in [the transferee court]").[4]

---

[4] In any event, the court in the District of Massachusetts has, to date, conducted remote hearings in the underlying action, so to the extent a hearing would be required, Mr. Hauenstein and his counsel may be able to participate remotely without incurring any travel-related expenses. *Cf. In re Early*, 2021 WL 2636020, at *3 (noting that, if the transferee court were to hold a hearing on the subpoena-related motion, "current procedures may allow [the subpoenaed party] to participate in a manner that will reduce the burden upon him, such as in a hearing utilizing teleconference technology"); *In re K.M.A.*, 2017 WL 2559790, at *2 (finding no

## IV.  CONCLUSION

For the reasons set forth above, this Court should deny Delta's Motion to Quash, or in the alternative, transfer this action to the District of Massachusetts.

Dated:  April 26, 2022

/s/ Richard J. Valladares
Richard J. Valladares
Georgia Bar No. 611066
Andrew Z. Smith
Georgia Bar No. 945798
GREENBERG TRAURIG, LLP
Terminus 200, 3333 Piedmont Road NE,
Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2455
Facsimile: (678) 553-2456
ValladaresR@gtlaw.com
smithz@gtlaw.com

Daniel M. Wall (*pro hac vice forthcoming*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com

*Attorneys for American Airlines Group Inc.*

---

undue burden in granting a transfer where, "although Non–Movants are physically located in Florida, the Eastern District of Texas has conducted telephonic hearings in this matter").

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D</u>

I hereby certify that the foregoing document was prepared in Times New Roman, 14-point font, as provided by Local Rule 7.1D.

*/s/ Richard J. Valladares*
Richard J. Valladares

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of April, 2022, the foregoing Opposition To Motion For Protective Order And To Quash Deposition Subpoena To Glen Hauenstein was filed electronically with the Clerk of Court using CM/ECF. I also certify that a copy of the foregoing is being served upon the following by email:

Andrew J. Tuck
ALSTON & BIRD LLP
andy.tuck@alston.com

James P. Denvir
Michael S. Mitchell
BOIES SCHILLER FLEXNER LLP
jdenvir@bsfllp.com
mmitchell@bsfllp.com

This 26th day of April, 2022.

Respectfully submitted,

*/s/ Richard J. Valladares*
Richard J. Valladares
