EXHIBIT 3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

*In re Subpoena to*

*Glen Hauenstein.*

Case No. 1:22-cv-1654-MHC-CCB

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH DEPOSITION SUBPOENA TO GLEN HAUENSTEIN**

<u>Underlying Litigation</u>:

*United States v. Am. Airlines Grp. Inc.*, No. 1:21-cv-11558-LTS (D. Mass.)

## REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO <u>QUASH DEPOSITION SUBPOENA TO GLEN HAUENSTEIN</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT .................................................................................................1

    I.     American Ignores the Heightened Standard to Compel an Apex
            Deposition of a Non-Party Witness Such as Mr. Hauenstein. ..............2

    II.    American Has Now Issued Subpoenas For The Depositions Of
            Persons With First-Hand Knowledge Of The Subjects For
            Which It Claims To Need Mr. Hauenstein...........................................5

    III.   American's Cited Evidence Confirms Mr. Hauenstein Does Not
            Have Unique, Firsthand Knowledge On The Topics For Which
            It Seeks Testimony. ............................................................................7

    IV.   American's Delay In Seeking Depositions Does Not Excuse Its
            Failure To Satisfy The Apex Doctrine. ...............................................10

    V.    That Other Airlines Have Agreed to Make Their Executives
            Available Is Irrelevant to Assessing the Burden on Mr.
            Hauenstein and Delta...........................................................................11

    VI.   This Court Should Not Transfer This Motion....................................12

CONCLUSION ...........................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aeritas, LLC v. Delta Airlines, Inc.*,
   No. 1:13-CV-00346-RWS-WEJ, 2013 WL 454452 (N.D. Ga. Feb. 7,
   2013) .......................................................................................................................4

*Balfour Beatty Rail, Inc. v. Vaccarello*, No.
   3:06-cv-551-J-20MCR, 2007 WL 842765 (M.D. Fla. Mar. 20, 2007) ...........3, 5

*Cameron v. Apple Inc. (In re Apple iPhone Antitrust Litig.).*,
   No. 11-cv-06714-YGR (TSH), 2021 WL 485709 (N.D. Cal. Jan. 26,
   2021) .......................................................................................................................3

*Cochran v. Brinkmann Corp.*,
   1:08-cv-1790-WSD, 2009 WL 10668460 (N.D. Ga. Feb. 11, 2009)..............3, 5

*Dispatch Printing Co. v. Zuckerman*,
   No. 16-cv-80037, 2016 WL 335753 (S.D. Fla. Jan. 27, 2016) .........................14

*Fed. Deposit Ins. Corp. v. Galan-Alvarez*,
   No. 1:15-mc-00752 (CRC), 2015 WL 5602342 (D.D.C. Sept. 4, 2015) ...........14

*Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-
   cv-268-JD-CAN, 2015 WL 13664418 (N.D. Ind. July 7, 2015).........................4

*Hickey v. N. Broward Hosp. Dist.*,
   No. 14-CV-60542, 2014 WL 7495780 (S.D. Fla. Dec. 17, 2014) ......................5

*In re Early*,
   No. 2:21-CV-00029-SCJ-JCF, 2021 WL 2636020 (N.D. Ga. Apr. 20,
   2021) .....................................................................................................................13

*In re K.M.A. Sunbelt Trading Co.*,
   No. 8:18-mc-55-30AAS, 2017 WL 2559790 (M.D. Fla. June 13, 2017) ..........14

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
   No. 4:08-MD-2004(CDL), 2009 WL 4730321 (M.D. Ga. Dec. 1, 2009)........3, 5

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C-07-05634 CRB (DMR), 2014 WL 93928 (N.D. Cal. Mar. 6, 2014) .....3, 5

*Jordan v. Comm'r, Miss. Dep't of Corr.*,
947 F.3d 1322 (11th Cir. 2020) ...........................................................................2

*Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, No. 10-cv-11041-
NMG, 2013 WL 1833010 (D. Mass. Apr. 30, 2013) ...........................................5

*Palmisano v. Paragon 28, Inc.*,
No. 21-60447-CIV, 2021 WL 1686928 (S.D. Fla. Apr. 23, 2021) .....................5

*Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*, No. 1:12-cv
62 (WLS), 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013)....................................4

