# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **IN RE: SUBPOENA TO GLEN HAUENSTEIN** | **CIVIL ACTION NO. 1:22-CV-1654-MHC-CCB** |

## ORDER

This matter is before the Court for consideration of two motions: (1) Delta Air Lines, Inc. (Delta) and Glen Hauenstein's (Movants) motion for a protective order and to quash a deposition subpoena issued to Mr. Hauenstein by American Airlines Group Inc. (American), (Doc. 1), and (2) American's motion for leave to file matters under seal, (Doc. 8). American filed a response in opposition to the motion for a protective order and to quash, (Doc. 4), and Movants filed a reply, (Doc. 11). Movants also filed a response to American's motion to seal. (Doc. 10).

### I. BACKGROUND

The underlying case, *United States v. Am. Airlines Grp. Inc. and JetBlue Airways Corp.*, is an antitrust action filed in the United States District Court for the District of Massachusetts. No. 1:21-cv-11558-LTS (D. Mass.); (Doc. 1-1 at 1–2). The United States has alleged, in the underlying action, that American and JetBlue's

(Defendants) "Northeast Alliance" violates antitrust laws. (Doc. 1-1 at 3). The Northeast Alliance is "a joint venture pursuant to which [Defendants] share revenues and coordinate their scheduling and other commercial activities on certain routes in the Northeast part of the United States." *Id.* Defendants maintain that a key issue in this lawsuit is whether the Northeast Alliance is anticompetitive, or, rather, whether it promotes network competition "by making both American and JetBlue more competitive in the northeast against Delta and United." (Doc. 4 at 8). American seeks to depose Mr. Hauenstein to ask about "Delta's competitive strategies and its reactions to the Northeast Alliance," as Delta is "one of three 'legacy carriers' in the United States." *Id.* at 5, 19. Defendants have also noticed the depositions of executives at United Airlines and Alaska Airlines. *Id.* at 6.

Mr. Hauenstein has been the President of Delta Airlines since May of 2016 and, as such, he is the second highest-ranking executive officer in the company. (Doc. 1-1 at 2–3). He is responsible for "the overall performance and strategy of the business, managing and overseeing senior level executives responsible for Delta's network, revenue management, reservation sales, customer care, customer engagement and loyalty strategies, and representing Delta at industry events." *Id.*

2

at 3–4 (citing Doc. 1-3 at ¶ 6 (Hauenstein's Declaration)). On January 17, 2022, American served a subpoena *duces tecum* on Delta, and Delta has made "five document productions totaling several thousand documents" in response. (Doc. 4 at 9). On March 30, 2022, American served a non-party deposition subpoena on Mr. Hauenstein. (Doc. 1-1 at 2, 4).

## II.  MOTION FOR A PROTECTIVE ORDER AND TO QUASH

Movants seek a protective order and to quash the subpoena, arguing that American cannot meet its burden of proving that, in light of the heightened standard for deposing high-ranking executives (the "apex doctrine"), Mr. Hauenstein should nonetheless be required to sit for a deposition. (Doc. 1-1 at 4–13). Movants further assert that American should be required to take the deposition of other Delta senior executives before being authorized to depose Mr. Hauenstein. *Id.* at 11–12.

American opposes the motion for a protective order and to quash, arguing that the deposition of Mr. Hauenstein is permissible, despite his high-ranking position, because he possesses unique, firsthand knowledge on issues that go to the heart of the underlying action and because other avenues of discovery would

3

not provide an adequate substitute for his testimony. (Doc. 4 at 11–22). American also argues that a deposition would not be unduly burdensome. *Id.* at 11, 22–24. In the alternative, American suggests that the Court should transfer this action to the District of Massachusetts, where the underlying case is pending. *Id.* at 24–26.

Movants filed a reply, noting first that, since the filing of the instant motion, American subpoenaed and scheduled depositions of three additional witnesses from Delta, rendering Mr. Hauenstein's deposition "unnecessary and inappropriate." (Doc. 11 at 5–6, 10). Movants reassert that American has not met its burden for deposing a high-level executive, particularly given that Delta is not a party to the underlying litigation. *Id.* at 8. Movants argue that Mr. Hauenstein does not possess the type of knowledge that would require his deposition, that the time restraints in the underlying action do not permit American to evade the heightened standard for apex employees, and that the fact that other airlines have allowed depositions of their high-level executives is simply not relevant to whether the Court should require Mr. Hauenstein to provide testimony. *Id.* at 11–16. Finally, Movants argue that there are no exceptional circumstances warranting transfer of the instant motion to the District of Massachusetts. *Id.* at 16–19.

