# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES GROUP INC. and<br>JETBLUE AIRWAYS CORPORATION,<br><br>Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**AMERICAN AIRLINES GROUP INC. AND JETBLUE AIRWAYS CORPORATION'S
OPPOSITION TO NON-PARTIES GLEN HAUENSTEIN, JOSEPH ESPOSITO, AND
DELTA AIR LINES INC.'S MOTION TO QUASH TRIAL SUBPOENAS TO
<u>GLEN HAUENSTEIN AND JOSEPH ESPOSITO</u>**

## I.     INTRODUCTION

Live testimony from Delta Air Lines, Inc. ("Delta") executives will be crucial in this trial. Plaintiffs contend that the NEA is part of some plan to weaken JetBlue for the benefit of legacy airlines such as Delta, United Airlines ("United") and American.  Defendants contend that the NEA was specifically designed to compete more effectively with Delta, that Delta understands that, and that the NEA has spurred Delta (and United) to compete more aggressively in Boston and New York.  And the geographies at issue are Boston, where Delta has recently become the largest carrier, and New York, where it has long been the largest carrier.

Remarkably, despite all of this, Plaintiffs have no intention to call *any* Delta or United witnesses at trial.  They seek to litigate the case as if Delta and United don't exist.  Plaintiffs get to decide whom to present at trial.  Since they have chosen not to offer any Delta or United witnesses, Defendants must.

Delta, however, claims its senior executives are too busy to testify at trial—a trial at which senior executives from American, JetBlue, United, Southwest, Spirit, and Allegiant will testify. "Too busy" just cannot be the real reason for Delta's resistance.  More likely, Delta does not want to assist its rivals in defending the NEA, an alliance it has described as creating a more relevant competitor in two of its critical hubs.

A party seeking to quash a trial subpoena bears a heavy burden of proof that requires a showing of undue burden through affirmative and compelling proof.  Delta has not come close to meeting that standard because "too busy" is never enough.  As this Court has held, "highly-placed executives are not immune from [subpoenas]." *Koninklijke Philips Elecs. N.V. v. ZOLL Med. Corp.*, No. CIV. 10-11041-NMG, 2013 WL 1833010, at *1 (D. Mass. Apr. 30, 2013) (Sorokin, J.).  Antitrust trials always feature testimony from high-level executives, and if Delta was on trial, there is no doubt it would seek trial testimony from its rivals.  Delta has had plenty of notice that

Defendants intended to call its executives to testify at trial—because it is the most important third party in this case.  The Court should deny its motion to quash.

## II.    ARGUMENT

"[T]here is a particularly heavy burden upon a [subpoena recipient] to make a substantial showing in support of a motion to quash as contrasted to some more limited protection." *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961) (footnote omitted); *see also Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995) ("[T]he party seeking to quash a subpoena bears a heavy burden of proof.").  Accordingly, a party resisting a subpoena must establish, through "affirmative and compelling proof," *In re New England Compounding Pharm., Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013) (internal quotations omitted), that "the subpoena imposes an undue burden, and it 'cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance.'" *Green v. Cosby*, 152 F. Supp. 3d 31, 36–37 (D. Mass. 2015) (quoting *In re New England Compounding Pharm.*, 2013 WL 6058483, at *6).

In determining whether a subpoena imposes an "undue burden" on a non-party, courts consider the "relevance, the requesting party's need, the breadth of the request, and the burden imposed." *Satanic Temple, Inc. v. City of Boston, MA*, 2022 WL 1028925, at *3 (D. Mass. Apr. 6, 2022).  Delta has not shown that the trial subpoenas impose an undue burden on Mr. Hauenstein or Mr. Esposito.

### A.    This Court Has Already Established The "Cause" Required Under 15 U.S.C. § 23

As an initial matter, this Court's Case Management Order ("CMO") establishes all the "cause" Defendants need to compel Delta's appearance at trial.  Delta argues that Defendants must

2

establish some additional "cause" under 15 U.S.C. § 23.  *See* Mot. to Quash at 4, 5–12, ECF No.

