# Amended

# Appendix A

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-199 | AA-NEA-03325598 | AA-NEA-03325619 | JetBlue/American Northeast Alliance Presentation by JetBlue to State Attorney Generals, dated February 2021 | JetBlue moves to redact parts of this Northeast Alliance presentation to State Attorney Generals that discuss non-stale competitively sensitive information concerning JetBlue's network growth strategy in New York, Boston, California, Florida, Texas, and Washington, D.C.  JetBlue does not move to seal other pertinent information regarding the NEA. | As explained in Section II.A. of the motion, disclosure of future network plans will harm JetBlue's competitive standing. | **Core to the NEA; Overredacted; Publicly available.** This February 2021 slide deck describes components of the NEA, some of which have since been publicly announced or disclosed. | JetBlue has proposed narrower redactions. The remaining redacted portions cover commercially sensitive information concerning JetBlue's future network plans. | Slides 14-20 expressly describe AA and JetBlue plans on multiple NEA routes. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-271 | JBLU000 40919 | JBLU000 40935 | JetBlue's May 2020 "Project Connie Update" Network Planning presentation | JetBlue moves to redact parts of JetBlue's network plan that discuss JetBlue's future strategy associated with specific airports and granular financial data. JetBlue does not move to seal general discussions of JetBlue's past strategy. | As explained in Section II.A. of the motion, disclosure of future network plans will harm JetBlue's competitive standing. As explained in Section II.C of the motion, disclosure of granular financial data will harm JetBlue's competitive standing. | **Core to the NEA; Overredacted.** This slide deck relates to Defendants' understand of the NEA. Plaintiffs agree to redact certain margin percentages, but oppose Defendants' other redactions. | JetBlue has proposed narrower redactions. The remaining redacted portions cover commercially sensitive information concerning JetBlue's future network plans and granular financial data. | Plaintiffs would not oppose redactions to profit margin figures, but the other items redacted on slide 6 should not be shielded from public view. |

**Amended Appendix A**

| DX-327 | JBLU026 27810 | JBLU026 27810 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.

As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**

This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |
|---|---|---|---|---|---|---|---|---|

**Amended Appendix A**

| DX-332 | JBLU026 27815 | JBLU026 27815 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.

As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**

This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |
|--------|---------------|---------------|--------------------------------------------------------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------|

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-337 | JBLU026 27820 | JBLU026 27820 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | N/A | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |

**Amended Appendix A**

| DX-340 | JBLU026 27823 | JBLU026 27823 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-342 | JBLU026 27825 | JBLU026 27825 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | N/A | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. Plaintiffs did not previously oppose this. | This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-343 | JBLU026 27825 | JBLU026 27825 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | N/A | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized.  Plaintiffs did not previously oppose this. | This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. |

**Amended Appendix A**

| DX-344 | JBLU026 27827 | JBLU026 27827 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |

**Amended Appendix A**

| DX-345 | JBLU026 27828 | JBLU026 27828 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |
|---|---|---|---|---|---|---|---|---|

**Amended Appendix A**

| DX-346 | JBLU026 27829 | JBLU026 27829 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |
|---|---|---|---|---|---|---|---|---|

11

**Amended Appendix A**

| DX-347 | JBLU026 27830 | JBLU026 27830 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |

**Amended Appendix A**

| DX-348 | JBLU026 27831 | JBLU026 27831 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |

13

**Amended Appendix A**

| DX-350 | JBLU026 27833 | JBLU026 27833 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy. As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.** This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-351 | JBLU026 27834 | JBLU026 27834 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | N/A | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. Plaintiffs did not previously oppose this. | This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. |

