UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DX-1080**

**I.      INTRODUCTION**

Plaintiffs' motion to exclude DX-1080 is another transparent and desperate attempt to keep this Court from considering real-world evidence of the benefits that the Northeast Alliance ("NEA") is bringing to competition and consumers in Boston. As this Court likely recalls from the Opening Statements, around three weeks ago, in a courtroom down the hall from where the trial for this case is taking place, one of the Plaintiffs in this action (the Office of the Attorney General for the Commonwealth of Massachusetts ("AGM")) proffered testimony from aviation economist Daniel Akins regarding the state of the airline industry at Boston Logan International Airport ("Logan"). *See* DX-1080, Bench Trial Day 7 Tr. at 1045:12-1046:3, *Air Transport Assoc. of Am., Inc. v. Healey*, No. 18-cv-10651-ADB (D. Mass. Sept. 20, 2022). This testimony was obviously important to the AGM's case; the plaintiff in *Air Transport* argued that a Massachusetts paid sick-leave law is unconstitutional and preempted because it would affect airline prices, routes, and services, and Mr. Akins was retained by the AGM to rebut those claims. On direct examination by the AGM, Mr. Akins did not mince words when he described the "growth" of airlines at Logan. In the course of direct questioning, counsel for the AGM asked Mr. Akins, "So speaking about the growth at Boston Logan Airport as seen in recent years, you mentioned Delta. . . . You also mentioned JetBlue. Can you speak about JetBlue's experience in Boston in recent years?" *Id.* at 1045:8-11. In response, Mr. Akins stated,

> Sure. JetBlue doesn't necessarily call their focus operations hubs, but JetBlue has had a high growth and a focus in Boston since prior to [the law at issue] and has continued such growth, again, with the impact of COVID interrupting that.
>
> But now we have what I think from an economist's perspective is an ***incredibly healthy mix of competition at Boston***, which has ***Delta competing against what's called the Northeastern Alliance***, which is American and JetBlue's alliance to codeshare flights in the Northeast. And I noticed that the hearing -- hearing was in the room next door to us regarding that this week, that competition of Delta trying to best JetBlue on routes that JetBlue already flies. And if you look at a lot of the routes Delta is adding, they're right on top of JetBlue or American. So that level

> of competition is sort of ***a planner's dream to drive fares down and to offer more frequency and a wider array of services, which is exactly what's happening at Boston currently***.

*Id.* at 1045:12-1046:3 (emphases added).

The AGM's counsel then asked Mr. Akins about the experience of "other carriers . . . in Boston in the past six or seven years." *Id.* at 1046:13-15.  Mr. Akins responded that "American was flat and is now growing again. . . .  Post-COVID, again, there's more of a focus on Boston by American in their partnership with JetBlue than there was pre-COVID, and I think that's in response to competition with Delta." *Id.* at 17-18, 22-25.

That testimony could not be more relevant to this case.  It is the testimony of an actual aviation expert—unlike the two non-aviation experts Plaintiffs are calling—retained by the AGM to address, among other things, the state of competition at Logan.  And in sharp contrast to Plaintiffs' arguments before this Court that the NEA will "extinguish" competition, particularly in Massachusetts, *see* Pls.' Pretrial Brief at 14, 25-26, ECF No. 160, Mr. Akins understood and testified that *the exact opposite* is occurring.  For Bostonians, rivalry between the NEA and Delta "is sort of a planner's dream ***to drive fares down and to offer more frequency and a wider array of services."*** DX-1080 at 1045:12-1046:3 (emphasis added).

Nothing in Plaintiffs' motion supports excluding this highly material evidence.  The clear weight of case law holds that statements of an expert retained by a party opponent, and solicited by that party opponent in direct examination in another trial, are admissible party admissions under Rule 801(d)(2)(C) of the Federal Rules of Evidence.  Mr. Akins's testimony at trial, elicited by the AGM's counsel on direct examination, are accordingly the AGM's statements and are admissible in this case.

