UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BASED ON AMERICAN'S INTENTIONAL WAIVER OF THE PRIVILEGE**

Throughout this case, Defendants have claimed privilege over documents and communications related to the modeling work of their joint Clean Team. These privilege claims extended to counterfactual scenarios that Defendants (and their experts) considered in calculating the supposed benefits attributable to the Northeast Alliance. But during trial on October 7, 2022, American Airlines intentionally waived any such privilege that it may have held over certain communications among the Clean Team, Defendants' counsel, and the economists of Compass Lexecon, including Defendants' testifying expert, Dr. Mark Israel. These communications are highly relevant to a central issue in this case—the accuracy of Defendants' growth claims on which their purported benefits rest—and American cannot now brandish the sword of the allegedly privileged information while also shielding evidence undermining their claims. As explained below, Plaintiffs ask the Court to compel the production of this information that American has withheld until trial.

**BACKGROUND**

As the Court has heard at trial, to forecast the incremental growth and revenues that

1

would allegedly be generated by the NEA, the Clean Team created an American/JetBlue combined schedule for 2023—which they call "v2"—and compared it to a baseline scenario, comprised of each airline's actual schedule in September 2019.[1] But by comparing a standalone schedule from September 2019 with a combined schedule for the future, the Clean Team's v2 schedule included growth at the NEA airports that the airlines could have achieved through standalone growth in their fleets.  As a result, Plaintiffs contend that comparing the v2 schedule to the September 2019 baseline does not show what growth would look like *but for* the NEA, as is required for proper antitrust analysis.  *See, e.g.*, *NCAA v. Bd. of Regents*, 468 U.S. 85, 114 (1984) (explaining that a defendant must show the restraint produces procompetitive benefits that it could not have achieved without the restraint).  As Plaintiffs' expert Robert J. Town has critiqued: "[B]y not holding the fleet constant, the Clean Team Schedule . . . does not allow for an apples-to-apples comparison that isolates the impact of the NEA."[2]

Perhaps reaching the same conclusion, the Clean Team generated a schedule that *did* enable a true apples-to-apples comparison to the 2019 baseline—"v4."  As Mr. Jordan Pack and Mr. David Fintzen have both testified, the v4 schedule, unlike v2, kept the fleets of the two airlines the same as in 2019.[3]  Yet, despite the availability of v4, Defendants' expert, Dr. Israel, relies on v2, with its assumption of an expanded fleet, in order to calculate the purported consumer benefits of the NEA.  In doing so, he credits the Clean Team members' description of the v2-2019 baseline comparison as "apples-to-apples."[4]

---

[1] *See, e.g.*, Tr. vol. 8, 180:14–181:9, 181:13–182:11 (Pack).
[2] Initial Expert Report of Robert J. Town, Ph.D., June 9, 2022, ¶ 115.
[3] *See, e.g.*, Tr. vol. 8, 106:17–109:13, 110:9-17 (Fintzen); Tr. vol. 8, 192:23–193:14 (Pack).
[4] *See* Expert Report of Mark A. Israel, Ph.D., July 11, 2022, ¶ 102 ("[T]he Clean Team calculated the amount of incremental growth on an apples-to-apples basis, relative to a given standalone benchmark.").  Dr. Israel does not provide any citations for this statement, so he presumably was relying on conversations with Clean Team members.

Plaintiffs contend that Dr. Israel's opinion is unreliable because the Clean Team scenario on which he relies fails to identify the proper counterfactual and isolate the impact of the NEA. The withheld documents that are the subject of this motion bear on this selection of counterfactuals.

## LEGAL STANDARD

When a party—here, American—intentionally uses privileged information for its own tactical advantage, it waives its claim to privilege over that information. *See, e.g.*, *Columbia Data Prods., Inc. v. Autonomy Corp. Ltd.*, No. 11-cv-12077-NMG, 2012 WL 6212898, at *17 (D. Mass. Dec. 12, 2012) ("Accordingly, a subject matter waiver of [attorney-client privilege or] work product material is appropriate where a party is attempting to use otherwise protected information as 'both a sword and a shield' in order to gain an unfair tactical advantage over the opposing party."). Such a waiver may also extend, in fairness, to any other communications regarding the same subject matter. *See* Fed. R. Evid. 502(a); *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23–24 (1st Cir. 2003) ("It is well accepted that waivers by implication can sometimes extend beyond the matter actually revealed. Such waivers are almost invariably premised on fairness concerns." (internal citation omitted)).

