UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION,<br><br>Defendants. | Civil Action No. 1:21-cv-11558-LTS |

# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**I.   INTRODUCTION**

In the spring and early summer of 2020, several American and JetBlue employees (the "Clean Team") evaluated the potential Northeast Alliance ("NEA"). This was a business exercise, and although lawyers monitored the discussions for compliance purposes, this exercise was not protected by the attorney-client privilege or work-product protection. Many documents regarding this process were produced to Plaintiffs during their initial investigation and litigation discovery, and multiple witnesses have freely testified about the process. *See generally, e.g.*, Trial Tr. Day 8 (testimony of David Fintzen and Jordan Pack).

As the Parties determined that the NEA was feasible and approached the signing of the NEA Agreements, attention turned to presenting the NEA for consideration by various federal and state agencies, including the Department of Justice ("DOJ"). On May 29, 2020, American employee members of the Clean Team met via videoconference with Latham & Watkins, American's external counsel, and Compass Lexecon, counsel's retained economists, in connection with the anticipated regulatory review of the NEA (the "May 29 Meeting"). The specific matters discussed during the May 29 Meeting are undisputedly attorney-client privileged. While this videoconference was occurring, three members of the Clean Team (Jordan Pack, Chad Schweinzger, and Anmol Bhargava) exchanged a series of private text messages. In those messages, the Clean Team members discussed among themselves their reactions to the conversation, including what they were learning about how the DOJ might react to the NEA. American produced these text messages in discovery. *See generally* PX-0372.

Plaintiffs have placed enormous import on these text messages, claiming that they reveal an admission by American that the NEA provides none of the benefits claimed by the Parties. Plaintiffs referenced the text messages twice in their Opening Statement, arguing that they were "late-night text messages between executives of American that show that these executives

recognized that their purported benefits weren't real." Trial Tr. Day 1 at 11:2-9; *see also id.* at 36:7-24 ("When that group of American employees saw the schedule, they sent each other a series of frenzied, worried late night text messages on a Friday in May."). In doing so, Plaintiffs have mischaracterized the content of the messages, the purported seniority of the participants in the communications, and the context in which they were sent.

American had no choice but to clarify the messages' meaning and context by eliciting testimony about them during Mr. Pack's direct examination. American's counsel unambiguously cautioned Mr. Pack not to reveal any privileged information concerning the May 29 Meeting or any other privileged subject, and Mr. Pack followed that advice. *See* Trial Day 8 Tr. 243:25-248:6. Having forced American's hand, Plaintiffs now argue that Mr. Pack's testimony was privileged and that this testimony waived the privilege not only as to Mr. Pack's statements about the May 29 Meeting, but also as to the privilege of several other highly sensitive and clearly privileged documents, the vast majority of which do not even relate to the May 29 Meeting. Plaintiffs' motion is legally and factually groundless, and the Court should deny it.

## II. ARGUMENT

Rule 502 of the Federal Rules of Evidence provides that "disclosure of a communication or information covered by the attorney-client privilege or work-product protection . . . made in a federal proceeding . . .waives the attorney-client privilege or work-product protection." Fed. R. Evid. 502(a). Importantly, any such waiver—to the extent it occurs—is quite limited. It may be extended to other communications only when the disclosed information is actually privileged ***and*** when "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *Id.* Here, Plaintiffs cannot show that there has been a disclosure of information that is

privileged, nor can they establish that any waiver (assuming it exists) extends to any materials beyond Mr. Pack's own statements.

### A. Plaintiffs Fail To Prove That Mr. Pack Disclosed Any Privileged Information

Plaintiffs' motion fails first because Mr. Pack did not reveal any privileged information during his trial testimony. Tellingly, Plaintiffs do not provide any examples of privileged information provided by Mr. Pack. Instead, Plaintiffs quote two statements that Mr. Pack made about the general topic of the May 29 Meeting. *See* ECF No. 265 at 4 n.10 (quoting Trial Tr. Day 8 at 247:54-6 ("[O]n this call, we were basically being hounded that we are going to get attacked. How can this be explained? What is this thing?"); *id.* at 248:14 ("[W]e were being constantly hounded that this was hard to understand and people aren't getting it, and they're asking lots of questions about what this is and what we did."")).[1]

