UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION,<br><br>Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS BASED ON AMERICAN'S INTENTIONAL WAIVER OF THE PRIVILEGE**

Plaintiffs request that the Court compel production of the 11 remaining documents[1] that American continues to withhold on privilege grounds despite its intentional waiver of the privilege during trial.[2]  As explained below, these documents relate to the Clean Team's work creating counterfactual analyses to measure the incremental effects of the Northeast Alliance—specifically, a two-week long discussion between the Clean Team and Compass Lexecon about the best way to measure the impact of the NEA on American's and JetBlue's respective networks.  Courts have long-recognized subject matter waiver extends to related communications

---

[1] American produced, in full or redacted form, 16 of the 29 unique documents that Plaintiffs requested (Plaintiffs' request contained a duplicate entry of one document, Priv_09678). American's counsel also represented on Friday that American's privilege log contained incorrect dates for AA_Priv_18822 and AA_Priv_18823, and therefore those documents are outside the time period that is the subject of Plaintiffs' motion.  Plaintiffs reserve their rights to challenge additional documents if American determines that other documents fall within the two-week time period subject to this dispute.
[2] Plaintiffs file this brief in response to the Court's request for additional briefing explaining why Plaintiffs believe they are entitled to these remaining documents and how those documents relate to each other.  Tr. vol. 12, 162:2-25.

1

to avoid gamesmanship through a selective waiver of only a portion of the privileged communication. Accordingly, Plaintiffs respectfully request that the Court order production of the remaining documents in Appendix A to Plaintiffs' motion to compel, Dkt. 265-1.

## BACKGROUND

In order to assess whether the Northeast Alliance creates incremental growth—*i.e.*, growth above and beyond what American and JetBlue could have achieved on their own—the Clean Team considered several different potential counterfactual scenarios. Two of the potential counterfactual comparisons were the following:

(1) A comparison of American's and JetBlue's actual schedules in September 2019 (the "baseline schedule") with a combined schedule for the airlines that holds their fleets constant with 2019 (what the Clean Team called "v4"), *see, e.g.*, Tr. vol. 8, 192:23–194:4 (Pack); PX0297 at 2; and

(2) A comparison of American's and JetBlue's standalone schedules for 2023 (the "2023 standalone schedule") with a combined schedule for the airlines using their 2023 fleets ("v2"). *See, e.g.*, Tr. vol. 8, 97:11-17 (Fintzen); Tr. vol. 8, 292:5–293:23 (Friedman).

Plaintiffs contend that either of these counterfactuals would have provided an appropriate way to benchmark growth that is attributable to the *NEA*, rather than growth that American and JetBlue would have achieved anyway. Yet, as the Court will hear, Dr. Mark Israel, Defendants' economist, did not use either of these counterfactual comparisons to support his calculation of consumer benefits resulting from the NEA. Instead, Dr. Israel compared the baseline schedule from September 2019 and the v2 schedule with 2023, and he did so in reliance on his conversations with the Clean Team. *See* Dkt. 272-1 at 3 (citing Expert Report of Mark A. Israel, Ph.D., at ¶ 102 (July 11, 2022)). These conversations between Dr. Israel and the Clean Team—

which address the question of which counterfactual is the right one—are the subject of this present motion.

## ARGUMENT

Plaintiffs have consistently asserted that the sword/shield issues created by Dr. Israel's reliance on the Clean Team's work requires production of these documents. *See, e.g.*, Dkt. 272-1. Withholding these documents has impeded Plaintiffs' ability to fully test the assumptions underlying Dr. Israel's analysis.

Now, Plaintiffs' request for production is all the more compelling following American's knowing waiver of the privilege during their examination of Mr. Pack at trial. Counsel for American expressly asked Mr. Pack to disclose the contents of a conversation occurring between the Clean Team, Compass Lexecon, and counsel, just moments after counsel acknowledged American's belief that the conversation was privileged. Tr. vol. 8, 238:18-20, 245:22–246:5 (Pack). There can be no more obvious example of an intentional waiver,[3] and American's argument that Mr. Pack cannot have disclosed privileged information because he was instructed not to do so is circular. The only question that remains is the scope of the waiver.

