UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AMERICAN AIRLINES GROUP INC. and ) <br> JETBLUE AIRWAYS CORPORATION, ) <br> ) <br> Defendants. ) | Civil No. 21-11558-LTS |

ORDER ON PLAINTIFFS' MOTION TO COMPEL (DOC. NO. 265)

October 20, 2022

SOROKIN, J.

The plaintiffs seek to compel the defendants to produce a set of eleven documents the defendants have withheld based on a claim of attorney-client privilege.[1] The request follows an exchange that occurred during the eighth day of the bench trial in this matter, which the plaintiffs believe amounted to an "intentional waiver of the privilege" by one or both defendants. Doc. No. 275 at 1; accord Doc. No. 265 at 1. For the reasons that follow, the plaintiffs' motion is DENIED.

Some background will illuminate the context in which this dispute arises. In discovery, the defendants disclosed to the plaintiffs a series of text messages among employees of American Airlines who were members of a "clean team" that was conducting analysis in connection with the negotiation of the agreement that is the subject of this lawsuit (the NEA). Those text

---

[1] Though the plaintiffs' motion originally sought about thirty documents, intervening review and disclosures by the defendants have narrowed the dispute to the eleven items the Court addresses in this Order. See Doc. No. 275 at 1 & n.1.

messages contained statements that appeared to comment on the likely regulatory fate of the NEA and, as produced by the defendants, bore time stamps suggesting the texts were sent well after normal business hours.[2]  The government referenced the text messages in its opening statement, characterizing them as evidence of a "frenzied, worried late night" recognition by representatives of American that the NEA's "benefits weren't real."  See Bench Trial Tr. Day 1 at 11, 36.  When Jordan Pack, one of the analysts who participated in the text exchange, testified at trial on October 7, 2022, he stated that the time stamps on the text messages appeared to be incorrect and that he recalled the exchange as having occurred five hours earlier, during business hours.  See Bench Trial Tr. Day 8 at 209-10, 215-16.[3]  He described the text messages as a conversation he was having with two colleagues during a larger meeting they were attending with American's lawyers and consultants regarding the regulatory process they anticipated concerning the NEA ("the May 29th meeting").

When defense counsel asked Mr. Pack questions eliciting the context in which the text messages arose, the plaintiffs objected, and an extended exchange among counsel and the Court followed.  See id. at 237-44.  In the plaintiffs' view, the defendants were strategically using claims of privilege as both a sword and shield, having withheld in discovery information concerning the May 29th meeting, thereby preventing the plaintiffs from exploring it in advance of trial, then seeking to elicit certain information about the same meeting from Mr. Pack for the first time on the witness stand.  In response, the defendants urged that they needed to reveal some information in order to respond to the plaintiffs' characterization of the text messages, and

---

[2] The text messages are in evidence now as plaintiffs' exhibit PX 372, accompanied by a demonstrative labeled PX 372a showing the messages in order on a chart.
[3] Mr. Pack explained that he had realized this time-stamp discrepancy "after [his] last deposition," which occurred in early June 2022, when he "talked to counsel and went back and looked at the calendar."


that they could do so without revealing legal advice or other protected discussions that arose during the May 29th meeting. At the conclusion of the exchange, the Court advised the defendants to "stay away from what the topic of the meeting is," and defense counsel agreed it would not be necessary "to reveal anything privileged in order to provide this contextualization and explanation of the text message." Id. at 244.

Five questions and one transcript page later, defense counsel asked Mr. Pack what he was "frustrated about" when sending the texts, and he responded by beginning to describe what "we were hearing" from the lawyers and consultants in the May 29th meeting. Id. at 245. The plaintiffs intervened, noting the privilege issue was again rearing its head. The Court said to defense counsel: "It's up to you whether you want him to keep going." Id. The lawyer examining Mr. Pack turned to American's lead trial counsel, who nodded his head in the affirmative. She then turned back to the witness and said: "Go ahead." Id. at 246. At that point, Mr. Pack testified, at least to some degree, about the content of the May 29th meeting.[4]

