# Exhibit A

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN AIRLINES GROUP INC. and<br>JETBLUE AIRWAYS CORPORATION,<br><br>Defendants. | Civil Action No. 1:21-cv-11558-LTS |

### AMERICAN AIRLINES GROUP INC. AND JETBLUE AIRWAYS CORPORATION'S RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT AND PERMANENT INJUNCTION

Plaintiffs' motion proceeds as if this case involved a secret price-fixing conspiracy and relies extensively on decades-old cases speaking to a court's powers in such circumstances. But that is not reality. Defendants proactively approached the Department of Justice (DOJ) and Department of Transportation (DOT) about the Northeast Alliance (NEA) in July 2020, months before implementation of the NEA. Defendants engaged with both agencies in good faith, providing documents, data, and depositions in response to government requests, and made multiple amendments to the NEA in connection with DOT's review. *See* Dkt. 344 (Findings of Fact and Conclusions of Law) at 26-28. By contrast, DOJ investigated for over a year before filing suit and never sought a preliminary injunction—allowing the NEA to go into effect and begin serving customers. Now, Plaintiffs seek to wield the Court's judgment as a cudgel to invalidate other common and procompetitive agreements, at the expense of consumers, without even giving Defendants an opportunity to revise those agreements in line with Plaintiffs' own proposed notice procedures. Requiring termination of the frequent flyer agreement would have particularly perverse effects here given the requirement of the Revised Proposed Final Judgment (RPFJ) to

"honor the rewards accrued" by Defendants' frequent flyer members.  Dkt. 358-1 (RPFG) at III.F.
Defendants of course want to do that—but cannot if the frequent flyer agreement is terminated in
the manner DOJ demands.   Plaintiffs further seek to ban Defendants from entering into
partnerships with other airlines for two full years *regardless* of their effects on competition, to
impose an unprecedented five-year monitorship, and to construct significant barriers to routine
transactions that will severely constrain Defendants' ability to operate in the marketplace.
Defendants' proposal respects the Court's judgment and affords Plaintiffs complete relief.
Plaintiffs' proposed injunction, by contrast, is a drastic overreach.

## ARGUMENT

I.    **DEFENDANTS SHOULD BE ALLOWED TO CONTINUE CODESHARING AND RECIPROCAL FREQUENT FLYER RECOGNITION WHILE NEGOTIATING AND EXECUTING NEW STANDALONE AGREEMENTS.**

Plaintiffs' RPFJ would require Defendants to eliminate existing codesharing and frequent
flyer agreements before new ones could be put in place.   Plaintiffs' primary argument for
invalidating the existing agreements is that this Court should not be forced to determine their
legality "in a matter of days."   Dkt. 353 (Plaintiffs' Motion for Entry of Final Judgment and
Permanent Injunction) at 8; Dkt. 358 (Plaintiffs' Response to Defendants' Motion for Entry of
Final Judgment and Permanent Injunction) at 3.  Defendants agree.  But as Plaintiffs implicitly
concede, that means this Court has *not* found that the codeshare and frequent flyer agreements are
unlawful.[1]  It is thus *Plaintiffs'* proposal that requires this Court to determine "in a matter of days,"
Dkt. 353 at 8, that these agreements constitute "illegal conduct" or the "effects" thereof.  *Ford*

---

[1] Indeed, even now, the most Plaintiffs can say about these agreements is the halfhearted and vague
contention that the "record . . . does not support the conclusion that [they] are competitively
innocuous," Dkt. 353 at 9—a far cry from the showing required to support an antitrust injunction.
*See United States v. Microsoft Corp.*, 253 F.3d 34, 105 (D.C. Cir. 2001).

*Motor Co. v. United States*, 405 U.S. 562, 573 n.8 (1972) (citations omitted).  And Plaintiffs have not even tried to satisfy their burden of showing "a significant causal connection" between these agreements and harm to competition.  *United States v. Microsoft Corp.*, 253 F.3d 34, 105 (D.C. Cir. 2001) (citation omitted). This Court should not take the extreme step of enjoining them without the necessary review.

Defendants propose a reasonable middle ground.  Although Defendants strongly believe that their existing codesharing and frequent flyer agreements are lawful (and no court has held otherwise, *cf.* Dkt. 344 at 41 n.56, 90 n.112, 91), Defendants request that, at a minimum, the Court leave the existing agreements in place for 120 days while Defendants adopt new and revised agreements under Plaintiffs' proposed notice procedures.  *See* Dkt. 354-1 (Defendants' Proposed Changes to Plaintiffs' Proposed Final Judgment) at 3.  Because those notice procedures allow Plaintiffs to delay implementation of any new agreement for at least 90 days in order to conduct their own review of that agreement, a 120-day period is the minimum amount of time necessary to ensure that there is a seamless transition for customers from the NEA to any new agreement. Plaintiffs' proposal, by contrast, effectively *ensures* that there will be a gap in codeshare and frequent flyer continuity, even if DOJ ultimately approves a new arrangement.

