# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, <br><br> Defendants. | Civil Action No. 1:21-cv-11558-LTS |

**DECLARATION OF STEPHANIE MONTGOMERY IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT AND PERMANENT INJUNCTION**

I, Stephanie Montgomery, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am Managing Director, Partner Integration at American Airlines Group Inc. ("American").

2. I submit this declaration in support of Defendants' Response to Plaintiffs' Motion for Entry of Final Judgment and Permanent Injunction in the above-captioned matter.

3. As explained in more detail below, Plaintiffs' Proposed Final Judgment and Order Entering Permanent Injunction requires American to do something that it presently lacks the technical capacity to do—*i.e.*, honor frequent flyer reciprocity on flights that (1) were booked prior to the termination of the NEA, and (2) will operate on dates following termination of the NEA.

4. Consistent with industry practice, frequent flyer benefits are accrued and redeemed at the time of the flight, *not* at the time of booking. Based on American's existing IT systems, it is not possible to honor frequent flyer reciprocity on any flights that post-date the termination of the NEA, regardless of when they were booked.

**Relevant Background**

5. The Northeast Alliance ("NEA") between American and JetBlue Airways ("JetBlue") has been in effect since February 2021, or about 28 months.

6. As part of the NEA, American and JetBlue entered into a Codesharing Agreement, which enables American to market and sell seats on flights operated by JetBlue and vice versa.

7. Codesharing expands travel options for consumers because American can display and sell JetBlue's NEA flights on American's website, and JetBlue can display and sell American's NEA flights on JetBlue's website. Codesharing also increases connecting flight options and itinerary possibilities, because American's flights can connect, on a codesharing basis, with JetBlue-operated flights to create a broader, more convenient network for passengers.

8. In parallel with the NEA and the Codesharing Agreement, American and JetBlue entered into separate Frequent Flyer Agreements, pursuant to which American and JetBlue recognize each other's frequent flyers and allow passengers of either airline to accrue miles for flights on either carrier's flights. Specifically, through frequent flyer reciprocity, American's AAdvantage members can earn miles while flying on JetBlue's flights, and JetBlue's TrueBlue members can earn miles while flying on American's flights. AAdvantage members can also redeem miles to fly JetBlue flights.

9. Implementation of both codesharing and frequent flyer reciprocity between American and JetBlue was phased in during 2021 and 2022—and full implementation took well over two years after the NEA Agreements were signed in July 2020. Doing so required technical updates and IT cooperation to practically enable the carriers' booking and frequent flyer systems to function correctly, given American and JetBlue operate on different IT infrastructure.

Consequently, although the NEA was implemented starting in February 2021, codesharing and frequent flyer reciprocity were not fully in place and functional until October 2022.

**Eliminating Codesharing and Frequent Flyer Reciprocity Will Cause Significant Consumer Disruption and Confusion**

10. Termination of codesharing and frequent flyer reciprocity will have a significant impact on consumers because it will (1) reduce flight options for passengers and increase the average travel time for many passengers; (2) significantly complicate frequent flyer accrual, redemption, and status recognition for passengers; and (3) generate significant consumer confusion during the busy summer travel season.

11. *First*, customers who are finalizing travel plans but have not yet purchased tickets will lose options. Codesharing provides customers more nonstop flight options and the ability to mix-and-match American and JetBlue flights to create hundreds of convenient one-stop connections, and simultaneous frequent flyer coordination provides customers the ability to accrue either American AAdvantage miles or JetBlue TrueBlue miles, redeem those miles more broadly, and enjoy status recognition across carriers.

12. The loss of codeshare flying will make travel significantly less convenient for these customers. Of the 69 O&Ds (origin/destination pairs) from the NEA airports that American serves non-stop but JetBlue does not, only 19 of those O&Ds can be served by JetBlue on a connecting basis, and the total elapsed time of travel for passengers goes up by 142% (compared to a non-stop flight on American). Similarly, although American can serve, with connecting flights, 45 of the 47 O&Ds from the NEA airports that JetBlue serves non-stop, the total elapsed time of travel for passengers goes up by 90% (compared to a non-stop flight on JetBlue).

13. In sum, even where customers can be served by American or JetBlue on a connecting basis on the same routes (instead of non-stop on a codeshare flight, because codesharing would be

eliminated), their travel time will go up an average of 90-142% as compared to the current non-stop options.

14. ***Second***, because frequent flyer benefits are accrued and redeemed at the time of the flight (not at the time of booking), passengers will face inconsistent frequent flyer treatment. At present, American's IT systems are not able to properly account for frequent flyer miles and status benefits for passengers that booked travel on American before termination of the NEA for future travel (after termination of the NEA).

15. ***Third***, American has invested significant time and resources to communicate to customers about the benefits they can expect that are enabled by codesharing and frequent flyer cooperation. I am concerned that American's customers will be confused and frustrated by the sudden changes to the available route network and reciprocal frequent flyer benefits, and it will take significant efforts both in terms of customer messaging and training of customer service and other frontline staff to help reverse these expectations. The confusion will only be exacerbated by any subsequent resumption of shared frequent flyer benefits after an interruption of indefinite duration.

16. American and JetBlue, recognizing the consumer disruption that would result from a quick unwinding of frequent flyer benefits, included a provision in their frequent flyer agreements that required written advance notice of 210 days to the other party ahead of a planned termination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 14, 2023 in Fort Worth, Texas.

/s/ Stephanie Montgomery
Stephanie Montgomery

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Alfred C. Pfeiffer
Alfred C. Pfeiffer
