UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA et al., | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | | |
| v. | | Civil No. 21-11558-LTS |
| AMERICAN AIRLINES GROUP INC. and JETBLUE AIRWAYS CORPORATION, | | |
| Defendants. | | |

ORDER

July 26, 2023

SOROKIN, J.

On May 19, 2023, the Court issued its Findings of Fact and Conclusions of Law in this action. Doc. No. 344. Three weeks later, the parties filed dueling motions proposing terms the Court should include in its final judgment and permanent injunction ("FJPI"). Doc. Nos. 353, 354. The parties subsequently responded to one another's motions. Doc. Nos. 358, 359-1.[1] The Court observed that the parties' papers raised meaningful disputes regarding the injunction's terms, resolved a disagreement about when the eventual FJPI would take effect, and scheduled a hearing on the two motions for July 14, 2023. Doc. Nos. 355, 361.

A series of events led to a change in that hearing date. Days after the Court's hearing notice, JetBlue informed American that it wished to invoke the termination provisions of the Northeast Alliance ("NEA"). Pursuant to that notice and the terms of the NEA, the termination will take effect on July 29, 2023. The day after receiving the notice from JetBlue, American's

---

[1] The defendants' motion for leave to respond, Doc. No. 359, is ALLOWED.

counsel contacted the Court to request that the hearing date be continued, citing a scheduling conflict. The Court allowed American's request, to which no party objected, and reset the hearing for July 26, 2023. Doc. No. 366.

JetBlue publicly disclosed its decision on July 7, 2023, via a press release and a filing with the Securities and Exchange Commission, and JetBlue's counsel promptly brought those disclosures to the Court's attention. See Doc. No. 368. In response, the Court directed the parties to supplement their submissions to address "what, if any, impact [the NEA's] termination has on the proposed terms" of the FJPI. Id. The parties made such submissions, which reflected their success in eliminating some, but not all, disputes about the proposed terms. Doc. Nos. 369, 370. On the eve of the rescheduled hearing, the parties notified the Court that they had reached agreement about two more terms, and they submitted revised proposals incorporating the result of their continued negotiations. Doc. No. 371. The Court has heard them on the remaining disputes, Doc. No. 372, which the Court now resolves.[2]

In crafting the terms of the FJPI, the Court "is clothed with large discretion to fit the decree to the special needs of [this] case." Ford Motor Co. v. United States, 405 U.S. 562, 573 (1972) (cleaned up). Such needs include, but are not limited to, effectively ending the violation the Court found. Id. As the plaintiffs note, relief in an antitrust case must also serve the important functions of "avoid[ing] a recurrence of the violation" and "eliminat[ing] its consequences." Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 697 (1978). However, the Court is not licensed, by virtue of these general objectives or the breadth of its equitable discretion, to implement "harsh measures when less severe ones will do," "overly

---

[2] In this Order, the Court addresses only the terms, substantive and otherwise, that remain in dispute. Having reviewed the terms on which the parties agree, the Court finds them all reasonable and appropriate, and it will adopt and include them in its FJPI.

regulatory requirements which involve the judiciary in the intricacies of business management," or vague prohibitions on "all future violations of the antitrust laws." New York v. Microsoft Corp., 224 F. Supp. 2d 76, 100 (D.D.C. 2002) (cleaned up).  Rather, the Court must identify reasonable measures that will "cure the ill effects of the [defendants'] illegal conduct, and assure the public freedom from its continuance." United States v. U.S. Gypsum Co., 340 U.S. 76, 88 (1950).

Guided by these standards and its familiarity with the conduct and violations presented by this case, the Court turns to the terms as to which the parties have been unable to reach agreement.  See Doc. No. 371-3 (showing in redline terms and language as to which disagreements persist).  There are four remaining disputes the parties characterize as substantive, which the Court will address first, and a trio of smaller disagreements about phrasing the Court will resolve thereafter.

First, the plaintiffs propose a provision prohibiting each defendant from entering any new agreements that are "substantially similar to the NEA" with other domestic carriers.[3]  The Court finds such a prohibition is not necessary to achieve the appropriate aims of antitrust relief, which depend considerably on the particular circumstances of the case.  Here, those circumstances include the nature of the defendants' business models, the characteristics of the NEA agreements, and the specific geographic region and markets for air travel that were impacted by the defendants' conduct.  Thus, the Court DENIES the plaintiffs' request to include such a prohibition in the FJPI and REJECTS their proposed Section III(H).

---

[3] The defendants have assented to a provision prohibiting such agreements with one another for the next ten years, and that term will be included in the Court's FJPI.

Second, and relatedly, the plaintiffs propose a provision requiring notice and a waiting period if either defendant enters any new agreements with other domestic carriers.  For the same reasons the Court rejected the prohibition on certain agreements with other carriers, the Court DENIES the plaintiffs' requested notice provision and REJECTS their proposed Section V(B).

Third, though the parties have reached general agreement about a provision requiring notice and a waiting period if the defendants enter any new agreements with one another, they disagree about language describing when the proscribed waiting period would end if such notice led a government agency to issue a Civil Investigative Demand ("CID").  The plaintiffs propose requiring that the defendants "submit[] all information required" by the CID as a prerequisite to ending the waiting period, while the defendants propose requiring "substantial compliance" with the CID.  See Doc. No. 370-3 at 4.  The Court finds that the language proposed by the defendants is reasonable and grounded in the settled statutory procedure upon which the notice provision is modeled, and it will be more easily understood and applied by the parties and the Court going forward.  Thus, the Court REJECTS the plaintiffs' proposed language and ADOPTS the defendants' proposed language in this regard.

Fourth, the plaintiffs propose that the Court appoint an independent monitoring trustee, at the defendants' expense, who would broadly oversee the unwinding of the defendants' relationship over the next five years.  The Court DENIES that request based on its conclusion that, in the circumstances presented, appointment of a monitor is unnecessary.  The defendants entered the NEA openly, disclosed it to regulators at the outset, cooperated with the resulting investigations, and have now terminated the relationship without waiting for the Court's final judgment.  Thus, the Court REJECTS Section VI of the plaintiffs' proposed FJPI.

Finally, other differences between the parties' proposals will be resolved as follows: 1) in the preamble, the language the plaintiffs propose that includes "preventing the recurrence of similar anticompetitive conduct" is reasonable and grounded in the law, and the Court <u>will</u> include it; 2) in Section II, Applicability, the language the plaintiffs propose that would reach "any successor to any substantial part of the business" is ambiguous and appears largely superfluous in light of the standard preceding language and, thus, the Court <u>will not</u> include it; and 3) the language the plaintiffs propose at the end of Section III(B) ordering the defendants to cease "any effort to allocate markets" is reasonable and grounded in the circumstances and violations found here, and the Court <u>will</u> include it.  Additionally, subsection references in the FJPI will be adjusted to reflect the deletion of the provisions the Court has rejected and to ensure internal cross-references point to the correct places, as the defendants' proposal generally appears to do.

Accordingly, the parties' Motions for Entry of Final Judgment and Permanent Injunction (Doc. Nos. 353, 354, and 369) are ALLOWED in part and DENIED in part as described herein. The plaintiffs shall file, <u>on or before the close of business on July 28, 2023</u>, a clean copy of a FJPI including all terms to which the parties have agreed and reflecting the determinations conveyed in this Order as to the terms that were subject to dispute.  The Court will promptly review, sign, and enter that FJPI.

                                      SO ORDERED.

                                      <u> /s/ Leo T. Sorokin              </u>
                                      United States District Judge