*Platinum Props. Inv. Network, Inc. v. AMCO Ins. Co.*,
No. 15-mc-213-JAR-TJJ, 2015 WL 5883819 (D. Kan. Oct. 8, 2015) ..............14

*Powertech Techs., Inc. v. Tessera*, No. C 11–6121 CW,
2013 WL 3884254 (N.D. Cal. July 26, 2013) ..................................................4, 5

*Travelers Rental Co. v. Ford Motor Co.*,
116 F.R.D. 140 (D. Mass. 1987)......................................................................3, 6

*Virnetx, Inc. v. Apple Inc.*, No. 12-80769-MC, 2013 WL 12108440
(S.D. Fla. Sept. 26, 2013) .................................................................................13

## PRELIMINARY STATEMENT

Delta Air Lines, Inc. ("Delta") and Glen Hauenstein respectfully submit this reply in support of their motion for a protective order and to quash the non-party deposition subpoena issued by American Airlines Group Inc. ("American") in the underlying action *United States of America, et al. v. American Airlines Group Inc. and JetBlue Airways Corporation*, No. 1:21-cv-11558-LTS (D. Mass) (ECF 1), and in response to American's Opposition (ECF 4).

## ARGUMENT

American does not cite a single case applicable to the deposition it seeks to take—that of an apex executive of a *non-party* to the underlying lawsuit. This despite established law that the burdens on witnesses of third parties are entitled to deference that party witnesses are not accorded. Moreover, the cases American does cite undercut its arguments. These cases make clear that to justify the deposition of an apex witness like Mr. Hauenstein, much less as a non-party witness, the party seeking the deposition must demonstrate the executive has unique information unobtainable from lower ranking employees. American fails this standard.

Prior to filing its motion, Delta offered several witnesses in lieu of Mr. Hauenstein. Yet, American rejected those offers. On May 5, 2022, however, American reversed course, and subpoenaed three additional Delta witnesses for

1

deposition, which are now scheduled: (1) Joe Esposito (Senior Vice President, Network Planning); (2) Andrew Guenthner (Director, Alliances); and (3) Robert Somers (Senior Vice President, Sales). As explained more fully below, these witnesses have more direct, firsthand knowledge about each of the topics for which American seeks Mr. Hauenstein's deposition. At a bare minimum, the apex doctrine requires American to take these depositions before seeking Mr. Hauenstein's.

After offering no factual or legal support to justify its request to depose the President of Delta, American asks to transfer this matter to the District of Massachusetts. But American fails to show any "exceptional circumstances" warranting transfer under Rule 45(f), certainly none that "avoid burdens on local nonparties subject to subpoenas . . . ." Adv. Comm. Note to 2013 Amendment, Fed. R. Civ. P. 45(f). This Court should reject American's transfer request, and American's subpoena for Mr. Hauenstein's deposition should be quashed.

## I. American Ignores the Heightened Standard to Compel an Apex Deposition of a Non-Party Witness Such as Mr. Hauenstein.

As Mr. Hauenstein and Delta previously explained, Mr. Hauenstein's status as a non-party to the litigation underlying the subpoena "weigh[s] against disclosure in the undue burden inquiry." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020); *see* ECF No. 1-1 at 4 & n.2. American does not dispute

that higher standard applicable to non-parties, and does not cite a single case applicable to an apex executive of a *non-party* to the underlying lawsuit.

Rather, all of the cases American cites involved apex depositions of a party to the lawsuit. *E.g.*, *Cameron v. Apple Inc. (In re Apple iPhone Antitrust Litig.).*, No. 11-cv-06714-YGR (TSH), 2021 WL 485709, at *3-4 (N.D. Cal. Jan. 26, 2021) (depositions of defendant Apple's CEO and two Vice Presidents); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987) ("depositions of several high-level executives at the [defendant] Ford Motor Company"); *Cochran v. Brinkmann Corp.*, 1:08-cv-1790-WSD, 2009 WL 10668460, at *2 (N.D. Ga. Feb. 11, 2009) (considering "request to depose the President and Chief Executive Officer of the Defendant"); *Balfour Beatty Rail, Inc. v. Vaccarello*, No. 3:06-cv-551-J-20MCR, 2007 WL 842765, at *3 (M.D. Fla. Mar. 20, 2007) (motion to compel "top executives with Balfour Beatty LLP," a corporate parent of the plaintiff); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004(CDL), 2009 WL 4730321, at *1 (M.D. Ga. Dec. 1, 2009) (depositions of defendant's President, and also its founder and former CEO); *In re Transpacific*