4

Movants argue that American has not met its burden of showing that requiring Mr. Hauenstein's deposition is appropriate under the heightened standard for high-level executive officers. (Doc. 1-1 at 4–13). This heightened standard, commonly referred to as the apex doctrine, requires that the party seeking to depose the high-level executive officer show that he or she has "unique or superior knowledge of discoverable information that cannot be obtained by other means." *Cuyler v. Kroger Co.*, No. 1:14-CV-1287-WBH-AJB, 2014 WL 12547267, at *6 (N.D. Ga. Oct. 3, 2014) (internal quotation marks omitted). The rationale behind this standard "is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Id.* at *7 (internal quotation marks omitted). Thus, where the party seeking to depose an officer "at the apex" of a company fails to satisfy its burden, a court may bar such deposition from taking place. *Id.* (quoting *McMahon v. Presidential Airways, Inc.*, No. 6:05-cv-1002-Orl-28JGG, 2006 WL 5359797, at *2 (M.D. Fla. Jan. 18, 2006)).

Here, the parties do not dispute the fact that Mr. Hauenstein is a high-level executive subject to this heightened standard. They do, however, disagree as to

5

whether the standard is met. Movants assert that Mr. Hauenstein does not have "unique personal knowledge" regarding the information American seeks to obtain from his deposition. (Doc. 1-1 at 10). They argue that although he oversees the departments at Delta that deal with the relevant topics, he is not involved in the day-to-day activities of those departments. *Id.* Rather, it is the senior executives who lead those departments who are directly responsible for their activities, meaning that Mr. Hauenstein's knowledge is neither unique nor specialized. *Id.* at 10–11. American asserts that the party seeking the deposition "need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, where a corporate officer may have *any* first-hand knowledge of relevant facts, the deposition should be allowed." (Doc. 4 at 14 (quoting *In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714-YGR (TSH), 2021 WL 485709, at *5 (N.D. Cal. Jan. 26, 2021) (internal quotation marks omitted))).

Courts in this circuit, however, have routinely considered the "uniqueness" and firsthand nature of the executive's knowledge, with the idea being that if the information can be obtained from a lower-level employee, the party seeking the testimony should first do so. *See Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*,

6

No. 8:21-cv-146-MSS-AAS, 2021 WL 7448237, at *3 (M.D. Fla. Aug. 13, 2021) (requiring the party seeking the testimony to establish that the executive has unique, non-repetitive, firsthand knowledge and that other less intrusive means of discovery, such as depositions of other employees, have been exhausted without success); *Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542, 2014 WL 7495780, at *2 (S.D. Fla. Dec. 17, 2014) ("[A] party seeking to depose a high ranking corporate officer must first establish that the executive . . . has unique, non-repetitive, firsthand knowledge of the facts at issue . . . ."); *Cuyler*, 2014 WL 12547267, at *7 ("In short, an officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in deposition was pursued unsatisfactorily through less intrusive means." (alteration and internal quotation marks omitted)); *Robinson v. Wells Fargo Bank, N.A.*, No. 1:10-CV-3819-TCB-GGB, 2012 WL 13130022, at *6 (N.D. Ga. June 7, 2012) ("Under the apex rule, the party seeking the deposition must show that the executive has unique or superior knowledge of discoverable information that cannot be obtained by other means."); *Porter v. Eli Lilly and Co.*, No. 1:06-CV-1297-JOF, 2007 WL 1630697, at *3 (N.D. Ga. June 1, 2007) (noting that "a plaintiff must show that the

7

executive would have personal knowledge of the events in question and a plaintiff has no other means of obtaining the information").

American suggests that Mr. Hauenstein has personal knowledge of the information it seeks to obtain through his deposition, including: "Delta's competitive strategies generally and its strategic and competitive response to the Northeast Alliance specifically"; "the formation and effects of joint ventures and code-sharing agreements in the airline industry"; and "the relevant market definition for New York City airports." (Doc. 4 at 16–19). American cites to evidence of Mr. Hauenstein's knowledge on these topics, including that he supervises the "team responsible for Delta's network, revenue management, reservation sales, customer care, customer engagement and loyalty strategies"; that he has spoken to these issues "publicly, in investor presentations, earnings calls, and other settings"; that he is involved in "decisions relating to Delta's capacity levels and operating plans"; that he "personally oversees Delta's response to the Northeast Alliance"; and that he "has overseen efforts to establish a leading presence for Delta in New York at both LaGuardia Airport and John F. Kennedy International Airport and led Delta's historic expansion at LaGuardia." *Id.*

8

(internal quotation marks and brackets omitted); (*see generally* Docs. 7-2, 7-3, 7-6, 7-7 (email exchanges indicating that Mr. Hauenstein received reports and provided input as to these topics).