231.  Not so.  Section 23 states:

> [I]n civil cases no writ of subpoena shall issue for witnesses living out of the district in which the court is held at a greater distance than one hundred miles from the place of holding the same *without the permission of the trial court being first had upon proper application and cause shown.*

15 U.S.C. § 23 (emphasis added).  This Court already granted the permission the statute requires

when it entered the CMO and expressly stated that "*the Parties are permitted*, under Section 23,

to issue trial subpoenas that may run into any other federal district requiring witnesses to attend

this Court."  CMO ¶ 20, ECF No. 76 (emphasis added).  The "cause" underlying Paragraph 20 was

the Court's recognition of the "geographic dispersion of potential witnesses in this action outside

this District."  *Id.*   In other words, the Court knew that critical witnesses in this high-profile

antitrust case might not all live in and around Boston, and it wanted to ensure that their physical

locations would not prevent the parties from bringing them to trial.   Section 23 authorized the

Court to require their attendance, and it did so through Paragraph 20.  *See United States v. Wyeth*,

No. CV 03-12366-DPW, 2015 WL 8024407, at *3 (D. Mass. Dec. 4, 2015) ("For examples of

statutes which allow the court, upon proper application and cause shown, to authorize the clerk of

the court to issue a subpoena for a witness who lives in another district and at a greater distance

than 100 miles from the place of the hearing or trial, see [Section 23].").  Nothing in the CMO, the

statute, or Delta's cited cases supports Delta's view that Defendants are required to make an

additional showing of cause to exercise a right that this Court has already given them.

### B.    This Court Needs To Hear From Delta Executives

There is no dispute that Mr. Esposito's and Mr. Hauenstein's testimony is critically relevant

both to Plaintiffs' claims and Defendants' defenses in this case.  Delta's motion reinforces its

relevance by highlighting Delta's reaction to the NEA.  *See* Mot. to Quash at 7–8, 11, ECF No.

231.    Notwithstanding its importance, Delta argues that Defendants haven't shown that the testimony is necessary.  The crux of Delta's argument seems to be that Defendants must have been satisfied with the information they obtained from depositions of Delta employees because Defendants did not try (a second time) to take Mr. Hauenstein's deposition after they conducted the others, and thus, they do not need further testimony.  *Id.* at 1; *see id.* at 5–9.  But a party's need to collect information in discovery is clearly not the same as its need to present its case at trial.  *Compare Southall v. Usf Holland, Inc.*, No. 3:15-1266, 2017 WL 11662117, at \*3 (M.D. Tenn. Nov. 8, 2017) (stating that the main purpose of a deposition is to "obtain information" that "eliminates the pursuit of issues or that inform[s] decisions as to the future course of the litigation"), *with U.S. v. Int'l Bus. Mach. Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) (noting that the purpose of trial testimony is to "provide[ ] the trier of fact the opportunity to observe the demeanor of the witness").  Defendants did not subpoena either witness for trial because they were unsatisfied with the information they obtained through depositions; to the contrary, the Delta depositions merely confirmed what Defendants had expected all along: that Delta agrees with Defendants' assessment that the NEA creates a stronger competitor in the northeast, that the NEA enabled Jet Blue to grow in ways that it wouldn't have been able to grow otherwise, and that Delta is paying very close attention to the NEA and will respond as necessary to stay competitive.  Defendants subpoenaed Mr. Hauenstein and Mr. Esposito for trial so that the Court could hear from them directly about Delta's perspectives on the NEA.  Given that those views will otherwise be mostly absent from trial, since Plaintiffs themselves have chosen not to call any Delta witnesses, the testimony is clearly necessary.

Delta's other arguments about the lack of need for live testimony from Mr. Hauenstein and Mr. Esposito are equally meritless.  With respect to Mr. Hauenstein, Delta argues that Defendants

have not shown that Mr. Hauenstein has unique, firsthand knowledge about issues relevant to this case.  In advancing that argument, Delta attempts to underplay the significance of two of the documents Defendants cited in their Motion to Compel that show that Mr. Hauenstein possesses such knowledge.