15

**Amended Appendix A**

| DX-354 | JBLU026 27837 | JBLU026 27837 | Text message thread between Robin Hayes and Scott Laurence, dated April 7, 2020 | JetBlue moves redact personal phone numbers and parts of this April 2020 text message thread between Robin Hayes and Scott Laurence that discuss JetBlue's future fleet strategy, including unrealized future network growth strategy. | As explained in Section I.A. of the motion, personal phone numbers should be sealed in the interest of privacy.<br><br>As explained in Section II.A. of the motion, disclosure of highly sensitive, non-public strategic planning documents, including those relating to initiatives in response to a particular competitor, will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This is part of a single text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. Plaintiffs do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans.  This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | Same objection. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-814 / PX1006 (duplicate) | | | Exhibit 2 of N. Miller Expert Report (June 9, 2022) | American moves to seal this exhibit.  The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized frequent flyer ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-815 / PX1007 (duplicate) | | | Exhibit 3 of N. Miller Expert Report (June 9, 2022) | JetBlue moves to seal this exhibit. The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers. Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic. This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-817 / PX1009 (duplicate) | | | Exhibit 5 of N. Miller Expert Report (June 9, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized American ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-818 / PX1010 (duplicate) | | | Exhibit 6 of N. Miller Expert Report (June 9, 2022) | JetBlue moves to seal this exhibit.  The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers.  Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding.  This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

## Amended Appendix A

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-821 / PX1013 (duplicate) | | | Exhibit 9 of N. Miller Expert Report (June 9, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.

This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue and American ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-822 / PX1014 (duplicate) | | | Exhibit 10 of N. Miller Expert Report (June 9, 2022) | JetBlue moves to seal this exhibit. The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers. Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue and American ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-845 / PX1037 (duplicate) | | | Exhibit 33 of N. Miller Expert Report (June 9, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized American ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-846 / PX1038 (duplicate) | | | Exhibit 34 of N. Miller Expert Report (June 9, 2022) | JetBlue moves to seal this exhibit. The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers. Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-847 / PX1039 (duplicate) | | | Exhibit 35 of N. Miller Expert Report (June 9, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized American ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-848 / PX1040 (duplicate) | | | Exhibit 36 of N. Miller Expert Report (June 9, 2022) | JetBlue moves to seal this exhibit. The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers. Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-849 / PX1041 (duplicate) | | | Exhibit 37 of N. Miller Expert Report (June 9, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized American ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-850 / PX1042 (duplicate) | | | Exhibit 38 of N. Miller Expert Report (June 9, 2022) | JetBlue moves to seal this exhibit. The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers. Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized JetBlue ticket data from 2019. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-890 | | | Exhibit 35 of D. Lee Expert Report (July 11, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's and JetBlue's customers reside using Defendants' frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's and JetBlue's customers. Thus, disclosure will harm Defendants' competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized data. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-891 | | | Exhibit 36 of D. Lee Expert Report (July 11, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's and JetBlue's customers reside using Defendants' frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's and JetBlue's customers. Thus, disclosure will harm Defendants' competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized data. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-892 | | | Exhibit 37 of D. Lee Expert Report (July 11, 2022) | JetBlue moves to seal this exhibit. The exhibit is a map of where JetBlue's customers reside created using JetBlue's ticket sales data. | This map provides competitors an understanding of where marketing could be targeted to capture more of JetBlue's customers. Thus, disclosure will harm JetBlue's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized data. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-893 | | | Exhibit 38 of D. Lee Expert Report (July 11, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's customers reside created using American's frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's customers. Thus, disclosure will harm American's competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.  This document reflects expert, theoretical, empirical analysis of aggregated and anonymized catchment data. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015).  That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