2

## II.     RELEVANT FACTUAL BACKGROUND

The case *Air Transport Association of America, Inc. v. Healey*, No. 18-10651-ADB (D. Mass.), is a federal litigation brought by Airlines for America ("A4A," formerly known as "Air Transport Association of America, Inc."), a lobbying organization representing major U.S. airlines, against the AGM, a Plaintiff in the instant action. In *Air Transport*, A4A alleges that the Massachusetts Earned Sick Time Law ("MESTL"), which requires employers to provide paid sick leave at certain rates, is unconstitutional as applied to airline employees and is preempted by the Airline Deregulation Act. *See* Compl. ¶¶ 1-6, 7-8, 48-70, *Air Transp. Assoc. of Am. v. Healey*, No. 18-cv-10651-ADB (D. Mass. Apr. 4, 2018), ECF No. 1 (attached as Exhibit 1).[1]

As demonstrated by the motions, briefs, and rulings in that case, a critical and hotly disputed issue is MESTL's "impact on airline prices, routes, or services." Exhibit 2 at 21. A4A argues that MESTL is unconstitutional and preempted because it will have a negative impact on airline services, including flight delays and cancellations. *See* Pls.' Mem. of Law in Supp. of Its Mot. for Summ. J. at 5-7, 18-20, *Air Transp. Ass'n of Am., Inc. v. Healey*, No. 18-CV-10651-ADB (D. Mass. Nov. 30, 2018), ECF No. 36 (attached as Exhibit 3). In response, the AGM argues that A4A has not shown that MESTL has caused or will cause negative economic effects on the airline industry in Massachusetts because the "recent history at Logan . . . serves as a real-world rebuttal to [A4A's] prediction of increased fares and fewer routes." Def.'s Mem. in Supp. of Her Mot. for Summ. J. at 18, *Air Transp. Ass'n of Am., Inc. v. Healey*, No. 18-CV-10651-ADB (D. Mass. Dec. 18, 2018), ECF No. 69 (attached as Exhibit 4). Specifically, the AGM avers that, since MESTL

---

[1] A4A also initially alleged that MESTL violates the Fourteenth Amendment's Due Process Clause because it purports to apply extraterritorially. *See* Exhibit 1 ¶¶ 4, 9, 71-74. A4A is no longer pursuing that claim. *See* Mem. Op. and Order on Cross-Mots. for Summ. J. at 8, *Air Transp. Ass'n of Am., Inc. v. Healey*, No. 18-CV-10651-ADB (D. Mass. June 3, 2021), ECF No. 103 (attached as Exhibit 2).

went into effect in 2015, "carrier routes and services in Boston increased dramatically, with JetBlue and Delta . . . establishing operational hubs and Logan consistently ranking in the top five of large U.S. airports for traffic growth." *Id.*

In support of its arguments on the state of airline operations and competition at Logan, the AGM retained aviation economist Daniel Akins as an expert witness. Mr. Akins opines that MESTL neither has had nor will have negative effects, pointing primarily to the "high rate of growth in Boston [among airline carriers] over the past few years" and the fact that "total operations and traffic at Boston for A4A carriers have grown dramatically over the past few years," including the years immediately following MESTL's enactment. Ex. 1 to Ex. B to Pls.' Mot. in Lim., Rebuttal Rep. of Daniel W. Akins at 14-15, *Air Transp. Assoc. of Am. v. Healey*, No. 18-cv-10651-ADB (D. Mass. Dec. 18, 2020), ECF No. 70-5 (attached as Exhibit 5); *see also id.* at 15 (stating that "carrier operations and traffic at Boston grew rapidly after the law was enacted"); *id.* at 17 ("Recent explosive growth, expanding route offerings and competitive fares at Boston Logan, coupled with the connecting hub development by JetBlue and Delta, . . . all serve as a dramatic real-world rebuttal to [ ] dire theoretical predictions of the purported impact of [M]ESTL on flight operations."); *id.* at 18 ("This recent performance of Boston Logan is not surprising considering two principal mainline carriers, Delta and JetBlue, have aggressively grown operations at Boston."). In his supplemental report, Mr. Akins also comments on the "impact of the pandemic on the airline industry and the long-term, potentially permanent changes to airline operations resulting from the impact of [ ] COVID-19." Ex. 2 to Ex. B to Pls.' Mot. in Lim., Supplemental Rep. of Daniel W. Akins at 144-54, *Air Transp. Assoc. of Am. v. Healey*, No. 18-cv-10651-ADB (D. Mass. Dec. 18, 2020), ECF No. 70-5 (attached as Exhibit 5).