## ARGUMENT

American has invoked privilege to conceal documents and testimony directly relevant to an issue that is vigorously disputed by the parties: whether Defendants used a misleading and inappropriate benchmark to conclude that the NEA creates growth. But now, having selectively waived that privilege in an attempt to attack Plaintiffs' presentation of the evidence during trial, fairness requires that American disclose these documents and communications in full.

During his examination by the United States, Jordan Pack, a member of the Clean Team, testified about text messages among Chad Schweinzger, Anmol Bhargava, and himself that occurred on May 29, 2020.[5] The messages highlighted during Mr. Pack's direct testimony show Mr. Pack and other Clean Team members expressing concern about whether the NEA would clear regulatory review in light of the v4-to-2019 baseline comparison that the Clean Team had just performed.[6]

Following Mr. Pack's direct examination, American's counsel attempted to rebut this evidence about the choice of counterfactuals by asking Mr. Pack to disclose the subject of a meeting involving members of the Clean Team, Latham & Watkins, and Compass Lexecon, that was apparently occurring simultaneously with the text messages—discussions that American's counsel had previously claimed were privileged and about which counsel had instructed Mr. Pack not to answer during his deposition.[7] This line of inquiry triggered a discussion of the privilege issues surrounding the meetings and text messages. Although American's counsel initially withdrew the question that sparked the objection, Mr. Pack subsequently began to testify about what he and his colleagues "were hearing" at this meeting. Plaintiffs' counsel again objected, and the Court told American's counsel that "[i]t's up to you whether you want him to keep going."[8] Defense counsel then urged Mr. Pack to "[g]o ahead,"[9] and Mr. Pack testified as to what participants in that conversation allegedly said.[10]

---

[5] PX0372.
[6] Tr. vol. 8, 207:23–208:10, 208:11-24, 208:25–209:17, 211:15–212:2, 213:20–217:7 (Pack).
[7] Pack (AA) Dep. 223:12-13, 224:12-20, March 4, 2021.
[8] Tr. vol. 8, 237:15–245:25, at 245:24-25.
[9] Tr. vol. 8, 245:21–246:1
[10] *See* Tr. vol. 8, 247:54-6 ("[O]n this call, we were basically being hounded that we are going to get attacked. How can this be explained? What is this thing?"), and 248:14 ("[W]e were being constantly hounded that this was hard to understand and people aren't getting it, and they're asking lots of questions about what this is and what we did.")

American has thus plainly used information withheld on the basis of privilege to attack Plaintiffs' presentation at trial. Now that American has put the content of these conversations at issue, Plaintiffs should, in fairness, be allowed to cross-examine Defendants' employees and experts about discussions between Clean Team members and Compass Lexecon concerning all potential alternative counterfactuals considered, including the v4-baseline comparison.

This issue is all the more urgent because these sword and shield issues will not end with Mr. Pack's testimony. As explained above, and as the Court will soon hear at trial, Dr. Israel expressly relied on and vouched for the counterfactual comparing the September 2019 base scenario to v2 in both his July 11, 2022 report and August 22, 2022 deposition. In order to fully vet Dr. Israel's claims and dispel any improper suggestions created by Mr. Pack's testimony, Plaintiffs must have access to the full scope of these conversations about the counterfactuals between the Clean Team and Compass Lexecon.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order American to: (1) immediately produce a narrow set of documents reflecting communications between the Clean Team and Compass Lexecon regarding potential counterfactuals considered by the Clean Team or Compass Lexecon, and (2) allow Plaintiffs to examine witnesses about those communications, including recalling witnesses, if necessary, to fairly probe this improperly withheld evidence. Plaintiffs do not seek production of all improperly withheld documents, but rather ask only for 30 specifically identified documents listed in Appendix A, which are cabined to a two-week time period involving Defendants' development of counterfactuals.

Dated: October 11, 2022

      */s/ William H. Jones II*
William H. Jones II
Bonny E. Sweeney
James L. Moore III
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-514-0230
Fax: 202-307-5802
bill.jones2@usdoj.gov

*Attorneys for United States of America*

  */s/ William T. Matlack*
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 727-2200
E-mail: William.Matlack@mass.gov

  */s/ Colin G. Fraser*
Colin G. Fraser (FL Bar No. 104741)
Office of the Attorney General, State of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3300
E-mail: Colin.Fraser@myfloridalegal.com

*Attorneys for the State of Florida, the Commonwealth of Massachusetts, and on behalf of the Plaintiff States*

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that Plaintiffs conferred with counsel for Defendants in a good-faith effort to resolve or narrow the issues presented in this motion prior to filing. Defendants confirmed that they opposed the motion.

*/s/ James L. Moore III*
James L. Moore III
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-805-8413
james.moore4@usdoj.gov