These broad statements are not privileged as a matter of law. It is well established that "[n]ot every passing reference to counsel will . . . trigger a waiver of the [attorney-client] privilege." *Neelon v. Krueger*, No. 12-CV-11198-IT, 2015 WL 4254017, at *5 (D. Mass. July 14, 2015). Instead, "[c]ourts have perceived a difference between an opaque reference to an attorney's advice and disclosure that illuminates the facts and analysis underlying that advice," and "[b]road disclosure of the nature of the consultation does not, in and of itself, disclose the substance of the communications between the attorney and client and, therefore, preserves the privilege." *In re Joy Glob., Inc.*, No. CIV. 01-039-LPS, 2008 WL 2435552, at *5 (D. Del. June 16, 2008). Thus, for instance, "merely disclosing that an attorney was involved in a particular matter, or the general

---

[1] Plaintiffs also seemingly argue that Mr. Pack's statements were privileged because American's counsel cautioned him not to reveal privileged information. ECF No. 265 at 4. But Mr. Pack followed that advice not to reveal any privileged information. Plaintiffs also cannot argue that the statements are privileged because Plaintiffs' counsel objected to them at the time. That was an incorrect statement then, and it remains so now. *See id.*

subject matter regarding which the attorney was consulted, will not be enough to constitute a waiver," and "[m]ost courts that have considered the issue have found no waiver where a client disclosed only that an attorney opined that his conduct was lawful or consistent with the terms of a contract." *Neelon*, 2015 WL 4254017, at *5-6 (collecting cases, and finding no waiver because "[m]ost of the statements [at issue] merely state[d] that privileged communications occurred, or disclose[d] the general subject matter for which legal advice was sought"); *see also, e.g.*, *Callahan v. Merz N. Am., Inc.*, No. 20-CV-11978-ADB, 2021 WL 5400874, at *3 (D. Mass. Nov. 17, 2021) ("The Court agrees with those courts that have found that disclosure of an attorney's ultimate conclusion does not necessarily result in a waiver as to the attorney's reasoning or rationale supporting (or other detailed communications leading to) that conclusion."); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 531805, at *1-2 (N.D. Ill. Aug. 18, 1995) (finding no waiver of privilege in testimony that antitrust counsel discussed an issue at meetings and advised a client to comply with the law).

Here, Mr. Pack did not reveal anything other than "the general subject matter" of a meeting involving members of the Clean Team, Latham & Watkins, and Compass Lexecon. *See Neelon*, 2015 WL 4254017, at *5. Such "opaque reference[s]" to the meeting merely state the obvious—*i.e.*, that American was preparing for a rigorous regulatory review of the NEA. *See In re Joy Glob.*, 2008 WL 2435552, at *5. This is hardly a revelation; the DOJ did engage in a regulatory review, and it subsequently challenged the NEA in this action. These statements do not come close to discussing "the facts and analysis underlying [any attorney's] advice," and thus cannot effect a waiver of any attorney-client privileged information or communications. *See id.*; *see also Callahan*, 2021 WL 5400874, at *3; *Neelon*, 2015 WL 4254017, at *5-6; *In re Brand Name*, 1995 WL 531805, at *1-2. The Court should end its inquiry there and deny Plaintiffs' motion.

### B.     Even If Mr. Pack's Statements Revealed Privileged Information, No Additional Waiver Applies

But, even if this Court finds that the content of Mr. Pack's testimony waived the attorney-client privilege as to his statements, the scope of that waiver cannot extend to what Plaintiffs seek here—*i.e.*, the production of ***thirty*** documents spanning a roughly two-week period.[2]  *See generally* ECF No. 265-1.  The disclosure of otherwise privileged information

> generally results in a waiver **only of the communication or information disclosed**; a subject matter waiver (of either privilege or work product) is reserved for those ***unusual situations*** in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.  Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Fed. R. Evid. 502 advisory committee's notes (emphases added) (citation omitted).  In short, Rule 502 "clearly disfavors broad subject matter waivers."  *Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012); *see United States v. Skeddle*, 989 F. Supp. 905, 909 n.2 (N.D. Ohio 1997) ("[C]ourts have generally held that the 'same subject matter' is to be viewed narrowly."). Accordingly, "courts have recognized subject-matter waiver . . . in instances where a party deliberately disclosed [privileged information] in order to gain a tactical advantage and in instances where a party made testimonial use of [privileged] materials and then attempted to invoke the [attorney-client privilege] to avoid cross-examination."  *Varel v. Banc One Cap. Partners, Inc.*,

---

[2] In addition, one of the documents for which Plaintiffs allege the attorney-client privilege has been waived is also protected as attorney work product.  *See* ECF No. 265-1 at 5 (AA_Priv_13971).  Plaintiffs offer no explanation as to how Mr. Pack's testimony—assuming it waived the attorney client privilege—also waived the work-product protection.  Nor could they, because "a waiver of the attorney-client privilege does not, in and of itself, constitute a waiver of the protections afforded by the work product doctrine."  *Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 420 (D. Del. 2003); *accord SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006) ("Waiver of attorney-client privilege does not necessarily mean that work product immunity over the same documents has also been waived.").