As the privilege log entries and documents recently produced by Defendants make clear,

---

[3] American argues in its opposition that no privileged information was disclosed during Mr. Pack's testimony. But Mr. Pack disclosed and repeated *actual statements* of counsel and experts for American during that allegedly privileged call. *See* Tr. vol. 8, 245:18–246:5, 248:1-6 (Pack). This scenario is far different from the cases that American cites in its brief, which involved only a disclosure that the conversation occurred, or counsel's ultimate conclusion. *See, e.g.*, *Neelon v. Kreuger*, No. 12–cv–11198–IT, 2015 WL 4254017, at *6 (D. Mass. July 14, 2015) ("Most of the statements merely state that privileged communications occurred, or disclose the general subject matter for which legal advice was sought. A few of Cohen's statements go so far as to disclose an attorney's ultimate conclusion that his conduct was lawful. As discussed, without more detail, such statements are insufficient to waive the privilege because they do not disclose the content of the privileged communication and, indeed, reflect a conscious intent to avoid divulging communications believed to be privileged." (internal citations omitted)).

during a roughly two-week period, members of the Clean Team had many discussions with counsel—and, critically, Compass Lexecon—related to counterfactual analyses that would be used to assess what growth, if any, would be created by the NEA. Those discussions appear to have begun on May 20–22, 2020, when several emails, some of which refer to counterfactuals, were exchanged among members of the Clean Team as well as Dr. Israel. *See, e.g.*, Dkt. 273 at 1.[4] At the same time these discussions were occurring, Mr. Pack sent an email to JetBlue's Clean Team members, describing v4 and asking them to provide data to support the v4 counterfactual schedule analysis. PX0297 at 2. Following Mr. Pack's email, discussions about the counterfactuals appear to have continued. *See* Dkt. 273 at 2 (Priv_10820; Priv_10833; Priv_10752). American continues to withhold these documents.

JetBlue ultimately provided the data for the v4 counterfactual analysis that Mr. Pack requested on Friday, May 29, 2020. PX0297 at 1–2. That same day, Mr. Chad Schweinzger and Mr. Pack exchanged a series of text messages expressing concern about what this counterfactual analysis showed. PX0372 at 29. Mr. Schweinzger asked Mr. Pack to prepare a "quick summary" of what routes JetBlue would have to cancel in this v4 counterfactual scenario. PX0372 at 30. Then, just ninety minutes later, Mr. Schweinzger concluded that "show[ing] full network results" was "no bueno," PX0372 at 41, and that "[b]ased on what [he was] hearing here"—which, according to Mr. Pack, meant what they were hearing during a call with American's counsel and Dr. Israel, *see* Tr. vol. 8, 237:6-16 (Pack)—"if [he] was DOJ [he] could easily kill any deal." PX0372 at 44.

---

[4] For example, the Privilege Log contains entries for Priv_10855, an email exchange among the Clean Team, Dr. Israel, and American's counsel, with the subject "Project Garland Clean Team Call"; and Priv_11167, an email exchange among the Clean Team from both American and JetBlue, Dr. Israel, and counsel for both American and JetBlue, with the subject line "Project Garland Counterfactual – Clean Team – Privileged & Confidential."

In the days that followed this exchange, discussions about the counterfactuals continued. For example, on June 3, Dr. Israel had another discussion with the members of the Clean Team about "Garland – Counterfactual." *See* Dkt. 273 at 3 (Priv_09723, which is a calendar invite for the June 3, 2020 meeting). American withheld this calendar invite until Plaintiffs filed the instant motion to compel. Ultimately, it seems that American and JetBlue never completed the v4 counterfactual exercise. Tr. vol. 8, 217:12-17 (Pack). Instead, they provided only the outputs from the 2023 v2 schedule to Compass, and that schedule formed the basis of Compass's consumer-benefits analysis. Tr. vol. 8, 183:13-17, 217:8-11 (Pack).