---

[4] He said: "We were hearing that this – we were basically going to be attacked by DOJ. This was going to be very, very, very hard . . . to get across and for people to understand." Bench Trial Tr. Day 8 at 246. A page later, Mr. Pack said: "[T]his was so novel, it's so gray. And on this call, we were basically being hounded that we are going to get attacked. How can this be explained? What is this thing? And that was going to be really, really hard to get across, and the DOJ is not going to like it." Id. at 247. And on the next page: "Well, on the call, it was just hard to – we were being constantly hounded that this was hard to understand and people aren't getting it, and they're asking lots of questions about what this is and what we did. And I think I felt, w[ell] our team doesn't get it, I'm pretty sure it's going to be hard for outsiders to understand." Id. at 248. Then later, during redirect examination by the government, he said: "[W]e were constantly being asked a lot of questions and basically being interrogated on the phone from [the consultants and the lawyers] about what we found, and I think, at least to me, I felt that oh my god, everything that you're asking was like, well, nothing was ever possible. Like we couldn't do anything." Id. at 259-60. Then when asked what the lawyers were hounding him about, he said: "Basically saying like how does it work and what's going on, and what are you doing?" Id. at 260. Finally, he explained that references in his text messages to "these people" meant the lawyers and the consultants in the May 29th meeting. Id. At no point did he specify, nor was he asked to specify, what "this" or "it" or "this thing" meant to him in this context (i.e., what exactly was the focus of the lawyers' questions and attacks).

Based on this testimony, the plaintiffs assert that the defendants have waived any privilege claim as to documents concerning the subject matter discussed during the May 29th meeting. The plaintiffs rely on Federal Rule of Evidence 502, which provides that "disclosure of a communication or information covered by the attorney-client privilege . . . made in a federal proceeding" waives the privilege "only if":

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a). "[F]airness controls the question of waiver under Rule 502(a)." Columbia Data Prods., Inc. v. Autonomy Corp., No. 11-cv-12077, 2012 WL 6212898, at *17 n.9 (D. Mass. Dec. 12, 2012). The Advisory Committee Notes to Rule 502(a) specify that "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."

Unable to discern based on the privilege log initially presented by the parties whether the withheld documents were within the scope of any waiver that occurred during Mr. Pack's testimony, the Court raised with the parties on October 17, 2022 the possibility of an ex parte, in camera review either by the undersigned or by another judge. Bench Trial Tr. Day 13 at 4, 11-13, 21-22. No party objected to the Court reviewing the documents, and the Court directed the defendants to provide it with copies of the documents. Id. at 21-22. The defendants promptly did so. Reflecting further on the matter, the Court concluded that its status as the factfinder in this case justified proceeding cautiously with respect to any in camera review of the documents. Thus, the undersigned referred the issue on an emergency basis to Magistrate Judge Katherine Robertson. Id. at 99-101. The documents were sent to Judge Robertson electronically, along

with a copy of the relevant text message exchange. The undersigned provided her with a brief explanation of the context in which the dispute arose, including the testimony that the plaintiffs cited as the basis for finding a waiver of privilege.

Later that day, Judge Robertson orally reported back to the undersigned the following conclusions that she reached based on her review: 1) each document at issue is, in fact, privileged; and 2) nothing contained in the documents posed any meaningful risk of prejudicing or impairing the ability of the undersigned to impartially decide this case, should the undersigned review the documents himself. In light of the latter representation, the undersigned then (and only then) undertook a de novo review of the documents provided by the defendants.

Based on the undersigned's de novo review, the Court concludes that all eleven documents are privileged. The Court further concludes that, to the extent the testimony the defendants elicited (or permitted) from Mr. Pack operated as a waiver of privilege with respect to any subject,[5] any such waiver did not reach the content of the documents at issue. None of the documents, on their face, describe the content of the May 29th meeting about which Mr. Pack was questioned, or the "hounding," "questioning," or "attacking" Mr. Pack described. Moreover, none of the documents suggest the defendants have inserted "protected information into the litigation in a selective, misleading and unfair manner."

---

[5] The Court need not presently resolve whether Mr. Pack's testimony waived the privilege, nor must it define the precise subject as to which any waiver would be confined (a question that is not easily answered given the nebulousness of the relevant testimony). It suffices, for present purposes, to say that Mr. Pack's testimony did not waive the privilege as to all documents relating in any way to "counterfactuals" considered or analyzed by the defendants. To the extent the testimony of any other witness at trial or in a deposition might effect such a waiver, that issue is not presently before the Court. See Bench Trial Tr. Day 8 at 112-13 (reflecting suggestion by plaintiffs that the privilege is waived by a defense expert's work in this case).

Accordingly, the plaintiffs' motion to compel (Doc. No. 265) is DENIED.  To preserve the record, the Clerk shall place the eleven privileged documents the Court received from the defendants on the docket **as a sealed and ex parte** docket entry.

<div style="text-align: center;">SO ORDERED.</div>

    /s/ Leo T. Sorokin
United States District Judge