Tellingly, Plaintiffs identify no harm to competition or consumers in allowing the existing programs to continue during this transition period.[2]  By contrast, there is the potential for disruption and consumer harm resulting from the termination of the agreements before those agreements

---

[2] At most, Plaintiffs claim that it would be wrong to let Defendants "to continue to benefit" from codesharing, Dkt. 358 at 2, but an injunction must be tailored to the *market* harm identified, and not simply designed to "punish[]" Defendants for their alleged misconduct. *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).  Plaintiffs' argument just highlights that there is no harm to competition or consumers in allowing a short delay in implementation here.

could be replaced.  Customers who have not yet purchased their tickets will lose access to scores of nonstop flight options and the ability to mix-and-match American and JetBlue flights to create hundreds of convenient one-stop connections.  Exhibit B (S. Montgomery Decl.) ¶ 11.  The loss of these nonstop options will make travel significantly less convenient, resulting in increases to travel times of 90-142 percent on average.  *Id.* ¶¶ 12-13.  And because customers have come to expect reciprocal recognition of their frequent flyer status across Defendants' flights, invalidating the existing agreements is likely to cause customer confusion.  *Id*. ¶ 15.

Moreover, while Defendants agree that previously purchased tickets and their accompanying frequent flyer rewards should be honored, *see* Dkt. 358-1 at III.E-F, it is not technologically possible for Defendants to do so for flights purchased prior to the Frequent Flyer Cutoff Date but flown after.  Exhibit B ¶ 14; Exhibit C (D. Fintzen Decl.) ¶¶ 4-5.  Defendants' systems award frequent flyer points on the date of the flight, not the date of purchase.  Exhibit B ¶ 14; Exhibit C ¶¶ 4-5.  Therefore, Defendants cannot distinguish between customers who purchased their flights before the Frequent Flyer Cutoff Date and those who purchased them after. In other words, it is a practical and technological *impossibility* for Defendants to comply with the RPFJ as written.  Defendants' proposal, by contrast, provides sufficient time to address this problem and maintain continuity and consistency in the frequent flyer program.[3]

Finally, Plaintiffs make the extreme claim that, regardless of their effects on consumers, the codesharing and frequent flyer agreements must be "cancelled 'in order that the ground may

---

[3] Although Plaintiffs now appear to acknowledge that the NEA's termination provisions should govern the NEA's unwinding, at least as to activities prior to the injunction, *see* Dkt. 358-1 at IV.A; Dkt. 358 at 4; they have no answer to the fundamental problem that the RPFJ appears to demand that Defendants honor bookings made before the Frequent Flyer Cutoff Date for travel in the future, while at the same time, under Section III.C, invalidating the compensation mechanisms for those flights.

be cleansed.'"  Dkt. 353 at 8-9 (quoting *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944)).  But the sole case Plaintiffs cite in support of such "cleansing" is worlds apart from this one, having involved a concealed price-fixing conspiracy.  *See Bausch*, 321 U.S. at 708-17.  There, the "otherwise valid" agreements "came into existence as a patch upon [the] illegal system of distribution" at issue.  *Id.* at 724 (quoting *United States v. Bausch & Lomb Optical Co.*, 45 F. Supp. 387, 399 (S.D.N.Y. 1942)).  Here, by contrast, the codesharing and frequent flyer agreements are routine features of the industry, *see* Dkt. 344 at 90 n.112, that do nothing to further the allegedly illegal scheme.  There is no sensible reason to invalidate them while Defendants negotiate new agreements.[4]

## II.   DEFENDANTS SHOULD NOT BE BARRED FROM ENTERING INTO AGREEMENTS WITH OTHER DOMESTIC CARRIERS THAT PROVIDE FOR REVENUE SHARING OR COORDINATION OF ROUTES OR CAPACITY.

Plaintiffs argue that their proposed two-year ban on "substantially similar" agreements involving revenue sharing or coordination of routes or capacity is necessary to provide a "'cooling off' period."  Dkt. 353 at 11.  But Plaintiffs cite no case in support of such a period.  *Id.*  And the injunction essentially treats revenue sharing and capacity coordination as *per se* violations of the antitrust laws that must be enjoined *regardless* of their effects on any relevant market.  Plaintiffs identify no case which is even remotely similar.[5]

---

[4] Plaintiffs argue that, just because something is a less restrictive alternative, that does not mean it is lawful.  Dkt. 358 at 3 n.1.  But the key point is that Plaintiffs never tried to establish—and this Court never held—that Defendants' codesharing and frequent flyer agreements were unlawful.

[5] The cases Plaintiffs cite prohibited clearly defined conduct of the "same type or class" as the unlawful acts committed.  *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 132 (1969); *see, e.g.*, *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 90 (1950) (extending injunction to prohibit price fixing in the "western territory" of the United States as well as the "eastern territory" because of the "close similarity" between violations in each part of the country).