*Passenger Air Transp. Antitrust Litig.*, No. C-07-05634 CRB (DMR), 2014 WL 93928, at *5 (N.D. Cal. Mar. 6, 2014) (deposition of Defendant's CEO).[1]

American tries to blur the distinction between party and non-party discovery. However, Mr. Hauenstein's and Delta's non-party status justifies considerable weight in the Court's assessment of the burden on him and Delta. *Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-cv-268-JD-CAN, 2015 WL 13664418, at *4-5 (N.D. Ind. July 7, 2015) (granting motion to quash deposition subpoena for non-party's CEO as unduly burdensome under the apex doctrine); *see also Aeritas, LLC v. Delta Airlines, Inc.*, No. 1:13-CV-00346-RWS-WEJ, 2013 WL 454452, at *2 (N.D. Ga. Feb. 7, 2013) ("[N]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.") (citation omitted); *Pinehaven Plantation Props., LLC v. Mountcastle Family LLC*, No. 1:12-cv-62 (WLS), 2013 WL 6734117, at *2 (M.D. Ga. Dec. 19, 2013) ("Non-party status is a factor courts may consider when analyzing whether a subpoena is unduly burdensome.").

---

[1] In *Powertech Techs., Inc. v. Tessera*, No. C 11–6121 CW, 2013 WL 3884254, at *2 (N.D. Cal. July 26, 2013), the subpoena target argued that as an officer of both a party and a non-party he should be afforded protection, but the court rejected the premise on the basis that "Tessera seeks to take his deposition for information regarding his participation in, and business activities of, [Powertech Technology Inc.], not for information regarding" the non-party corporation. *Id.* at *2.

## II. American Has Now Issued Subpoenas For The Depositions Of Persons With First-Hand Knowledge Of The Subjects For Which It Claims To Need Mr. Hauenstein.

American argues that it is not required to pursue other depositions before seeking Mr. Hauenstein's, and that the "apex doctrine is not a sequencing requirement." ECF 4 at 20. But the cases cited by American say the opposite: less intrusive discovery and testimony must be pursued before an apex deposition.[2]

---

[2] *E.g.*, *Balfour*, 2007 WL 842765, at *3 (denying apex depositions because the Court was "not satisfied Defendants have questioned all other employees with information," but permitting apex depositions where "[n]o other employees were present during the conversations and therefore, no other employees could be questioned"); *Cochran*, 2009 WL 10668460, at *2-3 (limiting apex deposition to "unique personal knowledge [the apex witness] may have"); *Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV, 2021 WL 1686928, at *1 (S.D. Fla. Apr. 23, 2021) (compelling apex deposition of former president of a party to the underlying litigation, only after "document requests were futile, and [defendant] already had deposed more than 25 [plaintiff] witnesses"); *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780, at *3 (S.D. Fla. Dec. 17, 2014) (finding apex deposition justified where plaintiff had "deposed his previous supervisor . . . and Defendant's HR Director . . ., neither of whom know the details or reasoning behind" the CEO's decision to uphold plaintiff's termination); *Mentor*, 2009 WL 4730321, at *2 ("the depositions of nearly all current and former Mentor employees who were to be deposed in this action should have been completed by now, so the parties should be able to narrow the scope of questioning" for the apex depositions). *See also In re Transpacific*, 2014 WL 93928, at *5 (finding "Plaintiffs did make an attempt to learn more about the [topic of the apex deposition] before seeking" the apex deposition "through depositions of lower level employees" and written discovery); *Powertech*, 2013 WL 3884254, at *2 (granting motion to compel apex deposition after the party "has already tried to obtain the information from other deponents"); *Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, No. 10-cv-11041-NMG, 2013 WL 1833010, *2 (D. Mass. Apr. 30, 2013) (permitting apex deposition because interrogatories and "depositions of a corporate designee and the individuals Philips