However, even if American can establish that Mr. Hauenstein satisfies the knowledge component of the analysis, it has not shown that it could not obtain the relevant information from other individuals at Delta. And from the evidence American cites in support of its assertion that Mr. Hauenstein has knowledge in these areas, it appears that there are others more directly involved in the planning and strategizing relevant to the underlying action who could provide the necessary information that American seeks. And, indeed, American has scheduled depositions with three other Delta executives: Joe Esposito—Senior Vice President, Network Planning; Andrew Guenthner—Director, Alliances; and Robert Somers—Senior Vice President, Sales. (Doc. 11 at 10). Movants maintain that Mr. Esposito oversees the Domestic Network Planning group, "which has primary responsibility for evaluating the American/JetBlue Northeast Alliance from a network perspective." (Doc. 1-1 at 12). Mr. Esposito is copied in an email providing Mr. Hauenstein with an overview of demand recovery in New York. (Doc. 7-6).

9

And Movants note that Amy Martin reported to Mr. Esposito, and that Ms. Martin received an email providing an overview of "recovery of demand in certain airports" ultimately intended for Mr. Hauenstein. (*See* Doc. 7-7, Doc. 11 at 12). Mr. Guenthner drafted an email regarding a meeting with Mr. Hauenstein, explaining that Mr. Hauenstein provided feedback about the team's competitive strategy. (Doc. 7-2). Mr. Guenthner then set forth an action plan for him and his team. *Id.*

In an email and phone exchange between American's counsel and Delta's outside counsel, Delta's counsel recommended Eric Beck, a Managing Director for Domestic Network Strategy, for a deposition instead of Mr. Hauenstein. (Doc. 4-1 at ¶¶ 6–9). American has not indicated that it ever deposed Mr. Beck. However, American cites to an email exchange between Mr. Hauenstein and Mr. Beck in which Mr. Beck lays out a proposed strategy to Mr. Hauenstein for approval. (Doc. 7-3 at 4–5). And while this email exchange certainly demonstrates that Mr. Hauenstein provided input as to Delta's plans, it also shows that there are others directly involved in these plans, including Mr. Esposito (with whom Defendants have scheduled a deposition). *Id.* at 4. The fact that Mr. Hauenstein provided feedback and instruction to these individuals and their teams does not suggest that

10

they cannot competently provide the information American seeks, and all the evidence that American cites suggests that they potentially can, despite American's conclusory statement that they are "too junior to speak definitively." (Doc. 4 at 10). The Court cannot find, at this juncture, that American could not obtain the information it seeks through the depositions that it has already scheduled.

American asserts that the "condensed schedule" in the underlying action—specifically the fact that discovery closes on June 8, 2022—means that American would not be able to depose Mr. Hauenstein if the scheduled depositions do not provide it with the information it seeks. (Doc. 4 at 9, 22; *see also United States v. Am. Airlines Grp. Inc.*, 1:21-cv-11558-LTS, Doc. 76 at 2). American's deposition with Mr. Esposito is scheduled for June 8, 2022, the date that fact discovery is set to close. (Doc. 11-2 at 2). American cites to one case from the Middle District of Florida where the court permitted the deposition of a high-level employee based in part on the fact that all scheduled depositions had not yet been taken and the court could not determine whether the information sought could be obtained from other witnesses. *Jernigan v. Scholastic, Inc.*, No. 6:17-cv-2039-Orl-37KRS, 2018 WL

11

11323497, at *1–2 (M.D. Fla. Sept. 17, 2018). Here, the Court agrees with Movant that American's delay in seeking the deposition of Mr. Hauenstein and other Delta employees does not excuse its failure to satisfy the requirements for an apex deposition, and the Court declines to allow the deposition on that ground alone. American could have started deposing lower-level Delta executives earlier than it did, particularly given that it knew that Delta was opposing Mr. Hauenstein's deposition.

That American should have to demonstrate that Mr. Hauenstein has unique knowledge that it cannot obtain elsewhere is especially critical here, where Delta is not even a party to the underlying litigation. "[I]n the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance." *Aeritas, LLC v. Delta Airlines, Inc.*, No. 1:13-CV-00346-RWS-WEJ, 2013 WL 454452, at * 2 (N.D. Ga. Feb. 7, 2013) (internal quotation marks omitted); *see also Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp.*, No. 3:11-cv-268-JD-CAN, 2015 WL 13664418, at *4 (N.D. Ind. July 7, 2015) (noting the relevance of a high-level executive's non-party status on the burden of allowing her deposition).