First, Delta takes issue with DX-0247, a July 2020 document extensively analyzing the NEA only two weeks after its announcement.  The email attaches a presentation "for . . . discussion with Glen [Hauenstein] . . . [regarding] action items and next steps regarding the [NEA]," and discusses "setting up a regular cadence of tracking and review."  DX-0247 at -0003.  Delta claims this document proves nothing because Mr. Hauenstein did not attend a subsequent meeting and because Mr. Esposito testified in his deposition that Mr. Hauenstein's feedback raised the same questions everyone else at Delta had about "what [the NEA] means for us and understanding the pros and cons [of the NEA]."  Mot. to Quash at 8, ECF No. 231 (quoting Esposito Dep. at 96:20–22).  Yet it is precisely Mr. Hauenstein's unique "questions . . . about what [the NEA] mean[t] for [Delta]" and his desire to "understand[] the pros and cons [of the NEA]" that will be crucial testimony in this trial.  Moreover, Delta acknowledges in its motion that Mr. Hauenstein "guid[ed]" Delta employees to "'analy[ze] and develop' Delta's response plan" to the NEA.  *See* Mot. to Quash at 8, ECF No. 231.  Mr. Hauenstein's perspective on that guidance, as well as his opinions about the results of that analysis, are essential.

Delta also quibbles over the significance of DX-0249, an April 2021 email chain between various Delta employees (including Mr. Hauenstein).  Delta claims that "[n]othing in the email indicates Mr. Hauenstein's comments were directed in response to the Northeast Alliance; they were rather focused on Delta's own plans." *Id.*  But the first email in the chain, which is from Eric Beck (Delta's Managing Director of Domestic Network Planning) to Mr. Hauenstein, expressly

ties Delta's announcement of its autumn routes to American's and JetBlue's recently announced new routes out of New York and Boston. *See* DX-0249 at -0002. That Mr. Beck contacted Mr. Hauenstein at all to discuss Delta's announcement is telling and confirms Mr. Hauenstein's involvement in relevant decision-making at Delta.

Turning to Mr. Esposito, Delta does not dispute that he possesses unique, firsthand knowledge of information that will be crucial during trial. Instead, Delta claims that "Mr. Esposito's trial testimony is unnecessary" because he testified about some relevant topics during his deposition, and his "video deposition can be shown at trial." *See* Mot. to Quash at 11–12, ECF No. 231. By that logic, a court should always quash a trial subpoena directed to a witness who has previously been deposed by video, which is not the law. Indeed, Defendants deposed Mr. Esposito both to gather facts—*i.e.*, refuting Plaintiffs' claim that the NEA benefits Delta and lessens competition—and to assess his presence and demeanor for trial. There is nothing remarkable about Defendants' decision to call Mr. Esposito at trial to question him on many of those same topics as they present their case to the Court. *See Fraser v. Wyeth, Inc.*, 992 F. Supp. 2d 68, 94 (D. Conn. 2014) (affirming denial of motion to quash trial subpoena notwithstanding that the witness had been deposed and that the trial testimony therefore covered "ground [that] has already been tilled").

Furthermore, it is well established that there is "a preference [for] live testimony over testimony by deposition." *OsComp Sys., Inc. v. Bakken Exp., LLC*, 930 F. Supp. 2d 261, 276 (D. Mass. 2013) (alteration in original) (quoting *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000)); *see also Young & Assocs. Pub. Rels., L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 522 (D. Utah 2003) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." (alteration omitted)); Fed.

R. Civ. P. 43, 1996 advisory committee's notes ("The importance of presenting live testimony in court cannot be forgotten.  The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.  The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.").  Therefore, "parties who have been served properly under Rule 45 cannot demand that their depositions be used in lieu of live trial testimony." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 301 (S.D.N.Y. 2009). That is especially true here, where Plaintiffs do not plan to call *any* witnesses from Delta or United at trial, despite arguing that the NEA benefits Delta and United, and despite Defendants' claim that the NEA was specifically designed to compete more effectively with Delta and that Delta has responded accordingly.