## Amended Appendix A

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-894 | | | Exhibit 39 of D. Lee Expert Report (July 11, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's and JetBlue's customers reside using Defendants' frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's and JetBlue's customers. Thus, disclosure will harm Defendants' competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic.<br><br>This document reflects expert, theoretical, empirical analysis of aggregated and anonymized data. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| DX-910 | | | Exhibit 55 of D. Lee Expert Report (July 11, 2022) | American moves to seal this exhibit. The exhibit is a map of where American's and JetBlue's customers reside using Defendants' frequent flier ticket data. | This map provides competitors an understanding of where marketing could be targeted to capture more of American's and JetBlue's customers. Thus, disclosure will harm Defendants' competitive standing as explained in Section II of the Motion. | Core to the NEA; High-level; Historic. This document reflects expert, theoretical, empirical analysis of aggregated and anonymized data. | This exhibit contains information regarding the location of Defendants' customers zip code by zip code using color coding. This reveals substantially more granular competitively sensitive data than the geographic market analysis conducted by Dr. Israel in Exhibit 40 of *F.T.C. v. Sysco Corp.*, 113 F. Supp. 3d 1 (D.D.C. 2015). That analysis identified an overlap area where the two competitors allegedly competed by a drawing a circle around each distribution center that captured on average 75% of their local customers. | All these maps show is where customers are concentrated, which is a common feature of geographic market analysis. They do not show the "location" of any customers; the data are anonymized and aggregated from many routes. The maps mainly show that customers who prefer these airports tend to live close to those airports. Defendants have failed to show that these maps show any information that a competitor could actually use. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0197 | AA-NEA-00594230 | AA-NEA-00594234 | Email thread between Wim Reckelbus, Paul Swartz, Marco Pena, Ricki Reichard, Julie Bass, Eleni Karandreas, and Brenda Whalen from June 2019 re: customer for shuttle approval | American moves to redact parts of this email communication that identify a corporate customer and discuss specific pricing terms and targeted bidding strategies for that corporate customer. | As explained in Section II.D of the Motion, disclosure of corporate customer names and specific pricing terms and targeted bidding strategies for that corporate customer will harm American's competitive standing. The customer also has a privacy interest against disclosure in this trial. | Historic; Overredacted; Pre-NEA competition.<br><br>The document shows the impact of Boston competition on Boston-area sales agreement. Redacting the customer name is acceptable. | Plaintiffs offered on September 22 to agree to targeted redactions of only the customer names and numbers reflecting specific pricing and discount terms for corporate customer documents. American provided redactions consistent with Plaintiffs' representation. Plaintiffs still object. Notwithstanding the objection, the highly targeted redactions of just the customer names and pricing terms are consistent with First Circuit law. | Plaintiffs maintain their previous objection, in which AA employees discuss the best way to react to JetBlue increasing competition in core NEA markets. Redaction of pricing terms would prevent the public from understanding the extent to which competition resulted in lower prices for consumers. |