A bench trial in *Air Transport* commenced on September 12, 2022. On September 20, counsel for the AGM called Mr. Akins to testify about the impact of MESTL on airline service in Logan. On direct examination, counsel for the AGM asked Mr. Akins numerous questions about the current state of competition and competitive growth among airlines and airline operations in Logan in an effort to bolster the AGM's case that MESTL has not negatively affected airline growth in Massachusetts. *See, e.g.*, DX-1080 at 1034:21-10:46:25. In the course of that questioning, counsel for the AGM asked Mr. Akins, "So speaking about the growth at Boston Logan Airport as seen in recent years, you mentioned Delta. . . . You also mentioned JetBlue. Can you speak about JetBlue's experience in Boston in recent years?" *Id.* at 1045:8-11. In response, Mr. Akins stated that "[there] is an ***incredibly healthy mix of competition at Boston***, which has ***Delta competing against what's called the Northeastern Alliance***," and "that level of competition is sort of ***a planner's dream to drive fares down and to offer more frequency and a wider array of services, which is exactly what's happening at Boston currently***." *Id.* at 1045:12-1046:3 (emphases added). The AGM's counsel then asked Mr. Akins about the experience of "other carriers . . . in Boston in the past six or seven years." *Id.* at 1046:13-15. Mr. Akins noted that "American . . . is now growing again" and that "there's more of a focus on Boston by American in their partnership with JetBlue than there was pre-COVID," which he believed was "in response to competition with Delta." *Id.* at 17-18, 22-25.

Plaintiffs now seek to exclude this trial testimony—despite that the *AGM itself* solicited and obtained that testimony on direct examination from its own expert, and that the AGM has undoubtedly adopted it as true to show that MESTL has not had a negative effect on the airline industry in Boston. The AGM should not be permitted to play both sides of the facts by arguing

5

opposite positions in two separate courtrooms in the same courthouse. The Court should therefore deny Plaintiffs' motion.

## III. ARGUMENT

### A. Plaintiffs' Claim that Mr. Akins's Trial Testimony Is Not a Statement of Party Opponent AGM Is Flatly Wrong and Unsupported by the Law

Rule 801 of the Federal Rules of Evidence treats third-party statements as non-hearsay if those statements are "offered against an opposing party" and were "made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C). In seeking to exclude Mr. Akins's testimony, Plaintiffs assert that "where an expert is not retained in the case at bar, that expert's statements in reports or testimony in earlier cases are not party admissions." ECF No. 260 at 4. That argument is wrong and unsupported by the law because—as many courts have noted—expert testimony proffered as evidence is treated as a party's adoptive admission, regardless of when and for what reason the expert was retained.

Indeed, it is well established that "once a party puts an expert forward as its expert *to testify at trial*, that expert is 'authorized' to speak for the party regarding the issues the party hired the expert to address," and thus, an expert's trial testimony and reports "may be properly considered as an authorized admission under rule 801(d)(2)(C)." *Rawers v. United States*, 488 F. Supp. 3d 1059, 1085 n.29 (D.N.M. 2020) (emphasis added). In other words, "[t]he beginning of trial is a critical juncture"; at that point, courts "may assume that those experts who have not been withdrawn are those whose testimony reflects the position of the party who retains them," so "it is fair to tie the party to the statements of its experts." *Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422, 424-25 (1997).

Thus, for example, in *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008), the plaintiffs' expert, Dr. Hoffman, offered testimony at trial about each plaintiff's

probability of causation. In a subsequent trial, one of the plaintiffs sought to exclude all references by either party to Dr. Hoffman's prior analysis. On appeal, the Ninth Circuit held that "Dr. Hoffman's testimony at the first bellwether trial was an admission of a party opponent" under Rule 801(d)(2)(C), and that the plaintiff "cannot now exclude trial testimony that she, herself, proffered." *Id.* Similarly, in *Sanchez v. Fla. Dep't of Corr.*, No. 4:20-CV-360-AW-MJF, 2020 WL 12309024, at *3 (N.D. Fla. Nov. 24, 2020), the defendant sought to exclude expert testimony it had proffered in a preliminary injunction hearing in a class action in which the plaintiff was a class member, and the court found the defendant's expert's testimony to be an adoptive party admission. Notably, numerous other courts have reached similar conclusions. *See, e.g.*, *Long v. Fairbank Farms, Inc.*, Nos. 1:09–cv–592, 2:10–cv–60, 2011 WL 2516378, at *10 (D. Me. May 31, 2011) (statements of a party's expert deemed admissible under Rule 801(d)(2)(C) because that party "expected [the expert] to testify," and the expert was therefore "authorized . . . to make a statement concerning the subject matter about which he testified"); *Spurlin v. Air & Liquid Sys. Corp.*, 537 F. Supp. 3d 1162, 1170 n.3 (S.D. Cal. 2021) ("[B]ecause there is no indication that the expert testimony was withdrawn by [the party against whom it was offered] in the prior case, the Court finds it admissible as an adoptive admission pursuant to Federal Rule of Evidence 801(d)(2)(C)."); *Abstrax, Inc. v. Dell, Inc.*, No. 2:07-CV-221-DF, 2009 WL 10677355, at *1 (E.D. Tex. Oct. 9, 2009) ("Despite using a different expert . . . , the statements made by Dell's expert in the *Lucent* litigation are not hearsay. They are admissions."); *see also Whole Foods Mkt. Grp., Inc. v. Wical Ltd. P'ship*, No. 1:17-CV-01079-RCL, 2019 WL 6910168, at *2 (D.D.C. Oct. 22, 2019) ("When a party calls an expert to testify at trial, . . . the party is deemed to have adopted all of the expert's oral testimony."); *Bianco v. Hultsteg AB*, No. 05 C 0538, 2009 WL 347002, at