6

No. CA3:93-CV-1614-R, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997).  Under this rule, any waiver cannot extend past Mr. Pack's own statements.

*First*, Plaintiffs have not shown that American engaged in a "selective and misleading presentation" of privileged information to its own advantage.  Fed. R. Evid. 502 advisory committee's notes.  To the contrary, Plaintiffs have placed disproportionate significance on a handful of text messages between Mr. Pack and two other American employees.  Plaintiffs have been speculating before the Court that these messages somehow prove that Defendants' benefits calculations are "illusory" and not "real."  *See, e.g.*, Trial Tr. Day 1 at 36:7-24; Pls.' Pretrial Brief at 36, ECF No. 160.  Plaintiffs' counsel put the text messages on their exhibit list as PX-0372, and Plaintiffs' counsel extensively and freely asked Mr. Pack about the text messages and allegedly related documents during a hostile direct examination.  *See* Trial Tr. Day 8 at 158:17-217:24.

It was only after all this that American's counsel questioned Mr. Pack to the limited extent necessary to explain why Plaintiffs' interpretation of the text messages was wrong.  *See* Trial Tr. Day 8 at 244:25-248:6.  American did not put the text messages in evidence, nor did American seek to have Mr. Pack testify on these points affirmatively.  American's necessary defense against Plaintiffs' arguments cannot be deemed a tactical use of either the testimony or the content of the May 29 Meeting.[3]  It would plainly contravene the text and purpose of Rule 502 if Plaintiffs could (wrongly) try to interpret and misconstrue American's documents, and American's only choices in response were silence or subject matter waiver.  *See DatabaseUSA.com, LLC v. Van Gilder*, No. 8:17CV386, 2019 WL 6255084, at *3 (D. Neb. Nov. 22, 2019) (holding that "[i]t would be highly prejudicial to [a party] . . . to find a complete waiver" of the attorney-client privilege because that

---

[3] Ironically, while Plaintiffs complain throughout their motion that American has invoked privilege to shield information and documents about counterfactuals, American is in this quagmire precisely because it tried to draw privilege lines carefully and produced the text messages in PX-0372.

7

party "believed, quite reasonably, that providing the information . . . was necessary to defend itself against [a] Motion for Sanctions"); *see also Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 319CV00970JLSAHG, 2020 WL 5363307, at *11 (S.D. Cal. Sept. 8, 2020) (no subject matter waiver where the disclosing party had "no intention of using disclosed privileged communications to support its case").

*Second*, Plaintiffs' request that American produce the ***thirty*** specific documents listed in Appendix A is baseless. Rule 502 clearly limits any subject matter waiver to documents on the "same subject matter" that in "fairness" must be considered. But Plaintiffs' requests include thirty documents dated from May 20 to June 4, 2020. Plaintiffs do not even try to argue that these disparate documents relate to the May 29 Meeting or any of the limited information that Mr. Pack disclosed about that meeting. Nor is there any reason that Plaintiffs would need documents from any day other than May 29, 2020 to probe what was discussed at the May 29 Meeting to determine if Mr. Pack's recollection of the meeting and the meaning of the text messages is correct. *See DatabaseUSA.com*, 2019 WL 6255084, at *2 (holding that a waiver "extend[ed] to the specific [disclosed] communications" about a flash drive, but did "not extend to all privileged communications and documents related to the flash drive"); *Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 992 (D. Minn. 2011) (finding that "Plaintiff's suggested scope for the waiver [was] much too broad," and instead limiting it to communications about the specific disclosures at issue).

Instead, Plaintiffs reveal their real motive for this request by arguing that they are entitled to the withheld documents on the grounds that those documents may reveal a different counterfactual scenario than the one Dr. Israel (Defendants' expert) used in his opinion. *See* ECF No. 265 at 2-3, 5. Plaintiffs' claim boils down to an assertion that they are entitled to privileged information because it might help their case. There is simply no basis under Rule 502 or the case

law for any waiver to occur, and certainly not for Plaintiffs' request for privileged documents for their own advantage in this case.