As this timeline demonstrates, the documents that Plaintiffs seek in Appendix A appear to comprise a two-week long discussion between the Clean Team and Compass about the best way to measure the impact of the NEA on American's and JetBlue's respective networks. American's counsel elicited testimony from Mr. Pack about the substance of these discussions in an effort to soften the blow of the text messages that appear in PX0372. But now, having used the content of these conversations to gain a tactical advantage, American must disclose the rest. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter."); *accord Data Gen. Corp. v. Grumman Sys. Support Corp.*, 139 F.R.D. 556, 561 (D. Mass. 1991) (holding waiver extended beyond document for which privilege was waived, to interrogatories asking "about the preparation of and the accuracy or extent of error" relating to the document). These documents are essential to Plaintiffs' ability to properly cross-examine both Mr. Schweinzger and Dr. Israel about the discussions between the Clean Team and the economists concerning analyses that Defendants will offer to meet their burden under step 2 of the rule of reason.

The logic of this classic sword/shield issue is summarized well in one of the cases cited by Defendants in their opposition (Dkt. 272 at 6): "[C]ourts have recognized subject-matter waiver . . . in instances where a party made testimonial use of [privileged] materials and then attempted to invoke the [attorney-client privilege] to avoid cross-examination." *Varel v. Banc One Cap. Partners, Inc.*, No. CA3:93–CV–1614–R, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997). *Compare also Columbia Data Prods., Inc. v. Autonomy Corp. Ltd.*, No. 11–12077–NMG, 2012 WL 6212898, at *18–19 (D. Mass. Dec. 12, 2012) (finding waiver as to an audit report resulted in waiver in all other related communications because the plaintiff "ha[d] put the audit report, the audit process, and PWC's status as an independent auditor directly at issue," so "full disclosure [was] only fair"), *with Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 253–54 (D. Mass. 2013) (declining production only because plaintiff had "explicitly eschewed any use of the forensic review as evidence at trial"); *id.* at 248 ("The themes from the cases cited by counsel for the parties include whether the privileged material was placed directly 'at issue' in the litigation such that any privilege has been waived, whether the claims and defenses are so 'enmeshed' in privileged evidence that the material must be produced, and balancing fairness concerns arising from withholding privileged materials.").

Having now used the privileged information in a testimonial capacity, American's witnesses must submit to cross-examination about the remaining privileged material.[5]

---

[5] JetBlue argues that, even if American waived the privilege, JetBlue can separately assert the privilege and prevent Plaintiffs from accessing the documents. Putting aside the manifest injustice that would result from that position, the cases cited by JetBlue do not support its position. *See, e.g.*, *Hache v. AIG Claims, Inc.*, No. 20-CV-10652-PBS, 2022 WL 2161174, at *8 (D. Mass. June 15, 2022) (holding that upon learning of privilege waiver by a joint holder of the privilege, it was incumbent upon the defendants to make reasonable efforts to protect the confidentiality of the disclosed information.). JetBlue's counsel was present during the extended exchange about the privilege issues but did not intervene. To the extent JetBlue ever possessed a separate privilege claim to these conversations, that privilege has also been waived.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court order American to produce the remaining documents in Appendix A. Should the Court deny this motion, Plaintiffs respectfully request that the denial be without prejudice to renewing this motion following the testimony of Mr. Chad Schweinzger and Dr. Israel.

Dated: October 16, 2022

      /s/ William H. Jones II
William H. Jones II
Bonney E. Sweeney
James L. Moore III
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW
Washington, DC 20530
Phone: 202-514-0230
Fax: 202-307-5802
bill.jones2@usdoj.gov

*Attorneys for United States of America*

      /s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Phone: (617) 727-2200
E-mail: William.Matlack@mass.gov

      /s/ Colin G. Fraser
Colin G. Fraser (FL Bar No. 104741)
Office of the Attorney General, State of Florida
PL-01, The Capitol
Tallahassee, FL 32399
Phone: (850) 414-3300
E-mail: Colin.Fraser@myfloridalegal.com

*Attorneys for the State of Florida, the Commonwealth of Massachusetts, and on behalf of the Plaintiff States*