Moreover, Plaintiffs have no justification for the vague and overbroad nature of their prohibition.  The RPFJ does not define "revenue sharing" or "substantially similar," leaving Defendants to guess at whether any new agreement would violate this provision.  But both the law and "basic fairness require[] that those enjoined receive explicit notice of precisely what conduct is outlawed."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see* Fed. R. Civ. P. 65(d)(1)(B)-(C) (injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required").  As phrased, Plaintiffs' proposal could be read as prohibiting even the routine compensation that is part of every codesharing agreement.  But such an interpretation would directly contradict Plaintiffs' recognition that Defendants can enter new codesharing agreements so long as they comply with the notice procedures.

## III.   THE COURT SHOULD NOT IMPOSE A FIVE-YEAR MONITOR.

Courts regularly reject requests for monitors, *see* Dkt. 354 at 18-20 (collecting cases), and Plaintiffs cite *no* comparable case in which a court has appointed a monitor where the parties had proactively approached federal regulators prior to implementing the challenged agreement.

Instead, Plaintiffs rely primarily on *United States v. Apple*, but that case only goes to show how extreme Plaintiffs' request is here.  *See* Dkt. 353 at 16.  *Apple* was a concealed conspiracy case in which the district court concluded that Apple "orchestrate[d] a price-fixing scheme that significantly raised the prices of E-Books" and where the evidence showed publishers meeting in proverbial smoke-filled rooms to reach agreement.  *United States v. Apple Inc.*, 992 F. Supp. 2d 263, 268 (S.D.N.Y. 2014), *aff'd*, 787 F.3d 131 (2d Cir. 2015).  It was not a case, like this one, in which the parties voluntarily engaged with regulators in an attempt to design a lawful agreement that benefits consumers.  Even so, the district court in *Apple* ordered a monitorship of just two years—*one-fifth* the length requested by Plaintiffs there and less than *half* the length requested here.  *Id.* at 270; *see United States v. Apple, Inc.*, No. 12-cv-2826 (S.D.N.Y. Aug. 2, 2013), Dkt.

6

329-1 at 10-13, 16 (Plaintiffs' initial request for 10-year monitor).  There is no reason to grant any

monitorship, let alone one of more than twice of the length of that in *Apple*—especially when both

sides agree that a wind-down can be completed in a number of months.

## IV.     DEFENDANTS SHOULD NOT BE REQUIRED TO NOTIFY THE DOJ PRIOR TO ENTERING INTO AGREEMENTS WITH OTHER DOMESTIC CARRIERS.

Plaintiffs contend that a five-year notice period is warranted due to Defendants' "track

record" with respect to the NEA.  Dkt. 353 at 14.  But that track record shows that Defendants

engaged with federal regulators early and in good faith.  There is no reason to believe Defendants

would behave differently in the future.  Indeed, federal law already requires notice to and

cooperation with the DOT.  *See, e.g.*, 49 U.S.C. § 41720(b) (requiring airlines to submit to DOT

"a complete copy of [any] joint venture agreement" at least 30 days before the agreement takes

effect).  This Court should not impose substantial additional burdens and waiting periods, which

will only hamstring Defendants' ability to compete with other airlines and pursue agreements that

benefit consumers.[6]

## CONCLUSION

The Court should reject Plaintiffs' RPFJ and enter Defendants' proposed final judgment.

---

[6] Regardless of whether the notice provisions extend to agreements with any Domestic Air Carrier or just the other Defendant, the Court should require only that Defendants "substantially comply[] with" any Civil Investigative Demand.  Dkt. 354-2 (Defendants' [Proposed] Final Judgment and Order Entering Permanent Injunction) at V.C.  "Substantial compliance" is the standard imposed by the Hart-Scott-Rodino Act, 15 U.S.C. § 18a(e)(B)(i)(II), and Plaintiffs offer no reason for imposing a higher standard here.  *Cf.* Dkt. 353 at 14 (analogizing to that Act).

Dated: June 14, 2023

Respectfully submitted,

/s/ Alfred C. Pfeiffer

Alfred C. Pfeiffer (*pro hac vice*)
Christopher S. Yates (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
al.pfeiffer@lw.com
chris.yates@lw.com

Farrell J. Malone (*pro hac vice*)
Marguerite M. Sullivan (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
farrell.malone@lw.com
marguerite.sullivan@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
david.tolley@lw.com

*Attorneys for Defendant*
*American Airlines Group Inc.*

/s/ Richard Schwed

Richard Schwed (*pro hac vice*)
Matthew L. Craner (*pro hac vice*)
Jessica K. Delbaum (*pro hac vice*)
Leila Siddiky (*pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5445
rschwed@shearman.com
matthew.craner@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

8

Brian Hauser (*pro hac vice*)
Ryan Leske (*pro hac vice*)
Shearman & Sterling LLP
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 508-8005
brian.hauser@shearman.com
ryan.leske@shearman.com

Glenn A. MacKinlay, BBO #561708
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
Telephone: (617) 449-6548
gmackinlay@mccarter.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Alfred C. Pfeiffer
Alfred C. Pfeiffer