Just last week, American requested the depositions of three other Delta witnesses and those depositions are now scheduled.[3]  These witnesses have more direct, firsthand knowledge on the topics for which American claims to need Mr. Hauenstein's testimony: (1) Joe Esposito (Senior Vice President, Network Planning), who oversees Delta's global network strategy, can testify, based on personal knowledge, as to both Delta's network planning response to the American-JetBlue Northeast Alliance and Delta's assessment of the factors relevant to whether New York area airports are a single antitrust market; (2) Andrew Guenthner (Director, Alliances) can testify on first-hand knowledge about "the formation and effects of joint ventures and code-sharing agreements in the airline industry"; and (3) Robert Somers (Senior Vice President, Sales), who is in charge of the Sales Department, can testify, also based on first-hand knowledge, about Delta's Sales Department's response to the Northeast Alliance.  *See* ECF 4 at 16-19.  The depositions of these witnesses with firsthand knowledge render Mr. Hauenstein's deposition unnecessary and inappropriate under the apex doctrine.

---

designated as having knowledge" on the topic "has not yielded specific information regarding the relevant time period"); *Travelers*, 116 F.R.D. at 141-42 (evaluating plaintiff's motion to compel apex depositions only after it had deposed "five official of [defendant] who were not as high on the corporate ladder").

[3] *See* Declaration of Michael S. Mitchell, ¶¶ 4-6, attached hereto.

III. **American's Cited Evidence Confirms Mr. Hauenstein Does Not Have Unique, Firsthand Knowledge On The Topics For Which It Seeks Testimony.**

American argues Mr. Hauenstein's deposition is justified under the apex doctrine because he has "unique, firsthand knowledge" on issues "highly relevant to the underlying action." ECF 4 at 16. The evidence on which American relies, however, undercuts that claim. Instead, it confirms that Mr. Hauenstein's knowledge would be second-hand based on information developed and provided to him by other Delta employees more immersed in the topics and on whom Mr. Hauenstein relied—including the other Delta witnesses now scheduled for deposition at American's request.

For example, as evidence that Mr. Hauenstein has "first-hand experience in Delta's response to the Northeast Alliance," American cites a single email, which describes a "debrief" on the American-JetBlue Northeast Alliance with Mr. Hauenstein and another executive. ECF 4 at 17; ECF 7-2 (Ex. 8). The email makes clear, however, that Mr. Hauenstein was not involved in preparing the presentation or "initial action items" for the meeting, and that he instead relied on a team led by those who reported to him. The email was authored by Andrew Guenthner, Delta's Director for Alliances, *who will be deposed by American on June 1*. The email also shows Mr. Hauenstein provided only "one takeaway" from the "debrief," which was

to direct the team to "identify which cities will be impacted the most from a presence perspective by the combination of AA+B6 and *then determine what our strategy is to compete effectively against that challenge*." *Id.* (emphasis added).[4] Thus, the Delta employees who were asked to analyze the information and "determine what our strategy is" (including Andrew Guenthner) have firsthand, knowledge on the topic—not Mr. Hauenstein.[5]

The emails cited by American in support of Mr. Hauenstein's "involvement in establishing network plans, setting capacity strategy, and competing for passengers generally" (ECF 4 at 18) show the same thing: that Mr. Hauenstein delegated and relied on others to develop the plans and make decisions. ECF 7-3 (Ex. 9, at DAL-00022129: email from Eric Beck setting forth the Network plan for new routes in Boston and New York), 7-5 (Ex. 11, at DAL-00006117: email update sent to Mr. Hauenstein about revenue in various cities from July 2019, a year before

---

[4] Although Delta has not redacted the language quoted from the exhibits relied on by American, Delta does not waive its confidential designation of the underlying documents, and maintains those documents should remain under seal, as set forth in its response to American's motion to seal (ECF 8) filed at the same time as this reply.