12

It is one thing to require a high-level executive to sit for a deposition in a matter involving that executive's company. It is another altogether to do so when the executive's company is a third party to the litigation. For all the reasons stated above, American has not carried its burden to require Mr. Hauenstein to sit for a deposition.[1]

American argues that, in the alternative to denying the instant motion, the Court should transfer the motion to the District of Massachusetts. (Doc. 4 at 24–26). Federal Rule of Civil Procedure 45(f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Movants have not consented to transfer, and the Court must therefore determine whether exceptional circumstances exist to support transfer. The Advisory Committee Notes for the 2013 amendment of Rule 45(f) offer guidance with respect to exceptional circumstances:

---

[1] The Court does not find it relevant that American has deposed executives from United and Alaska Airlines without objection. Movants here have objected, and American fails to satisfy the prerequisites for an apex deposition.

13

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendments.

While the undersigned has not found any controlling Eleventh Circuit caselaw addressing exceptional circumstances and transfer under Rule 45(f), several district courts within the Eleventh Circuit have considered whether transfer is appropriate under Rule 45(f) due to exceptional circumstances. These district courts have considered how long the underlying action has been pending in the court where it was filed, the complexity of the issues, the potential for disruption in the underlying litigation should the motion to transfer be granted, the extent of litigation in the underlying court, pending motions in the underlying court, and the risk of inconsistent rulings. *See In re Early*, 2:21-CV-00029-SCJ-JCF,

2021 WL 2636020, at *2–3 (N.D. Ga. Apr. 20, 2021) (transferring where the underlying case had been pending in the Northern District of California for almost three years and where that court had already resolved a motion to dismiss, a motion to compel arbitration or transfer venue, and multiple discovery disputes); *Miller Constr. Equip. Sales, Inc. v. Clark Equip. Co.*, No. 1:15-CV-00007-HRH, 2016 WL 447717, at *5 (S.D. Ga. Feb. 4, 2016) (finding that the court "must account for the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation," in addition to "balanc[ing] the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings" (internal quotation marks omitted)); *The Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037-BLOOM/Valle, 2016 WL 335753, at *2–4 (S.D. Fla. Jan. 27, 2016) (finding that transfer was warranted where the docket for the underlying case showed 1,015 entries, demonstrating its complexity; where the underlying case had been pending for almost ten years; where a number of other subpoenas had been issued and where more subpoenas would be issued in various judicial districts; and where the motion to compel and motion to quash had already been fully briefed

15

in the underlying court); *Exist, Inc., v. Shoreline Wear, Inc.*, No. 15-61917-MC-DIMITROULEAS/Snow, 2015 WL 13694080, at *2–3 (S.D. Fla. Oct. 16, 2015) (transferring after finding that there was a "real potential for disruption in the underlying litigation caused by potentially conflicting rulings" where the issuing court had pending before it a related motion to quash, as well as the defendant's motion to compel the plaintiff to produce the same documents that it sought by way of the non-party subpoena).

Apart from asserting that the motion to quash "stems from a complex antitrust case . . . brought under a novel legal theory," American has not established any of the other factors warranting transfer. (Doc. 4 at 25). The underlying case was filed in September of 2021—less than a year ago. (Doc. 1-1 at 3; Doc. 4 at 5). Neither party cites to any other motion to quash stemming from the underlying action, nor do they identify pending motions in the underlying court such that resolution of the motion by this Court would risk inconsistent rulings. And despite American's assertion that the underlying litigation is complex, the Court does not find that it is so complex that it could not resolve the instant motion for a protective order and to quash.

16

Based on the foregoing, the Court finds that transfer of the motion for a protective order and to quash, (Doc. 1), is not warranted, and the Court **GRANTS** the motion.

### III.   MOTION FOR LEAVE TO FILE MATTERS UNDER SEAL

American has filed a motion for leave to file matters under seal, (Doc. 8), and Movants have filed a response indicating that they do not oppose the motion to seal, (Doc. 10). American requests that certain exhibits filed in support of its response in opposition to Movant's motion for a protective order and to quash a subpoena, along with the portion of the response in opposition that quotes from those exhibits, be sealed. (Doc. 8 at 1).

American seeks to seal Exhibits 8 through 13 to the Declaration of Daniel M. Wall. (Docs. 7-2, 7-3, 7-4, 7-5, 7-6, 7-7). American has also filed an unredacted copy of its response in opposition to the motion for a protective order and to quash a deposition subpoena that it wishes to seal. (Doc. 7-1). For good cause shown, the motion to seal, (Doc. 8), is **GRANTED**. The Clerk is **DIRECTED** to file the entries at Doc. 7 **UNDER SEAL**.

17

## IV. CONCLUSION

Based on the foregoing, Movants' motion for a protective order and to quash a deposition subpoena, (Doc. 1), is **GRANTED**, and American's motion for leave to file matters under seal, (Doc. 8), is **GRANTED**.

**IT IS SO ORDERED,** this 20th day of May, 2022.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

18