### C.  Delta Cannot Identify Any Particularized Burden That Outweighs The Relevance And Need For This Testimony

Although Delta baldly asserts that the subpoenas at issue impose an undue burden, Delta has cited no actual, particularized burden, harm, or expense that Mr. Hauenstein or Mr. Esposito will incur to testify for a couple of hours each at trial.  Instead, for Mr. Hauenstein, Delta merely asserts that his "varied responsibilities require him to maintain "a very full schedule," and compelling him to take time out from those job responsibilities to prepare for, travel to, and sit for trial testimony would impose a significant burden on both him and Delta."  Mot. to Quash at 10, ECF No. 231; *see also* Hauenstein Decl. ¶ 10, ECF No. 231-6.  Similarly, Delta claims that Mr. Esposito has "responsibilities that involve a busy and full schedule."  Mot. to Quash at 12, ECF No. 231; *see also* Esposito Decl. ¶ 10, ECF No. 231-7.  Delta also cites Mr. Hauenstein and Mr. Esposito's plans to travel overseas during certain days that overlap with the trial.  *See* Mot. to Quash at 10, 12, ECF No. 231; *see also* Hauenstein Decl. ¶ 11, ECF No. 231-6; Esposito Decl. ¶ 11, ECF No. 231-7.

Delta's argument "is easily disposed of," however, "because [Delta] has not provided any specifics regarding the alleged undue burden," nor has it "show[n] the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Fam. Chiropractic, Inc.*, No. CV 15-12939-LTS, 2018 WL 11424181, at *1 (D. Mass. Nov. 16, 2018) (emphasis added) (quoting *Green*, 152 F. Supp. 3d at 36–37)); *see also Aristocrat Leisure*, 262 F.R.D. at 300 ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). The majority of Delta's arguments regarding undue burden boil down to an assertion that Mr. Hauenstein and Mr. Esposito are too busy to attend and testify at trial because they are high-ranking executives. But "highly-placed executives are not immune from [subpoenas]," *Koninklijke Philips*, 2013 WL 1833010, at *1, and "the fact that an executive has a busy schedule cannot shield that witness from [testifying]," *Johnson v. Jung*, 242 F.R.D. 481, 486 (N.D. Ill. 2007); *see Horsewood v. Toys "R" Us-Del., Inc.*, No. CIV. A. 97–2441-GTV, 1998 WL 526589, at *7 (D. Kansas Aug. 13, 1998) ("That [a deponent] is too busy and that a deposition will disrupt his work carries little weight. Most deponents are busy. Most depositions involve some disruption of work or personal business."); *see also Tijerina v. Guerra*, No. 7:19-CV-285, 2020 WL 1663181, at *5 (S.D. Tex. Apr. 1, 2020) (denying motion to quash subpoena where plaintiff failed to make specific arguments explaining why compliance was unreasonable); *Ispat Inland, Inc. v. Kemper Environ., Ltd.*, No. CIV 06-60 PAM/JSM, 2007 WL 737786, at *2 (D. Minn. Mar. 8, 2007) (refusing to quash subpoena when moving party only made sweeping, broad statements of alleged undue burden).

Likewise, the fact that attending and testifying at trial may disrupt Mr. Hauenstein and Mr. Esposito's travel plans is of no moment. That is not a sufficient claim of undue burden—at

best, it is a claim of inconvenience, and "inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony." *Kirschner v. Klemons*, No. 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005). Indeed, and as discussed further below, when trial starts, Delta will have been on notice that Defendants intended to call Mr. Hauenstein and Mr. Esposito for—at the very latest—a full month, and thus, Mr. Hauenstein and Mr. Esposito have had ample time to adjust their travel plans accordingly. In any event, it is not clear at this point that Mr. Hauenstein or Mr. Esposito will be called to testify on the days they will be traveling, and to reiterate, Defendants will afford Mr. Esposito and Mr. Hauenstein flexibility in scheduling their appearance and testimony that week to accommodate any conflicts. *See* Mot. to Compel at 4 n.4, ECF No. 176.

Mr. Esposito and Mr. Hauenstein reside in Atlanta and are high-ranking officers of a sophisticated party (Delta) that has hubs in both Atlanta and Boston, with numerous daily non-stop flights between those cities lasting only two-and-a-half hours. *See Aristocrat Leisure*, 262 F.R.D. at 300 ("[The subpoenaed parties] are sophisticated parties with the financial means to travel, particularly where . . . [they] can take a flight to one of three airports in the Court's vicinity."). It is hardly burdensome to ask them to make that trip for one day of trial in a case of this magnitude.