## Amended Appendix A

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0199 | AA-NEA-00594318 | AA-NEA-00594323 | Email thread between Cory Heckman, Wim Reckelbus, Gabriela Sposito, Joann Riedel, Paul Swartz, BJ Hemeng Jr., Robert Happenstall, Ricki Reichard, and Brenda Whalen from March - September 2018 re: customer Mgmt round 1 feedback. Final due Oct 1st - shuttle | American moves to redact parts of this email communication that identify a corporate customer and discuss specific pricing terms and targeted bidding strategies for that corporate customer. | As explained in Section II.D of the Motion, disclosure of corporate customer names and specific pricing terms and targeted bidding strategies for that corporate customer will harm American's competitive standing. The customer also has a privacy interest against disclosure in this trial. | Historic; Overredacted; Pre-NEA competition.<br><br>The document shows the impact of Boston competition on Boston-area sales agreement. Redacting the customer name is acceptable. | Plaintiffs offered on September 22 to agree to targeted redactions of only the customer names and numbers reflecting specific pricing and discount terms for corporate customer documents. American provided redactions consistent with Plaintiffs' representation. Plaintiffs still object. Notwithstanding the objection, the highly targeted redactions of just the customer names and pricing terms are consistent with First Circuit law. | Plaintiffs maintain their previous objection, in which AA employees discuss the best way to react to JetBlue increasing competition in core NEA markets. Redaction of pricing terms would prevent the public from understanding the extent to which competition resulted in lower prices for consumers. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0216 | AA-NEA-00614771 | AA-NEA-00614775 | Email thread between Richard Sien, Erik Anton, Allysen Roberts, and Allie Plunk from March 2020 re: Spread B6 Sale | American moves to seal this email chain, which is a discussion among employees in the pricing department of American regarding how to execute a specific pricing strategy in the context of certain market conditions. | As explained in Section II.B. of the Motion, disclosure of pricing strategy will harm American's competitive standing. | Historic; Overredacted; Pre-NEA competition.<br><br>The document shows competition between JetBlue and American. Plaintiffs agree to redact non-NEA routes. | American stands on the confidentiality claim based on the need to protect highly sensitive information regarding American's pricing strategy. The document does not involve any witnesses identified in the Parties' witness list and thus sealing the document is not likely to require sealing the courtroom during trial. Disclosure of the contents of this exhibit in a findings of fact would greatly harm American's competitive standing. | Plaintiffs object to completely sealing a document that directly bears on how AA will reduce prices on NEA routes in response to competition from JetBlue in March 2020, just prior to the NEA. This email contains a large amount of non-competitively sensitive information; American has made no effort to propose redactions. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0663 | JBLU014 84552 | JBLU014 84557 | Email thread between Robbie Mehoke, Barry McMenamin, and Jeremy Blechman from January 2020 re renewal of corporate discount agreement with corporate customer | JetBlue moves to redact information related to specific pricing and discount terms provided to a corporate customer as well as the corporate customer name. | As explained in Section II.D. of the Motion, disclosure of customer lists and highly sensitive, non-public pricing and discount information will harm JetBlue's competitive standing. | **Historic; Overredacted; Pre-NEA competition.** This document relates to fare offers for corporate customer from February 2018. Plaintiffs do not object to redaction of name of corporate customer, but do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact limited information related to the corporate customer name and specific pricing and discount information on specific routes. | Plaintiffs continue to object to the breadth of these redactions to a corporate customer negotiation from February 2018. This is a historic negotiation and the redactions could be more narrowly tailored. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0739 | JBLU026 27810 | JBLU026 27837 | Series of text messages between Scott Laurence and Robin Hayes from April 2020 | JetBlue moves to redact the phone number of the participants in the text messages, and to redact future network planning and business strategy of how to negotiate with American. JetBlue does not move to seal historic market information. | As explained in Section I.A. of the motion, personal phone numbers should be redacted in the interest of privacy. As explained in Section II.A. of the motion, disclosure of network planning and negotiating strategy will harm JetBlue's competitive standing. | **Employee discourse; Historic.** Text conversation from April 2020 regarding plans that did not come to fruition. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document contains information concerning forward-looking plans around where to build JetBlue focus cities and potential transactions that have not been realized. | This is a text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0740 | JBLU026 27823 | JBLU026 27837 | Series of text messages between Robin Hayes and Scott Laurence from April 2020 | JetBlue moves to redact the phone number of the participants in the text messages, and to redact future network planning and business strategy of how to negotiate with American. JetBlue does not move to seal historic market information. | As explained in Section I.A. of the motion, personal phone numbers should be redacted in the interest of privacy. As explained in Section II.A. of the motion, disclosure of network planning and negotiating strategy will harm JetBlue's competitive standing. | **Employee discourse; Historic.**<br><br>Text conversation from April 2020 regarding plans that did not come to fruition. Plaintiffs do not oppose redacting airport codes and phone numbers, but do oppose Defendants' other redactions. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to future plans. This document discusses forward-looking plans around where to build JetBlue focus cities as well as a potential transaction that has not been realized. | This is a text conversation between JetBlue's CEO and Head of Revenue in April 2020 during NEA negotiations and discussing the potential effect of the NEA. Plaintiffs do not oppose redacting phone numbers, other personal identification information, or specific airports or routes for plans that have not been announced or implemented. |