7

*12 (N.D. Ill. Feb. 5, 2009) (noting that "[an expert's] sworn testimony constitutes admissions by a party opponent").

Here, by putting Mr. Akins on the stand to testify as an expert witness, the AGM plainly authorized him—especially during direct examination—"to make a statement concerning the subject matter about which he testified." *See Long*, 2011 WL 2516378, at *10. That is exactly what Mr. Akins did. Plaintiffs now seek to muzzle an expert, who testified in support of one of the Plaintiffs, on an issue that is highly relevant to this litigation—*i.e.*, the competitive dynamics of the airline industry in Massachusetts, and specifically, Boston. Indeed, Mr. Akins's testimony *directly rebuts* Plaintiffs' theory of this case. Moreover, the fact that the underlying substantive claims in this case differ from *Air Transport* is of no moment because, once an expert is authorized to speak on an issue and so speaks, the expert's statements are adoptive party admissions, regardless of whether they are used in subsequent trials with different underlying claims. *See, e.g.*, *id.*; *Sanchez*, 2020 WL 12309024, at *1, 3 (holding expert testimony concerning a different lawsuit was admissible as non-hearsay while finding that the other action "did not involve the same subject matter" as the case at hand).

The cases Plaintiffs cite do not support their motion. *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191891, at *10 (S.D.N.Y. Mar. 11, 2013), actually supports Defendants' position, since the court there stated that an expert's opinion is not hearsay when it is offered "against the party that propounds the expert" and that party has "adopt[ed] the expert's opinion by propounding it and offering it into evidence." And neither *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 11-MD-02246-KAM, 2016 WL 6916599 (S.D. Fla. Jan. 21, 2016), *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3d Cir. 1995), nor *SanDisk Corp. v. Kingston Tech. Co.*, 863 F. Supp. 2d 815 (W.D. Wis. 2012), is on point. Both *In re Air Crash* and

*Kirk* considered only whether the expert at issue was an "agent" of the party opponent under Rule 801(d)(2)(D), and never addressed whether the experts were "authorized to make a statement on the subject" pursuant to Rule 801(d)(2)(C). *See In re Air Crash*, 2016 WL 6916599, at *2; *Kirk*, 61 F.3d at 164.[2] *SanDisk*, meanwhile, addressed only the admissibility of expert *deposition* testimony, not trial testimony. *See SanDisk*, 863 F. Supp. 2d at 818-19. The cases that Defendants cite above make clear that trial testimony of an expert elicited by a party opponent—like Mr. Akins's testimony here—is admissible under Rule 801(d)(2)(C). *See, e.g.*, *Rawers*, 488 F. Supp. 3d at 1085 n.29 (concluding that "once a party puts an expert forward as its expert to testify at trial, that expert is 'authorized' [for purposes of Rule 801(d)(2)(C)] to speak for the party regarding the issues the party hired the expert to address"); *Glendale*, 39 Fed. Cl. at 24 ("By the time the trial begins, we may assume that those experts who have not been withdrawn are those whose testimony reflects the position of the party who retains them.").