Indeed, this is not the first time that Plaintiffs have asked for these documents. On September 2, 2022, Plaintiffs asked Defendants to re-review thirty-two documents "relating to the Clean Team's consideration of counterfactuals" that Defendants had withheld as privileged. *See* Ex. 1, Ltr. from James Moore to Tara Tavernia (Sept. 2, 2022) at 1. Notably, twelve of those thirty-two documents are the subject of Plaintiffs' instant motion.[4] In response, Defendants re-reviewed those thirty-two documents, downgraded several of them as non-privileged, and provided them to Plaintiffs, along with a supplemental privilege log, on September 15, 2022. *See* Ex. 2, Email from Tara Tavernia to James Moore with Supplemental Privilege Log (Sept. 15, 2022).[5]

In any event, American has re-reviewed the thirty documents that Plaintiffs have identified and will provide copies of the documents that American has determined could be downgraded. To be clear, American is downgrading those documents based on its re-review of them for privilege. It is not downgrading them on the basis that they are related to Mr. Pack's testimony or that any waiver has occurred.

### III.   JETBLUE HAS NOT WAIVED ANY PRIVILEGE

Lastly, independent of the Court's decision on whether American waived any privilege, JetBlue separately asserts privilege for seven documents on Plaintiffs' Appendix. Notably,

---

[4] Those documents are identified as AA_Priv_10752, AA_Priv_13971, AA_Priv_18822, AA_Priv_18823, Priv_09723, Priv_09768, Priv_10674, Priv_10683, Priv_10684, Priv_10699, Priv_10781, and Priv_11592. *See* Ex. 1 at 3; ECF No. 265-1 at 2-9.

[5] In fact, on several occasions, Plaintiffs have requested that Defendants re-review documents that they have designated as privileged—including several of the documents at issue in the instant motion—and Defendants have cooperated by re-reviewing the requested documents on each such occasion and producing to Plaintiffs documents determined not to be privileged (either in whole or in part) after further review.

Plaintiffs have not challenged JetBlue's privilege log as to the Appendix documents that include JetBlue employees or counsel. Nor do Plaintiffs contend—much less demonstrate—in their motion that JetBlue has waived any privilege. It is well established that where, as here, two parties such as American and JetBlue jointly share privilege over a document, one of them cannot waive the other's privilege. *See, e.g.*, *In re Teleglobe Communs. Corp.*, 493 F.3d 345, 363 (3d Cir. 2007) ("[W]aiving the joint-client privilege requires the consent of all joint clients."); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 817 (7th Cir. 2007) ("[B]ecause the privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all the parties, Jenkins & Gilchrist's subsequent voluntary disclosure of the Kerekes Memorandum in response to the IRS' subpoena did not waive BDO's claim of privilege."); *Hache v. AIG Claims, Inc.*, __ F. Supp. 3d __, 2022 U.S. Dist. LEXIS 106576, at *25 (D. Mass. June 15, 2022) ("[A] waiver of a joint privilege can only occur with the consent of all the parties of the joint representation." (quoting *Magnetar Tech. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 483 (D. Del. 2012))). JetBlue's privilege assertion has not been waived and is therefore preserved. Accordingly, even if the Court orders American to produce any of the Appendix documents (and, respectfully, it should not), the production should exclude all documents that include any JetBlue employees or counsel because JetBlue maintains a privilege over those documents that has not been waived.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: October 13, 2022

Respectfully submitted,

*/s/ Daniel M. Wall*
Daniel M. Wall (pro hac vice)
Elizabeth C. Gettinger (pro hac vice)
Elise M. Nelson (pro hac vice)
Nitesh Daryanani (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
dan.wall@lw.com
elizabeth.gettinger@lw.com
elise.nelson@lw.com
nitesh.daryanani@lw.com

Ian R. Conner (pro hac vice)
Michael G. Egge (pro hac vice)
Farrell J. Malone (pro hac vice)
Allyson M. Maltas (pro hac vice)
Marguerite M. Sullivan (pro hac vice)
Tara L. Tavernia (pro hac vice)
Seung Wan Paik (pro hac vice)
Jesse A. Vella (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
ian.conner@lw.com
michael.egge@lw.com
farrell.malone@lw.com
allyson.maltas@lw.com
marguerite.sullivan@lw.com
andrew.paik@lw.com
tara.tavernia@lw.com
jesse.vella@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant American Airlines Group Inc.*

*/s/ Richard Schwed*
Richard Schwed (pro hac vice)
Matthew L. Craner (pro hac vice)
Jessica K. Delbaum (pro hac vice)
Leila Siddiky (pro hac vice)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Brian Hauser (pro hac vice)
Ryan Leske (pro hac vice)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant JetBlue Airways Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Daniel M. Wall*
Daniel M. Wall