[5] The email also states that the work requested by Mr. Hauenstein was performed by Amy Martin and Eric Beck, two Delta Network Planning employees whom Delta has offered for deposition, and who reported directly to Joe Esposito, whose deposition is set for June 8. *See* ECF 4-2 (reflecting offer of depositions of Ms. Martin and Mr. Beck) & ECF 4-9 (thanking "Eric, Amy and the network team" for identifying the "top outstations most impacted by the AA+B6 partnership").

the Northeast Alliance was announced), 7-6 (Ex. 12, at DAL-00020016-17: email update to Mr. Hauenstein about New York and Boston demand recovery, to which Mr. Hauenstein responded merely "This is great" and asked his assistant to print); 7-7 (Ex. 12, at DAL-00011344: presentation on "NYC/BOS" demand recovery prepared "for Glen").  While Mr. Hauenstein may have received updates, none of these emails evidence his unique, firsthand knowledge of the subject matter.

The  documents cited by American also do not support its contention that Mr. Hauenstein possesses unique, firsthand information about (1) "the formation and effects of joint ventures and code-sharing agreements in the airline industry," and (2) "the relevant market definition for New York City airports."  ECF 4 at 18.

American points to Mr. Hauenstein's biography on Delta's website to support its argument that Mr. Hauenstein has unique knowledge about Delta's "joint ventures and code-sharing,"  The website describes Mr. Hauenstein as having "*led a team* in building a network that includes Delta flights to six continents and extended reach through a leading trans-Atlantic joint venture with Air France-KLM and Alitalia and a newly formed joint venture with Virgin Atlantic Airways."  ECF 4-6 at 2 (emphasis added).  American omits from its quotation Mr. Hauenstein's having led "a team."  *Compare* ECF 4 at 18 *with* ECF 4-6 at 3.

Similarly, American provides nothing to indicate that Mr. Hauenstein has unique knowledge to testify whether Delta considers the three New York area airports to be a single market. As the head of Delta's global network planning Mr. Esposito is well-equipped to testify on that subject. American cites two emails (one of which copies Mr. Esposito and the other of which was sent to Amy Martin, who reported to Mr. Esposito) indicating Mr. Hauenstein was kept informed on the recovery of demand in certain airports in September 2020. *See* ECF 4 at 19 (citing ECF 7-6 (Ex. 12) & 7-7 (Ex. 13)). Neither email supports a claim that Mr. Hauenstein is uniquely positioned to testify on market definition, and again Mr. Esposito, whose deposition is scheduled, is well-positioned to testify on that subject.

## IV. American's Delay In Seeking Depositions Does Not Excuse Its Failure To Satisfy The Apex Doctrine.

The Court should also reject American's argument that "the condensed schedule in the underlying action" excuses it from the requirement to take the depositions of more junior executives before demanding an apex deposition. ECF 4 at 22. Any such timing concerns are entirely of American's own making. The underlying action has been pending for over six months. American could have taken depositions of other witnesses offered by Delta, and then evaluated whether there was a need for Mr. Hauenstein's deposition and, if so, on what topics. But as detailed above, there is no such need; Mr. Esposito, Mr. Somers, and Mr. Guenthner all have

firsthand knowledge of the topics for which American claims to need Mr. Hauenstein's testimony.

## V. That Other Airlines Have Agreed to Make Their Executives Available Is Irrelevant to Assessing the Burden on Mr. Hauenstein and Delta.

American argues Mr. Hauenstein's deposition will not burden him or Delta because Mr. Hauenstein's "counterparts" at United Airlines (Andrew Nocella) and Alaska Airlines (Andrew Harrison) have agreed to be deposed. ECF 4 at 19. How other airlines and their executives respond to subpoenas is irrelevant to the question of whether an apex deposition is appropriate here. Moreover, American has the facts wrong. Mr. Nocella and Mr. Harrison are the Executive Vice Presidents and Chief Commercial Officers of their respective airlines. *Id.* Mr. Hauenstein is Delta's President. The "Presidents" of United and Alaska are Brett Hart and Ben Minicucci, respectively—neither of whom American represents will be deposed.