### D.    Delta Received Timely Notice Of The Trial Subpoenas To Mr. Hauenstein And Mr. Esposito

Delta's final argument—that Defendants' notice was untimely—is both factually and legally wrong. First, counsel for American Airlines informed Delta's counsel several months ago that Defendants intended to subpoena Delta witnesses for trial, specifically Mr. Hauenstein. *See* Wall Decl. ¶¶ 3, 6–7. And Defendants reiterated that message in their April 2022 opposition to Delta's motion to quash Mr. Hauenstein's deposition subpoena, in which Defendants explained

that they had requested the deposition "*[a]nticipating the need to call one or more Delta witnesses at trial.*" Ex. 1 to Wall. Decl. at 10 (emphasis added); *see also* Ex. 2 to Wall Decl. at 4 (the need to depose Mr. Hauenstein arose from Defendants' "need for the upcoming trial [ ] to have authoritative, high-level Delta testimony"). Defendants' confirmation of their intentions on August 25, 2022 was just that—a confirmation. It should not have been a surprise to anyone.

But even if Delta did not fully appreciate that Defendants were serious about calling Mr. Hauenstein and Mr. Esposito for trial until the discussion between counsel on August 25, 2022, that was still more than a full month before the first day of trial, and more than six weeks before either witness is expected to appear.[1] That is far more time than the 14 days courts have found constitutes "presumptively reasonable" notice under Rule 45. *In re New England Compounding Pharm.*, 2013 WL 6058483, at *7 ("Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable."); *accord Universitas Educ., LLC v. Benistar*, No. 3:20 CV 738 (JAM), 2021 WL 2289042, at *3 (D. Conn. June 5, 2021) ("Although Fed. R. Civ. P. 45 does not define what a reasonable amount of time is for compliance, courts in this circuit have found fourteen days to be presumptively reasonable, whereas notice of a week or less has generally been considered unreasonable." (internal quotations omitted)). Even the subpoenas themselves were served within that 14-day period. *See* Ex. 2 to Sullivan Decl. at 2, 5, ECF No. 177-2 (subpoenas served on September 13, 2022, and providing a compliance date of (at the very earliest) September 27, 2022).

In short, Delta's assertion that it was blindsided by the trial subpoenas is absurd.

---

[1] The September 27 date listed on the subpoena was merely a placeholder because that is the first day that trial is set to commence. Neither Defendants nor Delta reasonably expect that compliance will occur on that date. Defendants currently expect that these witnesses will appear between one and two weeks later. *See* Ex. 3 to Wall Decl. at 2 ("I currently anticipate that you will be called to testify on a single day during the period from October 4 and October 17, 2022."); *id.* at 3 (same).

## III.     CONCLUSION

Mr. Esposito and Mr. Hauenstein's trial testimony is necessary for Defendants to try their case.  Both individuals possess firsthand perspectives on issues that go to the heart of the case and to Defendants' arguments in defense of the NEA.  Delta's allegations of burden and untimely notice are insufficient or otherwise unavailing.  Accordingly, the Court should deny Defendants' motion to quash Mr. Hauenstein and Mr. Esposito's trial subpoenas.

Dated: September 23, 2022                    Respectfully submitted,

*/s/ Daniel M. Wall*
Daniel M. Wall (pro hac vice)
Elizabeth C. Gettinger (pro hac vice)
Elise M. Nelson (pro hac vice)
Nitesh Daryanani (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

Ian R. Conner (pro hac vice)
Michael G. Egge (pro hac vice)
Farrell J. Malone (pro hac vice)
Allyson M. Maltas (pro hac vice)
Marguerite M. Sullivan (pro hac vice)
Tara L. Tavernia (pro hac vice)
Seung Wan Paik (pro hac vice)
Jesse A. Vella (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com

12

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant American Airlines*
*Group Inc.*

*/s/ Richard Schwed*
Richard Schwed (pro hac vice)
Matthew L. Craner (pro hac vice)
Jessica K. Delbaum (pro hac vice)
Leila Siddiky (pro hac vice)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Brian Hauser (pro hac vice)
Ryan Leske (pro hac vice)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant JetBlue Airways*
*Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Daniel M. Wall*
Daniel M. Wall