**Amended Appendix A**

| PX0818 | JBLU-LIT-01790297 | JBLU-LIT-01790303 | November 2021 email thread between Dave Clark, Robin Hayes, Joanna Geraghty, Ursula Hurley, Dimpy Singh, Scott Laurence, Santiago Martello, Pete Gianvecchio, Carol Clements, Maryssa Miller, Alex Chatkewitz, Andres Barry, Sara Bogdan, Richard Johns, Jonathan Weiner, Robbie Mehoke, Sasha Barker, Jose Calado, Jayne O'Brien, and Don Uselmann from November 2021 re: 2022 | JetBlue moves to redact parts of the email thread in this exhibit that relate to non-stale strategic discussions about revenue initiatives. JetBlue also moves to seal the attachment to the email thread in this exhibit. The exhibit contains commercially sensitive information regarding revenue strategy, as well as granular revenue data. | As explained in Section II.A. of the motion, disclosure of prospective business plans will harm JetBlue's competitive standing.  As explained in Section II.C of the motion, disclosure of granular financial data will harm JetBlue's competitive standing. | **Historic; Publicly available.**  This document from November 2021 includes plans that have since been publicly announced or implemented. | For the same reasons previously articulated, JetBlue moves to redact discrete information concerning non-public future plans. | Plaintiffs continue to object to this document from November 2021 that includes plans that have since been publicly announced or implemented. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| | | | Revenue Initiative Options (Recommendations); contains one attachment titled "Potential 2022 Revenue Initiatives vFinal.xlsx" | | | | | |
| PX0821 | JBLU-LIT-02085853 | JBLU-LIT-02085854 | 10/29/2021 email from Robin Hayes to Ursula Hurley among other JetBlue employees re: "Plan" | JetBlue moves to redact limited information related to highly sensitive future plans that have not yet been implemented. | As explained in Section II.A. of the motion, disclosure of corporate strategy and forward looking plans will harm JetBlue's competitive standing. | N/A | For the same reasons previously articulated, JetBlue moves to redact discrete information concerning non-public future plans. | Plaintiffs object to the breadth of these redactions, which include high-level descriptions of strategies that are not competitively sensitive. |

## Amended Appendix A

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0862 | JBLU-LIT-03617462 | JBLU-LIT-03617477 | NEA Corporate Go-to-Market Proposal, dated April 15, 2021 | American moves to redact from this exhibit, a deck used to present American's ideas about the strategies and tactics to compete for customers in the Northeast Alliance, specific information about how American is targeting corporate customers. | As explained in Section II.A., disclosure of information regarding American's strategy in targeting specific customers as part of the Northeast Alliance will allow competitors to anticipate and target those same customers using the other competitively sensitive information about the NEA offerings that have not been redacted from this presentation and other documents to gain an advantage. | Core to the NEA.<br><br>This document from April 2021 describes the structure of the NEA. It is central to the topic of this litigation. | American has proposed targeted redactions to prevent from disclosure the methodology for how American plans to target corporate customers in the future. This information is highly competitively sensitive that if disclosed would provide competitors a preview of which customers would be prioritized by American. | Plaintiffs (only) proposed that Defendants rescind specific redactions on pages 13-15 of a deck that specifically addresses how NEA affects competition for corporate customers, including an aggregated analysis of how many corporate accounts are affected by the NEA. |

**Amended Appendix A**

| Exhibit Number | Starting Bates | Ending Bates | Description | Defendants' Motion To Seal | Defendants' Basis For Motion To Seal | Plaintiffs' Objection | Defendants' Response | Plaintiffs' Objection |
|---|---|---|---|---|---|---|---|---|
| PX0938 | JBLU025 00877 | JBLU025 00917 | Series of text messages between David Fintzen and Claire Roeschke from May 2020 | JetBlue moves to redact the phone numbers of the participants in the text messages and granular financial information. JetBlue does not move to redact historic or current market information. | As explained in Section I.A. of the motion, personal phone numbers should be redacted in the interest of privacy. As explained in Section II.C. of the motion, disclosure of granular financial data will harm JetBlue's competitive standing. | **Core to the NEA; Employee discourse; High-level.**<br><br>This document includes a high-level description of a tool used to evaluate the NEA. | For the same reasons previously articulated, JetBlue moves to redact phone numbers and limited information related to non-public future plans. | Plaintiffs continue to object to redactions of this text chain involving employee discourse of high-level plans. Plaintiffs do not object to redactions of phone numbers. |