### B. Plaintiffs' Claim that Mr. Akins's Testimony Lacks a Proper Foundation Under Rule 703 Is Groundless

Plaintiffs next argue that the AGM's *own expert*, in a prior proceeding, "lacked a foundation under Rule 703 to testify" about a topic that *the AGM's counsel* asked him on direct examination. ECF No. 260, at 6. Plaintiffs' argument—which, unsurprisingly, cites no authority—is a non-starter. As an initial matter, Rule 703 concerns the admissibility of expert testimony in a case and requires that an expert "base an opinion on facts or data . . . that the expert

---

[2] Confusingly, the Third Circuit in *Kirk* cites Rule 801(d)(2)(C) throughout the opinion, but the opinion is based on an assessment of whether the expert was an "agent" of the party opponent, which is the language of Rule 801(d)(2)(D). *See Kirk*, 61 F.3d at 164. But "[Rule] 801(d)(2)(C) makes no mention of 'agent,'" and "[Rules] 801(d)(2)(C) and (D) are presented in the disjunctive and should not be collapsed into one rule." *Glendale*, 39 Fed. Cl. at 424. The weight of the case law correctly assess Rule 801(d)(2)(C) and (D) as separate provisions requiring different elements, and hold that trial testimony elicited from an expert by a party opponent is an admission of that party opponent.

9

has been made aware of or personally observed." Fed. R. Evid. 703. But Defendants are not offering Mr. Akins's testimony as an expert opinion in this case, nor are they calling him to testify as an expert. Instead, they are seeking to admit his testimony as a statement that the AGM has adopted. Nothing in Rule 801(d)(2)(C) requires that "a person . . . authorized to make a statement on the subject" have "base[d] an opinion on facts or data in the case that the [person] has been made aware of or personally observed." *See* Fed. R. Evid. 703, 801(d)(2)(C).[3] Furthermore, Rule 703 is used defensively only by the *opponent* of the party that has retained the expert. *See Queen Trucking, Inc. v. Gen. Motors Corp.*, No. CIV.A.1:06-CV-052-C, 2007 WL 4458919, at *2 (N.D. Tex. June 8, 2007) ("A *Daubert* motion allows a party to challenge the *opposing party's* expert witnesses . . . ." (emphasis added)). The rule cannot be invoked by the party whose *own expert* is authorized to say—and then says—something unhelpful to that party's case. Rule 703 is therefore inapplicable.

In any event, there is ample foundation to admit Mr. Akins's testimony. What Plaintiffs mischaracterize as "off-the-cuff statements" about the NEA that were purportedly "not directly responsive to any question asked," ECF No. 260 at 7, were, in fact, responses to a lengthy series of questions from the AGM's counsel intended to elicit and eliciting testimony from Mr. Akins regarding the "experience [of airlines] in Boston in recent years," DX-1080 at 1045:8-11; *see also,*

---

[3] Indeed, courts have held in the analogous lay-witness context that a statement of a lay witness sought to be admitted as an admission of a party opponent need not satisfy the personal knowledge requirement of Rule 602. *See United States v. STABL, Inc.*, 800 F.3d 476, 484 (8th Cir. 2015) (stating that the only foundation required for adoptive admissions is "a showing that they were made or adopted by the opposing party," and hence "there is no personal-knowledge requirement" for admissibility); *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 117CV598BKSCFH, 2022 WL 4225170, at *4 (N.D.N.Y. Sept. 13, 2022) (rejecting the argument that the admissibility of a fact witness's statements under Rule 801 requires a finding of personal knowledge because Rule 801 "does not require that the opposing party's statement have been made by [someone] who will appear as a trial witness" (internal quotations omitted)).

10

*e.g.*, *id.* at 1039:16-22 ("When I asked you a few moments ago, Mr. Akins, about what's happened at Boston Logan Airport, what's happened over the past six or seven years, the first thing I think you mentioned was growth, and I think you also referenced Delta and JetBlue. Let's take those one at a time. With respect to Delta, how has Delta contributed to the growth?"); *id.* at 1042:3-6 ("Q. . . . Have you had the opportunity to study the extent to which folks were using the national aviation system during the coronavirus?"); *id.* at 1043:9-12 ("And so did I understand your testimony correctly that, as of July of 2021, the number of passengers using the national aviation system on a given day had reached 90 percent what it was prior to March of 2020?"); *id.* at 1043:16 ("And what data was it that you looked at to determine that?"); *id.* at 1046:12-15 ("So we've spoken about Delta's recent growth at Boston. We've spoken about JetBlue's. What about the other carriers; what's their experience been in Boston in the past six or seven years?").