American also provides no basis on which to conclude that United's Mr. Nocella and Alaska Airlines' Mr. Harrison have a similar range of responsibilities as Mr. Hauenstein. ECF 4-1, ¶¶ 11-12. American describes Mr. Hauenstein as "Delta's senior executive spokesperson" on "many critical aspects of Delta's business, strategy, and operations," and Mr. Nocella as the equivalent. ECF 4 at 5-6. It is true that Mr. Hauenstein's wide-ranging responsibilities as Delta's President include representing Delta at industry events, and public-facing engagements with

investors and the press.  ECF 1-3, Hauenstein Decl. ¶ 6; ECF 4-7 & 4-11.  But American does not, and cannot, argue that Mr. Hauenstein's public-facing duties are relevant to the issues in the underlying case.  Thus, instead of justifying his deposition under the apex doctrine, Mr. Hauenstein's obligations and responsibilities as Delta's "senior executive spokesperson" in communicating with shareholders and the public warrant quashing it.  Indeed, the apex deposition doctrine exists precisely to protect senior executives with such wide-ranging corporate responsibilities from the burden of a deposition when other employees, without the same range of important corporate duties, could provide the needed information.

## VI.     This Court Should Not Transfer This Motion.

The Court may transfer the motion to quash to the District of Massachusetts only upon a showing of "exceptional circumstances" as required by Rule 45(f). "Exceptional circumstances" means "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment.  American has made no such showing.

This dispute is a narrow one—whether American can force an apex deposition of a non-party to the underlying litigation immediately, despite the burden it places

12

on the corporation and the deponent. American tries to confuse the issue by arguing that Delta's motion "stems from a complex antitrust case" in which Plaintiffs advance a purported "novel legal theory." ECF 4 at 25. This has nothing to do with Delta's motion. While this Court is perfectly capable of understanding and evaluating any antitrust complexities, the simple fact is that doing so is unnecessary.

In addition, all the cases to which American points are readily distinguishable, and show there are no "exceptional circumstances" here warranting transfer. In each of those cases, the court granted transfer because of risks of disrupting the underlying litigation or multiple rulings on the same issue. *In re Early*, No. 2:21-CV-00029-SCJ-JCF, 2021 WL 2636020, at *2-3 (N.D. Ga. Apr. 20, 2021) (transferring motion because the case had "been pending for almost three years," similar discovery disputes "already resolved by the [transferee court] touched on issues that may overlap with those in subpoena dispute," and "the nature of Early's attorney-client privilege objections to the subpoena here could potentially force the decisionmaker in this motion to compel to delve into the merits of Plaintiffs' underlying fraud claims."); *Virnetx, Inc. v. Apple Inc.*, No. 12-80769-MC, 2013 WL 12108440, at *1 (S.D. Fla. Sept. 26, 2013) (transferring motion where "substantially similar" subpoenas were issued to seven different parties in three districts, resulting in five

"nearly identical Motions to Quash," and "the same issues are likely to arise in many districts, and the potential for disparate rulings is great.").[6]

Here, there are no such risks, no indication of the Massachusetts court having already ruled on a similar issue, and no issue that could affect the merits of the underlying dispute. *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, No. 1:15-mc-00752 (CRC), 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015) (rejecting transfer motion where motion to quash did not "concern[] the subpoenaed documents *relevance* to the underlying dispute," and was instead involved solely consideration of the apex doctrine); *Platinum Props. Inv. Network, Inc. v. AMCO Ins. Co.*, No. 15-mc-213-JAR-TJJ, 2015 WL 5883819, at *5 (D. Kan. Oct. 8, 2015) (denying transfer where an earlier motion to compel in the underlying litigation did not address the issue in dispute for the subpoenas). The only question before the Court is whether American

---

[6] *See also Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037, 2016 WL 335753, at *3 (S.D. Fla. Jan. 27, 2016) (pointing to a docket "totaling 1,015 entries" and lasting "for almost ten years" as proof of the complexity of the underlying litigation, along with attorney-client privilege issues in common with "a number of other subpoenas" for "this same type of information from various judicial districts" leading to "a demonstrable risk of inconsistent discovery rulings"); *In re K.M.A. Sunbelt Trading Co.*, No. 8:18-mc-55-30AAS, 2017 WL 2559790, at *1-2 (M.D. Fla. June 13, 2017) (transferring where there were eight days until "the current deadline for filing motions in limine and the Joint Pretrial Statement and less than a month before jury instructions were due, and where the transferee court "has intimate knowledge of the underlying litigation, parties, facts, and prior rulings" because "the record contains 248 filings to date").