Plaintiffs also suggest that Mr. Akins's testimony is unsupported because he provided economic opinions limited to 2015 to 2019. *See* ECF No. 260 at 7. This is both factually wrong and immaterial. In the very transcript Plaintiffs attach to their motion, Mr. Akins was asked several times by counsel for the AGM on direct examination to reflect on the state and competitive conditions in the airline industry after 2019. *See, e.g.*, DX-1080 at 1042:3-6 ("Q. . . . Have you had the opportunity to study the extent to which folks were using the national aviation system during the coronavirus?"); *id.* at 1043:9-12 ("And so did I understand your testimony correctly that, as of July of 2021, the number of passengers using the national aviation system on a given day had reached 90 percent what it was prior to March of 2020?"); *id.* at 1046:12-15 ("So we've spoken about Delta's recent growth at Boston. We've spoken about JetBlue's. What about the other carriers; what's their experience been in Boston in the past six or seven years?"). Counsel

11

for the AGM clearly did not view Mr. Akins's testimony as excluding post-2019 events when it suited them in *Air Transport*.[4]

There also is rich irony in Plaintiffs' suggestion that expert opinions regarding the NEA that fail to include a study of its effects on the airline industry after 2019 are inadmissible. By that standard, ***the opinions of Dr. Town and Dr. Miller—who undisputedly did not study the NEA's effects during that time period—lack proper foundation and are therefore inadmissible in this case.*** *See, e.g.*, Town Dep. Tr. 211:17-20 ("Q. [Y]ou haven't actually assessed any competitive harms from the NEA? A. No, but I was relying on Dr. Miller's report for that."); Miller Dep. Tr. 67:14-18 ("Q. Do you have any understanding of what the output effects of the NEA have been to date? A. I don't believe it's possible to look at data to inform the answer to that question.").

Plaintiffs further try to argue that Mr. Akins never studied the NEA and was unaware of its terms such as capacity coordination and revenue-sharing. First, Plaintiffs themselves disclosed their own negative spin on NEA capacity coordination and revenue-sharing in the Complaint and numerous public statements prior to Mr. Akins's testimony. There is no basis for assuming that the AGM's aviation expert was unaware of these public assertions. But more importantly, Mr. Akins's testimony was not about the inner workings of the NEA, but its effects. He was specifically examining and opining about growth at Logan and what was causing it. He did not need to perform the study Plaintiffs hypothesize. As an aviation expert, he had the context to understand how the NEA had changed competitive dynamics, leading to a level of competition in Boston that he called "sort of a planner's dream." *See* DX-1080 at 1045:12-1046:3. That insight cannot be excised from the record simply because it was not prefaced by some particular analysis

---

[4] This is consistent with Mr. Akins's November 9, 2020 supplemental report, where he frequently opined on the state of the airline industry after 2019. *See, e.g.*, Exhibit 5, Supplemental Rep. of Daniel W. Akins at 135, 144.

12

of the NEA.  It was trial testimony of an aviation expert, chosen by the AGM, getting it exactly right.[5]

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

---

[5] Plaintiffs' final argument that Defendants lack a witness to establish a "foundation" for this testimony, *see* ECF No. 260 at 6, is specious.  The parties, of course, have been and continue to admit evidence with no or resolved objections without a sponsoring witness.  *See* Pretrial Order, ECF No. 196 ("For any exhibits not objected to, the party sponsoring those exhibits may move the Court for admission of those exhibits prior to Opening Statements on the morning of September 27, 2022 without need of any supporting witness.").

Dated: October 10, 2022                              Respectfully submitted,

*/s/ Daniel M. Wall*
Daniel M. Wall (pro hac vice)
Elizabeth C. Gettinger (pro hac vice)
Elise M. Nelson (pro hac vice)
Nitesh Daryanani (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

Ian R. Conner (pro hac vice)
Michael G. Egge (pro hac vice)
Farrell J. Malone (pro hac vice)
Allyson M. Maltas (pro hac vice)
Marguerite M. Sullivan (pro hac vice)
Tara L. Tavernia (pro hac vice)
Seung Wan Paik (pro hac vice)
Jesse A. Vella (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant*
*American Airlines Group Inc.*

*/s/ Richard Schwed*
Richard Schwed (pro hac vice)
Matthew L. Craner (pro hac vice)
Jessica K. Delbaum (pro hac vice)
Leila Siddiky (pro hac vice)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Brian Hauser (pro hac vice)
Ryan Leske (pro hac vice)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*

15

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Daniel M. Wall*
Daniel M. Wall