14

is entitled to an apex deposition without any showing that Mr. Hauenstein possesses unique, firsthand information and without first exhausting alternative sources of that same information. The answer to that question is no, and it does not require intimate familiarity with the underlying litigation.

## **CONCLUSION**

Delta respectfully asks the Court to enter a protective order barring Mr. Hauenstein's deposition in this matter and quashing American's Subpoena.

Dated: May 10, 2022

Respectfully submitted,[7]

*/s/ Andrew J. Tuck*
Andrew J. Tuck
Ga. Bar # 402306
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA  30309-3424
Telephone:  404-881-7000
Facsimile: 404-253-8567
andy.tuck@alston.com

James P. Denvir
Michael S. Mitchell
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
jdenvir@bsfllp.com
mmitchell@bsfllp.com

*Attorneys for Movants Glen*
*Hauenstein and Delta Air Lines, Inc.*

---

[7] Pursuant to Local Rule 7.1D, counsel for Movants certifies that this brief was prepared with a font and point selection approved in Local Rule 5.1.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of May, 2022, the foregoing was filed via the Court's ECF system, and served on counsel for the parties in the underlying litigation, *United States v. Am. Airlines Grp. Inc.*, No. 1:21-cv-11558-LTS (D. Mass.), via e-mail.

Dated: May 10, 2022

*/s/ Andrew J. Tuck*

Andrew J. Tuck
Ga. Bar # 402306
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-253-8567
andy.tuck@alston.com

*Attorney for Movants Glen*
*Hauenstein and Delta Air Lines, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

*In re Subpoena to*

*Glen Hauenstein.*

Case No. 1:22-cv-1654-MHC-CCB

**DECLARATION OF MICHAEL S. MITCHELL**

<u>Underlying Litigation</u>:

*United States v. Am. Airlines Grp. Inc.*, No. 1:21-cv-11558-LTS (D. Mass.)

## DECLARATION OF MICHAEL S. MITCHELL IN SUPPORT OF REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH <u>DEPOSITION SUBPOENA TO GLEN HAUENSTEIN</u>

I, Michael S. Mitchell, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.     I am an attorney licensed to practice law in Washington, D.C., and am admitted *pro hac vice* to this Court for this action.  I am a partner at the law firm of Boies Schiller Flexner LLP, counsel to Delta Air Lines, Inc. ("Delta"), which, along with Mr. Hauenstein (together "Movants"), files a reply in support of their motion for a protective order and quash the deposition subpoena to Mr. Hauenstein.

2.     I have personal knowledge of the facts contained herein, and, if called as witness, I could and would testify competently thereto.

1

3.     I make this declaration in support of Movants' Reply in Support of Motion for Protective Order and to Quash Deposition Subpoena.

4.     American Airlines Group Inc. ("American"), after it filed its Opposition, subpoenaed three additional Delta witnesses for deposition: Joe Esposito (Senior Vice President, Network Planning); Andrew Guenthner (Director, Alliances); and Robert Somers (Senior Vice President, Sales).

5.     Delta and American have agreed to the scheduling of all three depositions: Robert Somers will be deposed on May 31; Andrew Guenthner will be deposed on June 1; and Joseph Esposito will be deposed on June 8.

6.     Attached hereto as Exhibit 1 is a true and correct copy of my email exchange with Marguerite Sullivan, outside counsel for American, scheduling the three depositions.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 10th day of May, 2022.

_Michael S Mitchell_
Michael S. Mitchell

# Exhibit 1

| From: | Michael Mitchell |
|---|---|
| To: | Marguerite.Sullivan@lw.com |
| Cc: | James P. Denvir |
| Subject: | Re: U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas |
| Date: | Friday, May 6, 2022 3:56:13 PM |

Maggy,

We are confirmed for the following:

May 31 - Bob Somers
June 1 - Andrew Guenthner
June 8 - Joe Esposito

I will get back to you to confirm the location in Atlanta.

Thanks.

Mike

**Michael S. Mitchell**

Partner

BOIES SCHILLER

FLEXNER LLP

1401 New York Avenue, NW
Washington, DC 20005
(t) +1 202 274 1125
(m) +1 301 452 5764
mmitchell@bsfllp.com
www.bsfllp.com

**From:** Marguerite.Sullivan@lw.com <Marguerite.Sullivan@lw.com>
**Sent:** Friday, May 6, 2022 1:44:14 PM
**To:** Michael Mitchell <mmitchell@bsfllp.com>
**Cc:** James P. Denvir <JDenvir@bsfllp.com>
**Subject:** RE: U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas

Mike,

Based on our discussion, I'm confirming that Mr. Somers' deposition will be on May 31, and we are available for Mr. Guenthner's deposition on either June 1 or 2. Just let us know which works best for him/Delta/you.

Regarding Mr. Esposito, I was able to check our calendar immediately after our call. Could he be available on any of the following dates instead of May 25th: May 19, May 20, May 24, June 8.

Thanks,

Maggy

---

**From:** Michael Mitchell <mmitchell@bsfllp.com>
**Sent:** Friday, May 06, 2022 1:16 PM
**To:** Sullivan, Marguerite (DC) <Marguerite.Sullivan@lw.com>
**Cc:** James P. Denvir <JDenvir@bsfllp.com>
**Subject:** RE: U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas

I will call at 1:30pm ET.

Thanks.

**Michael S. Mitchell**
Partner

**BOIES SCHILLER FLEXNER** LLP
1401 New York Avenue, NW
Washington, DC 20005
(t) +1 202 274 1125
(m) +1 301 452 5764
mmitchell@bsfllp.com
www.bsfllp.com

---

**From:** Marguerite.Sullivan@lw.com <Marguerite.Sullivan@lw.com>
**Sent:** Friday, May 6, 2022 1:11 PM
**To:** Michael Mitchell <mmitchell@bsfllp.com>
**Cc:** James P. Denvir <JDenvir@bsfllp.com>
**Subject:** RE: U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas

Thanks Mike.  Yes, I'm available this afternoon.  I'm free until 2, and then again at 4.  Easiest number to use today is 202-679-7738.  Just let me know when would be best for you.

Maggy

---

**From:** Michael Mitchell <mmitchell@bsfllp.com>
**Sent:** Friday, May 06, 2022 1:05 PM
**To:** Sullivan, Marguerite (DC) <Marguerite.Sullivan@lw.com>
**Cc:** James P. Denvir <JDenvir@bsfllp.com>
**Subject:** RE: U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas

Maggy,

After conferring with Delta about availability, here are some proposed dates for the depositions of these three witnesses.  May I call you this afternoon to discuss further, including logistics?  If so, please let me know a time and number to call.

Joe Esposito
- May 25

Bob Somers
- May 31
- June 7

Andrew Guenthner
- June 1
- June 2

Thanks.

**Michael S. Mitchell**
Partner

## BOIES SCHILLER FLEXNER LLP

1401 New York Avenue, NW
Washington, DC 20005
(t) +1 202 274 1125
(m) +1 301 452 5764
mmitchell@bsfllp.com
www.bsfllp.com

---

**From:** Michael Mitchell
**Sent:** Friday, May 6, 2022 9:52 AM
**To:** Marguerite.Sullivan@lw.com
**Cc:** James P. Denvir <JDenvir@BSFLLP.com>
**Subject:** RE: U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas

Maggy,

We will accept service for Delta by email.

Mike

**Michael S. Mitchell**
Partner

## BOIES SCHILLER FLEXNER LLP

1401 New York Avenue, NW
Washington, DC 20005
(t) +1 202 274 1125
(m) +1 301 452 5764
mmitchell@bsfllp.com

www.bsfllp.com

---

**From:** Marguerite.Sullivan@lw.com <Marguerite.Sullivan@lw.com>
**Sent:** Thursday, May 5, 2022 6:39 PM
**To:** Michael Mitchell <mmitchell@bsfllp.com>
**Subject:** U.S. v. American Airlines, et al, No. 1:21-cv-11558-LTS // Deposition Subpoenas

Mike,

Following up on my voice mail earlier today, I'm attaching subpoenas for the depositions of Andrew Guenthner, Joseph Esposito, and Robert Somers at Delta. Please let us know whether you will accept service of these subpoenas on their behalf.

Thanks,
Maggy

**Marguerite M. Sullivan**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.1027
Fax: +1.202.637.2201
Email: marguerite.sullivan@lw.com
http://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you

have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]